IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>COLLINS MURPHY, LIMESTONE COLLEGE, MG FREESITES, LTD d/b/a PORNHUB.COM, and HAMMY MEDIA, LTD. d/b/a XHAMSTER.COM,<br><br>　　　　Defendants. | Civil Action Number: 7:20-cv-00947-TMC<br><br>**DEFENDANT MG FREESITES' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs' memorandum in opposition ("Opp.") to Defendant MG Freesites' Motion to Dismiss ("MTD") ignores every single one of the dozens of on-point decisions (including two Fourth Circuit decisions) supporting MG Freesites' defense under Section 230 of the Communications Decency Act ("CDA"). Plaintiffs also fail to identify a single factual allegation to support any of their claims against MG Freesites. Instead, Plaintiffs' entire Opposition rests on two erroneous legal arguments; two inapposite out-of-circuit decisions; cut-and-paste excerpts of a handful of conclusory, repetitive, and irrelevant allegations; and two causes of action that are *not* part of the operative Second Amended Complaint ("SAC") but were included for the first time in a *proposed* Third Amended Complaint.[1]

---

[1] On October 4, 2020, the day before Plaintiffs' Opposition was due, Plaintiffs filed a motion for leave to file a proposed Third Amended Complaint. The Third Amended Complaint is largely identical to the Second Amended Complaint, but adds two claims for violation of Plaintiffs' "right of privacy." MG Freesites specifically addresses those new claims in this reply memorandum. As set forth below, the new claims do not save Plaintiffs' claims from dismissal, and thus amendment would be futile. If the Court grants this MTD, it need not address the

Plaintiffs' only apparent justification for their refusal to address *any* of the relevant cases in Defendant's motion seems to be that none of those cases involved adult-oriented material or adult-oriented websites. *See, e.g.,* Opp. 1-2. That argument is without merit. The CDA is content-neutral, and nothing in the statute conditions its protection on the nature of the website at issue, far less the nature of the content posted by the third party user.[2] To the contrary, the CDA *presupposes* that the third party content at issue is illegal, defamatory, harassing, or otherwise harmful to the plaintiff, and the purpose of the Act is to protect service providers from liability for such content. As a result, the statute applies to *all* "interactive computer services," (i.e., "*any* information service, system, or access software provider that provides or enables computer access by multiple users to a computer server") and *all* third party content providers (i.e., "*any* person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."). 47 U.S.C. § 230(f)(2-3). The analysis does not change based on how offensive or reprehensible the posted content might be. *See Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006) (Granting motion to dismiss on CDA immunity grounds and noting "[w]hile the facts of [the illegal content at issue, there child pornography] may be highly

---

motion for leave to amend. Plaintiffs also intend to address specifically the motion for leave in a separate opposition.

[2] In fact, several cases have involved adult-oriented content. *See, e.g.*, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007) (CDA applied to unauthorized exploitation of nude photographs); *Carafino v. Metrosplash.com, Inc.,* 339 F.3d 1119 (9th Cir. 2003) (CDA applied to "sexually suggestive" comments on a matchmaking website); *Herrick v. Grindr LLC*, 765 Fed. Appx. 586 (2d Cir. 2019) (CDA applied to web-based "hook-up" application). Notably, courts also have not hesitated to apply somewhat analogous liability shields to adult-oriented websites that host user-uploaded content. *See, e.g., Ventura Content Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018) (adult video-sharing site entitled to the safe-harbors of the Digital Millennium Copyright Act).

offensive, Congress has decided that the parties to be punished and deterred are not the internet service providers but rather are those who created and posted the illegal material[.]").

The remainder of Plaintiffs' Opposition boils down to two basic legal arguments, both of which have been squarely addressed (and rejected) by numerous courts. ***First***, Plaintiffs claim that MG Freesites is an "information content provider" because it "encourages" users to upload adult-oriented content to the website at issue in the instant case (the "Website"). But every court that has considered the issue has held that a service provider's encouragement and solicitation of content is not sufficient to remove CDA protection. ***Second***, Plaintiffs claim that their ***proposed*** causes of action for "invasion of privacy" are exempted from the CDA. That argument completely ignores the many appellate and district court decisions (including in this Circuit) that expressly have held the contrary.

Finally, Plaintiffs' attempt to bootstrap their claims against Defendant Murphy directly into claims against MG Freesites under an "agency" theory is specious, at best. Plaintiffs now confirm that, after ***three*** amendments to their Complaint, they still cannot allege a single ***fact*** to support the existence of a principal/agent relationship. As Plaintiffs are well aware, Murphy and MG Freesites are two independent actors whose relationship is no different from any of the hundreds of millions of other users who have registered accounts on the Website.

Plaintiffs are not without a remedy for their alleged injuries. Both Murphy and Limestone College have appeared in this action and both have answered.[3] Plaintiffs may pursue their claims against these defendants; there is no legal or factual basis for Plaintiffs also to pursue meritless claims against MG Freesites.

---

[3] Limestone College also has sought affirmative relief against Murphy, and thus those two parties and their relationship are at the center of this dispute.

**ARGUMENT**

**I.     SECTION 230 OF THE CDA BARS ALL OF PLAINTIFFS' CLAIMS, INCLUDING THEIR *PROPOSED* INVASION OF PRIVACY CLAIMS.**

There now is no dispute as to two of the three prongs of the CDA analysis. Plaintiffs expressly "agree" that the Website "is an interactive computer service provider as defined by statute." Opp. at 15. Plaintiffs also do not dispute that this case arises entirely from MG Freesites' role as the "publisher" of the content at issue.

Accordingly, Plaintiffs rest their entire opposition on their arguments that (1) MG Freesites was an "information content provider" with respect to the videos at issue in this case (the "Videos") because it purportedly encouraged members of the public to post sexually explicit content, and (2) Plaintiffs' hypothetical new claims for invasion of privacy (alleged for the first time in their *proposed* Third Amended Complaint) are "intellectual property" claims outside the scope of the CDA. Neither argument has merit.

**A.     MG Freesites was not responsible for the "creation" or "development" of the videos.**

The Fourth Circuit has clearly explained what conduct is required to transform an interactive computer service (i.e., a website or social media network) into an "information content provider" for purposes of the CDA. The website must "***materially contribut[e] to a given piece of information's alleged unlawfulness***." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257 (4th Cir. 2009) (emphasis added) (internal quotation marks omitted). Moreover, "[a] material contribution to the alleged illegality of the content does not mean merely taking action that is necessary to the display of allegedly illegal content. Rather, it means being responsible for what makes the ***displayed content*** allegedly unlawful." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 410 (6th Cir. 2014) (emphasis added).

In other words, MG Freesites can only be liable to Plaintiffs if it directly participated in creating the *content* of the Videos or if it was directly involved with or contributed to the *specific unlawful conduct* at issue here (i.e., Murphy's acts of recording the Plaintiffs without their consent).  *See, e.g., Carafino*, 339 F.3d at 1125 (owner of Matchmaker website was not an "information content provider" with respect to the content at issue because it "did not play a significant role in creating, developing, or 'transforming' the relevant information."); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1168 (N.D. Cal. 2017) ("Plaintiffs do not allege that Google 'materially contributed' in any way to the actual content of ISIS's YouTube videos."); *Directory Assistants, Inc. v. Supermedia, LLC*, 884 F. Supp. 2d 446, 452 (E.D. Va. 2012) ("There are no allegations that Defendants created the posts or altered them.").

By contrast, merely encouraging members of the public to contribute a specific type or genre of content (including sexually explicit content) to a website or online message board is *not* sufficient to render the Website an "information content provider" – and thereby responsible for content made and posted by a third party.  *See, e.g., Nemet Chevrolet*, 591 F.3d at 261 (defendant allegedly encouraged members of the public to post complaints).  That is true even if the Website enables uploaders or "information content providers" to monetize their content.  "Congress has made a… policy choice by providing immunity even where the interactive service provider has an active, even aggressive role in making available content prepared by others."  *Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998)*; see also Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 20-21 (1st Cir. 2016), *superseded by statute on other grounds as stated in Stokinger v. Armslist*, No. 1884CV03236F, 2020 WL 2617168, at *5 (Mass. Sup. Ct. Apr. 28, 2020), (defendant allegedly structured its website in a manner designed to encourage sex trafficking);

*Ascentive LLC v. Op. Corp.*, 842 F. Supp. 2d 450, 476 (E.D.N.Y. 2011) (defendants allegedly "invite[d] postings").

Plaintiffs do not address *any* of the foregoing decisions (or, for that matter, any of the cases cited in the MTD), for good reason. Plaintiffs do not, and cannot, allege *any* conduct engaged in by MG Freesites that could even arguably take Plaintiffs' allegations outside Section 230 or otherwise constitute "material contribution" to "what makes the displayed content allegedly unlawful" (i.e. the act of recording Plaintiffs without their authorization). Neither the Second Amended Complaint nor the proposed Third Amended Complaint allege, or even suggest, that MG Freesites ever communicated directly with Murphy or even knew that the Videos existed when they were made in 2012 or 2013 – far less that it knew Plaintiffs appeared in the Videos and had not consented to that appearance. Nor can Plaintiffs possibly allege (and they do not allege) that MG Freesites ever solicited or encouraged users to post nonconsensual images of women. In fact, MG Freesites staunchly prohibits such content.[4] While Plaintiffs (Opp. 18) make much of their lengthy and repetitive allegations that MG Freesites "solicits and pays individuals like Mr. Murphy to upload sexually deviant content" or "endorse[s] … the creation of … sexual content," these allegations are insufficient to state a claim. *See Nemet Chevrolet*, 591 F.3d at 257 ("Even accepting as true all of the facts [the plaintiff] pled as to Consumeraffairs.com's liability for the structure and design of its website, the amended

---

[4] The Website's Terms of Service plainly prohibit users from posting content without the authorization or consent of the person depicted. *See* Terms of Service (*available at* https://www.pornhub.com/information/terms) (requiring users to "affirm, represent, and warrant that you own or have the necessary licenses, rights, consents, and permissions to publish Content you submit.") (page does *not* contain explicit content). As Plaintiffs apparently agree (given the exhibit included with their Opposition papers), the Court can and should take judicial notice of website pages that are not subject to reasonable dispute and are "capable of accurate and ready determination." *Brown-Thomas v. Hynie*, 367 F. Supp. 3d 452, 457 n.3 (D.S.C. 2019) (quoting Fed. R. Evid. 201(b)).

complaint 'does not show, or even intimate,' that Consumeraffairs.com contributed to the allegedly fraudulent nature of the comments at issue."); *Shiamili v. Real Estate Grp. of New York, Inc.*, 17 N.Y. 3d 281, 290 (N.Y. 2011) ("We reject [plaintiff's] contention that defendants should be deemed content providers because they created and ran a Web site which implicitly encouraged users to post negative comments about the New York City real estate industry.").

The two out-of-circuit cases cited by Plaintiffs (Opp. 16-17) not only fail to support their position, but also are so obviously distinguishable that they actually support **MG Freesites'** argument. Both of these cases instructively highlight the difference between those websites that directly and actively participate in the unlawful content and those (like MG Freesites) that simply operate a platform that hosts user-generated content.

*Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016), is particularly instructive. In that case, the plaintiff sued Gawker Media and its representatives for allegedly defamatory comments posted on websites owned by Gawker. *Huon*, 841 F.3d at 737. The Court of Appeals reversed the decision of the lower court to dismiss the case as barred by the CDA because the plaintiff had alleged, in detail, that Gawker and its employees were ***directly*** involved in creating, even authoring, the specific content at issue. *Id.* at 742. Specifically, the plaintiff had alleged that Gawker and its employees invited specific users to defame the plaintiff, edited the content at issue, selected specific content for publication, and even authored some of the content. *Id.* These claims were supported by "over four pages" of factual allegations, including reporting by Reuters. *Id.*

In *FTC v. Accusearch*, 570 F.3d 1187 (10th Cir. 2009), the FTC brought claims against a website (Akiba.com) whose entire purpose was to enable members of the public to purchase and obtain confidential telephone records in violation of the Telecommunications Act, and which

explicitly advertised its website as providing such allegedly illegal services. *Accusearch*, 570 F.3d at 1190-1191. In the course of its business operations, the defendant solicited and processed unlawful requests for private personal telephone information, collected payments from customers, and hired researchers to unlawfully gather and obtain the requested information. *Id.* at 1199-1200. In doing so, the defendant "knowingly sought to transform virtually unknown information into a publicly available commodity" and "knew that its researchers were obtaining the information through fraud or other illegality." *Id.* at 1199. Notably, the *Accusearch* court forcefully distinguished between the knowing and deliberate conduct engaged in by the defendant in that case and the conduct of websites like the one at issue here, which are "not responsible for the development of offensive content if one's conduct was neutral with respect to the offensiveness of the content." *Id.* (internal quotation marks omitted). In other words, "[w]e would not ordinarily say that one who builds a highway is 'responsible' for the use of that highway by a fleeing bank robber, even though the culprit's escape was facilitated by the availability of the highway." *Id.*

The facts and allegations at issue in *Huon* and *Accusearch* stand in stark contrast to the allegations in Plaintiffs' Second (and Third) Amended Complaints. Nowhere do Plaintiffs ever allege—and they cannot allege, that, like Gawker—MG Freesites solicited or enlisted members of the Website to create and upload illegal, nonconsensual recordings, filmed or edited the Videos, or deliberately selected the Videos for publication on the Website. Unlike *Accusearch*, MG Freesites is not alleged to have designed the Website to aggregate and display illegal "spy cam" content, to have promoted or advertised the existence of such content, or to have knowingly paid Murphy (or anyone else) to upload such content. *See Shiamili*, 17 N.Y.3d at 292 (distinguishing *Accusearch* in a case where there "are no allegations that posting false and

defamatory content was a condition of use, or that the site worked with users to develop the posted commentary.")  This is confirmed by the exhibit attached to Plaintiffs' Opposition, which never once mentions "spy cams" or other unauthorized videos.  Ultimately, all that Plaintiffs can and do allege is that MG Freesites provided the same open platform to Murphy as it did to hundreds of millions of other users to post his Videos, as well as a content-neutral revenue sharing system that allows any of the Website's users to monetize uploaded content.  *See* Opp., Ex. A (referring to "hundreds of studios").

Finally, Plaintiffs' allegations about unspecified take-down notices from ***other people*** about ***other videos*** are legally irrelevant under well-settled Fourth Circuit law.  Plaintiffs never allege that they ever sent a take-down notice to MG Freesites.  But even if they had, that would not impact the analysis.  *See Zeran v. Am. Online, Inc.*, 129 F. 3d 327, 333 (4th Cir. 1997) (rejecting argument that the defendant lost CDA protection because it was on notice of Plaintiff's claims: "Liability upon notice would defeat the dual purposes advanced by § 230 of the CDA" and would "reinforce[] service providers' incentives to restrict speech and abstain from self-regulation.").

**B.     Plaintiffs' invasion of privacy claims proposed by amendment also are barred by the CDA.**

Plaintiffs apparently recognize that all of the claims asserted in the operative SAC are plainly subject to the CDA and, moreover, that the legal theories behind these claims have been explicitly rejected.  Thus, in a last-ditch effort to save their claims from dismissal, Plaintiffs have asked the Court for leave to file a Third Amended Complaint, adding two claims for invasion of privacy.  Even though these claims are not part of the operative complaint, if the Court were to grant Plaintiffs' Motion for Leave and treat the Third Amended Complaint as the operative

pleading, dismissal still is warranted because Plaintiffs' newly-added claims also are barred by the CDA.

While Plaintiff correctly notes that the CDA does not "limit or expand" intellectual property laws (Opp. 13 (citing 47 U.S.C. § 230(e)(2))), Plaintiffs' "Invasion of Privacy" claims are *not* the type of "intellectual property" claims exempted by the statute. *See Carafino*, 339 F.3d at 1122-1125 (CDA barred claims for invasion of privacy and misappropriation of the right of publicity). Even the one New Hampshire district court case cited by Plaintiffs (Opp. 13) squarely holds that claims for invasion of privacy in the form of "intrusion upon seclusion, publication of private facts, and casting in false light" are claims that protect "a personal right, peculiar to the individual whose privacy is invaded." *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 302-303 (D.N.H. 2008) (citing *Restatement (Second) of Torts* § 625I). Thus, these claims "do not sound in 'law pertaining to intellectual property'" and indisputably are subject to the CDA. *Id.* at 303.

With respect to Plaintiffs' proposed new Third Cause of Action for "Invasion of Privacy – Wrongful Appropriation of Personality," Plaintiffs fail to mention that the vast weight of recent authority, including every appellate court that has considered the issue, is in agreement that state law misappropriation of "personality" claims are *not* exempted from CDA protection. Specifically, in *Perfect 10, Inc.*, the Ninth Circuit held that claims similar to those alleged here (i.e. appropriation of likeness based on uploaded photographs) were not the type of "intellectual property" claims contemplated by the CDA, that Plaintiffs' interpretation of the statute would subvert the policies and purposes of the statute, and therefore that only *federal* intellectual property claims are exempted:

> "While the scope of federal intellectual property law is relatively well-established, state laws protecting 'intellectual property,' however defined, are by no means uniform. Such laws may bear various names, provide for varying causes of action and remedies, and have varying purposes and policy goals. Because material on a website may be viewed across the Internet, and thus in more than one state at a time, permitting the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes. In the absence of a definition from Congress, ***we construe the term 'intellectual property' to mean 'federal intellectual property.'***"

488 F.3d at 1118-1119 (emphasis added) (internal citations omitted); *see also Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019) ("[T]he intellectual property exception contained in § 230(e)(2) encompasses claims pertaining to an established intellectual property right under federal law, like those inherent in a patent, copyright, or trademark."); *Carafino*, 339 F.3d at 1122-1124.

Several recent district court decisions have come to the same conclusion. *See Curran v. Amazon.com, Inc.*, No. 2:07-0354, 2008 WL 472433, at *11 (S.D.W.Va. Feb. 19, 2008) ("As the Ninth Circuit notes, CDA immunity exists for both right of publicity claims… and right of privacy claims[.]"); *Hepp v. Facebook, Inc.*, No. 19-4034-JMY, 2020 WL 3034815, at *7 (E.D.Pa. June 5, 2020) (dismissing right of publicity claims as barred by the CDA because "[c]onditioning CDA immunity on the diverse potentially applicable state laws would have a negative effect on the development of the internet and, therefore, would run contrary to the purpose and intent of the CDA."); *Doe ex rel. Roe v. Backpage.com, LLC,* 104 F. Supp. 3d 149, 163 n.13 (D. Mass. 2015) (describing the proposition that right of publicity claims are exempted from the CDA as dubious because "a person's image is not a 'product of the human intellect.'") (citing *Black's Law Dictionary* (10th ed. 2014)).

Excluding Plaintiffs' privacy and personality appropriation claims from the CDA's "intellectual property" exception is particularly appropriate here, because the tort of misappropriation of personality in South Carolina is a common law right, encompassed within the broader "invasion of privacy" tort. *See, e.g., Sloan v. S.C. Dep't of Pub. Safety*, 355 S.C. 321, 325-326 (S.C. 2003). South Carolina courts have not described the tort as one for infringement of "intellectual property." That is logical, because, as noted above, one's image and likeness are not products of the mind. This is confirmed further by the nature of the damages sought by Plaintiffs, which are damages for ***personal injury***, such as "serious mental and emotional injuries and distress." Proposed Third Amended Complaint, ¶ 84.

## II.     PLAINTIFFS' AGENCY THEORY IS MERITLESS.

Plaintiffs' final effort to avoid dismissal is to revisit their conclusory "agency" allegations. Plaintiffs apparently agree that under South Carolina law, "[t]he test to determine agency is whether or not the purported principal has the *right to control* the conduct of [its] alleged agent." *Allen v. Greenville Hotel Partners, Inc*., 409 F. Supp. 2d 672, 678 (D.S.C. 2006) (alteration and emphasis in original). But not one of the allegations in the Second (or Third) Amended Complaint contains even a single ***fact*** to support the existence of a principal/agent relationship. These "threadbare and conclusory" allegations are insufficient. *See Nemet Chevrolet,* 591 F.3d at 258. Ultimately, the ***only*** purported factual allegation that Plaintiffs' offer in support of their agency theory is that both MG Freesites ***and*** defendant Hammy Media, Inc. "solicit[ed]" and "pa[id]" "individuals *<u>like</u>* Murphy" to upload content to the Website. Opp. at 18 (citing SAC ¶¶ 53-56) (emphasis added). Plaintiffs do not, and cannot, allege that MG Freesites had any *right to control* Murphy or his conduct. In fact, Plaintiffs' allegations – including that the Videos were created between six and seven years before being uploaded to the

Website and "countless" other websites (SAC, ¶ 34) – directly contradict any such claim. Under Plaintiffs' theory, every one of the hundreds of millions of Website members would also be MG Freesites' agents. More unworkable still, Murphy would be the agent of every single one of the "countless" other websites he uploaded his Videos to.

The single case cited by Plaintiffs, *Enigma Software Grp. USA v. Bleeping Computer*, 194 F. Supp. 3d 263 (S.D.N.Y. 2016), is (like all of Plaintiffs' other citations) completely inapposite. In *Enigma*, the court found that the plaintiff had sufficiently alleged that a "Global Moderator" of the defendant's website was the agent of the defendant, where the plaintiff specifically alleged that the moderator, among other things: (1) occupied "the second and third highest 'staff member' positions" in the defendant's hierarchy, (2) signed his posts as "The BC[defendant] Staff," (3) had direction and authorization from the defendant to post messages on behalf of the defendant and to recommend and promote certain products, (4) was held out to the public by the defendant as an expert who "can be trusted to give correct and understandable answers to [defendant's] member's questions[,]" and (5) was empowered by the defendant to enforce the website rules, including to suspend or terminate website members. *Enigma*, 194 F. Supp. 3d at 274-275. No such actual or implied authority is alleged to exist here between MG Freesites and Murphy, warranting dismissal.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed in their entirety, with prejudice. Additionally, the Court should deny Plaintiffs' request for leave to amend, as the additional claims set forth in the proposed Third Amended Complaint do not cure any of the deficiencies outlined in Plaintiffs' Complaint, making amendment futile as a matter of law.

Respectfully submitted,

| | |
|---|---|
| DATED October 13, 2020 | TURNER, PADGET, GRAHAM AND LANEY, P.A. |
| Greenville, South Carolina | By: */s/ R. Taylor Speer* <br> R. Taylor Speer | Attorney ID: 12267 <br> email | tspeer@turnerpadget.com <br> direct | 864-552-4618 <br><br> J. Kenneth Carter | Attorney ID: 05108 <br> email | kcarter@turnerpadget.com <br> direct | 864-552-4611 <br><br> Post Office Box 1509 <br> Greenville, South Carolina 29602 <br> facsimile | 864-282-5993 |
| TPGL 10652151V2 16881.00101 | *Attorneys for Defendant MG Freesites, Ltd* |
| | MITCHELL SILBERBERG & KNUPP LLP <br><br> Marc E. Mayer | admitted *pro hac vice*: <br> email | mem@msk.com <br> direct | 310-312-3154 <br><br> 2049 Century Park East <br> 18th Floor <br> Los Angeles, California 90067 <br> facsimile | 864-282-5993 |
| 12566459.2 | *Attorneys for Defendant MG Freesites, Ltd* |