UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>COLLINS MURPHY, LIMESTONE )<br>COLLEGE, MG FREESITES, LTD., d/b/a )<br>PORNHUB.COM and HAMMY MEDIA )<br>LTD. d/b/a XHAMSTER.COM, )<br>)<br>Defendants. )<br>) | Case No: 7:20-cv-00947-TMC<br><br>LIMESTONE UNIVERSITY'S MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT<br><br>(Jury Trial Demanded) |

**NOW COMES LIMESTONE UNIVERSITY** (incorrectly identified as "Limestone College" and hereinafter referred to as "Limestone"), a Defendant to the above-captioned action, and files this Memorandum in Support of its Partial Motion to Dismiss pursuant to Local Rule 7.02. Specifically, Limestone respectfully requests that the First, Second, Third, and Fourth Causes of Action in Plaintiffs' Third Amended Complaint (ECF No. 60) be dismissed as to Defendant Limestone.

**I. INTRODUCTION**

This case arises from the alleged misdeeds of Defendant Collins Murphy ("Murphy"), who Plaintiffs allege surreptitiously filmed them in locker rooms on Limestone's campus. Limestone, an accredited non-profit Christian non-denominational university chartered by the State of South Carolina, has been performing its core mission of educating students for 175 years. Plaintiffs allege that Murphy made the illicit films while he was employed at Limestone in 2012. Murphy's alleged actions, if true, are reprehensible, and were obviously done without Limestone's knowledge or consent. More than five years after Limestone terminated Murphy's

employment, Plaintiffs allege that Murphy posted these videos online, including on the pornographic websites operated by Defendants MG Freesites, Ltd. ("Pornhub") and Hammy Media Ltd. ("xHamster"). Plaintiffs make not a single allegation this was done with Limestone's knowledge or consent.

Limestone vigorously denies any of the wrongdoing alleged in all of Plaintiffs' Complaints.However, for this Motion, Plaintiffs have failed to allege that Murphy acted within the course and scope of his employment with Limestone when he allegedly recorded them. Likewise, Plaintiffs affirmatively acknowledge that Murphy was no longer employed by Limestone in any capacity when he allegedly uploaded the videos online in 2019. Furthermore, Plaintiffs' incredible claims—made without any factual support—that Limestone is somehow benefitting from the publication of said videos or being advantaged from the alleged appropriation of Plaintiffs' personalities are totally incomprehensible. The notion that Limestone, an educational institution whose Mission Statement includes providing "a nurturing, supportive environment based on Christian ideals and ethical principles," is somehow benefiting or obtaining any advantage from the alleged actions of a rogue employee who has not been associated with Limestone in over 5 years, goes beyond implausible into the realm of fantasy. But, although related to the context of implausibility, this Motion is based on more than just Plaintiffs' far-fetched and factually unsupported theory that Limestone obtained advantage from Murphy's alleged misconduct.  Specifically,  Plaintiffs' causes of action  based on a theory of liability under *respondeat superior* (Counts One, Two, Three, and Four) fail to state a claim upon which relief can be granted because they fail to establish any that Murphy's misconduct was in the course and scope of his employment, so that Limestone is liable for that misconduct, and, therefore must be dismissed as to Limestone.

## II. FACTUAL ALLEGATIONS IN THE THIRD AMENDED COMPLAINT

According to the allegations in the Third Amended Complaint, Limestone[1] hired Murphy in August 2012 as its intramural/summer conference director. (ECF No. 60, ¶¶ 13-14, 26). Plaintiffs allege that this position included access to athletic facilities. (ECF No. 60, ¶ 26). Plaintiffs—perhaps not surprisingly—make no allegation that videotaping visiting athletic teams in the locker room was part of Murphy's job at Limestone. In fact, Plaintiffs acknowledge that surreptitious videotaping was not part of Murphy's job when they allege that Limestone's failure to properly supervise Plaintiff is what allowed him to videotape the Plaintiffs (ECF No. 60, ¶ 104).

Plaintiffs were members of the 2012 Bellarmine Knights field hockey team. (ECF No. 60, ¶ 27). They played the Limestone College Saints on Limestone's Campus in October 2012.[2] *Id*. This involved using a locker room on Limestone's campus to shower and change clothes. (ECF No. 60, ¶ 29). Unbeknownst to Plaintiffs (or Limestone), Murphy "secretly placed a video camera in the locker room prior to Plaintiffs' arrival on campus" and made recordings of Plaintiffs. (ECF No. 60, ¶ 30). Murphy did this via use of a "hidden camera." (ECF No. 60, ¶ 37). Murphy's employment with Limestone subsequently ended in October 2014. (ECF No. 60, ¶ 32).

---

[1] Limestone College legally changed its name to Limestone University in July 2020. Despite raising this issue in its Answer to Plaintiffs' Second Amended Complaint (ECF No. 40), providing the proper identification in its Rule 26.01 Interrogatory Responses (ECF No. 41), and indicating counsel would accept service of an amended summons and pleading reflecting the correct identification, Plaintiffs again failed to properly identify Limestone in their Third Amended Complaint.

[2] Paradoxically, Plaintiffs also allege that Murphy was employed by Limestone "at all times mentioned herein." (ECF No. 60, ¶ 14)

In 2019, five years after Murphy's last date of employment with Limestone, the 2012 secret recordings Murphy allegedly made of Plaintiffs with his hidden camera were uploaded to the pornographic websites Pornhub and xHamster. (ECF No. 60, ¶ 34). Thereafter, on October 18, 2019, the Plaintiffs were first made aware that they were allegedly secretly videotaped in the Limestone locker room and that said recording was posted to several pornographic websites. (ECF No. 60, ¶ 36). Plaintiffs allege, upon information and belief, that Murphy uploaded and/or disseminated the recordings. (ECF No. 60, ¶ 37).

Plaintiffs allege, in total, ten (10) causes of action. Four are made against all Defendants:

1. Invasion of Privacy – Wrongful Intrusion upon Private Affairs (ECF No. 60, ¶¶ 60-69).
2. Invasion of Privacy – Wrongful Publicizing of Private Affairs (ECF No. 60, ¶¶ 70-77).
3. Invasion of Privacy – Wrongful Appropriation of Personality (ECF No. 60, ¶¶ 78-85).
4. Intentional Infliction of Emotional Distress (ECF No. 60, ¶¶ 86-92).

Two are made against Limestone directly:

5. Negligent Hiring (ECF No. 60, ¶¶ 93-98).
6. Negligent Supervision (ECF No. 60, ¶¶ 99-105).

The remaining four are against Murphy, Pornhub, and/or xHamster and pertain to the uploading and failure to remove the alleged secret recordings:

7. Negligent Monitoring (ECF No. 60, ¶¶ 106-112).
8. False Light (ECF No. 60, ¶¶ 113-119).
9. Civil Conspiracy (against Murphy and Pornhub) (ECF No. 60, ¶¶ 120-123).
10. Civil Conspiracy (against Murphy and xHamster) (ECF No. 60, ¶¶ 124-127).

The subject motion is as to Causes of Action One, Two, Three, and Four against Limestone.

### III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain factual allegations that state a plausible claim for relief. To survive a motion to dismiss, the complaint must provide enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. Pro. 8(a)(2). Well-pleaded factual allegations must be assumed to be true, but the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A plaintiff "must allege sufficient facts to establish th[e] elements" of his claim and "advance [that] claim across the line from conceivable to plausible." *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 658 (4th Cir. 2016) (quoting *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012)). A formulaic recitation of the elements of a cause of action will not do. *Twombly,* 550 U.S. at 555, 127 S. Ct. 1955. "To discount such unadorned conclusory allegations, 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal,* 129 S. Ct. at 1950).

### IV. ARGUMENT

1. <u>Plaintiffs' Counts One, Two, Three, and Four Must be Dismissed because Plaintiffs Fail to Allege that Murphy was Acting Within the Course of Scope of His Employment When He Made the Recordings or When the Recordings Were Uploaded to the Internet</u>

    a. Counts One, Two, and Three (Invasion of Privacy)

Plaintiffs' significant overreach in including Limestone in their three counts of invasion of privacy, and in the count for intentional infliction of emotional distress are laid bare by Plaintiffs' failure to allege a theory of liability against Limestone. Plaintiffs attempt to use the theory of vicarious liability to hold Limestone accountable for Murphy's actions but neglect to allege even once with regard to these causes of action the central tenant of that theory—that Murphy acted within the course and scope of his employment when he allegedly videoed the Plaintiffs surreptitiously in Limestone's locker room.[3] Indeed, in the Third Amended Complaint's only mention of respondeat superior by name, Plaintiffs omit the term "course and scope of employment." (*See* ECF No. 60 ¶ 15). Needless to say that Plaintiffs would likely never allege that Murphy acted within the course and scope of his employment when engaging in such reprehensible activity because of the implausibility (bordering on absurdity) of such an allegation. But, we need not speculate about whether Plaintiffs would make such an allegation because Plaintiffs acknowledge that Murphy indeed acted *outside* the course and scope of his employment when they allege in their negligent supervision claim that had Limestone properly supervised Murphy he would not have been able to act outside his employment to commit the alleged misdeeds. Thus, counts One, Two, Three, and Four must be dismissed for failure to plead liability against Limestone.

---

[3] The closest Plaintiffs get to claiming that Murphy was acting in the course and scope of his employment at the time of his tortious actions is in Count Five (Negligent Supervision), where they allege that Murphy was "acting within the scope of his employment when entering, or accessing the women's locker rooms, and thus Limestone was able to control or supervise his conduct." (ECF No. 60, ¶ 102). However, this allegation is misplaced in a negligence claim and thus of no consequence because *respondeat superior* "is not predicated on the negligence of the employer, but upon the acts of the employee, whether those acts occurred while the employee was going about the employer's business, and the agency principles that characterize the employer-employee relationship." *James v. Kelly Trucking Co.*, 377 S.C. 628, 631, 661 S.E.2d 329, 330 (2008).

Counts One, Two and Three collectively constitute the three "Invasion of Privacy" torts recognized by South Carolina. *Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 383 S.E.2d 2, 6 (S.C. Ct. App. 1989) ("Under South Carolina law, three causes of action fall under the category of invasion of privacy: "(1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs."). The wrongful appropriation of personality involves intentional, unconsented use of a plaintiff's name, likeness, or identity by the defendant for his own benefit. *Sloan v. S.C. Dep't of Pub. Safety*, 355 S.C. 321, 586 S.E.2d 108 (2003) The wrongful publicizing of private affairs, under South Carolina law, involves a public disclosure of private facts about the plaintiff in which there is no legitimate public interest. *Walgreens Boots All., Inc.*, 2020 WL 3620025. A wrongful intrusion into private affairs involves an intentional, substantial and unreasonable intrusion (which may consist of prying, besetting or other similar conduct) into that which is private (aspects of Plaintiffs' self which one normally expects to be free from others). *Craig v. Andrew Aaron & Assocs., Inc.*, 947 F. Supp. 208, 213 (D.S.C. 1996).

Plaintiffs' allegation of liability amounts to a single conclusory claim that "[u]nder the doctrine of *respondeat superior*, Defendant Limestone was and is responsible for the actions and conduct of Defendant Murphy done while employed by Limestone as its agent and employee and Defendants are thereby jointly and severally liable to Plaintiffs for their injuries and damages." (ECF No. 60, ¶ 15). Plaintiffs note in Count One that Limestone is included because "Defendant Murphy, in his capacity as an employee and agent of Defendant Limestone, *was given access to and/or control over the locker room facilities* at Limestone" without any mention of surreptitious videotaping being within the course and scope of his employment (ECF No. 60, ¶ 61) (emphasis added). Not even that sparse allegation appears in Counts Two, Three, or Four. Instead, in those

Counts, Plaintiffs merely lump Limestone in with Murphy and the pornographic website defendants as direct actors, e.g. "[t]he secret and unauthorized videotaping by Defendants of the Plaintiffs and the other student athletes constitutes an intrusion into the private affairs of the Plaintiffs and the other women." (ECF No. 60 ¶ 80). However, these allegations contradict the repeated factual allegations that Murphy was the sole videorecorder, leaving only a theory of *respondeat superior* as earlier alleged in Paragraph 15 as the theory of liability.

Under South Carolina law, *respondeat superior* is not a cause of action; it is a theory of liability. *J.R. v. Walgreens Boots All., Inc.*, No. 2:19-CV-00446-DCN, 2020 WL 3620025, at *16 (D.S.C. July 2, 2020). The doctrine of respondeat superior provides that the employer, as the employee's master, is called to answer for the tortious acts of his servant, the employee, when those acts occur in the course and scope of the employee's employment. *James v. Kelly Trucking Co.*, 377 S.C. 628, 631, 661 S.E.2d 329, 330 (2008). This liability "is not predicated on the negligence of the employer, but upon the acts of the employee, whether those acts occurred while the employee was going about the employer's business, and the agency principles that characterize the employer-employee relationship." *Id.*

An act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and in furtherance of the master's business. *Armstrong v. Food Lion, Inc.*, 371 S.C. 271, 276, 639 S.E.2d 50, 52–53 (2006). These general principles govern in determining whether an employer is liable for the acts of his servant. *Id*.

Furthermore, with regard to an employee acting upon his own business separate from that of his employment, our courts have held:

> The act of a servant done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefor. If a servant steps aside from the master's business

>for some purpose wholly disconnected with his employment, the relation of master and servant is temporarily suspended; and this is so no matter how short the time, and the master is not liable for his acts during such time.

*Gainey v. Kingston Plantation*, 2008 WL 706916 (D. S.C. 2008) (not reported in F.Supp.2d) (internal citations omitted) (citing *Lane*, *supra*; *Hancock v. Aiken Mills*, 180 S.C. 93, 185 S.E. 188 (1936).

Turning back to the case at hand, Plaintiffs allege that Murphy was employed to serve as Limestone's intramural/summer conference director (ECF No. 60, ¶ 26). As intramural/summer conference director, he allegedly had knowledge of sporting events on campus and had access to athletic facilities, such as the subject locker room, with Limestone's knowledge and consent." (ECF No. 60, ¶ 31)

However, the allegation of being given access to an area as an employee is in a different galaxy from an allegation that because of that access, Murphy acted within the course and scope of his employment when he surreptitiously videotaped young college women in states of nudity—an allegation that is conspicuously absent from the Third Amended Complaint.  Simple access does not mean that the employee was working as the employer's agent when he conducts some behavior for his own purpose. It bears emphasis that *respondeat superior* is not a cause of action; it is a theory of liability. *Walgreens Boots All., Inc.*, 2020 WL 3620025, at *16. Plaintiffs must show that Murphy's tortious actions themselves were "reasonably necessary to accomplish the purpose of his employment and in furtherance of the master's business" to establish such liability. *Armstrong*, 371 S.C. at 276.  Again, Plaintiffs have not and would not—because of the complete implausibility of it—allege that Murphy videotaped them in the course and scope of his employment with Limestone.

In fact, nowhere in the 128 paragraphs of their Third Amended Complaint do Plaintiffs allege that Murphy was acting in the course and scope of his employment *when he allegedly made or disseminated the tape*. This is presumably because Plaintiffs recognized the utter absurdity of that allegation. In fact, Plaintiffs tacitly acknowledge this in their Complaint when they claim that "Limestone's failure to supervise Murphy enabled the placement of hidden cameras used to videotape the Plaintiffs while nude or in the stages of undress." (ECF No. 60, ¶ 104). If Murphy had to evade Limestone's supervision to place the cameras, he clearly was not acting within the course and scope of his employment. As Plaintiffs failed to plausibly plead that Murphy was acting in the course and scope of his employment when he allegedly hid the cameras, made the recordings, and later disseminated the videos, Counts One, Two, and Three should be dismissed as to Limestone.

      b.   Count Four (Intentional Infliction of Emotional Distress)

In order to recover for intentional infliction of emotional distress, a plaintiff must establish: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" (3) the action of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it." *Argoe v. Three Rivers Behavioral Center and Psychiatric Solutions*, 388 S.C. 394, 697 S.E.2d 551 (2010).

An employer can be liable for an employee's intentional torts if the employee is acting within the scope of his employment at the time he commits the intentional torts. *Crittendon v.*

*Thompson-Walker Co., Inc.*, 288 S.C. 112, 115-16, 341 S.E.2d 385 (Ct. App. 1986). For the reasons previously stated with regard to *respondeat superior* liability for the invasion of privacy claims, Limestone cannot be vicariously liable for the tort of outrage due to Murphy's conduct occurring outside the scope of his employment and Plaintiffs' failure to plead otherwise.

2. <u>Murphy Was Not Employed with Limestone at the Time the Recordings Were Uploaded to the Internet</u>

Counts One, Two, Three, and Four should be dismissed because Murphy was not acting in the course and scope of his employment when he allegedly hid cameras and made the surreptitious recording. However, even if he was, there is not even the remote possibility that he was acting within the course and scope of his employment when he allegedly released the recordings approximately 5 years after his employment with Limestone ended. As such, Counts One through Four must be dismissed.

   a. Wrongful Publication/Appropriation

In Counts Two and Three, Plaintiffs allege that all Defendants – Murphy, Limestone, and the co-Defendant pornographic websites – secretly videotaped the Plaintiffs, which constituted an intrusion into the private affairs of the Plaintiffs. (ECF No. 60, ¶¶ 71-72). Plaintiffs further assert in Count Two that Plaintiffs have an enforceable right to their identities/personas, and the use of these without Plaintiffs' permission allows "for Defendants to be advantaged by the appropriation and publication of their private affairs." (ECF No. 60, ¶¶ 74-75). Count Three is an almost verbatim duplication of Count Two. (ECF No. 60, ¶¶ 78-85). The only difference is that Count Three merely alleges that "Defendants use of Plaintiffs' identities/personas without permission in this manner allows for Defendants to be advantaged by the appropriation." (ECF No. 60, ¶ 83). It omits the allegation, contained in Count Two, that Defendants' alleged use of

Plaintiffs' identities/personas without permission allows for Defendants to be advantaged by the publication of Plaintiffs' private affairs. As Counts Two and Three are nearly identical, so are the reasons they should be dismissed.

The wrongful publicizing of private affairs, under South Carolina law, involves a public disclosure of private facts about the plaintiff in which there is no legitimate public interest. *Walgreens Boots All., Inc.*, 2020 WL 3620025. The elements of a cause of action for invasion of privacy based on the publicizing of one's private affairs include (1) publicizing, (2) absent any waiver or privilege, (3) private matters in which the public has no legitimate concern, (4) so as to bring shame or humiliation to a person of ordinary sensibilities. *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 514 S.E.2d 126 (1999). The gravamen of the tort is *publicity* as opposed to mere publication. *Snavely v. AMISUB of S.C., Inc.*, 379 S.C. 386, 396, 665 S.E.2d 222, 227 (Ct. App. 2008).

The wrongful appropriation of personality involves intentional, unconsented use of a plaintiff's name, likeness, or identity by the defendant for his own benefit; the gist of an action is the violation of plaintiff's exclusive right at common law to publicize and profit from his name, likeness, and other aspects of his personal identity. *Sloan v. S.C. Dep't of Pub. Safety*, 355 S.C. 321, 586 S.E.2d 108 (2003); *see also Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 684 S.E.2d 756 (2009) (it is also known as the "infringement on the right of publicity," and addresses the plaintiff's right to the commercial protection of her name, likeness, or identity). Succinctly, in order to successfully state a claim for infringement of the right of publicity, Plaintiffs must show: 1) an appropriation without consent; 2) of Plaintiffs' name or likeness; and 3) for another's use or benefit. *In re Wiser*, No. 08-02592-JW, 2010 WL 5437241, at *7 (Bankr. D.S.C. June 21, 2010)

Despite the seeming distinction from the tort of wrongful publicizing of private affairs, Courts have noted that "[w]hile publicity is not explicitly stated as an element *per se*, it is still a fundamental requirement of the cause of action of wrongful appropriation of personality under South Carolina law." *Walgreens Boots All., Inc.*, 2020 WL 3620025 *7. In the case at bar, this amounts to a distinction without a difference. The "publicizing" of the videos is also the alleged "appropriation" of Plaintiffs' personalities.

As noted, a critical element of these torts is "publicizing" the information. Plaintiffs must show that either Limestone, or Murphy acting in the course and scope of his employment with Limestone, publicized the private matters. *Senter v. Hatley*, No. 4:12-CV-2502-BHH-KDW, 2015 WL 4935122, at *21 (D.S.C. Mar. 9, 2015), *report and recommendation adopted*, No. 4:12-2502-BHH, 2015 WL 4935220 (D.S.C. Aug. 18, 2015) (Plaintiff must show that someone associated or affiliated with the entity publicized the information). Plaintiffs have pled no facts allowing the Court to draw a reasonable inference that Limestone directly publicized the private matters.[4] Therefore, Plaintiffs must plead facts sufficient to plausibly claim that Murphy was acting as Limestone's employee when he allegedly publicized the private matters. *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) ("Dismissal of a complaint for failure to state facts supporting each of the elements of a claim is, of course, proper.")

---

[4] The notion that an institution of learning such as Limestone could somehow be "advantaged" by the publication of Plaintiffs' private matters is not only implausible – it is utterly inconceivable. (ECF No. 60, ¶¶ 74-75) Factual allegations must be enough to raise a right to relief above the speculative level. *Anderson v. Greenville Health Sys.*, No. CV61703239AMQJDA, 2018 WL 8300521, at *2 (D.S.C. Aug. 21, 2018), *report and recommendation adopted*, No. 6:17-CV-03239-DCC, 2019 WL 1055253 (D.S.C. Mar. 6, 2019), *aff'd sub nom. Cornelius Anderson v. Greenville Health Sys.*, 771 F. App'x 258 (4th Cir. 2019). While Plaintiffs' allegations may be plausible as to an advantage to Murphy, Pornhub, and xHamster in the "appropriation and publication of [Plaintiffs] private affairs," the idea that such advantage is possibly attributable to Limestone is not merely speculation – it is wholly counterintuitive.

Plaintiffs' own allegations doom these claims as to Limestone. Plaintiffs initially allege that Murphy was employed by Limestone "at all times mentioned herein." (ECF No. 60, ¶ 14). It is true that in deciding whether a complaint will survive a motion to dismiss, a Court evaluates the complaint in its entirety. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, Plaintiffs go on to specify that Murphy's employment ceased in October 2014. (ECF No. 60, ¶ 32). This latter allegation precludes an argument that Murphy was Limestone's employee in 2019, when the videos were publicized.

Furthermore, in order to show wrongful appropriation Plaintiffs must plausibly allege that Limestone attempted to profit from Plaintiffs' "name, likeness or identity." *Tate v. Bank of Am.*, No. CIV.A. 7:10-2335, 2011 WL 2682100, at *4 (D.S.C. June 15, 2011), *report and recommendation adopted sub nom. Tate v. Bank of Am. Corp.*, No. 7:10-CV-02335-JMC, 2011 WL 2682157 (D.S.C. July 11, 2011). The absurdity of Limestone benefitting from the alleged illicit recording of Plaintiffs was already addressed above, but it bears repeating that there are no well-plead facts allowing an inference that Limestone attempted to profit from the unfortunate misdeeds of Murphy. Furthermore, it cannot possibly be said that Murphy's actions were "reasonably necessary to accomplish the purpose of his employment and in furtherance of [Limestone]'s business." *Armstrong*, 371 S.C. 271, 276, 639 S.E.2d 50, 52–53 (2006). Therefore, Plaintiffs cannot move Counts Two and Three across the line from conceivability to plausibility. *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 658 (4th Cir. 2016) (quoting *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012)).

It is implausible that Murphy was somehow acting in furtherance of Limestone's business when he allegedly made the recordings in 2012. It is impossible that he was doing so when the videos were disseminated in 2019. A foundational tenant of *respondeat superior* liability is the

premise that the servant actually be employed by the master at the time he commits the tort. *Lane,* 244 S.C. 299, 136 S.E.2d 713, 716 (1964). Plaintiffs acknowledge that Murphy was not employed by Limestone when he allegedly publicized the video or appropriated Plaintiffs' personalities. Accordingly, Counts Two and Three should be dismissed.

      b. Wrongful Intrusion into Private Affairs

As previously noted, to establish this claim, Plaintiffs must show (1) an intrusion, which may consist of prying, besetting or other similar conduct; (2) into that which is private (that is, those aspects of plaintiffs' self, home, family which one normally expects to be free from exposure to the others); (3) that the intrusion was substantial and unreasonable; and (4) that the defendants' conduct was intentional. *Craig v. Andrew Aaron & Assocs., Inc.*, 947 F. Supp. 208, 213 (D.S.C. 1996). "When a plaintiff bases an action for invasion of privacy on "intrusion" alone, bringing forth no evidence of public disclosure, it is incumbent upon Plaintiffs to show a blatant and shocking disregard of his rights, *and serious mental or physical injury or humiliation* to [her]self therefrom." *Roberts v. Dunbar Funeral Home*, 288 S.C. 48, 53, 339 S.E.2d 517, 520 (Ct. App. 1986) (emphasis added).

While Counts Two and Three must fail against Limestone because an active element of alleged wrongdoing is missing (i.e., publication/appropriation), Count One must fail due to the absence of an employee/employer relationship at the time Plaintiffs were injured. A plaintiff seeking recovery from the master for injuries must establish that the relationship existed at the time of the injuries. *Lane v. Modern Music, Inc.,* 244 S.C. 299, 136 S.E.2d 713 (1964).

A failure to show that the master-servant relationship existed *at the time of the injuries* is fatal to a claim for vicarious liability. *Armstrong*, 371 S.C. at 276. Plaintiffs not only confirm that Murphy was no longer working for Limestone after October 2014 - they also claim they did

not become aware that they were allegedly recorded until October 18, 2019. (ECF No. 60, ¶ 37). Thus, the alleged injuries could not have been sustained while Murphy was employed by Limestone. As the information was not publicized and Plaintiffs were not aware of said publicity while Murphy was employed by Limestone, Limestone cannot be held vicariously liable for this cause of action.

In *Gardner v. Campbell*, 257 S.C. 209, 212, 184 S.E.2d 700, 701 (1971), the Court refused to hold an employer liable for its employee's automobile collision when the employee took the day off, even though the automobile was the one he used in his employment, the collision occurred during normal working hours on a week day and the employee's working materials were present in the automobile at the time of the collision. In *Gardner*, the employee had simply caused injuries on his day off. In the case at hand, Murphy had not worked for Limestone for half a decade. Count One of Plaintiffs' Third Amended Complaint against Limestone should be dismissed.

      c. Intentional Infliction of Emotional Distress

For the same reasons discussed in Section 1 of this brief, Limestone cannot be vicariously liable for the tort of intentional infliction of emotional distress due to the conduct of Murphy occurring outside the scope of his employment. As the emotional distress was not suffered until 2019, this Count should be dismissed as well.

## V. CONCLUSION

For the foregoing reasons, Limestone respectfully requests that its Motion be granted and that Plaintiffs' First, Second, Third, and Fourth Causes of Action be dismissed against Limestone with prejudice as a matter of law.

This 1st day of December, 2020.

                                              **RAHIMI, HUGHES & PADGETT, LLC**

                                              **/s/ JOSEPH Y. RAHIMI II**
                                              **JOSEPH Y. RAHIMI II**
                                              Federal ID No. 9670
                                              **JOHN A. HUBERT**
                                              Federal ID No. 13154
                                              **ATTORNEYS FOR DEFENDANT**
                                              **LIMESTONE UNIVERSITY**

33 Bull Street, Suite 590
Savannah, Georgia 31401
(912) 421-9988
jrahimi@rhp-law.com
jhubert@rhp-law.com

                                              **JENNIFER S. CLUVERIUS**
                                              Federal ID No. 9992
                                              **L. GRANT CLOSE III**
                                              Federal ID No. 10810
                                              **ATTORNEYS FOR DEFENDANT**
                                              **LIMESTONE UNIVERSITY**

**NEXSEN PRUET, LLC**
55 East Camperdown Way, Suite 400 (29601)
Post Office Drawer 10648
Greenville, South Carolina 29603-0648
Phone: (864) 370-2211
jcluverius@nexsenpruet.com
gclose@nexsenpruet.com

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing **LIMESTONE UNIVERSITY'S PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** has been served on counsel for all parties by placing same in the United States Mail in a properly addressed envelope with sufficient postage affixed thereon and/or via electronic mail to all other counsel of record to ensure delivery to:

**Attorney for Plaintiffs**

J. Edward Bell, III
Bell Legal Group, LLC
219 North Ridge Street
Georgetown, SC 29440

ebell@edbelllaw.com

**Attorneys for Plaintiffs**

Liz Jeanette Shepherd
Jordan Alexander Stanton
Tyler Smyth Thompson
Dolt Thompson Shepherd and Conway PSC
13800 Lake Point Circle
Louisville, KY 40223

lshepherd@kytrial.com
jstanton@kytrial.com
tthompson@kytrial.com

**Attorneys for Murphy**

Alan R Belcher Jr.
Conner E. Johnson
Hall Booth Smith, P.C.
111 Coleman Boulevard, Suite 301
Mount Pleasant, SC 29464

abelcher@hallboothsmith.com
cjohnson@hallboothsmith.com

**Attorneys for MG Freesites**

R. Taylor Speer
J. Kenneth Carter
Turner, Padget, Graham and Laney, P.A.
P.O. Box 1509
Greenville, SC 29602

tspeer@turnerpadgett.com
kcarter@turnerpadget.com

**Attorneys for Limestone**

Jennifer S. Cluveris
L. Grant Close III
Nexen Pruet, LLC
P.O. Drawer 10648
Greenville, SC 29603

jcluverius@nexenpruet.com
gclose@nexenpruiet.com

This 1st day of December, 2020.

                                      **RAHIMI, HUGHES & PADGETT, LLC**

                                      **/s/ JOSEPH Y. RAHIMI II**
                                      **JOSEPH Y. RAHIMI II**
                                      Federal ID No. 9670
                                      **JOHN A. HUBERT**
                                      Federal ID No. 13154
                                      **ATTORNEYS FOR DEFENDANT LIMESTONE**

33 Bull Street, Suite 590
Savannah, Georgia 31401
(912) 421-9988
jrahimi@rhp-law.com
jhubert@rhp-law.com