IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>COLLINS MURPHY, LIMESTONE COLLEGE, MG FREESITES, LTD d/b/a PORNHUB.COM, and HAMMY MEDIA, LTD. d/b/a XHAMSTER.COM,<br><br>　　　　Defendants. | Civil Action Number: 7:20-cv-00947-TMC<br><br><br>**DEFENDANT MG FREESITES' RESPONSES TO LOCAL CIVIL RULE 26.03 (D.S.C.) INTERROGATORIES** |

Defendant MG Freesites, Ltd., d/b/a Pornhub.com ("Defendant") answers interrogatories propounded by Local Civil Rule 26.03 (D.S.C.) as follows.

(1)　　A short statement of the facts of the case:

**RESPONSE:** Plaintiffs are nine women that allege to have been the victims of secret, unauthorized "spy cam" recordings by defendant Collins Murphy, who is a former employee of the College. Specifically, Plaintiffs allege that in 2012, while students at Bellarmine University and members of a field hockey team visiting the College, Murphy installed a hidden camera in the womens' locker room, recorded footage of Plaintiffs showering and changing clothes in the locker room, and then disseminated that footage over the Internet on numerous websites.

Plaintiffs allege that among many (indeed, "countless") websites where Murphy uploaded the Videos was pornhub.com (the "Website"), which is operated by defendant MG Freesites Ltd. The Website is an online platform (similar in operation to YouTube) that enables members of the

public to upload and store audiovisual content, as well as to view content previously uploaded and shared by others.

MG Freesites had no involvement whatsoever in the creation of the Videos and did not participate in any of the conduct engaged in by Murphy or Limestone that gives rise to this lawsuit. MG Freesites has no relationship with Murphy other than that he is alleged to be a user of the Website. Accordingly, prior to this lawsuit MG Freesites had no knowledge that the Videos existed or were uploaded to the Website – far less created without Plaintiffs' authorization or by using locker room "spy cams." Indeed, prior to this lawsuit, Plaintiffs never even advised MG Freesites that the Videos were unlawfully created, and never requested that they be taken down or removed. Thus, MG Freesites' *only* connection to this lawsuit is that it operates one of many online websites that were used by Murphy to disseminate the Videos.

(2)     The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.

**RESPONSE:** MG Freesites does not have knowledge of the creation, development, or overall distribution of the Videos. As noted above, MG Freesites' only involvement with the Videos is that the Videos were uploaded by a user of the Website and made available for a time on the Website. Accordingly, none of MG Freesites' employees have direct, percipient knowledge of the circumstances or events that give rise to Plaintiffs' claims. Additionally, MG Freesites has not yet answered the Complaint and has not had the opportunity for discovery. Thus, MG Freesites has not yet determined the identity of the witnesses it may call at trial to support its defense. Indeed, MG Freesites does not even know the names of the Plaintiffs in this action. At present, MG Freesites expects to call the following witnesses:

(a)     **Custodian of Records, MG Freesites Ltd.**:

Topics of Testimony:  Authentication and explanation of records, if any, pertaining to (i) the date of upload of the Videos, (ii) the user account that was used to upload the videos, (iii) the absence of any substantive communication between MG Freesites and any other Defendant, (iv) the absence of any communication between Plaintiffs and MG Freesites prior to this lawsuit, and (v) the amount of money (if any) paid to the account used to upload the Videos.

(b)     **Employees and/or Senior Executives of MG Freesites**:

Topics of Testimony:  (i) The overall operation of the Website, (ii) the manner by which video content is uploaded to the Website, (iii) any revenue-sharing programs offered to members of the public via the Website, (iv) the lack or absence of any communication or "conspiracy" with Murphy.

(c)     **Plaintiffs, c/o Bell Legal Group**

Topics of Testimony:  (i) any alleged damages, including emotional damage and reputational damage, suffered by Plaintiffs; (ii) Plaintiffs' discovery of the Videos; (iii) Plaintiffs' efforts (or lack of efforts) to mitigate their damages; (iv) Plaintiffs' communications with the other Defendants and/or other Internet service providers.

(d)     **Defendant Collins Murphy**

Topics of Testimony:  (i) Murphy's lack of communication with MG Freesites; (ii) the absence of a conspiracy or agency relationship between Murphy and MG Freesites; (iii) Murphy's dissemination of the Videos over the Internet, including on websites other than the Website.

(3)     The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field expertise should be given as to experts likely to be offered).

**RESPONSE:** MG Freesites has not yet identified expert witnesses in this case. At this time, MG Freesites expects to designate (i) a mental health expert to testify concerning the scope and amount of Plaintiffs' alleged damages for emotional distress; and (ii) a technical or computer expert to testify concerning the operation of the Website and other user-generated content ("UGC") websites. MG Freesites reserves the right to designate expert witnesses or rebuttal experts in accordance with the Federal Rules of Civil Procedure.

(4)     A summary of the claims or defenses with statutory and/or case citations supporting the same.

**RESPONSE:** MG Freesites has not yet had an opportunity for discovery, has not yet answered the Complaint, and thus at this time does not know the full extent of its defenses to Plaintiffs' claims. MG Freesites reserves the right to assert additional defenses beyond those listed below. However, based on its present knowledge, MG Freesites intends to assert, without limitation, the following defenses to Plaintiffs' claims:

<u>Communications Decency Act</u>: MG Freesites' pending Motion to Dismiss addresses this defense in detail. In summary, Section 230(c)(1) of the CDA states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 USC § 230(c)(1) (2020) ("<u>Section 230</u>"). "By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third party user of the service." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). In other words:

> "[Section] 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content – *are banned*."

*Id*. (emphasis added).  CDA immunity applies if three conditions are met.  "First, [the defendant] must be a 'provider of an interactive computer service.  Second, the offending communications must be provided by another information content provider.  Third, Plaintiff's claims must be premised on [the defendant's] role as 'publisher' of the third-party content."  *Richard v. Facebook, Inc.*, No. 2018-CP-2606158, 2019 WL 8324749, *6 (Ct. of Common Pleas of S. Carolina, May 22, 2019).  All three of these conditions are met here.

First, the Website is an "interactive computer service."  *Ascentive LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 474-75 (E.D.N.Y. 2011) ("Courts generally conclude that a website falls within this definition [of interactive computer service]").

Second, an "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3) (2020).  In this case, the Videos were posted by Murphy, who is responsible for the creation and development of the content.

Third, "[w]here the violation alleged by a Plaintiff derives from the Defendant's status or conduct as a publisher, § 230(c)(1) of the CDA prohibits liability."  *Cox v. Twitter, Inc.*, No. 2:18-2573-DCN-BM, 2019 WL 2513963, *3 (D.S.C. Feb. 8, 2019).  All of Plaintiffs' claims arise from the publication of the Videos on the Website.

<u>No Agency Relationship between Murphy and MG Freesites:</u>  Plaintiffs purport to hold MG Freesites liable for the conduct of Murphy under a theory of agency.  Under South Carolina law, "[t]he test to determine agency is whether or not the purported principal has the right to

control the conduct of [its] alleged agent." *Allen v. Greenville Hotel Partners, Inc.*, 409 F. Supp. 2d 672 (D.S.C. 2006). MG Freesites operates a digital platform that allows members of the public to post content. MG Freesites had no ability to control the conduct of Murphy. Indeed, MG Freesites had no involvement at all in the creation of the Videos and no relationship with Murphy at the time the Videos were created.

<u>No Conspiracy between Murphy and MG Freesites.</u> Plaintiffs allege that MG Freesites "conspired" with Murphy to create and exploit the Videos. As noted above, MG Freesites has no relationship with Murphy other than that Murphy may be one of millions of users of the Website. MG Freesites did not conspire or work with Murphy in any manner.

<u>No Volitional Conduct by MG Freesites.</u> Courts consistently have held that for an Internet service provider such as MG Freesites to be liable for the conduct of its users, it must have acted with sufficient volition and intent. *See*, *e.g., CoStar Group, Inc. v. LoopNet, Inc*., 373 F. 3d 544, 550 (4th Cir. 2004) (in the context of copyright law, "an ISP who owns an electronic facility that responds automatically to users' input is not a direct infringer. If the Copyright Act does not hold the owner of the copying machine liable as a direct infringer when its customer copies infringing material without knowledge of the owner, the ISP should not be found liable as a direct infringer when its facility is used by a subscriber to violate a copyright without intervening conduct of the ISP."); *Perfect 10, Inc. v. Visa International Service Ass'n*, 494 F. 3d 788 (9th Cir. 2007) (rejecting claim for aiding and abetting online right of publicity violations because "Defendants lack sufficient control or personal involvement in the infringing activities to be so liable.") In other words, passive providers of Internet services cannot be liable for offering a platform that facilitates both lawful and unlawful conduct by users. To the extent that

any claims asserted by Plaintiffs are not barred by the Communications Decency Act, such claims fail because MG Freesites was not directly involved in any of the conduct at issue.

<u>Failure to Mitigate</u>.  Plaintiffs did not contact MG Freesites immediately after learning that the Videos had been uploaded to the Website.  Had they done so, MG Freesites would have expeditiously taken the content down, thereby avoiding any further damage resulting from the presence of the Videos on the Website.

<u>Lack of Causation</u>.  "Causation in fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence." *Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 88-89, 502 S.E.2d 78, 83 (1998).  "'A negligent act or omission is a proximate cause of injury if, in a natural and continuous sequence of events, it produces the injury, and without it, the injury would not have occurred.'  In other words, if the accident would have happened as a natural and probable consequence, even in the absence of the alleged breach, then a plaintiff has failed to demonstrate proximate cause." *Olson v. Faculty House of Carolina, Inc.,* 344 S.C. 194, 211 (2001), *quoting Vinson v. Hartley*, 324 S.C. 389, 400 (1996).  Plaintiffs allege that the Videos were uploaded to "countless" websites, including but not limited to the website owned by defendant Hammy Media Ltd.  Accordingly, Plaintiffs will be unable to prove that their injury would not have occurred "but for" the conduct of MG Freesites.  At minimum, Plaintiffs' damages must be limited to those caused by the presence of the Videos on the Website, and not on any other website.

<u>No Duty of Care</u>.  "Ordinarily, the common law imposes no duty on a person to act.  An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance. It follows that a person usually incurs no liability for failure to take steps to benefit others or to protect them from harm not created by his own

wrongful act. In other words, a person has no duty to protect another from harm inflicted by a third person." *Rayfield v. SC Dept. of Corrections*, 297 S.C. 95, 101 (1988). Plaintiffs cannot identify any duty of care owed by MG Freesites to Plaintiffs to protect them from the conduct of individuals such as Murphy. Indeed, Plaintiffs were not even users or customers of the Website and therefore had no relationship with the Website. MG Freesites is unaware of any case holding a website owner responsible for third party content due to the "negligent monitoring" of its website.

(5)     Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local Civil Rule 16.02.

**RESPONSE:** The parties prepared a proposed amended scheduling order for the Court's consideration.

(6)     The parties shall inform the Court whether there are any special circumstances which would affect the time frames applied in preparing the scheduling order.

**RESPONSE:** MG Freesites is unaware of any special circumstances which would affect the time frames applied in preparing the scheduling order. However, MG Freesites notes that its witnesses are located in Montreal, Quebec, Canada. Accordingly, travel or other restrictions related to COVID-19 could impact MG Freesites' witnesses' ability to appear for trial.

(7)     The parties shall provide any additional information requested in the Pre-Scheduling order.

**RESPONSE:** None at this time.

Respectfully submitted,

| | | |
|---|---|---|
| DATED: December 8, 2020 | | TURNER, PADGET, GRAHAM AND LANEY, P.A. |
| Greenville, South Carolina | By: | */s/ R. Taylor Speer* |
| | | R. Taylor Speer | Attorney ID: 12267 |
| | | email | tspeer@turnerpadget.com |
| | | direct | 864-552-4618 |
| | | |
| | | J. Kenneth Carter | Attorney ID: 05108 |
| | | email | kcarter@turnerpadget.com |
| | | direct | 864-552-4611 |
| | | |
| | | Post Office Box 1509 |
| | | Greenville, South Carolina 29602 |
| | | facsimile | 864-282-5993 |
| TPGL 10843665V1 16881.00101 | | *Attorneys for Defendant MG Freesites, Ltd.* |
| | | |
| | | MITCHELL SILBERBERG & KNUPP LLP |
| | | |
| | | Marc E. Mayer | admitted *pro hac vice*: |
| | | email | mem@msk.com |
| | | direct | 310-312-3154 |
| | | |
| | | 2049 Century Park East |
| | | 18th Floor |
| | | Los Angeles, California 90067 |
| | | facsimile | 864-282-5993 |
| 12699639.1 | | *Attorneys for Defendant MG Freesites, Ltd.* |