# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

| | |
|---|---|
| **JANE DOES 1-9,** | **Case No.: 7:20-cv-00947-JD** |
| **Plaintiffs,** | |
| **vs.** | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| **COLLINS MURPHY, LIMESTONE COLLEGE, MG FREESITES, LTD. d/b/a PORNHUB.COM, and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM,** | |
| **Defendants.** | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MG FREESITES, LTD.'S MOTION TO DISMISS (RESPONSE TO ECF# 46)

Defendant MG Freesites, Ltd. (hereinafter "Pornhub") has filed a Motion to Dismiss for Judgment on the Pleadings and for Failure to State a Cause of Action. Plaintiffs, by and through undersigned counsel, hereby submit their Response in Opposition to Defendant's Motion to Dismiss (ECF No. 104), and state as follows:

## INTRODUCTION

The determination at this stage of the litigation is not whether Plaintiffs can prove a *prima facie* case at trial. Instead, the analysis hinges on whether Plaintiffs' allegations, accepted as true and viewed in a light most favorable to them, are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs have far surpassed this legal threshold regarding their claims for invasion of privacy, intentional infliction of emotional distress, civil conspiracy, and civil RICO against Pornhub.

Regarding Pornhub's plea for protection under the Communications Decency Act (hereinafter "CDA"), there is no binding precedent supporting immunity for a pornographic

company who illegally posts a surreptitiously recorded video of nonconsenting naked women. Moreover, Plaintiffs' claim for invasion of privacy implicates an intellectual property right which has been statutorily excluded from CDA protection. *See* 47 U.S.C. § 230(e)(2). Lastly, Pornhub was an information content provider who was responsible, in whole or in part, for the creation and development of the offensive content involving the Plaintiffs. *See id.* § 230(f)(3). As a result, Pornhub is unable to circumvent liability under the CDA regarding Plaintiffs' remaining claims.

## FACTUAL BACKGROUND

On October 5, 2012, the Bellarmine University Knights traveled to Gaffney, South Carolina to face the Limestone College Saints in women's field hockey. Plaintiffs were members of the Bellarmine Knights field hockey team.

Upon arrival, Limestone College agents directed Plaintiffs to a men's locker room which was designated for their use both before and after the game. While in the subject locker room, Plaintiffs showered and changed clothes such that they were in a state of nudity for periods of time.

A Limestone College employee, Collins Murphy, secretly placed a video camera in the subject locker room prior to Plaintiffs' arrival on campus. The secretly placed video camera recorded Plaintiffs, without their knowledge or consent, while they were in a state of nudity. As intramural/summer conference director, Mr. Murphy had knowledge of sporting events on campus and had access to athletic facilities, such as the subject locker room, with Limestone College's knowledge and consent.

During the course of his employment with Limestone College, Mr. Murphy secretly recorded multiple women changing clothes and taking showers in locker rooms between September 2012 and October 2013. At some point thereafter, the recording of the Plaintiffs was uploaded to various pornographic websites, including Pornhub.

Pornhub openly solicits submission of deviant content and promises its partners will benefit from "100+ million [sic] visits per day" and will "[g]et paid the highest rate per view in the industry." *See* Exhibit A. Pornhub also declares:

> The World's Biggest XXX Porno Tube
>
> The Pornhub team is always updating and adding more porn videos every day. It's all here and 100% free porn. We have a huge free DVD selection that you can download or stream. Pornhub is the most complete and revolutionary porn tube site. We offer streaming porn videos, downloadable DVDs, photo albums, and the number 1 free sex community on the net. We're always working towards adding more features that will keep your love for porno alive and well. Send us feedback if you have any questions/comments.

*Id.*

On October 10, 2019, the Gaffney Police Department opened an investigation into the illegal video recordings which took place on Limestone College's campus. The investigation remains ongoing.

Based on the foregoing, Plaintiffs filed a twenty-two-page Fourth Amended Complaint asserting claims for invasion of privacy, intentional infliction of emotional distress, negligent monitoring, false light, and civil conspiracy, and civil RICO against Pornhub. *See* ECF No. 99. Included in the Fourth Amended Complaint is five pages strictly devoted to factual allegations giving rise to each cause of action. *See id.* at 4-8.

Prior to the completion of any discovery, Pornhub has moved to dismiss Plaintiffs' Fourth Amended Complaint. *See* ECF No. 104. Pornhub contends Plaintiffs have failed to sufficiently plead their claims for invasion of privacy, intentional infliction of emotional distress, civil conspiracy, and civil RICO. *See id.* Further, that Plaintiffs' claims are barred by the CDA. *See id.* This Response in Opposition follows.

Of note, Plaintiffs served discovery requests on Defendants on January 14, 2021 making the due date to produce February 15, 2021. On February 9, 2021 Defendants requested a thirty (30) day extension to respond to said discovery. In accordance with standard practice procedure and as a professional courtesy, Plaintiffs granted Defendant's request for an extension on February 10, 2021 making the new due date for written discovery March 18, 2021. Defendant's, conveniently, filed their Motion to Dismiss thereafter on February 10, 2021. To date, Defendants have provided no evidence that Plaintiffs allegations against them are without merit. Defendants continue to assert that the CDA barres Plaintiffs claims, however, as will be demonstrated, the manner in which Plaintiffs' Fourth Amended Complaint was pled complies with both Federal and South Carolina law, and Defendants are not entitled to dismissal at this stage.

## LEGAL DISCUSSION

Plaintiffs will begin by discussing the legal standard governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Next, Plaintiffs will illustrate why Pornhub's Motion to Dismiss is legally impermissible. In so doing, Plaintiffs will start by demonstrating why their claims for invasion of privacy, intentional infliction of emotional distress, civil conspiracy, and civil RICO have been sufficiently pled against Pornhub. Next, Plaintiffs will explain why the CDA does not bar any of Plaintiffs' claims.

### I.     Legal standard.

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] … and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted)." *Id.* Rule 8(a)(2) requires that a pleading must contain "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

It is universally understood a complaint "does not need detailed factual allegations" but must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Of importance, when determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *See De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). Moreover, dismissal is warranted only when it is beyond doubt the plaintiffs can prove no set of facts which would entitle them to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969).

## II.     Plaintiffs have alleged plausible claims for invasion of privacy, intentional infliction of emotional distress, civil conspiracy, and civil RICO against Pornhub.

Plaintiffs' claims for invasion of privacy, intentional infliction of emotional distress, civil conspiracy, and civil RICO have been sufficiently pled against Pornhub. Of importance, the determination at this stage of the litigation is not whether Plaintiffs can prove a *prima facie* case at trial. Instead, the analysis hinges on whether Plaintiffs' allegations, accepted as true and viewed

in a light most favorable to them, are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs have far surpassed this legal threshold regarding all three claims.

As an initial matter, in its Motion, Pornhub has omitted the detailed factual recitation proffered by the Plaintiffs in support of their claims. For ease of reference, the relevant factual allegations are as follows:

> 3. And the deliberate motivation of Defendants MG Freesites, Ltd. and Hammy Media Ltd. that lead to the creation of sexually lewd content for financial gain which resulted in the surreptitious filming of nine innocent girls who can never regain their innocence nor their peace of mind as naked images of them are now available on the internet.

> \* \* \*

> 17. Upon information and belief Defendant Pornhub endorses, coordinates, and participates in the creation of sexually lewd content and monetizes its creation through payment by ad revenues generated by said content to those who have conspired with them.

> 18. Upon information and belief Defendant Pornhub, since beginning the practice of paying for lewd content views, has received several takedown notices by women who did not consent to be filmed in content posted on their website.

> \* \* \*

> 20. Upon information and belief, like Defendant Pornhub, Defendant xHamster endorses, coordinates, and participates in the creation of lewd sexual content by monetizing it through ad revenue payments made to those who have conspired with them.

> \* \* \*

> **FACTS**
> **(As to Defendant Pornhub and Defendant xHamster)**

> 45. Upon information and belief both Defendant Pornhub and Defendant xHamster promote the creation of lewd sexual content by providing payment to those who submit such media to their website.

6

46. This lewd sexual content increases the viewership to their respective platforms which increases their own financial gain.

47. Upon information and belief Defendant Pornhub and Defendant xHamster individually schemed to increase their financial positions by enlisting others to create sexually deviant content and shared the revenues such content generated with the providers.

48. This scheme created a joint venture partnership and civil conspiracy between Defendants and the individuals who provided the Defendants with the lewd, sexual, and pornographic content which the Defendants used to make money and removes any protections granted to them as they are no longer merely hosts of said content.

49. But for the Defendants monetization of the creation of "homemade/ spy cam" style lewd content, such content would likely have not been so heavily sought after.

50. Upon information and belief the Defendants, after starting this practice, have received takedown notices by women who appeared on their websites but never consented to being filmed.

51. Despite these takedown notices, which gave Defendant Pornhub and Defendant xHamster adequate notice of apparent issues involving their content, took no steps to mitigate the exposure of women even though they knew or should have known that the content they were being provided was filmed surreptitiously and without consent.

52. Defendant Pornhub and Defendant xHamster, made no further efforts to monitor the uploads onto their websites despite a duty being created by the several takedown notices received.

53. Upon information and belief Defendant Pornhub and Defendant xHamster provided payment to Defendant Murphy in exchange for the content he posted on his accounts found on their respective websites.

54. Defendant Pornhub and Defendant xHamster rewarded Defendant Murphy for developing a large internet following for the purpose of making money and sharing spy camera footage of women without their consent.

55. The content Defendant Murphy made an income from was similar to the content that both Defendant Pornhub and Defendant xHamster had previously received takedown notices for but they chose to ignore their similarity.

56. By actively ignoring the trend that such takedown notices made aware to them, and by continuing to endorse and encourage the creation of such surreptitious sexual content, Defendant Pornhub and Defendant xHamster enabled the Plaintiffs to be harmed by Defendant Murphy.

57. Defendant Pornhub and Defendant xHamster normalized the invasion of privacy conducted by their agent Defendant Murphy by creating an avenue for which he could be compensated for the uploading of such media.

58. Defendant Pornhub and Defendant xHamster painted the Plaintiffs in a false light by allowing them to be present on their websites, permanently damaging their self-esteem, marital relationships, and the reputation.

59. Defendant Pornhub's and Defendant xHamster's conduct in allowing those they have conspired with to upload sexually deviant media under the names "spy cam" or "hidden cam", without properly ensuring such content was created with authorization despite receiving several takedown notices from women who did not consent to similar content, both were the direct and proximate cause of the injuries suffered by the Plaintiffs.

ECF No. 99 at 1-2, 3, 4, 6-8.

With the foregoing in mind, Plaintiffs will sequentially address the pleading sufficiency of their claims for invasion of privacy, intentional infliction of emotional distress, and civil conspiracy.

### A.  *Invasion of privacy.*

Under South Carolina law, the "right to privacy is correctly defined … as the right to be let alone; the right of a person to be free from unwarranted publicity." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 130 (S.C. 1999) (quoting *Holloman v. Life Insurance Co. of Virginia*, 7 S.E.2d 169, 171 (S.C. 1940)). The South Carolina Supreme Court has recognized

three causes of action under the invasion of privacy moniker: (1) wrongful appropriation of personality, (2) wrongful publicizing of private affairs, and (3) wrongful intrusion into private affairs. *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2, 5 (S.C. Ct. App. 1989).

To establish a claim for wrongful intrusion into private affairs, a plaintiff must show (1) intentional, (2) intrusion, (3) into that which is private, which is (4) substantial and unreasonable enough to be legally cognizable. *See id.* at 6.

Here, in addition to the detailed factual recitation above, Plaintiffs have specifically pled the following in support of their claim for invasion of privacy against Pornhub:

**FOR A FIRST CAUSE OF ACTION AGAINST
DEFENDANTS**
**(Invasion of Privacy –Wrongful Intrusion upon Private
Affairs)**

60. Plaintiffs incorporate by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

61. Defendant Murphy, in his capacity as an employee and agent of Defendant Limestone, was given access to and/or control over the locker room facilities at Limestone.

62. Utilizing that access, Defendant Murphy placed a hidden video camera in Defendant Limestone's locker room and captured video and images of the Plaintiffs their teammates, and other student athletes from around the nation, all while they were fully nude, or in various stages of undress.

63. The secret and unauthorized videotaping by Defendant Murphy of the Plaintiffs and the other student athletes constitutes an intrusion in to the private affairs of the Plaintiffs and the other women.

64. The intrusion was and is highly offensive, substantial and unreasonable to a reasonable person such that it constitutes a blatant and shocking disregard of Plaintiffs' rights.

65. The secret and unauthorized videotaping by Defendant Murphy was intentional.

66. As a direct and proximate result of the conduct by Defendants, the Plaintiffs have sustained the injuries and damages referenced above, including serious mental and emotional injuries and distress.

67. The conduct by Defendants was a willful and wanton violation of the privacy rights of the Plaintiffs and the other student athletes, such that the Plaintiffs are entitled to an award of punitive damages.

ECF No. 99 at 9-10.

As reflected, Plaintiffs have sufficiently alleged a cause of action against all Defendants, including Pornhub, pertaining to the intentional and egregious generation and dissemination of a nonconsensual illicit video of the Plaintiffs. *See id.* ¶¶ 3, 17-18, 20, 45-59, 60-67.

In sum, Plaintiffs have adequately pled a claim for invasion of privacy. Accordingly, Pornhub's Motion to Dismiss should be denied.

### B. *Intentional infliction of emotional distress.*

In order to recover for intentional infliction of emotional distress, "a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Upchurch v. New York Times Co.*, 431 S.E.2d 558, 561 (S.C. 1993) (citing *Ford v. Hutson*, 276 S.E.2d 776, 778 (S.C. 1981)).

Here, in addition to the detailed factual recitation above, Plaintiffs have specifically pled the following in support of their claim for intentional infliction of emotional distress against Pornhub:

## FOR A SECOND CAUSE OF ACTION AGAINST
## DEFENDANTS
### (Intentional Infliction of Emotional Distress)

68. Plaintiffs incorporate by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

69. The conduct of Defendant Murphy in secretly videotaping the Plaintiffs and the other student athletes while totally nude, or in various stages of undress, was done intentionally to inflict severe emotional distress on the Plaintiffs and/or Defendants knew that such distress would likely result from such conduct.

70. Defendants' conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious and utterly intolerable in a civilized community.

71. As a direct and proximate result of Defendants' wrongful conduct, the Plaintiffs have suffered, and continue to suffer, severe emotional distress.

72. The emotional distress caused by Defendant's wrongful conduct was, and is, so severe such that no reasonable person could be expected to endure it.

73. As a direct and proximate result of Defendants' wrongful and unlawful conduct, the Plaintiffs have sustained the injuries and damages referenced above, including serious mental and emotional injuries and distress.

74. The wrongful conduct by Defendants was willful, wanton and undertaken in reckless disregard for the privacy rights of the Plaintiffs and the other student athletes, such that the Plaintiffs are entitled to an award of **PUNITIVE** damages.

ECF No. 99 at 12.

Based on the foregoing, Plaintiffs have adequately alleged Pornhub intentionally, or recklessly, caused the generation and dissemination of a nonconsensual illicit video of the Plaintiffs. Moreover, Plaintiffs have properly alleged such conduct was outrageous and resulted in severe emotional distress. *See id.* ¶¶ 3, 17-18, 20, 45-59, 68-74.

In short, Plaintiffs have properly pled a claim for intentional infliction of emotional distress. Therefore, Pornhub's Motion to Dismiss should be denied.

### C. Civil conspiracy.

Under South Carolina law, a claim for civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. *See Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009) (citing *Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989)).

Here, in addition to the detailed factual recitation above, Plaintiffs have specifically pled the following in support of their claim for civil conspiracy involving Pornhub:

> **FOR A SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANTS**
> **(Civil Conspiracy- against Defendant Murphy and Defendant Pornhub)**
>
> 102. Plaintiffs incorporate by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.
>
> 103. The Defendants conspired for the purpose of creating sexually lewd content which directly invaded the Plaintiffs' rights to privacy guaranteed by the United States Constitution. More particularly, the Plaintiffs have been harmed as a direct and proximate result.
>
> 104. During period alleged in this Complaint, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which resulted in the surreptitious and illegal filming of the Plaintiffs. Such scheme was intended to, and, throughout timeframe alleged in this Complaint, did create content that was published on the Defendant Pornhub's website which exposed Plaintiffs to viewers on the internet for profit.
>
> 105. As a direct and proximate result of the improper actions of the Defendants, Plaintiffs have been damaged in **ACTUAL**, **CONSEQUENTIAL** AND **PUNITIVE DAMAGES**.

ECF No. 99 at 16.

As evident from the asserted allegations, Plaintiffs have properly pled Pornhub conspired with Collins Murphy, for the purposes of mutual financial gain, to generate and disseminate nonconsensual illicit videos, such as the one at-issue in this litigation. *See id.* ¶¶ 3, 17-18, 20, 45-59, 102-105.

Simply stated, Plaintiffs have appropriately pled a claim for civil conspiracy between Pornhub and Mr. Murphy. Consequently, Pornhub's Motion to Dismiss should be denied.

### D.  Civil RICO

To properly plead a civil RICO claim under any subsection of § 1962, a plaintiff must allege "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (citations omitted). To withstand a motion to dismiss, a civil RICO plaintiff must allege facts sufficient to establish each of these essential elements. *See Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998); *see also Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)

Here, in addition to the detailed factual recitation above, Plaintiffs have specifically pled the following in support of their civil RICO claim involving Pornhub:

**FOR A ELEVENTH CAUSE OF ACTION AGAINST THE
DEFENDANTS
(CONDUCTING THE AFFAIRS OF THE ENTERPRISE
THROUGH A PATTERN OF RACKETEERING ACTIVITY
- 18 U.S.C. § 1962(c) and 1964(c) against Defendant Murphy
and Defendant xHamster)**

132.  Plaintiffs incorporate by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

**THE ENTERPRISE**

133.  From on or about 2014, continuing through the filing of this Complaint, each Defendant was a "person" within the meaning of 18 U.S.C. § 1961(3).

134. From on or about 2014, continuing through the filing of this Complaint, defendants, and others known and unknown, including agents and employees of the defendants, formed an associated-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4).

135. From on or about 2014, continuing through the filing of this Complaint, the Enterprise formed by these parties engaged in, and the activities of which affected, interstate and foreign commerce.

136. Defendants formed the Enterprise to execute and attempt to execute schemes to engage in the creation and dissemination of illegally obtained obscene footage of nonconsenting women. Defendants knowingly engaged in the illegal filming of women in all stages of undress for the specific purpose of exploiting their innocence for financial gain.

137. From on or about 2014, continuing through the filing of this Complaint, defendants, and each of them individually, together with others known and unknown to Plaintiffs, acting in concert, were each employed or were employed by and associated with the Enterprise and have in the past, continuously and currently continue to, in an ongoing manner, knowingly and intentionally conduct the activities of the enterprise, directly or indirectly, through a continued pattern of racketeering activity consisting of numerous acts of racketeering in the State of South Carolina and elsewhere. Their actions include multiple, related acts in violation of the following provisions of the United States Code: Wire Fraud, 18 U.S.C. § 1343;

138. From on or about 2014, the Enterprise has existed separate and apart from defendants' racketeering acts and their conspiracy to commit such acts. The Enterprise has an ascertainable structure and purpose beyond the scope and commission of defendants' predicate acts.

## THE PATTERN OF RACKETEERING

139. The Enterprise as described herein is at all relevant times a continuing enterprise because it continues to execute schemes to create and disseminate illegally obtained obscene footage of nonconsenting woman for the purpose of generating revenue. In furtherance of schemes to create and disseminate illegally obtained obscene footage of nonconsenting woman for the purpose of generating revenue, Defendants continue to create videos under the moniker "Spy came videos" or "Hidden Cam Videos" and displays them as consensual recordings when they are not.

140. The conduct of the racketeering enterprise has continued from its inception through the date of this Complaint and threatens to continue into the future, by virtue of repeated patterns of behavior by its members.

141. The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), presents both a history of criminal conduct and distinct threat of continuing criminal activity. Such activity consists of multiple acts of racketeering by each defendant herein, is interrelated, not isolated and is perpetrated for the same or similar purposes by the same persons. Such activity extends over a substantial period of time, before, up to and beyond the date of this Complaint. Such activities occurred after the effective date of 18 U.S.C. §§ 1961 et seq., and the last such act occurred within 10 years after the commission of a prior act of racketeering activity.

142. Each defendant had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf. Each defendant also attempted to benefit, and did benefit, from their activity as alleged herein, and thus were not passive victims of racketeering activity, but active perpetrators.

143. Defendants, despite receiving notice that the videos they have been creating violate the law, continued their scheme and resumed the creation of "Spy Cam Videos".

144. Defendants have continued the pattern of exploiting women by illegally filming them and then monetizing the surreptitiously filmed content under the guise of legitimate pornography. Since at least 2014 Defendants have advertised these "Spy cam" videos and continue to endorse the genre.

145. Defendant Pornhub and Defendant xHamster continue to work with and even rewarded Defendant Murphy for developing a large internet following for the purpose of making money and sharing spy camera footage of women without their consent.

146. Defendants maintained a presence worldwide to even include the illegal videos being disseminated in Japan and South America.

147. Defendants advertise their great successes to continue the pattern and practice of the illegal recording of women to then share under the guise of a specific genre.

148. This lewd, illegal, sexual content increases the viewership to their respective platforms which increases their own financial gain.

149. Defendants continue to conspire to create and disseminate surreptitiously filmed videos of women and pay members of the Enterprise to further this scheme.

150. As a direct and proximate result of the defendants' violations of 18 U.S.C. §1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

151. As a result of the violations of 18 U.S.C. § 1962(c) by the defendants, Plaintiffs suffered substantial damages in an amount to be proved at trial.

152. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys' fees, incurred by reason of defendants' violations of 18 U.S.C. § 1962(c).

ECF No. 99 at 17-20.

As indicated from the asserted allegations, Plaintiffs have properly pled Pornhub is a "person" within §1962, that engaged in a pattern racketeering activity with Collins Murphy, for the purposes of creating an enterprise for mutual financial gain, and to generate and disseminate nonconsensual illicit videos, such as the one at-issue in this litigation. *See id.* ¶¶ 3, 17-18, 20, 45-59, 102-105.

Simply stated, Plaintiffs have appropriately pled a claim for civil RICO between Pornhub and Mr. Murphy. Consequently, Pornhub's Motion to Dismiss should be denied.

**III.     Pornhub is not entitled to immunity under the CDA.**

The CDA does not bar any of Plaintiffs' claims. First, Plaintiffs' claim for invasion of privacy implicates an intellectual property right which has been statutorily excluded from CDA protection. Second, Pornhub was an information content provider who was responsible, in whole or in part, for the creation and development of the offensive content involving the Plaintiffs. As a result, Pornhub is unable to circumvent liability under the CDA regarding Plaintiffs' remaining claims.

### A. Plaintiffs' claim for invasion of privacy implicates an intellectual property right which has been statutorily excluded from CDA protection.

Plaintiffs' claim for invasion of privacy is not subject to the CDA. The CDA unambiguously states "nothing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2).

16

In *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288 (D.N.H. 2008), the District of New Hampshire held a cause of action for right of publicity was exempt from CDA immunity since it is a claim involving an intellectual property right:

> While the plaintiff objects to the dismissal of any part of Count I on the ground that it asserts "intellectual property rights" under § 230(e)(2), her argument and authorities on that score address only the fourth theory, commonly known as a "right of publicity" claim. *See, e.g., Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir.1983). **As the plaintiff points out, "the right of publicity is a widely recognized intellectual property right." *Almeida*, 456 F.3d at 1322 (citing authorities). Such a claim therefore arises out of a "law pertaining to intellectual property" within the meaning of the statute. *See* 1 McCarthy, *Rights of Publicity*, § 3:42 (opining that § 230 immunity does not apply to claim for infringement of right to publicity by virtue of § 230(e)(2)).**

*Id.* at 302 (emphasis added). The same result has been reached by other circuits that have considered the issue. *See ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) ("The right of publicity is an intellectual property right of recent origin which has been defined as the inherent right of every human being to control the commercial use of his or identity."); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322 (11th Cir. 2006) ("[T]here appears to be no dispute that the right of publicity is a type of intellectual property right.").

South Carolina expressly recognizes the tort of infringement on the right of publicity. *See Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 684 S.E.2d 756, 760 (S.C. 2009). In *Gignilliat*, the South Carolina Supreme Court noted a claim for infringement on the right of publicity is synonymous with a claim for wrongful appropriation of personality. *See id.* at 759-60 (quoting *Sloan v. South Carolina Dep't. of Pub. Safety*, 586 S.E.2d 108, 110 (S.C. 2003)). A claim for wrongful appropriation of personality involves the "intentional, unconsented use of the plaintiff's

name, likeness, or identity by the defendant for his own benefit." *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2, 5 (S.C. Ct. App. 1989).

Here, Plaintiffs have specifically alleged a claim for invasion of privacy. *See* ECF No. 99 at 9. A claim for wrongful appropriation of personality is encompassed under a claim for invasion of privacy. *See Swinton Creek Nursery v. Edisto Farm Credit*, 514 S.E.2d 126, 130 (S.C. 1999). However, out of an abundance of caution, Plaintiffs have moved for leave to amend their Second Amended Complaint to specifically delineate a claim for wrongful appropriation of personality.[1] *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) ("Motions for leave to amend should generally be granted in light of 'this Circuit's policy to liberally allow amendment.'") (quoting *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)).

In sum, Plaintiffs have specifically asserted a claim for invasion of privacy based upon Pornhub's intentional use of Plaintiffs' likeness for its own benefit. This is a claim involving Plaintiffs' intellectual property rights. Accordingly, CDA immunity cannot attach to such a claim. Thus, Pornhub's Motion to Dismiss should be denied.

### B. Pornhub was an information content provider which precludes CDA immunity regarding the remainder of Plaintiffs' claims.

As an initial matter, there is no binding precedent supporting immunity for a pornographic company who illegally posts a surreptitiously recorded video of nonconsenting naked women. The CDA was not designed to insulate such egregious conduct.

The CDA prohibits a "provider or user of an interactive computer service" from being held responsible "as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). However, this grant of immunity only applies if the interactive computer service provider is not also an "information content provider," which is

---

[1] *See* ECF No. 50.

defined as someone who is "responsible, in whole or in part, for the creation or development of" the offending content. *Id.* § 230(f)(3).

An interactive computer service provider is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." *Id.* § 230(f)(2). Plaintiffs agree Pornhub is an interactive computer service provider as defined by statute. However, contrary to Pornhub's assertions, it is also an information content provider. *See id.* § 230(f)(3). As an information content provider, Pornhub cannot circumvent liability under the CDA.

First, "[d]iscovery is the proper tool for [a plaintiff] to use to test the validity of his allegations, and if he is unable to marshal enough facts to support his claim the [defendant] can move for summary judgment." *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016). Otherwise, "potentially meritorious claims could be prematurely and improperly dismissed … since the information necessary to prove or refute allegations … is typically available only to defendants." *Id.* at 743.

In *Huon*, the plaintiff specifically alleged a website helped create and develop a portion of published defamatory comments. *See id.* at 736-37. In reversing dismissal predicated under the CDA, the Seventh Circuit held the plaintiff plausibly alleged the website was sufficiently involved in the posting of the alleged defamatory content. *See id.* at 743 ("The Gawker Defendants also argue that Huon failed to plead facts plausibly establishing that Gawker authored the allegedly defamatory comments. As discussed above, however, there is nothing implausible about this allegation, and we reject the Gawker Defendants' invitation to interpret Rule 8, *Twombly*, and *Iqbal* as requiring more."). Thus, the Seventh Circuit determined the plaintiff adequately pled the website was an information content provider which precluded dismissal under the CDA. *See id.*

Here, Plaintiffs have alleged Pornhub "schemed to increase their financial positions by enlisting others to create sexually deviant content and shared the revenues such content generated with the providers." ECF No. 99 ¶ 47. Plaintiffs have further alleged said "scheme created a joint venture partnership and civil conspiracy between Defendants and the individuals who provided the Defendants with the lewd, sexual, and pornographic content which the Defendants used to make money and removes any protections granted to them as they are no longer merely hosts of said content." *Id.* ¶ 48.

As reflected, Plaintiffs have sufficiently alleged facts which support the contention Pornhub was directly involved in the posting of the nonconsensual illicit video of the Plaintiffs. Based on *Huon*, this would render Pornhub an information content provider under the CDA. To the extent discovery proves otherwise, Pornhub can move for summary judgment. *Huon*, 841 F.3d at 742. At this stage, however, Plaintiffs' claims should not prematurely be dismissed since they have been sufficiently pled.

Second, an interactive computer service provider is responsible for the development of offensive content if it specifically encourages the development of what is offensive about the content. *See Federal Trade Comm'n v. Accusearch, Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009).

In *Accusearch*, a website sold confidential information of individuals, including their telephone records, which the website paid researchers to obtain. *See id.* at 1190. The website claimed immunity under the CDA, arguing it merely displayed the allegedly illegal conduct that originated from its third-party researchers. *See id.* The Tenth Circuit held the website was not entitled to immunity under the CDA because "[b]y paying its researchers to acquire telephone records, knowing that the confidentiality of the records was protected by law, it contributed mightily to the unlawful conduct of its researchers." *Id.* Moreover, "the offensive postings were

20

[the website's] *raison d'etre* and it affirmatively solicited them." *Id.* Because of the foregoing conduct, the Tenth Circuit determined the website was an information content provider under the CDA. *See id.* at 1200.

Again, Plaintiffs have alleged Pornhub attempted to improve its financial position by enlisting others to create sexually deviant content. *See* ECF No. 99 ¶¶ 47-48. Moreover, Plaintiffs have alleged Pornhub paid Collins Murphy for the deviant content he posted, including that involving the Plaintiffs. *See id.* ¶¶ 53-54. Plaintiffs have further alleged Pornhub disregarded takedown notices from women who appeared on its website without consent and continued to "endorse and encourage the creation of such surreptitious sexual content." *Id.* ¶ 56. This is the precise conduct which precluded application of CDA immunity in *Accusearch*.

Furthermore, through its website, Pornhub openly solicits submission of deviant content and promises its partners will benefit from "100+ milion [sic] visits per day" and will "[g]et paid the highest rate per view in the industry." *See* Exhibit A. Pornhub also declares:

The World's Biggest XXX Porno Tube

> The Pornhub team is always updating and adding more porn videos every day. It's all here and 100% free porn. We have a huge free DVD selection that you can download or stream. Pornhub is the most complete and revolutionary porn tube site. We offer streaming porn videos, downloadable DVDs, photo albums, and the number 1 free sex community on the net. We're always working towards adding more features that will keep your love for porno alive and well. Send us feedback if you have any questions/comments.

*Id.* In short, Pornhub openly solicits and pays individuals like Mr. Murphy to upload sexually deviant content. Accordingly, and analogous with *Accusearch*, Pornhub is an information content provider to which CDA immunity does not apply.

Lastly, courts have held where facts are alleged which establish agency, either actual or implied, between a website operator and a third-party information content provider, the website

operator is considered the provider of the offensive content. *See, e.g.*, *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 276 (S.D.N.Y. 2016) ("Because the SAC adequately pleads that Quietman7 acted as Bleeping's agent, he does not qualify as a third-party ICP under the CDA so as to entitle Bleeping to immunity. Section 230, therefore, does not bar ESG's claims.").

Under South Carolina law, agency may be actual or implied. *See Froneberger v. Smith*, 748 S.E.2d 625, 630 (S.C. Ct. App. 2013). "If there are any facts tending to prove the relationship of agency, it then becomes a question for the jury." *Id.* at 631 (quoting *Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748, 752 (S.C. Ct. App. 1984).

Here, Plaintiffs have sufficiently alleged an agency relationship between Pornhub and Mr. Murphy. *See* ECF No. 99 ¶¶ 47-48, 57, 102-105. As such, Pornhub is responsible as the information content provider of the nonconsensual illicit video of the Plaintiffs. Consequently, the CDA does not insulate Pornhub from liability. To the extent Pornhub contests an agency relationship with Mr. Murphy, sufficient facts exist which requires the jury to be the ultimate arbiter on the issue. *See Froneberger*, 748 S.E.2d at 631 (quoting *Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748, 752 (S.C. Ct. App. 1984).

In sum, there are multiple legal barriers precluding CDA immunity in Pornhub's favor. As a result, Pornhub's Motion to Dismiss should be denied.

## IV.    ANY OMISSION OF PORNHUB FROM PLAINTIFFS' ELEVENTH CAUSE OF ACTION IS A MERE SCRIVENER'S ERROR AND SHOULD NOT BE DISPOSITIVE AS THE CLAIMS ARE CLEARLY ESTABLISHED.

Plaintiffs' eleventh cause of action for a civil RICO against Defendants Murphy, Pornhub, and Xhamster is properly pled as it includes the specific actions of Defendant Pornhub. As written, it is clear which parties of this litigation are subject to this cause of action because the facts within

it are not vague. Defendant cites *Soltes*[2] asserting that this Court should not grant Plaintiffs leave to remedy any deficiency in their pleadings, however, this case is substantially distinguished. Unlike in *Soltes*, the Court does not have to consider any issues of undue delay because there is no need for any additional parties who would need additional time to respond and because the eleventh cause of action would not fundamentally alter the litigation. Additionally, Defendants were previously aware of Plaintiffs intent to include them within the eleventh cause of action. Plaintiffs indicated their intent to Defendants on December 8, 2020 prior to moving to amend their Complaint. Any attempt by Defendants to avoid this cause of action is simply an effort to avoid liability for their willful actions of engaging in and fostering an enterprise for the purpose of surreptitiously filming women for financial gain.

Anyone reading Plaintiffs Fourth Amended Complaint would easily recognize that Plaintiffs' eleventh cause of action is directed at Pornhub. Defendants should not be afforded protections for a mere scrivener's error in the heading of this cause of action. As such, Defendants Motion to Dismiss should be denied.

## CONCLUSION

By its own proclamation, Pornhub has a daily global reach of over 100 million users. The number of people who have seen the Plaintiffs naked, without their consent, is appalling. A ruling in Pornhub's favor will encourage future solicitation and posting of nonconsensual illicit videos of innocent victims. Such a result is not only contrary to public policy, but also controlling law. Accordingly, Pornhub's Motion to Dismiss should be denied in its entirety.

**[SIGNATURE BLOCK ON FOLLOWING PAGE.]**

---

[2] *R.S. by & through Soltes v. Bd. of Directors of Woods Charter Sch. Co.,* No. 1:16CV119, 2018 WL 339944

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

*/s/ J. Edward Bell, III*
J. Edward Bell, III (#1280)
Joshua M. W. Salley (#13214)
219 North Ridge Street
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@edbelllaw.com
jsalley@edbelllaw.com
*Counsel for Plaintiffs*

**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**

Tyler S. Thompson (admitted *Pro Hac Vice*)
Liz J. Shepherd (admitted *Pro Hac Vice*)
Jordan A. Stanton (admitted *Pro Hac Vice*)
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com
lshepherd@kytrial.com
jstanton@kytrial.com
*Counsel for Plaintiffs*

March 10, 2021
Georgetown, SC