IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9, | Civil Action Number: 7:20-cv-00947-JD |
| Plaintiffs, | |
| v. | |
| COLLINS MURPHY, LIMESTONE COLLEGE, MG FREESITES, LTD d/b/a PORNHUB.COM, and HAMMY MEDIA, LTD. d/b/a XHAMSTER.COM, | **DEFENDANT MG FREESITES' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| Defendants. | |

### INTRODUCTION

Plaintiffs' memorandum in opposition ("Opp.") to Defendant MG Freesites' ***Third*** Motion to Dismiss ("MTD") once again seeks to avoid the well-established legal principles that govern platform liability for third-party content appearing on a website. Like their first two efforts at opposing MG Freesites' Motion, Plaintiffs again ignore every single one of the dozens of on-point decisions (including two Fourth Circuit decisions) supporting MG Freesites' defense under Section 230 of the Communications Decency Act ("CDA"), ***including*** with regard to Plaintiffs' new "privacy" claims. Their Opposition only confirms that even after ***five*** Complaints, Plaintiffs still are unable to allege a single fact to support their claims against MG Freesites, far less any fact that would deny MG Freesites their entitlement to immunity from lawsuits exactly like this one. Instead, Plaintiffs continue to rely upon two erroneous legal arguments; two inapposite out-of-circuit decisions; and cut-and-paste excerpts of a handful of conclusory, repetitive, and irrelevant allegations. In sum, nothing in the Fourth Amended Complaint changes the analysis that MG Freesites has put forward three times.

Plaintiffs' only apparent justification for ignoring *all* of the relevant cases seems to be that courts have not addressed claims involving adult-oriented material or "nonconsenting naked women." *See, e.g.,* Opp. 1-2. That is demonstrably false. *Doe v. Franco Prods.,* No. 99 C 7885, 2000 WL 816779, at *4 (N.D. Ill. June 22, 2000), *aff'd sub nom. Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003), addressed the *exact same* facts and circumstances at issue in this case – namely, websites hosting videos depicting "intercollegiate athletes who, without their knowledge or consent, were videotaped in various states of undress by hidden cameras in restrooms, locker rooms, or showers." The court found that claims against the websites were barred by the CDA, and the Seventh Circuit Court of Appeals affirmed.

As illustrated by *Franco* and other cases, the CDA is content-neutral, and nothing in the statute conditions its protection on the nature of the website at issue, far less the nature of the content posted by the third party user.[1] To the contrary, the CDA *presupposes* that the third party content at issue is illegal, defamatory, harassing, or otherwise harmful to the plaintiff, and the purpose of the Act is to protect service providers from liability for such content. The analysis does not change based on how offensive or reprehensible the posted content might be. The CDA regularly has been applied to shield websites from liability for even the most offensive content, such as child pornography, *Doe v. Bates,* 2006 WL 3813758, at *5 (E.D. Tex. Dec. 27, 2006), and ISIS execution and terror videos, *Gonzalez v. Google, Inc*., 282 F. Supp. 3d 1150, 1154 (N.D. Cal.

---

[1] Several other cases have involved adult-oriented content. *See, e.g.*, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007) (CDA applied to unauthorized exploitation of nude photographs); *Carafino v. Metrosplash.com*, *Inc.,* 339 F.3d 1119 (9th Cir. 2003) (CDA applied to "sexually suggestive" comments on a matchmaking website); *Herrick v. Grindr LLC*, 765 Fed. Appx. 586 (2d Cir. 2019) (CDA applied to web-based "hook-up" application). Notably, courts also have not hesitated to apply somewhat analogous liability shields to adult-oriented websites that host user-uploaded content. *See, e.g., Ventura Content Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018) (adult video-sharing site entitled to the safe-harbors of the Digital Millennium Copyright Act).

2017).    As one court explained, "[w]hile the facts of [the illegal content at issue, there child pornography] may be highly offensive, Congress has decided that the parties to be punished and deterred are not the internet service providers but rather are those who created and posted the illegal material[.]"  *Doe v. Bates*, 2006 WL 3813758 at \*4.

The remainder of Plaintiffs' response to the CDA arguments boils down to two erroneous legal arguments.  *First*, Plaintiffs claim that MG Freesites is an "information content provider" because it "encourages" users to upload adult-oriented content to the website at issue in the instant case (the "Website").  Opp. 20.  But every court that has considered the issue has held that a service provider's encouragement and solicitation of content is not sufficient to remove CDA protection. *Second*, Plaintiffs claim that their causes of action for "invasion of privacy" are exempted from the CDA.  Opp. 17.  That argument ignores the many appellate and district court decisions (including in this Circuit) that expressly have held the contrary.  Plaintiffs' refusal to address these authorities is notable given they have now been briefed three times.

As for Plaintiffs' attempt to bootstrap their claims against Defendant Murphy directly into claims against MG Freesites under an "agency" theory, Opp. 21-22, that is specious, at best. Plaintiffs now confirm that, after *four* amendments to their Complaint, they still cannot allege a single *fact* to support the existence of a principal/agent relationship.  As Plaintiffs are well aware, Murphy and MG Freesites are two independent actors whose relationship is no different from any of the hundreds of millions of other users who have registered accounts on the Website.

Finally, Plaintiffs did *not* plead a RICO claim against MG Freesites.  Their failure to name MG Freesites in the RICO claim is not a mere "scrivener's error."  As Plaintiffs admit, the Fourth Amended Complaint specifically states that the RICO claim is brought only "*against Defendant Murphy and XHamster*[**.**]"  Opp. at 13.  Whether Plaintiffs made an error in their pleading is

irrelevant; the Fourth Amended Complaint did not give adequate notice to MG Freesites, especially under the heightened pleading standard of Rule 9(b) that applies to RICO claims predicated on alleged "wire fraud."

Plaintiffs are not without a remedy for their alleged injuries. Both Murphy and Limestone College have appeared and answered in this case.[2]  Meanwhile, there is no legal or factual basis for Plaintiffs also to pursue meritless claims against MG Freesites. MG Freesites respectfully requests that the Court dismiss Plaintiffs' Fourth Amended Complaint with prejudice and without leave to amend.

## ARGUMENT

### I.    SECTION 230 OF THE CDA BARS ALL OF PLAINTIFFS' CLAIMS, INCLUDING THEIR NEWLY ADDED INVASION OF PRIVACY CLAIMS.

There is no dispute as to two of the three prongs of the CDA analysis. Plaintiffs expressly "agree" that the Website "is an interactive computer service provider as defined by statute." Opp. 19. Plaintiffs also do not dispute that this case arises entirely from MG Freesites' role as the "publisher" of the content at issue. Accordingly, Plaintiffs rest their entire opposition on their arguments that (1) MG Freesites was an "information content provider" with respect to the videos at issue in this case (the "Videos") because it purportedly encouraged members of the public to post sexually explicit content, and (2) Plaintiffs' claims for invasion of privacy are "intellectual property" claims outside the scope of the CDA. Neither argument has merit.

---

[2] Limestone College answered the Second Amended Complaint [Dkt. 40], partially answered the Third and Fourth Amended Complaints [Dkt. 71, 103], while also moving to dismiss Plaintiffs' new privacy claims [Dkt. 70, 102]. Limestone College also has sought affirmative relief against Murphy, and thus those two parties and their relationship are at the center of this dispute [Dkt. 103].

**A.**    **MG Freesites was not responsible for the "creation" or "development" of the videos.**

The Fourth Circuit has clearly explained what conduct is required to transform an interactive computer service (*i.e.*, a website or social media network) into an "information content provider" for purposes of the CDA.  The website must "***materially contribut[e] to a given piece of information's alleged unlawfulness***."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, *Inc.,* 591 F.3d 250, 257 (4th Cir. 2009) (emphasis added) (internal quotation marks omitted).  Moreover, "[a] material contribution to the alleged illegality of the content does not mean merely taking action that is necessary to the display of allegedly illegal content.  Rather, it means being responsible for what makes the displayed content allegedly unlawful."  *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 410 (6th Cir. 2014).

In other words, MG Freesites is only liable to Plaintiffs if it directly participated in creating the ***content*** of the Videos or if it was directly involved with or contributed to the ***specific unlawful conduct*** at issue here (*i.e.*, Murphy's acts of unauthorized recording).  *See, e.g., Carafino*, 339 F.3d at 1125 (owner of Matchmaker website was not an "information content provider" because it "did not play a significant role in creating, developing, or transforming' the relevant information."); *Gonzalez*, 282 F. Supp. 3d at 1168 ("Plaintiffs do not allege that Google 'materially contributed' in any way to the actual content of ISIS's YouTube videos."); *Directory Assistants, Inc. v. Supermedia, LLC*, 884 F. Supp. 2d 446, 452 (E.D. Va. 2012) ("There are no allegations that Defendants created the posts or altered them."); *Coffee v. Google, LLC*, No. 20-cv-3901, 2021 WL 493387, *8 (N.D. Cal. Feb 10, 2021) ("Because it appears that the content was developed solely by third parties, the third prong… is satisfied.").

Allegations that MG Freesites purportedly "endorse and encourage" (Opp. at 21) members of the public to contribute a genre of content (namely, sexually explicit or erotic content) are ***not***

sufficient to render the Website an "information content provider" with respect to Murphy's Videos. *See, e.g., Nemet Chevrolet*, 591 F.3d at 261 (defendant allegedly encouraged members of the public to post complaints). That is true even if the Website enables uploaders or "information content providers" to monetize their content. *See Gonzalez*, 282 F. Supp. 3d at 1155 (alleging "Google has agreed to share with ISIS and ISIS-affiliated users a percentage of revenues generated by these ads."); *East Coast Test Prep LLC v. Allnurses.com*, 971 F.3d 747, 752 (8th Cir. 2020) (allegations that the individuals who posted the content in question "were longtime users of [defendants' website]," and "were paid to post" were insufficient to state a claim or to transform the website owners into content providers); *Goddard v. Google, Inc.*, 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008) ("the fact that a website elicits online content for profit is immaterial; the only relevant inquiry is whether the interactive service provider 'creates' or 'develops' that content.") To the contrary, "Congress has made a… policy choice by providing immunity even where the interactive service provider has an active, even aggressive role in making available content prepared by others." *Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998)*; see also Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 20-21 (1st Cir. 2016), *superseded by statute on other grounds as stated in Stokinger v. Armslist*, No. 1884CV03236F, 2020 WL 2617168, at *5 (Mass. Sup. Ct. Apr. 28, 2020), (defendant allegedly structured its website in a manner designed to encourage sex trafficking); *Ascentive LLC v. Op. Corp.*, 842 F. Supp. 2d 450, 476 (E.D.N.Y. 2011) (defendants allegedly "invite[d] postings").

Plaintiffs do not address *any* of the foregoing decisions (or, for that matter, any of the cases cited by MG Freesites). Plaintiffs do not, and cannot, allege *any* conduct engaged in by MG Freesites that could even arguably take Plaintiffs' allegations outside Section 230 or otherwise constitute "material contribution" to "what makes the displayed content allegedly unlawful" (*i.e.*,

the act of recording Plaintiffs without their authorization).  The Complaint does not allege that MG

Freesites ever communicated directly with Murphy or even knew that the Videos existed when

they were made in 2012 or 2013 – far less that it knew Plaintiffs appeared in the Videos without

consent.  Nor can Plaintiffs possibly allege (and they do not allege) that MG Freesites ever solicited

or encouraged users to post nonconsensual images of women.  In fact, MG Freesites staunchly

prohibits such content.[3]   While Plaintiffs (Opp. 21) make much of their lengthy and repetitive

allegations that MG Freesites "solicits and pays individuals like Mr. Murphy to upload sexually

deviant content" or "endorse[s] … the creation of … sexual content," these allegations are

insufficient to state a claim.  *See Nemet Chevrolet*, 591 F.3d at 257 ("Even accepting as true all of

the facts [the plaintiff] pled as to Consumeraffairs.com's liability for the structure and design of

its website, the amended complaint 'does not show, or even intimate,' that Consumeraffairs.com

contributed to the allegedly fraudulent nature of the comments at issue."); *Shiamili v. Real Estate

Grp. of New York, Inc.*, 17 N.Y. 3d 281, 290 (N.Y. 2011) ("We reject [plaintiff's] contention that

defendants should be deemed content providers because they created and ran a Web site which

implicitly encouraged users to post negative comments about the New York City real estate

industry.").

Plaintiffs continue to rely upon the same two out-of-circuit cases (Opp. 19-21) cited in their

opposition to Defendant's prior Motions.  Not only do these cases continue to fail to support their

position, but also are so obviously distinguishable that they actually support ***MG Freesites'***

---

[3]  The Website's Terms of Service (which are judicially noticeable) plainly prohibit users from posting content without the authorization or consent of the person depicted. *See* Terms of Service (*available at* https://www.pornhub.com/information/terms) (requiring users to "affirm, represent, and warrant that you own or have the necessary licenses, rights, consents, and permissions to publish Content you submit.")  *See Brown-Thomas v. Hynie*, 367 F. Supp. 3d 452, 457 n.3 (D.S.C. 2019) (quoting Fed. R. Evid. 201(b)).  (Court may take judicial notice of website pages that are not subject to reasonable dispute and are "capable of accurate and ready determination.")

argument.  Both of these cases highlight the difference between those websites that directly and actively participate in the unlawful content and those (like MG Freesites) that simply operate a platform that hosts user-generated content.

*Huon v. Denton*, 841 F.3d 733 (7th Cir. 2016), is particularly instructive.  In that case, the plaintiff sued Gawker Media and its representatives for allegedly defamatory comments posted on websites owned by Gawker.  *Huon*, 841 F.3d at 737.  The Court of Appeals reversed the decision of the lower court to dismiss the case as barred by the CDA because the plaintiff had alleged, in detail, that Gawker and its employees were ***directly*** involved in creating, even authoring, the specific content at issue.  *Id.* at 742.  Specifically, the plaintiff had alleged that Gawker and its employees invited specific users to defame the plaintiff, edited the content at issue, selected specific content for publication, and even authored some of the content.  *Id.*  These claims were supported by "over four pages" of factual allegations, including reporting by Reuters.  *Id.*

In *FTC v. Accusearch*, 570 F.3d 1187 (10th Cir. 2009), the FTC brought claims against a website (Akiba.com) whose entire purpose was to enable members of the public to purchase and obtain confidential telephone records in violation of the Telecommunications Act, and which explicitly advertised those services.  *Accusearch*, 570 F.3d at 1190-1191.  In the course of its business operations, the defendant solicited and processed unlawful requests for private personal telephone information, collected payments from customers, and hired researchers to unlawfully gather and obtain the requested information.  *Id.* at 1199-1200.  In doing so, the defendant "knowingly sought to transform virtually unknown information into a publicly available commodity" and "knew that its researchers were obtaining the information through fraud or other illegality."  *Id.* at 1199.  Notably, the *Accusearch* court forcefully distinguished between the knowing and deliberate conduct engaged in by the defendant in that case and the conduct of

websites like the one at issue here, which are "not responsible for the development of offensive content if one's conduct was neutral with respect to the offensiveness of the content." *Id.* (internal quotation marks omitted).  In other words, "[w]e would not ordinarily say that one who builds a highway is 'responsible' for the use of that highway by a fleeing bank robber, even though the culprit's escape was facilitated by the availability of the highway." *Id.*

The facts and allegations at issue in *Huon* and *Accusearch* stand in stark contrast to the allegations in Plaintiffs' Complaint.  Nowhere do Plaintiffs ever allege—and they cannot allege, that, like Gawker—MG Freesites solicited or enlisted members of the Website to create and upload illegal, nonconsensual recordings, filmed or edited the Videos, or deliberately selected the Videos for publication on the Website.  Unlike *Accusearch*, MG Freesites is not alleged to have designed the Website to aggregate and display illegal "spy cam" content, to have promoted or advertised the existence of such content, or to have knowingly paid Murphy (or anyone else) to upload such content.  *See Shiamili*, 17 N.Y.3d at 292 (distinguishing *Accusearch* in a case where there "are no allegations that posting false and defamatory content was a condition of use, or that the site worked with users to develop the posted commentary.")  Ultimately, all that Plaintiffs can and do allege is that MG Freesites provided the same open platform to Murphy as it did to hundreds of millions of other users to post his Videos, as well as a content-neutral revenue sharing system that allows any of the Website's users to monetize uploaded content.  *See* Opp., Ex. A (referring to "hundreds of studios").  No amount of discovery can change this analysis; Plaintiffs do not and cannot allege that MG Freesites (in Montreal, Canada) had anything to do with Murphy's conduct (in South Carolina) in 2012.

Finally, Plaintiffs' allegations about unspecified take-down notices from *other people* about *other videos* are legally irrelevant under well-settled Fourth Circuit law.  Plaintiffs never

allege that they sent a take-down notice to MG Freesites.  Even if they had, that would not impact the analysis.  *See Zeran v. Am. Online, Inc.*, 129 F. 3d 327, 333 (4th Cir. 1997) ("Liability upon notice would defeat the dual purposes advanced by § 230 of the CDA" and would "reinforce[] service providers' incentives to restrict speech and abstain from self-regulation.").

## B.    Plaintiffs' invasion of privacy claims also are barred by the CDA.

Plaintiffs on opposition repeat large sections of their own allegations regarding invasion of privacy (Opp. 6-10), but fail to explain how any of these allegations arise from any alleged conduct by MG Freesites.  *See* Def.'s Third MTD 7-8.  Neither do Plaintiffs rebut, let alone engage with, any of the authorities cited by Defendant that make plain that CDA immunity applies to invasion of privacy claims.  *See, e.g., Carafino*, 339 F.3d at 1122-1125, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007), *Curran v. Amazon.com, Inc.,* No. 2:07-0354, 2008 WL 472433, at *11 (S.D.W.Va. Feb. 19, 2008), *Hepp v. Facebook, Inc.,* No. 19-4034-JMY, 2020 WL 3034815, at *7 (E.D.Pa. June 5, 2020), *Doe ex rel. Roe v. Backpage.com, LLC,* 104 F. Supp. 3d 149, 163 n.13 (D. Mass. 2015).

While Plaintiffs correctly note that the CDA does not "limit or expand" intellectual property laws (Opp. 16 (citing 47 U.S.C. § 230(e)(2))), Plaintiffs' "Invasion of Privacy" claims are ***not*** the type of "intellectual property" claims exempted by the statute.  *See Carafino*, 339 F.3d at 1122-1125 (CDA barred claims for invasion of privacy and misappropriation of the right of publicity).  Even the New Hampshire district court case cited by Plaintiffs (Opp. 17) squarely holds that claims for invasion of privacy in the form of "intrusion upon seclusion, publication of private facts, and casting in false light" are claims that protect "a personal right, peculiar to the individual whose privacy is invaded."  *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 302-303 (D.N.H. 2008) (citing *Restatement (Second) of Torts* § 625I).  Thus, these claims "do not sound in 'law pertaining to intellectual property'" and are subject to the CDA.  *Id.* at 303.

With respect to Plaintiffs' Third Cause of Action for "Invasion of Privacy – Wrongful Appropriation of Personality," Plaintiffs fail to mention that the vast weight of recent authority, including every appellate court that has considered the issue, is in agreement that state law misappropriation of "personality" claims are ***not*** exempted from CDA protection. Specifically, in *Perfect 10, Inc.*, the Ninth Circuit held that claims similar to those alleged here (i.e. appropriation of likeness based on uploaded photographs) were not the type of "intellectual property" claims contemplated by the CDA, that Plaintiffs' interpretation of the statute would subvert the policies and purposes of the statute, and therefore that only ***federal*** intellectual property claims are exempted:

> "While the scope of federal intellectual property law is relatively well-established, state laws protecting 'intellectual property,' however defined, are by no means uniform. Such laws may bear various names, provide for varying causes of action and remedies, and have varying purposes and policy goals. Because material on a website may be viewed across the Internet, and thus in more than one state at a time, permitting the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes. In the absence of a definition from Congress, ***we construe the term 'intellectual property' to mean 'federal intellectual property.'***"

488 F.3d at 1118-1119 (emphasis added) (internal citations omitted); *see also Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019) ("[T]he intellectual property exception contained in § 230(e)(2) encompasses claims pertaining to an established intellectual property right under federal law, like those inherent in a patent, copyright, or trademark."); *Carafino*, 339 F.3d at 1122-1124.

Several recent district court decisions have come to the same conclusion. *See Curran*, 2008 WL 472433, at *11 ("As the Ninth Circuit notes, CDA immunity exists for both right of publicity claims… and right of privacy claims[.]"); *Hepp*, 2020 WL 3034815, at *7 (dismissing right of

publicity claims as barred by the CDA because "[c]onditioning CDA immunity on the diverse potentially applicable state laws would have a negative effect on the development of the internet and, therefore, would run contrary to the purpose and intent of the CDA."); *Backpage.com, LLC,* 104 F. Supp. 3d at 163 n.13 (describing the proposition that right of publicity claims are exempted from the CDA as dubious because "a person's image is not a 'product of the human intellect.'") (citing *Black's Law Dictionary* (10th ed. 2014)).   Excluding Plaintiffs' privacy and personality appropriation claims from the CDA's "intellectual property" exception is particularly appropriate here, because the tort of misappropriation of personality in South Carolina is a common law right, encompassed within the broader "invasion of privacy" tort.  *See, e.g., Sloan v. S.C. Dep't of Pub. Safety*, 355 S.C. 321, 325-326 (S.C. 2003).  South Carolina courts have not described the tort as one for infringement of "intellectual property."  As noted above, one's image and likeness are not products of the mind.  This is confirmed further by the nature of the damages sought by Plaintiffs, which are damages for ***personal injury***, such as "serious mental and emotional injuries and distress."  4th Amend. Compl. ¶¶ 68, 77, 85, 92.

## II.    PLAINTIFFS DO NOT AND CANNOT ALLEGE A PRINCIPAL/AGENT RELATIONSHIP.

Plaintiffs also revisit their conclusory "agency" allegations.  Opp. 21-22.  Plaintiffs do not dispute that under South Carolina law, "[t]he test to determine agency is whether or not the purported principal has the *right to control* the conduct of [its] alleged agent."  *Allen v. Greenville Hotel Partners, Inc*., 409 F. Supp. 2d 672, 678 (D.S.C. 2006) (alteration and emphasis in original). But not one of the allegations in any one of their past Complaints contains a single ***fact*** to support the existence of a principal/agent relationship.  These "threadbare and conclusory" allegations are insufficient.  *See Nemet Chevrolet,* 591 F.3d at 258.  Ultimately, the ***only*** purported factual allegation that Plaintiffs' offer in support of their agency theory is that both MG Freesites ***and***

defendant Hammy Media, Inc. "solicit[ed]" and "pa[id]" "individuals *like* Murphy" to upload content to the Website.  Opp. at 21 (citing 4th Amend. Compl. ¶¶ 53-56 (emphasis added)). Plaintiffs do not, and cannot, allege that MG Freesites had any *right to control* Murphy or his conduct.  In fact, Plaintiffs' allegations – including that the Videos were created six to seven years before being uploaded to the Website and "countless" others (4th Amend. Compl., ¶ 34) – directly contradict any such claim.  Under Plaintiffs' theory, every one of the hundreds of millions of Website members would also be MG Freesites' agents.  More unworkable still, Murphy would be the agent of every single one of the "countless" other websites he uploaded his Videos to.

The single case cited by Plaintiffs (Opp. 22), *Enigma Software Grp. USA v. Bleeping Computer*, 194 F. Supp. 3d 263 (S.D.N.Y. 2016), is (like all of Plaintiffs' other citations) inapposite.  In *Enigma*, the court found that the plaintiff had sufficiently alleged that a "Global Moderator" of the defendant's website was the agent of the defendant, where the plaintiff specifically alleged that the moderator, among other things: (1) occupied "the second and third highest 'staff member' positions" in the defendant's hierarchy, (2) signed his posts as "The BC[defendant] Staff," (3) had defendant's authorization to post messages on its behalf and recommend and promote certain products, (4) was held out to the public by the defendant as an expert who "can be trusted to give correct and understandable answers to [defendant's] member's questions[,]" and (5) was empowered by the defendant to enforce website rules, including to suspend or terminate website members.  *Enigma*, 194 F. Supp. 3d at 274-275.  No such actual or implied authority is alleged here, warranting dismissal.

## III.    THE FOURTH AMENDED COMPLAINT DID NOT ASSERT A RICO CLAIM AGAINST MG FREESITES.

Plaintiffs assert, for the very first time, that notwithstanding that the Fourth Amended Complaint stated that the RICO claim was "against Defendant Murphy and Defendant XHamster,"

they intended to include MG Freesites in this cause of action but omitted MG Freesites due to a

"scrivener's error." Opp. 22-23. Plaintiffs misuse the term. A "scrivener's error" is a mere

typographical error that "has no effect on whether the Complaint sets forth a cognizable claim."

*Mann v. Kirkland*, No. 0:14-CV-3241-RMG, 2015 WL 1640468, at *3 (D.S.C. Apr. 9, 2015). Not

only are the words "MG Freesites" missing from the claim caption and all but one of the RICO

allegations, Plaintiffs also fail to allege even basic RICO elements as to MG Freesites, such as how

and when MG Freesites, *inter alia*, committed any RICO predicate acts or participated in the

alleged enterprise. What's more, it would be illogical to assert a RICO claim against MG Freesites

***and*** xHamster together as part of the same claim, because the two companies are competitors and

could not plausibly have been part of a common enterprise.

These deficiencies clearly go far beyond the province of a "scrivenor's error[.]" *See, e.g.*,

*Jones v. Town of Ashland, Virginia*, No. 3:07CV462, 2007 WL 9808158, at *11 (E.D. Va. Nov.

15, 2007) (A "scrivenor's error" does not excuse the "spartan recitation of the elements of" a

claim). And, as explained in MG Freesites' most recent Motion to Dismiss, Plaintiffs' prolific

"lumping … together" of parties by reference to "Defendants" throughout the RICO claim section

does not cure a fatal failure to specify which "Defendant or Defendants are allegedly liable[.]" *R.S.*

*by & through Soltes v. Bd. of Directors of Woods Charter Sch. Co.,* No. 1:16CV119, 2018 WL 339944,

at *3 (M.D.N.C. Jan. 9, 2018) (collecting cases).[4] Plaintiffs have had more than a month since

receiving MG Freesites' papers to correct their "error," and they have amended their Complaint

four times already. It is long past time for this case to move past the pleadings stage, and the Court

---

[4] There is no basis for Plaintiffs' claim that MG Freesites was "previously aware[,]" Opp. 23, or
should have been aware from the allegations that RICO claims were intended to include MG
Freesites. Plaintiffs also did not "indicate" in their December 8, 2020, email, *id.*, that they intended
to include MG Freesites in the RICO claim. Plaintiffs' three-sentence email was to ***all*** counsel in
the case and stated only: "we are planning on filing a Motion to Amend the Complaint to include
a Civil RICO cause of action."

should decide this Motion and dismiss the claims against MG Freesites without leave to further amend.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed.

Respectfully submitted,

DATED: March 17, 2021

Greenville, South Carolina

TURNER, PADGET, GRAHAM AND LANEY, P.A.

By:     */s/ R. Taylor Speer*
R. Taylor Speer | Attorney ID: 12267
email | tspeer@turnerpadget.com
direct | 864-552-4618

J. Kenneth Carter | Attorney ID: 05108
email | kcarter@turnerpadget.com
direct | 864-552-4611
Post Office Box 1509
Greenville, South Carolina 29602
facsimile | 864-282-5993

TPGL 11080541V2

*Attorneys for Defendant MG Freesites, Ltd*

MITCHELL SILBERBERG & KNUPP LLP

Marc E. Mayer | admitted *pro hac vice*
email | mem@msk.com
direct | 310-312-3154
2049 Century Park East
18th Floor
Los Angeles, California 90067
facsimile | 864-282-5993

12981984.6

*Attorney for Defendant MG Freesites, Ltd*