UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANES DOES 1-9,<br><br>Plaintiffs,<br><br>v.<br><br>COLLINS MURPHY, LIMESTONE COLLEGE, MG FREESITES, LTD., d/b/a PORNHUB.COM and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM,<br><br>Defendants. | CA: 7:20-cv-00947-JD<br><br><br><br>**ORDER** |

This matter comes before the Court on Defendants Limestone University's (incorrectly identified as "Limestone College" and hereinafter referred to as "Limestone") Partial Motion to Dismiss Plaintiffs' Fourth Amended Complaint ("Complaint") (DE 102) and Defendant MG Freesites Ltd., d/b/a Pornhub.com ("Freesites") Motion to Dismiss Fourth Amended Complaint (DE 104), pursuant to Federal Rule of Civil Procedure 12(b)(6). Limestone contends that Plaintiffs' Complaint fails to allege that Defendant Collins Murphy ("Murphy") was acting within the course and scope of his employment when he allegedly committed tortious acts against Plaintiffs; and therefore, Limestone cannot be held vicariously liable for Murphy's actions under Plaintiffs' first four causes of action (First Cause of Action - Invasion of Privacy – Wrongful Intrusion upon Private Affairs, Second Cause of Action - Invasion of Privacy – Wrongful Publicizing of Private Affairs, Third Cause of Action - Invasion of Privacy – Wrongful Appropriation of Personality (collectively "Invasion of Privacy Torts"), and Fourth Cause of Action - Intentional Infliction of Emotional Distress).

Equally, Freesites contends Plaintiffs fail to allege any unlawful conduct or facts to support their Invasion of Privacy Torts, intentional infliction of emotional distress, or agency and

1

conspiracy claims against it. Further, Freesites claims it is immune from liability for all of Plaintiffs causes of action under Section 230 of the Communications Decency Act ("CDA"); and therefore, Freesites should be dismissed from this case.[1] Plaintiffs submitted Responses in Opposition to these motions. (DE 114, 115.) Defendants submitted Replies. (DE 118, 119.) After reviewing the motions, memoranda submitted, and the record, the Court grants Limestone's Partial Motion to Dismiss and grants, in part, and denies, in part, Freesites' Motion to Dismiss for the reasons stated herein.

## BACKGROUND

As alleged by the Plaintiffs, on October 5, 2012, the Bellarmine University Knights field hockey team traveled to Gaffney, South Carolina, to face the Limestone women's field hockey team. Upon arrival, Limestone agents directed Plaintiffs to a men's locker room, which was designated for their use before and after the game. While in the subject locker room, Plaintiffs showered and changed clothes such that they were in a state of nudity for periods of time. Murphy, a Limestone employee, secretly placed a video camera in the subject locker room prior to Plaintiffs' arrival on campus and video recorded Plaintiffs without their knowledge or consent, while they were in a state of nudity.

---

[1] Freesites claims immunity under Section 230 of the CDA, which protects "computer service providers" from liability arising from content made available on their platforms by third party users acting as "information content providers." See 47 U.S.C.A. § 230. The protection claimed here is an affirmative defense, which does not justify dismissal under Rule 12(b)(6). See Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir. 2003) (finding that § 230 is an affirmative defense and noting that "[a]ffirmative defenses do not justify dismissal under Rule 12(b)(6) . . . ."); see also, Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, *or the applicability of defenses*.") (emphasis added). Since Freesites brings this motion pursuant to Rule 12(b)(6), Fed. R. Civ. P., this Court will evaluate the motion accordingly and will not convert the motion to a judgment on the pleading to consider Freesites' immunity defense at this stage.

Plaintiffs allege Murphy had knowledge of sporting events on campus and access to athletic facilities, with Limestone's knowledge and consent. During the course of his employment with Limestone, Murphy secretly recorded multiple women changing clothes and taking showers in locker rooms between September 2012 and October 2013. At some point thereafter, the recording of the Plaintiffs was uploaded to various pornographic websites, including Freesites, which operates the website Pornhub.com. On October 10, 2019, the Gaffney Police Department opened an investigation into the illegal video recordings which took place on Limestone's campus, and the investigation remains ongoing. Plaintiffs filed suit on March 4, 2020, alleging several State law claims against multiple defendants including Murphy.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. See Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id. To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted).

While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]' 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

If the facts as presented in this case are true and accurate, the events described in the complaint are egregious, immoral, and despicable. However, at the 12(b)(6) stage, the Court is empowered not to rule on the merits of a claim or to pass judgment on the facts alleged. Rather, the Court's function here is to determine the legal sufficiency of a complaint based on the applicable rules, procedures, and appropriate laws.

### A. Vicarious Liability against Limestone

Limestone argues that the Complaint is deficient because Plaintiffs fail to allege "that Murphy acted within the course and scope of his employment when he allegedly videoed the Plaintiffs surreptitiously in Limestone's locker room." (DE 102-1, p. 6.) Limestone contends that "Plaintiffs must show that Murphy's tortious actions themselves were 'reasonably necessary to accomplish the purpose of his employment and in furtherance of the master's business' (sic) to establish such liability." (DE 102-1, p. 10.) (quoting Armstrong v. Food Lion, Inc., 371 S.C. 271, 639 S.E.2d 50 (S.C. 2006). Limestone is correct as to South Carolina law and the implausibility of Murphy videotaping Plaintiffs while they were fully nude, or in various stages of undress as

4

being in the course and scope of his employment with Limestone based on Plaintiffs' allegations. See Park v. Southeast Serv. Corp., 771 F. Supp. 2d 588 (D.S.C. 2011) (ruling on 12(b)(6) that "[p]laintiff has not submitted to the court a plausible argument that [employee]'s decision to video record [p]laintiff using the restroom was an act committed in furtherance of his employment.") Under South Carolina law, "the act of a servant done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefor." Armstrong v. Food Lion, Inc., 639 S.E.2d 50, 53, 371 S.C. 271, 276 (S.C. 2006). The Complaint's allegations (which are incorporated and reasserted in each cause of action) allege *inter alia* that Limestone hired Murphy as its intramural/summer conference director. (DE 99, ¶ 26.)  "As intramural/summer conference director, Defendant Murphy, had knowledge of sporting events on campus and had access to athletic facilities, such as the subject locker room, with Limestone College's knowledge and consent." (DE 99, ¶ 31.)

> Defendant Murphy, in his capacity as an employee and agent of Defendant Limestone, was given access to and/or control over the locker room facilities at Limestone. Utilizing that access, Defendant Murphy placed a hidden video camera in Defendant Limestone's locker room and captured video and images of the Plaintiffs their teammates, and other student athletes from around the nation, all while they were fully nude, or in various stages of undress.

(DE 99, ¶¶ 61, 62.)  Plaintiffs' allege "Defendant Murphy was acting within the scope of his employment when entering, or accessing the women's locker rooms, and thus Defendant Limestone was able to control or supervise his conduct." (DE 99, ¶ 105.)  This conclusory statement is offset by Plaintiffs' allegation that "[t]he secret and unauthorized videotaping by Defendant Murphy was motivated by the joint venture partnership between Defendant Murphy and Defendants Pornhub and xHamster respectively." (DE 99, ¶ 66.)  Furthermore, Plaintiffs allege that Murphy's employment with Limestone ended in 2014 and that in 2019 Murphy

5

uploaded the recordings to pornographic websites and gained an income from the content he provided on his accounts on the Pornhub and xHamster websites. (DE 99, ¶ ¶ 33, 34, and 42.) These allegations taken as true do not allow the Court to draw the reasonable inference that Murphy's tortious acts were in furtherance of Limestone's business to invoke vicariously liability.

> A plaintiff seeking recovery from the master for injuries must establish that the relationship existed at the time of the injuries, and also that the servant was then about his master's business and acting within the scope of his employment. *Id.* An act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and in furtherance of the master's business. *Id*. . . . .
>
> The act of a servant done to effect some independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefor.

Armstrong at 52-53.  Accordingly, since Plaintiffs Complaint is silent regarding whether the scope of Murphy's employment included videotaping or recording of athletes and given the fact that the Complaint affirmatively alleges Murphy's videotaping was in furtherance of an independent joint venture, the Court must find that Plaintiffs have not pled sufficient facts or stated plausible claims for relief for the Invasion of Privacy Torts and Intentional Infliction of Emotional Distress against Limestone.

### B. Plaintiffs' claims against Freesites

Freesites contends that Plaintiffs fail to allege any unlawful conduct against it under Plaintiffs' Invasion of Privacy Torts and Intentional Infliction of Emotional Distress.  Plaintiffs' Complaint does not allege Freesites placed a hidden video camera in Defendant Limestone's locker room and captured video and images of the Plaintiffs.  Rather, Plaintiffs allege:

> [Freesites] endorses, solicits, coordinates, and participates in the creation of sexually lewd content and monetizes its creation . . . [and it] . . . schemed to increase their financial positions by enlisting others to create sexually deviant content and shared the revenues such content generated with the providers . . . [and] . . . [t]his scheme created a joint venture partnership and civil conspiracy between Defendants (and the Defendant Murphy) . . . [and] . . . [t]he secret and unauthorized videotaping

>by Defendant Murphy was motivated by the joint venture partnership between Defendant Murphy and Defendants Pornhub and xHamster respectively.

(DE 99, ¶ ¶ 17, 47, 48, and 66.)  Plaintiffs' suggest that these allegations support a plausible claim to hold Freesites liable for the acts and misdeeds of Murphy because an agency relationship exists between Freesites and Murphy; therefore, sufficient facts are pled to survive a 12(b)(6) motion. This Court disagrees.  In South Carolina, "[a] principal may be held liable to a third person in a civil lawsuit for the fraud, deceit, concealment, misrepresentation, negligence, and other omissions of duty of his agent which occur in the scope of the agent's employment, even when the principal did not authorize, participate in, or know of such misconduct or even when the principal forbade or disapproved of the act in question."  Spence v. Spence, 368 S.C. 106, 126, 628 S.E.2d 869, 879 (S.C. 2006).  "The test to determine agency is whether or not the purported principal has the right to control the conduct of his alleged agent."  Fernander v. Thigpen, 278 S.C. 140, 144, 293 S.E.2d 424, 426 (S.C. 1982).  Even when reviewing the Complaint in a light most favorable to Plaintiffs, this Court cannot to draw a reasonable inference that Freesites had any control over Murphy when he recorded Plaintiffs.  Moreover, even if the financial arrangements between Freesites and Murphy as alleged by Plaintiffs equaled control (which is implausible), this control occurred several years after the recordings were made and, therefore, would only insulate Plaintiffs' Second Cause of Action – Invasion of Privacy – Wrongful Publicizing of Private Affairs.  Accordingly, Freesites' motion to dismiss Plaintiffs Invasion of Privacy Torts and Intentional Infliction of Emotional Distress claims (Causes of Action One, Two, Three, and Four) is granted.

As to Plaintiffs' Negligent Monitoring, False Light, Civil Conspiracy, and 18 U.S.C. § 1962(c) and 1964(c) claims (Causes of Action Seven, Eight, Nine, and Eleven), the Plaintiffs have

pled sufficient facts and stated plausible claims for relief against Freesites; therefore, Freesites motion to dismiss under Rule 12(b)(6) is denied.[2]

## **CONCLUSION**

For the foregoing reasons, it is Ordered that Limestone's Partial Motion to Dismiss (DE 102) is granted, and Freesites' Motion to Dismiss (DE 104) is granted, in part, and denied, in part, as provided herein.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

June 16, 2021
Greenville, South Carolina

---

[2] Although Freesites claims that the title to Plaintiffs Eleventh cause of action does not list Freesites, looking to Plaintiffs Complaint in its entirety to include all of the allegations in the Eleventh cause of action and applying the 12(b)(6) legal standard, the Court finds that Plaintiffs have alleged sufficient facts to withstand Freesites motion to dismiss.