**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| Jane Does 1-9, | |
| Plaintiffs, | Case No.: 7:20-cv-00947-JD |
| vs. | |
| Collins Murphy, Limestone College, MG Freesites, LTD., d/b/a Pornhub.com, and Hammy Media LTD. d/b/a Xhamster.com, | **HAMMY MEDIA LTD.'S OPPOSITION TO PLAINTIFFS' *FOURTH* MOTION TO AMEND THE COMPLAINT** |
| Defendants. | |

<u>**INTRODUCTION**</u>

In this, their <u>***fourth***</u> motion to amend, filed some 20-months after the filing of their original complaint, Plaintiffs seek to <u>***quadruple***</u> the number of defendants – including the *addition* of seven new foreign corporations located in Cyprus, Luxembourg, Ireland, and the British Virgin Islands – and add entirely new causes of action (while dropping others), presumably in recognition of the weakness of claims made in their first four complaints.

Pleadings are not intended to be a game of whack-a-mole and plaintiffs, while generally permitted wide latitude to amend their complaints, are nonetheless *not* allowed to utilize the process as a way to file serial complaints hoping that, at some point, they'll "get it right."  The events underlying Plaintiffs' complaint took place in 2012 and 2019 and nothing has happened in the intervening time since Plaintiffs filed their original complaint – either factually or legally – that would provide Plaintiffs with a legitimate need to amend their complaint yet again.

Instead, Plaintiffs appear to be casting about with an ever-widening circle of potential defendants (each an additional step removed from any actual wrongdoing) and shifting theories of

liability (all based on the same underlying facts), in the hope that they will find some magic combination that will push them past the minimum pleading requirements of plausibility. And, surely, if the *fifth* time is not the charm, Plaintiffs will seek a sixth, and so on.

And, yet, viewing the proposed *Fifth* Amended Complaint, it is clear that the fifth time is not the charm: the new claim Plaintiffs seek to assert against Hammy Media, Ltd. under the Trafficking Victims Protection Act cannot survive a motion to dismiss and is, for that reason, futile; the proposed new Defendants are not subject to personal liability,[1] nor is there a legal basis to find them liable for the acts complained of; and large swaths of the proposed *Fifth* Amended Complaint serve no actual purpose, but rather are designed to be scandalous and prejudicial and would not survive a motion to strike.

For all these reasons and, as discussed in detail below, Plaintiffs' Motion for Leave to Amend their Complaint for a fourth time should be denied.

## PROCEDURAL HISTORY

Plaintiffs filed their original complaint in this action on March 4, 2020, naming four defendants and setting out eight causes of action (including five sounding against Hammy). Two weeks later, on March 18, 2020, Plaintiffs filed an amended complaint, as of right. This complaint also named four defendants and contained eight causes of action.

Four months later, on July 14, 2020, Plaintiffs filed a motion to amend their complaint a

---

[1] Hammy Media Ltd. ("Hammy") is itself a Cypriot company and, as such, contends that it is not subject to personal jurisdiction in South Carolina. (Indeed, another Federal District Court previously found that Hammy's website, XHamster.com, was not aimed at any specific state within the United States and, therefore, Hammy was not subject to personal jurisdiction there. *See Fraserside IP L.L.C. v. Hammy Media, Ltd.*, 2012 U.S. Dist. LEXIS 5359, *25 (N.D. Iowa Jan. 17, 2012)("Although xHamster's website is both commercial and interactive, as an Iowa district court noted in a case presenting similar facts, such a website "is arguably no more directed at Iowa than at Uzbekistan."). Hammy similarly intends to raise the lack of personal jurisdiction in its response to the Complaint here, once the Court has determined which complaint is the operative pleading. Hammy flags this issue for the Court now, in its first substantive filing, lest there be a suggestion that Hammy has inadvertently waived its right to object to personal jurisdiction.

second time, which this Court allowed on July 16, 2020.

On September 14, 2020, Defendant MG Freesites, Ltd. ("Pornhub") moved to dismiss the amended complaint, arguing primarily that Plaintiffs' claims were barred by Section 230(c)(1) of the Communications Decency Act of 1996 (codified at Title 47, Section 230, United States Code)("Section 230").  In response, on October 4, 2020, Plaintiffs filed yet another motion to amend its complaint, this time seeking to add two additional causes of action.

On October 27, 2020, this Court allowed Plaintiffs' motion, in part because the Court had not yet issued a scheduling order (meaning the motion was not past a Court-set deadline for such motions) and in part because the new causes of action sounded against not only Pornhub, but also against the "Nonobjecting Defendants," including Hammy.  Hammy, of course, had not objected to Plaintiffs' motion because, as of October 4, 2020, Hammy had not been served in this matter. On November 3, 2020, Plaintiffs filed their *Third* Amended Complaint.

On November 9, 2020, this Court issued a scheduling order, setting January 25, 2021 as the deadline for motions to join other parties and amend the pleadings.

On November 17, 2020, Pornhub filed a Motion to Dismiss the Third Amended Complaint and on December 1, 2020, Defendant Limestone College ("Limestone") filed a Motion to Partially Dismiss the Third Amended Complaint.

On December 9, 2020, Plaintiffs filed a Third Motion to Amend, seeking to file a Fourth Amended Complaint.  On the same date, an amended scheduling order was entered, extending to May 25, 2020 the deadline for motions to join other parties and amend the pleadings.

On January 22, 2021, this Court allowed Plaintiffs' Third Motion to Amend and on January 27, 2021, Plaintiffs filed their Fourth Amended Complaint, which included claims against four defendants and eleven causes of action (including eight sounding against Hammy).

On February 10, 2021, Pornhub moved to dismiss the Fourth Amended Complaint, arguing again that Plaintiffs' Claims were barred under Section 230. Once again, Hammy did not respond to the Fourth Amended Complaint because it had not yet been served with the same.

On May 27, 2021, this Court allowed Plaintiffs' Third Motion to Amend and, at the same time, again entered an amended scheduling order, this time extending the deadline for motions to join other parties and amend the pleadings to July 24, 2021.

On June 15, 2021, Plaintiffs filed their Fourth Amended Complaint and on June 16, 2021, this Court denied much of Pornhub's motion to dismiss. In denying the motion, however, this Court did *not* find that Pornhub was not entitled to dismissal pursuant to Section 230, but rather that Pornhub had utilized the wrong vehicle (a motion under Rule 12(b)(6) as opposed to a motion under Rule 16(c)) to assert its Section 230 defense.

On August 4, 2021, this Court entered another amended scheduling order, providing that any motions to join other parties and to amend the pleadings shall be filed by July 25, 2022. It should be noted that the Court entered this amended scheduling order (and the previous amendments) in response to so-called Consent Motions. Having not yet been properly served in this action, though, Hammy had no means by which it could have consented to (or opposed) these motions.

On September 29, 2021, Hammy was properly served with the Complaint under the Hague Convention.

On November 9, 2021, Plaintiffs filed their Fourth Motion to Amend the Complaint. The proposed Fifth Amended Complaint adds eleven (11) new potential defendants, including the addition of seven new foreign corporations located in Cyprus, Luxembourg, Ireland, and the British Virgin Islands, three new individuals, and one new domestic corporation. With respect to

Hammy, the Fifth Amended Complaint drops four previously-alleged causes of action and adds one new cause of action.

## RELEVANT FACTS

There is little doubt but that, if the facts as alleged by the Plaintiffs are true, the actions of Defendant Collins Murphy ("Murphy") are appalling. There is also no doubt, however, that Hammy is not legally liable for the actions of Murphy and others. For the purposes of the present Opposition, the relevant facts are as follows.

Plaintiffs allege that, in October of 2012, they travelled with their college field hockey team to Limestone College to play the Limestone women's field hockey team. Fifth Amended Complaint, ¶72. Plaintiffs further allege that Murphy, then an employee of Limestone, surreptitiously videotaped them while they were in a Limestone locker room showering and changing their clothes. *Id.* ¶¶75-78.

According to Plaintiffs, some seven (7) years later, in October of 2019, these surreptitious recordings were uploaded to "countless" websites, including xHamster. *Id.* at 82.

The xHamster website hosts in excess of 7,895,000 videos. *See* Declaration of Mardiros Haladjian, ¶3. Users of the website upload approximately 1,000 videos a day. *Id.*

In November of 2019, Hammy was contacted by Brian Blanton, a Detective with the Gaffney Police Dept. Haladjian Declaration ¶4. Detective Blanton informed Hammy – for the first time – that the surreptitiously-recorded videos had been uploaded by a user to the xHamster website. *Id.* Detective Blanton first requested information about the uploader of the video and Hammy immediately provided him with all of the information that it possessed. *Id.* at ¶5. Detective Blanton then requested that he be provided access to the videos so that they could be downloaded for evidence and, following such downloading, that the videos be taken down. *Id.* Hammy complied with each of these requests. *Id.* at ¶6. Prior to being contacted by Detective

Blanton, Hammy was unaware of the existence of the videos or that they had been recorded without consent. *Id.* at ¶7.

Somewhat tellingly, although the Fourth Amended Complaint alleged that Murphy himself uploaded the videos to xHamster and received compensation from xHamster for doing so (Fourth Amended Complaint, ¶¶38-42), the proposed Fifth Amended Complaint removes those allegations, alleging instead that "one or more individuals or entities received monetary payment from MindGeek and/or xHamster"[2] for views of the videos of Plaintiffs.[3] Fifth Amended Complaint, ¶89.

In reality, the videos were uploaded to the xHamster website by a user with the username "cwdistribution." Haladjian Declaration, ¶8. At the time the cwdistribution account was created, it was possible for users to upload videos without first going through an identity verification process. *Id.* at ¶9. Hammy does not know the identity of user "cdwdistribution." *Id.* at ¶10. The xHamster website has since been changed so that uploads are accepted only from accounts which have gone through an identity verification process, which includes providing a copy of a government-issued identification. *Id.* at ¶11. Hammy has never paid any compensation of any sort to the user "cwdistribution." *Id.* at ¶12. Hammy has never had any written or verbal communications with the user "cwdistribution." *Id.* at 13.

---

[2] The Fifth Amended Complaint is replete with instances in which Plaintiffs allege that MindGeek "and/or" xHamster did something. MindGeek and Hammy are competitors. They are entirely unrelated corporations that do not work together jointly in any respect. They own and operate completely unrelated websites. Alleging that one or the other of the corporations did something is a bit like alleging that *either* Apple or Google took some action. While it may indeed be true that *one* of those entities did something, alleging that one or the other did so is worse than meaningless – it is an attempt to obfuscate an inability to make well-founded allegations even in the proposed fifth iteration of the complaint.

[3] It is somewhat concerning that Plaintiffs did not at least make these allegations "on information and belief," given that they have no actual factual basis for the allegations, and they are, in reality, not true.

## ARGUMENT

### I.    Standard

"Although leave to amend should be freely given when justice so requires, . . . [a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Oliver v. Bartholomew*, 785 F. App'x 166, 167 (4th Cir. 2019), *quoting Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010).  If an amendment would fail to withstand a motion to dismiss, it is futile. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *Song Chuan Tech. (Fujian) Co. v. Bank of Am.,* 2017 U.S. Dist. LEXIS 34335, at *9 (D.S.C. Mar. 10, 2017).  *See also Woods v. Boeing Co.,* 841 F. Supp. 2d 925, 930 (D.S.C. 2012)("if the well-pleaded facts in the proposed new complaint do not amount to a 'showing' that the plaintiff is entitled to relief, the court should deny a motion for leave to amend.")

Additionally, at least one district court within the Fourth Circuit has found it inappropriate to allow plaintiffs to amend their complaint where "the District Court has already once granted Plaintiffs leave to amend, and Plaintiffs had the benefit of the District Court's Order ruling on the Motion to Dismiss in drafting their Amended Complaint." *Performance Sales & Mktg. v. Co. V.,* 2011 U.S. Dist. LEXIS 171079, at *4-6 (W.D.N.C. May 27, 2011).  As the Court there held, "Rule 15 is not designed to allow a plaintiff to repeatedly amend his or her pleadings in the face of motions to dismiss and/or Court Orders dismissing claims until the plaintiff can "get it right." *See e.g. United States v. Regents of the Univ. of Cal.,* 363 F.3d 398, 404 (5th Cir. 2004). "As Rule 1 of the Federal Rules of Civil Procedure provides, Courts should construe and apply the Federal Rules 'to secure the just, speedy, and inexpensive determination of every action and proceeding.' Fed. R. Civ. P. 1. The Court cannot continue delaying the resolution of this case while Plaintiffs, who are represented by counsel, continue trying to 'get it right.'" *Id.  See also Foman v. Davis*,

7

371 U.S. 178, 182 (1962)(holding that leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

"Leave to amend likewise should not be granted if the amendment will cause undue delay or if the party seeking to amend acted with a dilatory motive." *Sumpter v. Auto Owners Ins. Co.,* 2009 U.S. Dist. LEXIS 138924, at *3 (D.S.C. Sep. 25, 2009*), citing Sandcrest Outpatient Services v. Cumberland County Hospital Systems, Inc.,* 853 F.2d 1139, 1148-49 (4th Cir. 1988).

## II.     The Proposed Cause of Action Under 18 U.S.C. §§1591, 1595 Could Not Survive a Motion To Dismiss And Is Therefore Futile.

It is not at all surprising that Plaintiffs *want* to allege a cause of action under the Trafficking Victims Protection Act, 18 U.S.C., §§1591, 1595 ("TVPA"), given that – if such a claim was supported by the facts – it would be the only cause of action asserted by Plaintiffs against Hammy that could even *conceivably* evade dismissal under Section 230.  But, on the face of the Proposed Fifth Amended Complaint, it is abundantly clear that, even if the amendment were allowed, Plaintiffs would have failed to state a claim upon which relief could be granted.  As such, any amendment is futile and should be denied.

In 2018 (largely in response to the rampant sex trafficking of minors through the website Backpage.com), Congress enacted the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 (FOSTA), Pub. L. No. 115-164, §4, 132 Stat. 1253, 1254 (2018).[4]  FOSTA created a

---

[4] *See* 164 Cong. Rec., at S1860-62 ("[FOSTA] is a narrowly crafted bill that would ensure that Section 230 of the Communications Decency Act does not provide legal immunity to websites like Backpage that knowingly facilitate sex trafficking."); H.R. Rep. No 115-572, at 5 ("general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim").

narrow exemption to Section 230 immunity for civil actions brought under 18 U.S.C. §1595 "if the conduct underlying the charge would constitute a violation of" 18 U.S.C. §1591, which prohibits knowingly engaging in the sex trafficking of minors or sex trafficking that involves force, fraud, or coercion. *See, e.g., Congressional Research Service, Section 230: An Overview* (April 7, 2021), p. 28, available at: https://crsreports.congress.gov/product/pdf/R/R46751.

To state a cause of action under §1591, Plaintiffs would need to allege facts sufficient for the Court to find that Hammy "benefitted from participation in a venture that knowingly assisted, supported, or facilitated Plaintiff[s] being trafficked." *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1249 (S.D. Fla. 2020). Under section 1591, trafficking is causing a person to "engage in a commercial sex act." 18 U.S.C. §1591(a)(1). The statute further defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. §1591(e)(3). And, under §1591, "participation in a venture" means "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. §1591(e)(4).

It is clear on the face of the Proposed Fifth Amended Complaint that Plaintiffs' TVPA claim cannot survive a motion to dismiss. At its most basic level the Complaint does not allege that the Plaintiffs were "trafficked" by Murphy: although Murphy is alleged to have surreptitiously recorded the Plaintiffs while they were in various states of undress, there are no allegations that Murphy caused the Plaintiffs to "engage in a commercial sex act." And, even if the language could somehow be stretched so that undressing constituted a "sex act," there is no one who was given or received anything of value for that "act." Certainly, the Plaintiffs did not receive anything and Hammy did not provide any payments or other compensation to user "cwdistribution," which posted the videos some seven years after they were taken.

9

Additionally, there are no facts alleged to show that Hammy "participated in a venture" whereby it knowingly assisted, supported, or facilitated a violation of §1591(a).  The district court in *J. B. v. G6 Hosp., LLC, 2020 U.S. Dist. LEXIS 151213, \*9* (N.D. Cal. Aug. 20, 2020) provided a useful analysis of the "participation" element:

> courts defining participation under § 1595 have, "in the absence of direct association," required 'a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement." …The Court agrees with this articulation of the constructive knowledge requirement.
>
> Analyzing participation under the tacit agreement standard, Plaintiff fails to adequately allege this element. Plaintiff alleges that "[t]he [Craigslist] advertisements led to minor J.B. being sex trafficked by traffickers and buyers through contacts that were initiated on the Craigslist 'erotic services' advertising section of their website." …But an allegation of but-for causation does not establish that Craigslist tacitly agreed to the sex trafficking of Plaintiff or others. Plaintiff also alleges that "Defendant Craigslist knew that its erotic services section was well known to commercial sex customers throughout the United States as a place to easily locate victims for as commodities [sic], unpunished, anonymous, sexual abuse of children."  …However, this allegation necessarily suggests that Craigslist enters into tacit agreements with all traffickers (or even all posters) that use its website, and there is no factual basis pled that makes this claim plausible. To conclude otherwise would mean that "all web-based communications platforms have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public," lest such platforms be deemed to have participated in the venture. …The Court agrees with Craigslist that there is no indication that Congress intended to create such a duty, or that it would be reasonable in light of the volume of posts generated by third parties daily.

*Id.*

In a case involving facts considerably more egregious and detailed than those presented here, another federal district court also found that the class action plaintiffs – minors who appeared in sexually explicit photos and videos that were posted by users to the Reddit.com website – failed

to state a claim under the TVPA which would allow them to avoid Section 230 immunity. *Doe v.*

*Reddit*, 2021 U.S. Dist. LEXIS 129876 (C.D. Cal. July 12, 2021).  In *Doe*, the Plaintiffs alleged,

among other things, that:

> An ex-boyfriend of Jane Doe No. 1 posted sexually explicit images and videos of Jane Doe No. 1 from when she was 16 years old on websites, including Reddit, without her consent. …Each time that Jane Doe No. 1 reported the CSEM of herself to Subreddit moderators, it would take days for the CSEM to come down, only for it to reappear within minutes. …When she had her ex-boyfriend's account banned, he was able to make a new account and post the [child sexual exploitation material] CSEM anew.

> Jane Does Nos. 2-6 and John Does Nos. 2, 3, and 5 are the parents of daughters who are below the age of majority under United States and California law.  Each of their daughters has had CSEM images or videos of them posted on Reddit and have had to repeatedly request that various Subreddit moderators and Reddit administrators remove the CSEM, often only to have the CSEM reappear shortly after it is removed. …Plaintiffs allege that the Reddit knowingly facilitates the posting of CSEM and benefits from the CSEM in the form of increased advertising revenue and subscription fees by premium Reddit users. …Plaintiffs allege that Reddit facilitates the posting of CSEM to achieve these benefits in a variety of ways, including (1) allowing the creation of a number of Subreddits that target users seeking CSEM… (2) rarely removing CSEM when it is reported by users…; (3) failure to verify users' age, … (4) reliance on poorly trained, volunteer moderators to manage Subreddits, id. … (5) having ineffective and inefficient administrators managing content moderation for Reddit, … (6) failing to take steps to prevent banned users from creating new user accounts on the website… (7) failing to report all CSEM to the National Council for Missing and Exploited Children ("NCMEC"), … and (8) failing to use PhotoDNA, an automated means of identifying images of CSEM previously identified to NCMEC, until 2019, and at that point only using PhotoDNA minimally.

*Id.* at *3-4.

Despite these detailed allegations, the Court there found that Plaintiffs had failed to allege

facts sufficient to strip Reddit of its Section 230 immunity because the allegations were insufficient

to show that Reddit had "participated in a venture" with its users.  *Id.* at *14 ("The Court… does

not see any indication from the facts alleged that Plaintiffs would be able to state a claim under §1591.")

And, finally, even if Plaintiffs had alleged a commercial sex act, or participation in that act, it has failed to adequately allege that Hammy had knowledge that it was participating in such an act. In lieu of actual knowledge, Plaintiffs allege constructive knowledge, alleging that Hammy should have known, generally, that users post nonconsensual videos and, as such, should have known that the videos at issue here were nonconsensual. Such allegations are insufficient. *See, e.g., Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1249 (S.D. Fla. 2020)("Plaintiff has not alleged facts that would plausibly establish that Defendants knowingly participated in the sex trafficking venture involving her; she alleges that Defendants knew that other sex trafficking incidents occurred on Kik. This does not satisfy FOSTA's requirement that the conduct underlying the claim violate 18 U.S.C. § 1591. For this reason, Plaintiff's claims against Defendants are barred by the immunity provisions of the CDA, 47 U.S.C. § 230(e), and the Complaint, therefore, must be dismissed." *See also* H.R. Rep. No 115-572, at 5 ("general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim").

Because Plaintiffs' TVPA claim cannot survive a motion to dismiss, Plaintiffs' motion for leave to amend the complaint to add such a claim is futile and should be denied.

### III.    The Proposed Addition of Seven New Foreign Corporate Defendants Would Be Both Futile and Prejudicial.

The proposed Fifth Amended Complaint seeks to add eleven (11) new potential defendants, including seven new foreign corporations located in Cyprus, Luxembourg, Ireland, and the British Virgin Islands; three new individuals; and one new domestic corporation. On the face of the

proposed complaint, however, such an amendment would be futile both because there are no allegations from which the Court could conclude that it has jurisdiction over the foreign defendants and because the complaint fails to allege facts sufficient to establish that the newly-named defendants were the proximate cause of Plaintiffs' injury. Additionally, the delay that would be occasioned by allowing the addition of eleven new defendants would be unduly prejudicial to the resolution of this litigation.

Preliminarily, it bears noting that – even though this case was filed some 21 months ago – it has not even proceeded past the pleading stage. The addition of eleven new defendants will require each of those defendants to be served – seven of which will need to be served under the Hague Convention – before the case even advances, yet again, to dispositive motions under Rule 12. If past is prologue, this case will easily be more than three years old before the pleading stage is even complete. Such a delay is unnecessary and unduly prejudicial to the parties.

More to the point, with respect to the new defendants alleged to be associated in one way or another with Hammy, it is clear on the face of the Proposed Fifth Amended Complaint both that this Court lacks jurisdiction over such defendants and the Proposed Complaint fails to state a claim against any of them.

Specifically, the Proposed Fifth Amended Complaint names four foreign corporations – Trafficstars, Ltd. (a Cypriot company); Wisebits, Ltd.(a Cypriot company); XHamster IP Holdings, Ltd. (a British Virgin Islands company); and Wisebits IP, Ltd. (a Cypriot company) – that Plaintiffs allege are related to Hammy and should be added to the present action (the "Proposed Foreign Entities"). Proposed Fifth Amended Complaint, ¶¶32-35.

Tellingly, there is not a single fact alleged in the proposed complaint that would support an assertion of personal jurisdiction over these foreign entities. Instead, the Proposed Fifth

Amended Complaint simply identifies these separate, independent legal entities and then lumps them together with Hammy, assuming that jurisdiction is proper solely because these entities allegedly have some connection to Hammy, which runs the xHamster website. Putting aside the fact that the operation of the xHamster website is an insufficient basis upon which to assert jurisdiction even as to Hammy,[5] even if this were not the case, the Plaintiffs would be required to specifically state a basis for personal jurisdiction over *each* of the defendants, not simply by aggregating them all under the term "xHamster," as the proposed complaint attempts. Proposed Fifth Amended Complaint, ¶36. "Each defendant's contacts with the forum state must be assessed individually rather than simply viewing them collectively." *Calder v. Jones*, 465 U.S. 783, 790 (1984). *See also Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) ("The Minnesota court also attempted to attribute State Farm's contacts to Rush by considering the 'defending parties' together and aggregating their forum contacts in determining whether it had jurisdiction. The result was the assertion of jurisdiction over Rush based solely on the activities of State Farm. Such a result is plainly unconstitutional."); *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Memari v. Ply Gem Prime Holdings*, 2013 U.S. Dist. LEXIS 206444, at *3 (D.S.C. Aug. 6, 2013)("Each defendant's contacts with the forum State must be assessed individually"); *Christian World Adoption, Tomilee Harding, Robert L. Harding, & Christian World Found. v. Hawley & Assocs.,* 2012 U.S. Dist. LEXIS 204881, at *4 (D.S.C. Nov. 20, 2012)(same).

    Oddly, Plaintiffs' proposed complaint attempts to ground jurisdiction in 28 U.S.C. §1596, a section of the TVPA which deals with jurisdiction under the ***criminal*** portions of the statute, not the civil portions of the statute. This, alone, is reason enough to deny Plaintiffs' motion. Even

---

[5] As is noted above, Hammy itself objects to personal jurisdiction – and it will move for dismissal on that basis once the Court has determined which complaint is the operative pleading to be responded to.

assuming, though, that Plaintiffs (if they were given a sixth try to get things right), would try to ground personal jurisdiction in either the South Carolina long-arm statute or Fed. R. Civ. P. 4(k)(2), the proposed complaint would still lack a single allegation sufficient for the Court to assert jurisdiction over the Proposed Foreign Entities.

Although a determination of personal jurisdiction under a state's long-arm statute is often viewed as a two-step process – consideration of whether the state statute authorizes an exercise of jurisdiction, followed by a constitutional due process analysis – where, as here, the state's long-arm statute extends to the limits of the United States Constitution's Due Process Clause, the two inquiries merge into one.  *See, e.g., Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d 273, 277 (4th Cir. 2009)(where state's "long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry"); *Parker v. Asbestos Processing, LLC,* 2014 U.S. Dist. LEXIS 37336, at *7-8 (D.S.C. Mar. 21, 2014)("South Carolina courts have held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution. … As a result, this court's statutory inquiry merges with its constitutional inquiry, and the court turns to the constitutional question of whether the moving Defendants had 'minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.')(citations omitted).

Under Fed. R. Civ. P. 4(k)(2), the Court conducts the same constitutional analysis, only applied to the entire country as opposed to a single state.  *See, e.g., Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 215 (4th Cir. 2002)("Rule 4(k)(2) allows a federal court to assert jurisdiction in cases 'arising under federal law' when the defendant is not

subject to personal jurisdiction in any state court, but has contacts with the United States as a whole.")

"To satisfy the constitutional due process requirement, a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp.* at 277 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "The minimum contacts test requires the plaintiff to show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "This test is designed to ensure that the defendant is not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.' …It protects a defendant from having to defend himself in a forum where he should not have anticipated being sued." *Id.* (citations omitted).

The United States Supreme Court has reaffirmed that the due process inquiry must focus "on the relationship the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283 (2014)(citations omitted). As the *Walden* court explained:

> For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant in this case. First, the relationship must arise out of contacts that the 'defendant himself' creates with the forum State. …We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. …Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Id.* at 1121-22.

The Fourth Circuit has "synthesized the due process requirements for asserting specific personal jurisdiction in a three-part test in which 'we consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'"   *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009)(citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 712 (4th Cir. 2002) (quotations and citations omitted).

In the Proposed Fifth Amended Complaint, Plaintiffs allege that: Trafficstars Ltd. is a Cypriot company that manages the advertising placement for Hammy's websites (¶32); Wisebits Ltd. is a Cypriot company providing IT services to Hammy's websites (¶33); xHamster IP Holdings Ltd. is a British Virgin Islands company that holds xHamster's trademark (¶34); and Wisbits IP Ltd. is a Cypriot company that is the parent company of xHamster IP Holdings Ltd. (¶35).  Even assuming these allegations to be true, they amount to nothing more than allegations that these four foreign corporations (each with its own separate legal identity) has some business relationship to Hammy (itself a foreign corporation).  The allegations say nothing about these companies' connections to South Carolina or the United States; how Plaintiffs' claims arise out of those companies directing their actions at South Carolina or the United States; or how an exercise of jurisdiction over those companies could possibly comport with the constitutional requirements of due process.

In sum, Plaintiffs' allegations provide no facts whatsoever from which this Court could conclude that personal jurisdiction could be exercised over the Proposed Foreign Entities and, as such, the proposed amendment to add them as defendants would be futile.

17

Finally, the utter lack of substantive allegations suggesting ***any*** connection between the Proposed Foreign Entities and Plaintiffs' claims suggests that the proposed amendment is not brought in good faith. *See, e.g., Jiangmen Kinwai Furniture Decoration Co. v. IHFC Props., LLC,* 780 F. App'x 1, 4 n.2 (4th Cir. 2019)(upholding district court's denial of motion to amend where plaintiff attempted to add allegations against defendants' "corporate affiliates," and the Appeals Court noted that "the new allegations about IHFC's corporate affiliates had at least a whiff of bad faith about them.")  This Court might reasonably ask, for example, how two foreign corporations that allegedly hold xHamster's trademarks were the proximate cause of Murphy surreptitious recording Plaintiffs in a state of undress and then posting videos of the same to "countless" websites including xHamster.

For these reasons as well, the claims against the Proposed Foreign Entities fail to state a claim upon which relief may be granted and the addition of such parties would be futile, resulting in needless and prejudicial delay.

IV.     **Large Swaths of the Proposed Fifth Amended Complaint Are Immaterial, Impertinent, and Scandalous, Serving No Legitimate Purpose, and Would Not Survive a Motion to Strike.**

Finally, the Court should deny Plaintiffs' Fourth Motion to Amend because the proposed complaint adds, for the first time, large swaths of allegations that quite clearly are irrelevant to Plaintiffs' claims, but which are included solely in an attempt to publicly smear one or more of the defendants.  Just as a motion to amend should be denied where the new claims would not survive a motion to dismiss, it follows that a motion to amend should be denied where the new factual allegations would not survive a motion to strike.

Fed. R. Civ. P. 12(f) permits the Court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "'Immaterial' matter is that

which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." …'Scandalous' includes allegations that cast a cruelly derogatory light on a party to other persons." *Baker v. Boeing Co.*, 2020 U.S. Dist. LEXIS 175837, at *13-14 (D.S.C. Sep. 2, 2020), *quoting CTH 1 Caregiver v. Owens*, 2012 U.S. Dist. LEXIS 90998, 2012 WL 2572044, at *5 (D.S.C. July 2, 2012). "The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." *Id.* (referencing Wright & Miller 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2011)). *See also Sanders v. Reg'l Fin. Corp.*, 2017 U.S. Dist. LEXIS 110147, at *4-5 (D.S.C. July 14, 2017)(striking allegation in plaintiffs' discrimination and retaliation complaint that a co-worker "suggested her password should be 'BigDicks1824' and wrote it down on her email login information," where the incident had allegedly occurred years before the complaint was filed and had not been presented first to the EEOC: "Defendant argues that [the allegations] are therefore irrelevant and immaterial to Plaintiff's claims and were included in the complaint for the exclusive purpose of attempting to harass and embarrass Regional. …The court agrees that the offending allegation and exhibit is impertinent and scandalous and should be stricken from the complaint.")

Here, Plaintiffs seek to add an entire section to their complaint entitled "Background," which is separate and distinct from the proposed complaint's "Facts" section (*see* Proposed Fifth Amended Complaint, ¶¶38-70), which consists almost entirely of allegations unrelated to Plaintiffs' claims which are clearly included solely to cast a derogatory light on defendants in a publicly-available document.

Although it is true that the vast majority of these new and scandalous allegations are directed at MindGeek and not Hammy, it is also true that the Proposed Complaint attempts to blur the lines between the defendants and tar Hammy with allegations that are not only unrelated to Plaintiffs' claims, but which are also unrelated to the Hammy at all. Indeed, the potential prejudice to Hammy would be so great that, if the Court were to allow them to be added to be added to the complaint, the prejudice would be so great as to necessitate the filing of a motion to sever under Fed. R. Civ. P. 21, which allows the Court to add or a drop a part as justice requires. One of the primary factors to be considered in such a motion is the potential prejudice to the moving party if such a motion is not granted. *See, e.g., Black v. Safeco Ins. Co. of Am.,* 2019 U.S. Dist. LEXIS 160483, at *15 (D.S.C. Sep. 20, 2019); *Sweeney v. BI-LO, LLC*, 2020 U.S. Dist. LEXIS 143814, at *3 (D.S.C. Aug. 11, 2020).

Because large portions of the proposed complaint would be prejudicial to the defendants if permitted to be added and because such allegations would be properly subject to a motion to strike, the addition of such allegations is futile and should be denied.

## CONCLUSION

For the reasons stated hereinabove, Plaintiffs' Motion for Leave to File a Fourth Amended Complaint should be denied.


Respectfully Submitted,


**/s/ Hannah Rogers Metcalfe**
Hannah Rogers Metcalfe, Fed ID. 9943
Metcalfe & Atkinson, LLC
1395 South Church Street
Greenville, South Carolina 29605
(864) 214-2319

Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com


Valentin D. Gurvits (*pro hac vice*)
Frank Scardino (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com
*Attorneys for Defendant Hammy Media LTD*

December 7, 2021
Greenville, South Carolina