**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | |
|---|---|
| JANE DOES 1-9,<br><br>　　　　Plaintiffs,<br>　v.<br><br>COLLINS MURPHY, LIMESTONE COLLEGE, MG FREESITES, LTD., d/b/a PORNHUB.COM, and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM,<br><br>　　　　Defendants. | CASE NO. 7:20-CV-00947-JD |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSES IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND [ECF 160,161,162]**

With the exception of Defendant Collins Murphy, each of the currently named Defendants has opposed Plaintiffs' Motion to Amend. Limestone University opposes the amendment on grounds that one of the Defendants sought to be added, Dr. Walter Griffin, passed away a few weeks before Plaintiffs filed their Motion to Amend and therefore is not subject to suit.

The objections made by the Pornsite Defendants (MG Freesites, Ltd. and Hammy Media, Ltd.) are essentially the same and reflect three basic arguments:

1. Plaintiff has already been granted three amendments;

2. The proposed amendment is untimely and would result in prejudicial delay;

3. The Plaintiff seeks to add additional parties and an additional cause of action that is futile.

4. The proposed amendment contains a lengthy narrative of new factual allegations.

For the reasons stated below, none of these objections are sufficient to merit denial of the proposed amendment, apart from the addition of Dr. Griffin personally as a defendant.

I. **PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THEIR COMPLAINT BECAUSE THEIR CLAIMS AGAINST DR. GRIFFIN ARE NOT EXTINGUISHED BY HIS PASSING.**

Limestone is correct in its assertion that an action cannot be brought against an individual who predeceases the filing of the Complaint. See, e.g. *Washington v. Baltimore Police Dep't*, 457 F. Supp. 3d 520, 546 (D. Md. 2020). Plaintiffs also agree that Fed.R.Civ.P. 25 does not provide a mechanism for substitution of a representative for a deceased individual not already a party. *Id*.; *Darmanchev v. Roytshteyn*, 234 F.R.D. 78 (E.D. Pa. 2005). Accordingly, dismissal of Dr. Griffin is appropriate.

However, this does not mean that Plaintiffs claims arising from Dr. Griffin's negligence are lost and it certainly does not mean that the entire amended complaint is futile. The statute of limitations has not run on the claims made here. Dr. Griffin passed away in October of 2021, mere weeks before the amendment was filed. Plaintiffs were not apprised of Dr. Griffin's passing. It is presumed that his estate is still open and that a representative has been appointed. While it is admittedly not procedurally proper to add him as an individual defendant at this time, there is nothing to prevent Plaintiffs from asserting their claims by directly adding the Estate through a separate amendment if they so choose. See *Darmanchev*, supra; *Washington*, supra.

Although the addition of Dr. Griffin personally can be denied, Limestone has not presented any grounds for a blanket denial of the entire Amended Complaint.

II. **PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THEIR COMPLAINT BECAUSE DEFENDANTS HAVE FAILED TO ESTABLISH THAT AN AMENDMENT WOULD UNDUELY PREJUDICE THEM.**

MG Freesites, Ltd. ("MindGeek") and Hammy Medis, Ltd. ("Hammy") (collectively "the Pornsite Defendants"[1]) oppose the proposed amended complaint in its entirety. Their arguments,

---

[1] The various MindGeek entities and the xHamster entities will undoubtedly protest being lumped together under a single appellation. However, they make similar arguments, occupy similar postures as Defendants and Plaintiffs

drawn from misleading context, are not well taken. None of them provide persuasive grounds for denial of leave to amend.

Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; and the Supreme Court has directed that this mandate is to be heeded. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). While the decision to grant a party leave to amend is within the sound discretion of the trial court, "that discretion is limited by the interpretation given Rule 15(a) and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits.' " *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987).

The Pornsite Defendants spend a great deal of time chastising the Plaintiffs for failing to "get it right" in their previously filed complaints and decrying the amendment as untimely and prejudicial. These arguments are mostly hyperbole that mischaracterize the procedural history of this case and overlook the circumstances that have made this amendment necessary. When the facts are clearly considered in context, the amendment should be granted.

**A. Plaintiffs make their amendment timely.**

First, the proposed amendment is not untimely. None of the causes of action set forth in the proposed Amended Complaint are barred by the statute of limitations. On August 4, 2021 the Court entered an amended Scheduling Order that provides that motions to join parties and to amend the pleadings shall be filed by **July 25, 2022**. This Order was entered *after* the Court had granted Plaintiffs leave to file their Fourth Amended Complaint. Clearly, the possibility of further amendment was contemplated and is no surprise.

---

make similar claims against both. Discovery will differentiate them as the case progresses.

### B. This amendment will not unduly delay resolution of this matter.

Defendant Hammy notes that the Scheduling Order was entered by consent before Hammy could be properly served. In the next breath, Hammy argues that this amendment would result in undue delay in resolving the case. The principal reason that Hammy could not be brought before the Court earlier is that it is a Cypriot entity that would not consent to jurisdiction without resort to use of the Hague Convention. Accordingly, Hammy is newly before the Court as of September 29, 2021. No discovery has been served upon or by Hammy and no further procedural or substantive steps taken with regard to Hammy. No depositions have been taken and Hammy has engaged in no motion practice. Hammy should not be heard to complain of prejudice through delay or wasted litigation efforts. So far, they have done nothing in the case.

Nor does the case timeline or previous amendments justify finding undue prejudice to MindGeek or any suggestion of bad faith on the part of the Plaintiffs. Of course, there is no rule or case law which limits the number of amendments that a plaintiff may seek or that the Court may allow. (cites). The procedural history and circumstances of this litigation does not support a conclusion that this amendment is being proposed in bad faith or for any improper purpose.

The original complaint was filed on March 4, 2020 and the First Amended Complaint was filed as a matter of right on March 18, 2020 before MindGeek had filed any responsive pleading. The amendment was substantively identical to the original complaint, only making an effort to correctly denominate the MindGeek defendant. In subsequent talks with opposing counsel, Plaintiffs were assured that MG Freesites Ltd. was the correct party and that none of the other MindGeek enterprises (of which there are **many**) were relevant to Plaintiffs claims. This resulted in a Second Amended Complaint that was substantively the same as the other two complaints and was filed on July 16, 2020, once again, to identify the proper MindGeek entity. If the Plaintiffs

did not "get it right" it was because they took MindGeek at its word.

By MindGeek's own admission, the Third Amended Complaint (filed October 4, 2020) was substantively identical to all the other versions, except for demarcating Plaintiffs Invasion of Privacy claims as three different types (wrongful intrusion upon private affairs, wrongful publicizing of private affairs, and wrongful appropriation of personality). Again, no substantive discovery had been conducted by any party and Hammy had not been properly served due to its foreign status. The only "intensive motion practice" in the case consisted of MindGeek's repeated Motions in Opposition and Motions to Dismiss any effort by the Plaintiffs to move forward. See ECF 46, 53, 55. Ultimately, the Invasion of Privacy claims were dismissed as to MindGeek (ECF 133), effectively making that amendment a nullity with regard to MindGeek.

Meanwhile, Plaintiffs were independently discovering a great deal of information about the Pornsite Defendants and their tangled business enterprises from outside sources. In December of 2020, the New York Times published an article that alleged that Pornhub "monetizes child rapes, revenge pornography, spy cam videos of women showering, racist and misogynist content, and footage of women being asphyxiated in plastic bags." *See*, Kristof, N. (2020, December 4). The Children of Pornhub. *The New York Times*. https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html. Five days later, on December 9, 2020 Plaintiffs filed their Fourth Amended Complaint, again with substantively identical allegations made in the previous complaints, but adding a claim under RICO against the Pornsite Defendants. At that time, no substantive discovery had been conducted by any party and the only real motion practice consisted of MindGeek's repeated Motions to Dismiss and Opposition briefs.

Contrary to MindGeek's assertions, subsequent discovery in this case has been neither

extensive nor aggressive – largely because of the incessant opposition of MindGeek at every turn. Plaintiffs served MindGeek with preliminary written discovery on January 14, 2021 – which MindGeek did not answered until *September 3, 2021*. MindGeek did not propound its own written discovery to the Plaintiffs until June 18, 2021. Hammy has never served nor answered any discovery whatsoever. No depositions have been taken by any party and we are within the time allowed by the Court's Scheduling Order to amend. Therefore, when the Pornsite Defendants argue that an Amended Complaint at this time would frustrate two-years of active litigation and cause significant prejudice, they are being disingenuous.

In contrast, Plaintiffs have compelling and justifiable reasons for seeking to file this Amended Complaint. The Pornsite Defendants are two of the largest and most powerful pornography websites in the world. Their enterprises are veiled in deliberately elaborate, convoluted and labyrinthine corporate structures that are designed to frustrate efforts to track their interconnected transactional dealings or to hold them accountable. For example, while Plaintiffs were led to believe by counsel for MG Freesites, LTD at the start of this litigation that MG Freesites was the only entity relevant to Plaintiffs claims, counsel has since learned that MG Freesites is a wholly owned subsidiary of MindGeek S.A.R.L. which is a foreign entity organized and existing under the laws of Luxembourg and which conducts business in the United States, including in this District. MindGeek S.A.R.L. operates over 100 pornographic websites, production companies, and brands including Pornhub, RedTube, Tube8, YouPorn, PornIQ, gaytube, Thumbzilla, Peeperz, PornMD, Xtube, Brazzers, Babes.com, Reality Kings, Digital Playground, Twistys, Men.com, Mofos, MyDirtyHobby, SexTube, and Webcams – all of which are part of the enterprise of trafficking in non-consensual illegal pornographic content. MindGeek also manages websites including Wicked Pictures, lesbea.com, and Playboy.

The MindGeek S.A.R.L. venture owns and/or controls the majority of the pornography on the Internet through this network, much of which it distributes for free, to any person with a web connection, regardless of age. Although incorporated in Luxembourg, MindGeek S.A.R.L. operates out of Montreal, Canada, and has satellite offices in, among other places, Los Angeles, California. In fact, MG Freesites, LTD. is only **one** of more than at least a half dozen subsidiaries, affiliates, and partners making up the MindGeek "enterprise".

The connections between these entities and the identities of their owners are often shrouded. In testimony before the House Financial Services Committee in March of 2021, activist Laila Mickelwait stated that MindGeek, its executives and owners have spent the last decade intentionally hiding their identities in order to escape scrutiny. The owner of MindGeek, Bernard Bergemar was only revealed in late December of 2020 after a Financial Times investigation. Its CEO and COO were never publicly seen or heard from until they were called to appear by the Canadian Parliament Ethics Committee investigating the company in March of 2021. Its VPs have also used fake names and identities when speaking with the media, and even now we don't know who is ultimately behind the company. It is no wonder why MG Freesites LTD wants to limit the scope of this Court's inquiry to a single head of this octopian hydra of sexual exploitation. However, MG Freesites is part of the larger enterprise that operates as one and should be treated as such.

XHamster (Hammy) is cut from the same dirty cloth. According to research conducted by German journalists from the publication SPIEGEL, Hammy Media LTD is a façade in the XHamster cosmos. Like MindGeek, XHamster fragments its enterprise. Advertising on xHamster.com is handled through the company "TrafficStars LTD". XHamster runs websites through a company called "Technius LTD". A separate company, "Tecom LTD", runs Faphouse,

a site for paid porn believed to be affiliated with xHamster.com. Tecom and Techinus, in turn, are majority owned by a holding company in the British Virgin Islands. Yet another company, "Wisebits LTD", not only owns the holding company in the British Virgin Islands, but also a large part of TrafficStars. There is a separate holding company in Antigua and Barbuda that holds the rights to the "xHamster" brand. XHamster employees and officers are also known to use pseudonyms to protect their true identities. Simply stated, like MindGeek, Hammy seeks to avoid meaningful scrutiny and liability through a nearly impenetrable fog of interrelated entities and difficult to trace connections. It has taken Plaintiffs time and effort to obtain a look behind this curtain. Defendants should not be allowed to avoid liability for their criminal enterprises simply because they are good at disguising them.

### C. The additional claims and Defendants are added with merit.

The re-working of the factual allegations of the Complaint are justified. Discovery of pertinent information about the operation of the Pornsite Defendants is a currently ongoing and evolving process – and not one in which Defendants are cooperative. For example, Visa and Mastercard and Discover confirmed the presence of illegal content on the Pornhub site and stopped allowing payments to be processed on Pornhub as late as December 2020. Only then did MindGeek take action in pulling over 10 million suspect videos from the site. Testimony before the Canadian Parliament by MindGeek officers, as well as an alleged victim of their sexually exploitative practices, in February 2021 provided more information about their enterprise that merited investigation. Facts uncovered by the news media in October 2021 raise additional questions about the organization and practices of XHamster and Hammy. See, Meineck, S., (2021, Oct. 15) The Men Behind xHamster, *Pornoplattform*, https://netzpolitik.org/2021/pornoplattform-die-maenner-hinter-xHamster/. Oddly, MindGeek complains that some of

the factual allegations about their operations made in the amended complaint parrot those made in other active suits against them – as if these facts can only be true once. The expanded background provided in the proposed amendment is intended to give the Court adequate context to understand the scope and depth of the Pornsite Defendants' organizations and the true nature of the enterprises.

**1. Defendants are incorrect in claiming Plaintiffs claims are futile.**

At the same time the Pornsite Defendants seek to exclude the expanded factual background explaining the context of the proposed amendment, they argue that Plaintiffs' addition of a claim under the Trafficking Victims Protection Restoration Act, 18 U.S.C. §§1591, 1595 is futile, again relying heavily on the immunity provisions of §230 of the Communications Decency Act. For a motion to amend to be denied for futility, the amendment must be 'clearly insufficient or frivolous on its face.' *Cherochak v. Unum Life Ins. Co. of Am.*, 586 F. Supp. 2d 522, 526 (D.S.C. 2008) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510–11 (4th Cir. 1986)). To determine whether a proposed amended complaint would be futile, the Court reviews the revised complaint under the standard used to evaluate a motion to dismiss for failure to state a claim. *Amaya v. DGS Constr., LLC*, 326 F.R.D. 439, 451 (D. Md. 2018) (citing *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)).

A motion to dismiss under Rule 12(b)(6) is not meant to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, a complaint must simply contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam),

and all reasonable inferences must be drawn in the non-moving party's favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

The law defining the contours of liability for trafficking in illegal pornographic content is relatively new and rapidly developing. Many questions are those of first impression in this Circuit on which there is no firm consensus among other circuits. However, it is clear that the Pornsite Defendants cannot use Section 230 immunity to escape liability for everything, and this Court has already once rejected MindGeek's arguments for a dismissal under the CDA.

The TVPRA claim is well supported. In 2000, Congress enacted the TVPRA; "Congress declared that the purposes of the [TVPRA] are to 'combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.' " *Doe v. Twitter, Inc.*, No. 21-CV-00485-JCS, 2021 WL 3675207, at *4 (N.D. Cal. Aug. 19, 2021.) In 2018, the CDA was amended by the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253 (2018) ("FOSTA"), which inserted a new provision in CDA § 230 specifically addressing the application of that section in the context of sex trafficking law. FOSTA exempts certain provisions of the federal Trafficking Victims Protection Reauthorization Act ("TVPRA") from Section 230's immunity. *Id.* ("[n]othing in [Section 230] ... shall be construed to impair or limit any claim in a civil action brought under 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title"). In other words, the Pornsite Defendants cannot use Section 230 immunity if they violate federal anti-trafficking laws. *Doe v. Mindgeek USA Inc.*, No. SACV2100338CJCADSX, 2021 WL 4167054, at *4 (C.D. Cal. Sept. 3, 2021)

Plaintiffs' cause of action under the Trafficking Victims Protection Restoration Act, 18

U.S.C. §§1591, 1595 is not futile in this case because the proposed amended complaint adequately alleges that the Pornsite Defendants knowingly facilitated criminal conduct, materially contributed to the creation of illegal content, and intentionally possessed and facilitated the distribution of illegal content through their collective operations.  First, the complaint includes specific allegations demonstrating that the Pornsite Defendants violated 18 U.S.C. §§ 1591 and 1595 by "knowingly benefit[ing]" from "participation in what they knew or should have known was a sex trafficking venture"[2]. AC5 at ¶106.  The Complaint amply alleges that the Pornsites knowingly benefit from non-consensual content.  For example, both MindGeek and XHamster earn revenue from ads played alongside non-consensual porn (including the Jane Doe videos); MindGeek created a program called Modelhub that allows traffickers to earn revenues from their crimes (as long as MindGeek gets a cut); both Pornsite Defendants are believed to cross-load nonconsensual videos across many websites to increase revenue; the Pornsite Defendants know that hidden camera content increases traffic and the sites use this increased traffic to sell advertising space.

The complaint does not simply allege that the Pornsites monetize pornographic content – it alleges that these defendants deliberately monetize and promote nonconsensual videos.  It alleges that both Pornsite Defendants deploy moderators incentivized to permit the upload of nonconsensual porn; both participate in adding tags and metadata to videos that allow their algorithms to direct users interested in nonconsensual porn to additional illegal content. The allegations in the proposed amendment paint a picture of deliberately fragmented organizations that work in concert to maximize profits from illegally derived content. The Pornsite Defendants

---

[2] Hammy misstates the definition of "trafficking" under §1591 to be "causing a person to engage in a commercial sex act". This is a gross oversimplification. To begin, §1591 does not offer a definition of 'trafficking' at all. Instead, §1591 applies to "whoever knowingly … benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act" … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion … will be used to cause the person to engage in a commercial sex act…" Nonconsensual porn is, by definition, obtained by deceit and Plaintiffs clearly allege it was done for the personal gain of another. The complaint adequately alleges the predicates for a cause of action under §1951 against the Pornsite Defendants.

not only ignore the extensive allegations in the complaint; they ignore the cases that don't help their cause, for instance *M.L. v. Craigslist Inc.*, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020).

The complaint also adequately alleges that the Pornsite Defendants "participated in a venture." Hammy contends Plaintiffs have failed to show a "tacit agreement" with traffickers, citing *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020). But the court in *J.B.* disagreed with defendant's suggestion that plaintiff must show actual or constructive knowledge of "her trafficking specifically" Id. at 9, n.3.

Courts defining participation in a venture under §1595 have found that "Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the "should have known" language in § 1595(a) would be meaningless." See *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio Oct. 7, 2019) (denying motion to dismiss where defendants were on notice about the prevalence of sex trafficking at their hotels). Most district courts have rejected the argument that "participation in a venture" under §1595 requires the same kind of "overt act" as in a criminal prosecution under §1591. See, *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021) (citing cases).

For example, in *M.L.*, which the Pornsite Defendants ignore entirely, the court found "participation in a venture" where craigslist was allegedly "aware that its website was hosting sex trafficking advertisements" and "benefitted financially through charging fees for advertisements on its 'erotic services' section," which demonstrated that it "knowingly fostered a business relationship with traffickers to support the venture of trafficking Plaintiff." *M.L.*, 2020 WL 5494903, at *5-6.

The proposed amended complaint here squarely alleges that the Pornsite Defendants

participated in sex trafficking ventures by encouraging and profiting from nonconsensual porn. Plaintiffs are entitled to discovery to show the magnitude of these sex trafficking ventures—however expansive. Here, like in *M.L.*, Plaintiffs allege facts supporting that the Pornsites knowingly fostered a business relationship with traffickers. For example, the complaint alleges that both MindGeek and xHamster offer uploaders an opportunity to share in ad revenue. AC5, ¶42. Both conglomerates curate uploaded content from traffickers and encourage traffickers to categorize their videos as "hidden cam", "spy cam" and "amateur" - openly acknowledging to traffickers that their illegal content is welcome.

If a website operates a nonconsensual porn distribution venture, which is what the evidence will show that the Pornsite Defendants do, then that is "participation" in a venture. Nothing in the statute, Congress's intent, or logic requires some further explicit agreement between a specific trafficker and the distributor each and every time. To hold otherwise would eviscerate the Allow States to Fight Online Sex Trafficking Act ("FOSTA") amendment to §230 and §1595 which applies to anyone who "knows *or should have known*".

### 2. Plaintiffs' have sufficiently alleged facts to survive Defendants Motion to Dismiss.

Plaintiffs' allegations demonstrate that the Pornsites "knew or should have known" that the ventures it participated in were engaged in sex trafficking. Section 1595 requires only a "negligence standard of constructive knowledge." *H.H. v. G6 Hosp., LLC,* No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019), at *4; see also *S.Y. v. Naples Hotel Co.,* 476 F. Supp. 3d 1251, 1256 (M.D. Fla. 2020); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020). The extent of the Pornsites' actual or constructive knowledge is uniquely in their possession, and cannot be resolved at the pre-discovery stage. See, e.g., Fed. R. Civ. P. 9(b) ("knowledge . . . may be alleged generally"). Nevertheless, the complaint does allege the Pornsites'

knowledge in detail. See AC5 ¶¶ 43, 47, 48, 49, 59, 60, 64, 65, The complaint further alleges that MindGeek had at least constructive knowledge from the media in 2020. AC5 ¶66. See *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192, at *5-6 (S.D. Ohio Mar. 16, 2020) (defendant had constructive knowledge via "online review websites such as TripAdvisor and www.yelp.com" complaining about sex trafficking). The evidence is expected to show that the Pornsite Defendants regularly received complaints about nonconsensual content on their sites. The alleged facts—which at this stage must be accepted as true—demonstrate that Defendants "knew or should have known" of the trafficking in illegal content on their sites.

More importantly, the proposed complaint alleges that the Pornsite Defendants actively participated in the venture by establishing and implementing categories, tags and titles that facilitate and promote nonconsensual content to target the right audience, coaching and directing uploading users on desired content, creation and manipulation of the metadata associated with the videos, including the production of 'thumbnails' and the addition of other digital content that allowed the videos to be directed to interested viewers, and shared revenue with other creators or suppliers of the solicited content. See AC5 ¶92. These allegations distinguish this case from *Doe v. Kik Interactive* (cited by Hammy), in which the complaint alleged the defendant's mere knowledge of sex trafficking on its websites and failure to provide warnings or enact appropriate policies. 482 F. Supp. 3d 1244, 1251 (S.D. Fla. 2020). The Pornsite Defendants' conduct goes well beyond passively allowing nonconsensual porn on its sites – the complaint appropriately alleges they actively encouraged and helped traffic it. Holding that Plaintiffs claims are futile at this stage based on an application of Section 230 immunity would defeat the very purpose of the TVPRA amendments.

The Pornsite Defendants vigorously protest the addition of their affiliate, parent and subsidiary companies. They argue that the addition of additional defendants and a new cause of action would be prejudicial. Ultimately, the nonmoving party bears the burden of demonstrating prejudice. *Bechtel v. Robinson*, 886 F.2d 644 (3d Cir. 1989). However, even when a proposed amended complaint adds substantive allegations against a defendant or adds new defendants, where such new defendants are related to the existing ones or where "[t]he evidence required to meet these new allegations is substantially similar to that which was originally required," prejudice does not exist. *Pegasus Int'l, Inc. v. Crescent Mfg. Co.*, No. Civ.A.06–2943, 2007 WL 1030457, at *5 (E.D.Pa. Apr. 2, 2007), quoting *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir.1990). Notably, the need for additional discovery due to amendment does not, without more, prejudice the non-moving party. See *N.C. ex rel. Long v. Alexander & Alexander Servs., Inc.,* 711 F.Supp. 257, 259–60 (E.D.N.C.1989) (noting that the fact that parties will have to prepare new defenses and conduct additional discovery "does not suffice as a showing of prejudice");
*Crago v. Cap. Advantage Fin. & Dev., Inc*., 242 F.R.D. 341, 347 (D.S.C. 2007).

However, the alarm of the need of extensive additional discovery is overblown. Very little discovery has yet been conducted. The expanded allegations are largely exposition on the operations of the Pornsite Defendants –which should require no discovery on their part. All of Plaintiffs claims arise from the same core of operative facts and the addition of a new cause of action based on those facts does not cause undue prejudice at this stage of the litigation.

MindGeek Freesites, LTD and Hammy Media, LTD. are in no position to raise jurisdictional objections to the proposed addition of defendants whom they argue are entirely separate entities. Fourth Circuit courts, and others, have declined to deny leave to amend on futility grounds for lack of personal jurisdiction. See *Pridgen v. Appen Butler Hill, Inc*., No. CV JKB-18-

61, 2019 WL 1048950, at *3 (D. Md. Mar. 5, 2019); see also *Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc.*, Civ. No. 10-1708, 2011 WL 2193294 (S.D. Tex. June 6, 2011) ("Courts have recognized that in the context of a personal-jurisdiction challenge to a motion for leave to amend, a court should presume it has personal jurisdiction."); *Speedsportz, LLC v. Menzel Motor Sports*, Civ. No. 07-624, 2008 WL 4632726, at *2 (N.D. Okla. Oct. 17, 2008) (concluding adding a defendant would not be wholly futile and waiting to "decide the question of personal jurisdiction based on a fully briefed motion to dismiss"). "Where the court could 'conceivably have personal jurisdiction' over a defendant sought to be added via an amended complaint, the court should not, despite objection by existing parties, deny leave to amend based on futility challenges." *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 230 (E.D. Pa. 2012); See *Mylan Pharm., Inc. v. Kremers Urban Dev.*, Civ. No. 02-1628, 2003 WL 22711586, at *4 (D. Del. Nov. 14, 2003) ("There is no requirement that a plaintiff allege the facts that support a finding of personal jurisdiction in a complaint.").

Plaintiffs have alleged that the additional parties are all alter egos of their respective affiliate, subsidiary, parent or sister companies and operate as a single business enterprise. AC5 ¶¶ 28, 41. If these companies are indeed separate and independent business enterprises, the Pornsite Defendants do not have standing to oppose the Plaintiffs motion to add them by amendment. Current parties "unaffected by [the] proposed amendment" do not have standing to assert claims of futility on behalf of proposed defendants. *Clark v. Hamilton Mortg. Co.*, No. 07–252, 2008 WL 919612, at *2 (W.D.Mich. Apr.2, 2008) (holding that "[w]hen faced with plaintiffs' motion for leave to amend, the present defendants should not have objected, as they are unaffected by the proposed amendment"). Once the putative Defendants are before the Court, if they have jurisdictional challenges, they are entitled to raise them.

**CONCLUSION**

Accordingly, Plaintiffs respectfully requests that this Court enter an order granting Plaintiffs leave to file an amended Complaint as Defendants have failed to illustrate that such an amendment would be untimely, unduly prejudicial, or futile.

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

*s/Joshua M. W. Salley*
J. Edward Bell, III (1280)
Joshua M. W. Salley (13214)
BELL LEGAL GROUP, LLC
219 North Ridge Street
Georgetown, SC  29440
TEL.: (843) 546-2408
FAX: (8430 546-9604
ebell@edbelllaw.com

**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**

Tyler S. Thompson (admitted *Pro Hac Vice*)
Liz J. Shepherd (admitted *Pro Hac Vice*)
Jordan A. Stanton (admitted *Pro Hac Vice*)
DOLT, THOMPSON, SHEPHERD & CONWAY, PSC
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com
lshepherd@kytrial.com
jstanton@kytrial.com

**ATTORNEYS FOR PLAINTIFFS**

Georgetown, SC
December 14, 2021