UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9, <br><br> Plaintiffs, <br><br> v. <br><br> COLLINS MURPHY, LIMESTONE COLLEGE, MG FREESITES, LTD., d/b/a PORNHUB.COM, and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM, <br><br> Defendants. | CASE NO. 7:20-CV-00947-JD |

**DEFENDANT MG FREESITES, LTD.'S OPPOSITION TO PLAINTIFFS'
RULE 59(b) (sic) MOTION TO ALTER OR AMEND JUDGMENT**

This Court's March 21, 2022 Order correctly rejected Plaintiffs' "one- page motion unsupported by a memorandum" for leave to amend their Complaint for a ***sixth time*** because Plaintiffs could not explain "the purported need to amend the complaint to reflect newly discovered information that is relevant to the previously plead facts contained within Plaintiffs' operative Complaint[.]"  March 21, 2022 Text Order (Dkt. 172) ("March Order").  Plaintiffs now seek to reconsider that Order because (they argue) the Court should have analyzed their same threadbare submission under Rule 15 only, and not require an additional showing of "good cause" under Rule 16.

Given the circumstances of this case, reconsideration is not necessary because Plaintiffs' proposed amendments are improper under both Rule 15 and Rule 16.  Under Rule 16, the Court had ample reason to require Plaintiffs to show "good cause" because Plaintiffs' proposed Fifth Amended Complaint (sixth pleading overall) alters the scope of this case so profoundly that it necessarily will require modification of all of the current scheduling order's deadlines.  "[W]hen

granting leave to amend … would require modifying the district court's scheduling order, [Rule] 16(b) requires that the movant must first show good cause." *Vercon Const., Inc. v. Highland Mortg. Co.*, 187 F. App'x 264, 265 (4th Cir. 2006).  As the Court correctly observed, Plaintiffs did not even try to meet that standard in either their motion to amend or reply in support thereof.  And, under Rule 15 (the threshold standard for amendment whether or not Rule 16 also applies), Plaintiffs cannot introduce dozens of new allegations, eleven new defendants, and an entirely new (but legally meritless) statutory claim during the home stretch of a long-running case.  This matter has been pending for over ***two years***, including over one year of discovery and close to 200 docket entries.  Ultimately, Plaintiffs are still unable to identify any justification, be it newly discovered facts or a newly available cause of action, for amendment at this late date.

The balance of Plaintiffs' motion asks this Court to provide Rule 59 relief on the basis of over-the-top, unsupported, and irrelevant accusations about "doppelgangers," "legal armies," and "thousands" of unidentified non-parties to this lawsuit.  None of this changes the fact that the Court properly rejected belated amendment that would have focused upon allegations and issues cribbed from a complaint in an entirely inapposite case, which has nothing to do with the alleged incident at issue and the alleged injury suffered by the actual named Plaintiffs.

For these reasons, the Court should deny Plaintiffs' Rule 59 Motion to Alter or Amend the March Order (the "Motion") and deny Plaintiffs' bid to assert an entirely new case and set of legal theories with mere months to go before discovery closes and dispositive motions are due.

## **ARGUMENT**

"Reconsideration of a judgment pursuant to Rule 59(e) is an extraordinary remedy that should be used sparingly" and "for only three reasons: (1) to comply with an intervening change in controlling law; (2) to account for new evidence not available previously; or (3) to correct a

clear error of law or prevent manifest injustice." *Holmes v. Granuaile LLC*, 2019 WL 8326689 at *1 (D.S.C. Feb. 5, 2019).

Plaintiffs do not apply this (proper) standard in their Motion, and instead premise their entire Rule 59 analysis on only two authorities, each of which actually holds the direct opposite of what Plaintiffs describe. *See* Mot. 3-4. Plaintiffs' lead authority, *Gen. Ins. Co. of Am. v. Walter E. Campbell Co., Inc.*, is a forceful *denial* of a motion for reconsideration which, like Plaintiffs' Motion, raised eleventh-hour arguments. 241 F. Supp. 3d 578, 585 (D. Md. 2017), *aff'd* 886 F.3d 346 (4th Cir. 2018). The court did not "acknowledg[e] its error," as Plaintiffs claim, Mot. 4, but rather admonished counsel "for waiting until now to finally read the [important case documents at issue] and argue that the language in those [documents] has a different meaning[.]" *Gen. Ins. Co.*, 241 F. Supp. 3d at 585.[1] Plaintiffs' counsel likewise badly misreads their second authority, *Belton v. United States*, 2016 WL 3913703, at *1 (D.S.C. July 20, 2016). That opinion did not reconsider the propriety of a complaint amendment due to the court's "misreading of notice requirements," as Plaintiffs assert. Mot. 4. To the contrary, the court *dismissed* the complaint due to *plaintiff's* misjudgment of notice requirements. *Belton*, 2016 WL 3913703, at *4 ("[I]t appears to the court that [defendant] did not receive sufficient notice to investigate whether it would be liable for the claim presented[.]"). Plaintiffs' failure to engage with a cognizable Rule 59 analysis can, and should, merit denial of their Motion.

Even giving Plaintiffs every benefit of the doubt, their Motion should still fail. Plaintiffs appear to argue the Court's March Order contained an error as it "was founded on a misapprehension that" Plaintiffs' Motion to Amend was not timely, and thus the Court wrongly

---

[1] Plaintiffs' counsel appear to wrongly attribute to this opinion, *see* Mot. 3-4, an entirely different (and inapposite) holding distinguished therein, *see Gen. Ins. Co.*, 241 F. Supp. 3d at 584 citing *Harper v. Anchor Packing Co.*, 2014 WL 3828387 (D. Md. Aug. 1, 2014) (involving reconsideration of an apparent error of law regarding products liability, not at issue here).

applied Rule 16. Mot. 3. However, that is not enough to warrant reconsideration. A court's purported mistake regarding the timeliness of a filing does not justify reconsideration unless it would, *as a matter of law*, *require a different ultimate holding or outcome*. *Holmes* 2019 WL 8326689 at *1 (Denying plaintiff's Rule 59(e) motion because even if the court were to consider plaintiff's filing timely, it would not "alter the outcome").

Here, the outcome remains the same regardless of the "error" Plaintiffs purport to identify for two reasons. *First*, even if Plaintiffs' proposed amendment met one scheduling deadline, granting leave still would have required modification to many, if not all, of the present scheduling order deadlines. As such, the Court was ultimately correct to expect a showing of "good cause" from Plaintiffs under Rule 16. *Second*, as this Court correctly observed, whether or not Rule 16 applies, a motion to amend must still meet the threshold requirements of Rule 15. March Order citing *George v. Duke Energy Ret. Cash Balance Plan,* 560 F. Supp. 2d 444, 480 (D.S.C. 2008). Plaintiffs still do not meet that standard given the extreme delays and repeated prior amendments in this case, and the Court correctly decided its ultimate holding.

**I.      The Court Order Denying Leave to Amend Is Correct Because There Is Not "Good Cause" To Upend the Entire Scheduling Order In this Case.**

**A.      This Court Was Correct To Expect Plaintiffs To Show "Good Cause" Under Rule 16.**

Plaintiffs' Motion should be denied because the Court was ultimately correct to require Plaintiffs to show "good cause" under Rule 16(b)(4). "[W]hen granting leave to amend … would require modifying the district court's scheduling order, Federal Rule of Civil Procedure 16(b) requires that the movant must first show good cause." *Vercon Const., Inc.*, 187 F. App'x at 265. At this late stage, granting Plaintiffs leave to amend as proposed would require drastic modifications to all of the deadlines in the current scheduling order, given both the extensive motions practice and new discovery the amendments would trigger.

First, all of the Defendants in this case have already outlined the multitude of ways in which Plaintiffs' new allegations will require additional motion practice and for the entire calendar of this case to be shifted. This includes: 1) motions to strike many proposed allegations as prejudicial (Hammy Media Opp'n (ECF 162), Section IV), as well as false and improper, (MG Freesites Opp'n (ECF 161) at 2 (*e.g.*, regarding child pornography because none of the Plaintiffs was underage at any relevant time)); 2) various jurisdictional objections and motions since multiple new proposed defendants are not subject to the jurisdiction of this Court (Hammy Media Opp'n, Section III; MG Freesites Opp'n at 6) – or, in some cases, are deceased individuals (Limestone Opp'n (ECF 160) at 1) or defunct corporate entities (MG Freesites Opp'n at 6); and 3) a fourth round of Rule 12 briefing to dismiss, *inter alia*, Plaintiffs' Trafficking Victims Protection Reauthorization Act ("TVPRA") claim (Hammy Media Opp'n, Section II; MG Freesites Opp'n at 2, 6, 10).

Second, allowing Plaintiffs to amend to add new parties and legal theories would also require modifications of the scheduling order to provide a reasonable timeframe for all parties to conduct discovery and prepare any dispositive motions. The proposed Fifth Amended Complaint is nearly twice the length of the Fourth Amended Complaint, and involves myriad new allegations and legal theories belatedly copy/pasted from an entirely different, completely unrelated lawsuit. The parties will require time to address these many pages-worth of new allegations and theories. None of the deadlines in the Court's current scheduling order were meant to accommodate re-firing the starting pistol at this late date on what will be many new document requests and depositions required by the entirely re-invented case Plaintiffs propose.

### B. This Court Correctly Determined Plaintiffs Have Not Met Rule 16 "Good Cause" Requirements.

Having sound basis to apply Rule 16 to Plaintiffs' motion to amend, this Court correctly concluded "Plaintiffs have not met the Rule 16 good cause requirements[.]" Dkt. 172. In their Rule 59 Motion, Plaintiffs purport to "advis[e] the court of the reasons and intricacies of justifying amendment[,]" Mot. 4, but this belated attempt to raise a "good cause" argument should be rejected because Plaintiffs could have, but failed, to make this argument in their original motion for leave to amend. "Rule 59(e) motions may not be used … to raise arguments which could have been raised prior to the issuance of the judgment[.]" *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

In any event, a substantive analysis only confirms the March Order correctly concluded that Plaintiffs did not establish good cause to amend their pleading at this late date. "Good cause" is "similar to the 'undue delay' standard utilized by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962)." *De La Fuente v. S.C. Democratic Party*, 2017 WL 10768354, at *2, n.2 (D.S.C. Oct. 12, 2017). Courts look at factors such as the length of delay and its potential impact on judicial proceedings and the non-moving party as well as whether the moving party acted diligently and has good reason or justification for the delay. *See, e.g., Hunt v. Brooks Run Min. Co., LLC*, 51 F. Supp. 3d 627, 636 (S.D.W. Va. 2014), *aff'd*, 610 F. App'x 340 (4th Cir. 2015). All of these factors weigh against a finding of good cause.

First, Plaintiffs filed their motion to proceed with a *sixth* – and completely re-imagined – Complaint after a considerable delay. Specifically, that motion came *twenty months* after Plaintiffs initiated this action (ECF 1), *one year* after the Plaintiffs last amended their Complaint (ECF 99) and initiated discovery, *five months* after this Court adjudicated motions to dismiss the existing Complaint (ECF 133), and after *five* prior iterations of the Complaint. These delays are

now exacerbated by Plaintiffs' Motion to Reconsider. It has now been **over two years** since Plaintiffs initiated this action (ECF 1), **more than one year** since the Plaintiffs last amended their Complaint (ECF 99) and initiated discovery, and **nearly one year** after this Court adjudicated motions to dismiss the existing Complaint (ECF 133).

Second, the impact of that delay on the proceedings in this case – and attendant prejudice to MG Freesites – is significant. MG Freesites (and the other Defendants in this case) have been actively litigating the allegations, claims and theories contained within Plaintiffs' prior five Complaints. MG Freesites already has engaged in three rounds of Rule 12 briefing and motion practice. Plaintiffs have served multiple rounds of discovery upon Defendants. In turn, Defendant MG Freesites has expended significant time answering Plaintiffs' discovery and propounding its own discovery – all with the understanding that the pleadings had been finally settled. Plaintiffs' proposed Sixth Complaint would have forced Defendant MG Freesites to re-do significant phases of this case, including discovery as well as a fourth round of Rule 12 motion practice. Neither would allowing amendment have served judicial economy; two years of case management thus far would become moot.

Lastly, Plaintiffs' counsel does not cite any cognizable justification for their delay because there is none. As MG Freesites pointed out in its Opposition (Dkt. 161 at 11-12), Plaintiffs' proposed amendments were derived substantially (in many places as an exact copy/paste) from claims and theories contained in another complaint filed in the U.S. District Court for Central District of California, captioned *Fleites, et al. v. Mindgeek S.AR.L., a foreign entity, et al.*, Case No. 2:21-cv-4920. *Compare, e.g.,* ECF 145-1 ¶ 65 *with Fleites* ¶ 6, ECF 145-1 ¶ 43 *with Fleites* ¶ 7, ECF 145-1 ¶ 39 *with Fleites* ¶ 5 (all reflecting copy/pastes of entire sections). While Plaintiffs claimed in their motion to amend they only recently discovered

7

relevant facts, the *Fleites* case (which involved completely different factual circumstances) was filed in June 2021 – nearly five months before Plaintiffs' motion to amend – and Plaintiffs' counsel was undoubtedly aware of these same allegations even earlier. Their prior motion to amend – filed one year earlier – featured and cited to a series of news articles laying out the same allegations in great detail. *See* ECF 79-1 at 2. Plaintiffs cited those news articles as justification to add a RICO cause of action, but waited a year to copy the content.

The central purpose of those copy/paste allegations – to add a TVPRA claim – is also not "new." That cause of action has been available to litigants since 2003. Plaintiffs complain in their Rule 59 Motion that Congress enacted an unfair balance of considerations within the Communications Decency Act ("CDA"), but concede, as they must, that the CDA was enacted in 1996. Thus, Plaintiffs cannot possibly explain their delays as the result of new or different laws. The other statutory provisions Plaintiffs cite (Mot. 5) also cannot possibly justify belated amendment. The FOSTA/SESTA legislation is more than four years old and has been amply litigated and interpreted since 2018. The very purpose of that legislation was to carve out certain TVPRA claims from the immunities of the CDA, and neither FOSTA nor the TVPRA has changed since this lawsuit was filed. In other words, Plaintiffs could have brought these claims in their initial Complaint (or, for that matter, in their First, Second, Third or Fourth Amended Complaints), and Plaintiffs' counsel do not explain or point to a single example of so-called "evolving" law that would explain Plaintiffs' extreme delay in pursuing a TVPRA claim in late 2021, nearly two years after filing their first Complaint. Plaintiffs' sole cited authority on this point has nothing to do with any of the statutes Plaintiffs claim are "evolving." *See* Mot. 5 citing *Doe #1 v. MG Freesites, Ltd.*, 2021 WL 2556009, at *2 (N.D. Ala. Mar. 3, 2021) (granting plaintiffs' ex parte "Motion for Leave to Proceed Pseudonymously" before defendants were even

served).[2]

### C. Plaintiffs' Additional Responses to the Court's "Good Cause" Holding Are Unavailing.

Tacitly conceding that they cannot meet Rule 59's actual standards for reconsideration, Plaintiffs resort to arguing that the Court should disregard the proper analysis in order to take a "special look at this case[.]" *Id*. To justify their "special look" standard, Plaintiffs' counsel devotes the last two pages of their Motion to hyperbolic attacks and criticisms on Defendants and their counsel, all of which are unwarranted. Mot. 5. None of these criticisms is a cognizable basis for Rule 59 relief.

First, Plaintiffs' counsel contends Defendants are "mobiliz[ing a] legal armies to stymie the progress of" this case. *Id.* In reality, there is no David and no Goliath. Plaintiffs' legal team includes many seasoned (and very successful) trial and personal injury attorneys from two separate law firms – a team comparable to, if not larger, than that of MG Freesites. It is that team, not MG Freesites, that has driven the pace of this case over the past two years by choosing to pursue six different versions of their Complaint. Relatedly, Plaintiffs' counsel blames Defendants for the need for multiple scheduling orders, Mot. 2, but the most recent deadline extensions were requested primarily by Plaintiffs' counsel to accommodate their own large team's busy 2021 trial schedule.

Plaintiffs' counsel next claims, without *any* support, "[i]t has taken enormous time and

---

[2] To the extent Plaintiffs meant to cite to *Doe #1 v. MG Freesites, LTD*, 2022 WL 407147, at *2 (N.D. Ala. Feb. 9, 2022), that decision was reached several months *after* Plaintiffs filed their motion for leave to amend, and thus cannot be used by Plaintiffs to explain or excuse the timing of that request. Neither is this out-of-circuit district court decision an "intervening change in controlling law" that could serve as an independent basis to reconsider the Court's March Order. *Holmes*, 2019 WL 8326689 at *1; *see also Pac. Ins. Co.*, 148 F.3d at 403 ("Rule 59(e) motions may not be used … to argue a case under a novel legal theory that the party had the ability to address in the first instance.").

effort to begin to piece the true picture together" because unidentified "enterprises" have intentionally developed a complex corporate structure in order to evade the reach of this Court. Mot. 5-6. This is demonstrably false. Plaintiffs' delays in this case cannot be attributed to any investigative efforts. The core allegations in this case – regarding an alleged incident at Limestone University in 2012 – have been known to Plaintiffs since 2019. Since then, they have not received, let alone sought, *any* discovery from MG Freesites, or any other Defendant, that bears any resemblance to the additional "true picture" they now vaguely allude to. There is none. In fact, nearly a year ago, Plaintiffs repeatedly averred to MG Freesites in a discovery response that they did not have any responsive documents in their possession that would substantiate or explain any of their RICO or conspiracy allegations. Plaintiffs have not since updated those responses.

Meanwhile, MG Freesites (the proper party in this action) has been litigating in good faith in front of this Court for the last two years.[3] None of the four Mindgeek entities Plaintiffs sought to add in November 2021 are proper parties, and none "processes payments and memberships down the street from the courthouse," as Plaintiffs' counsel theorizes, Mot. 5-6. One is dissolved, two are European companies without any principal place of business or headquarters in the United States, and the fourth is a California entity that has no presence in

---

[3] MG Freesites has proactively worked with Plaintiffs' counsel to move this case forward. Plaintiffs' initial attempt to serve MG Freesites was defective on multiple fronts; Plaintiffs waited until after the 90-day deadline for service set forth in the Federal Rules already had passed, and targeted the wrong party, "MindGeek Holding SARL a/k/a Mindgeek USA, Inc." When Plaintiffs contacted MG Freesites' U.S. counsel to ask whether it would accept service of the Amended Complaint on "MindGeek USA," MG Freesites not only agreed to identify the proper party, but also agreed to waive service on that party's behalf. That waiver was based on an understanding that Plaintiffs would pursue their action against only the proper, relevant party, and not include a scattershot of other corporate entities that had no involvement with any of the alleged claims at issue. MG Freesites voluntarily even provided a declaration from Mindgeek USA, explaining that company had no involvement with the relevant website.

South Carolina, and does not own or operate the Pornhub.com website.

## II. The Court Order Denying Leave to Amend Is Correct Because Plaintiffs Did Not Meet the Standard for Amendment Under Rule 15.

Reconsideration is further unwarranted because, even if Plaintiffs were correct that Rule 16 should not apply, their proposed Sixth Complaint still does not meet the standard for permissible amendment set forth within Rule 15. Federal Rule of Civil Procedure 15(a)(2) provides "a party may amend its pleading only with the opposing party's consent or the court's leave[.]" Leave to amend should be denied where it is based on "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . ." *Foman,* 371 U.S. at 182; *see also Meisner v. Zymogenetics, Inc.*, 2016 WL 4858741, at *6 (D.S.C. Sept. 15, 2016), *aff'd sub nom.* 697 F. App'x 218 (4th Cir. 2017) (denying amendment proposed after "undue delay that is prejudicial to Defendants"). All of those factors proscribe a *sixth* Complaint in this case, and MG Freesites' Opposition to Plaintiffs' Motion to Amend contains full briefing on these factors.

Plaintiffs do not account for Rule 15 in their Rule 59 Motion, and fail to argue or explain why the relief they seek – a reversal of the March Order – would be consistent with Rule 15. This gap is consistent with Plaintiffs' incorrect view that Rule 15 is a pass-through so permissive, not even a memorandum of law is required. Mot. 4. To the contrary, as one court in this Circuit has explained:

> There must come a time in a lawsuit when a party, having had prior opportunities to amend to address pleading deficiencies identified by the Court or adverse party, must proceed with the claims that have withstood challenge. Otherwise, the issues would never be joined, discovery would remain open indefinitely, and, like the common law pleaders of former times, the suit would devolve into an endless series of complaints, demurrers, and responsive complaints. There is a reason why modern rules of pleading rejected the practices of former times[.]

*Boardley v. Household Fin. Corp. III*, 2015 WL 3486891, at *2 (D. Md. June 1, 2015). Plaintiffs' motion to file a completely re-imagined version of their Complaint comes after a delay comparable to, if not exceeding, the benchmarks set by other courts in this Circuit. *Id.* (denying motion for leave to amend complaint a third time over the course of over two years); *see also Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (upholding denial of motion to amend where plaintiff had conducted discovery for a year and "had already set forth four iterations of their complaint"); *Meisner*, 2016 WL 4858741, at *6 (denying motion to amend filed two months after adjudication of a motion to dismiss and after significant briefing and motions practice had been undertaken by the parties on the basis of the existing complaint). Plaintiffs have not cited any authority in their Rule 59 motion – and indeed there is none – supporting leave to amend after five prior amendments and two years of active litigation (ECF 1), well over a year since the last complaint amendment (ECF 99), one year of open discovery, and nearly a year after this Court last adjudicated motions to dismiss, (ECF 133).

      Neither have Plaintiffs offered any authority or argument that leave to amend should be granted under Rule 15 so long as a request is made before a corresponding scheduling order deadline. Again, there is no such authority. To the contrary, as one court in this District explained when denying a "motion [to amend that] is timely in the sense that it is filed within the time allowed by the scheduling order[,] [t]his 'measure' of timeliness must … be balanced against the age of the case … extensive prior proceedings, and scope of the proposed amendments." *U.S. ex rel. Knight v. Reliant Hospice, Inc.*, 2011 WL 1321584, at *3 (D.S.C. Apr. 4, 2011). In *Knight*, the court held that amendments to add new claims, new defendants and significantly enlarge the scope of the case were not timely when made after nearly two years of active litigation, regardless of the deadlines on the court's scheduling order. *Id.* at *4; *see also*

*Whitaker v. Protective Life Ins. Co.*, 2014 WL 12736154, at *1 (D.S.C. Nov. 12, 2014) (denying amendment as prejudicial even where the deadline to amend had been stayed). Similarly, the Court's scheduling order does not give Plaintiffs carte blanche to repeatedly re-invent their case up until mere months before discovery is scheduled to close and dispositive motions are due.

*****

The Fourth Circuit has made clear that "[a] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule." *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987). Plaintiffs have already had *five* opportunities to amend. None of the proposed new claims, allegations and defendants correspond to any exchange of discovery in the case or unearthing of relevant information. To the contrary, Plaintiffs continue to represent to Defendants that they have no more documents in their possession now than they did two years ago to substantiate their allegations. They have not produced a single document that corresponds to their new view of the case – or, for that matter, their existing Complaint allegations regarding MG Freesites. Plaintiffs' counsel should not be allowed to jam up the defense of this case by introducing an entirely new matter in the eleventh hour.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Rule 59 Motion to alter or amend this Court's March 21, 2022 Order.

| | |
|---|---|
| DATED: April 13, 2022<br><br>Greenville, South Carolina | TURNER, PADGET, GRAHAM AND LANEY, P.A.<br><br>By: */s/ Mark B. Goddard*<br>　　Mark B. Goddard | Attorney ID: 9691<br>　　email | mgoddard@turnerpadget.com<br>　　direct | 803-227-4334<br><br>　　J. Kenneth Carter | Attorney ID: 05108<br>　　email | kcarter@turnerpadget.com<br>　　direct | 864-552-4611<br>　　1901 Main Street, 17th Floor<br>　　Columbia, SC 29201<br>　　 facsimile | 864-282-5993<br>　　*Attorneys for Defendant MG Freesites, Ltd.*<br><br>MITCHELL SILBERBERG & KNUPP LLP<br>　　Marc E. Mayer | admitted *pro hac vice*<br>　　email | mem@msk.com<br>　　direct | 310-312-3154<br>　　2049 Century Park East<br>　　18th Floor<br>　　Los Angeles, California 90067<br>　　facsimile | 864-282-5993<br><br>　　Theresa B. Bowman | admitted *pro hac vice*<br>　　email | tbb@msk.com<br>　　direct | 202-470-2752<br>　　1818 N Street NW<br>　　7th Floor<br>　　Washington, DC 20036<br>　　facsimile | 202-470-2776<br>　　*Attorneys for Defendant MG Freesites, Ltd.* |