UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| **JANE DOES 1-9,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**COLLINS MURPHY, LIMESTONE COLLEGE, MG FREESITES, LTD., d/b/a PORNHUB.COM, and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM,**<br><br>**Defendants.** | Case No.: 7:20-cv-00947-JD<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT HAMMY MEDIA LTD's MOTION FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

Hammy Media d/b/a xHamster.com ("Hammy") has moved the Court to dismiss Plaintiffs' Fourth Amended Complaint on the basis of lack of personal jurisdiction. Hammy also recycles arguments previously rejected by this Court made by its co-defendant Pornhub. Notably, this motion is potentially moot, because Plaintiffs have proposed a fifth amended complaint. Although the court initially denied leave to file the updated complaint, (Dk. 172), the court's reasoning was based on the mistaken premise that the time for amendment of pleadings contained in the operative scheduling order had lapsed. In fact, Plaintiffs had until July 25, 2022 to join other parties and amend, under the operative scheduling order, which was agreed to by the defendants and entered by the court (Dk. 141).

Currently pending is a motion for the court to reconsider this ruling. (Dk. 175). The porn site defendants both swiftly opposed this motion - citing mainly the court's discretion to deny amendment regardless of its timeliness under the scheduling order, and repeating the mantra that Plaintiffs have already been allowed four amendments. (Dk. 176, 179). This Response will not digress too far into that related issue, except to make a couple vital points that impact the current motion.

First, the numerical count of amendments is misleading. The procedural history of the previous amendments was reviewed in Plaintiffs' Reply to Defendants' Responses in Opposition to Motion to Amend (Dk. 166). The first two amendments were made strictly to denominate which of the many MindGeek entities was the proper defendant and did not alter the allegations originally made. The third amendment simply clarified the Plaintiffs' Invasion of Privacy claims, which were dismissed and are irrelevant to the thrust of the current proposed amendment. No discovery had been exchanged and Hammy was yet to be served because it insisted on formal service through the Hague Convention in Cypress, which required the complaint be translated into Turkish.

The complaint was amended a fourth time, a mere *five days* after news broke in the New York Times revealing substantive evidence that Pornhub "monetizes child rapes, revenge pornography, spy cam videos of women showering, racist and misogynist content, and footage of women being asphyxiated in plastic bags."[1] Evidence began to surface like bodies in the Hudson River. Yet Pornhub [delay in discovery], and Hammy was still playing hide and seek in Cypress. Therefore, the illusion that a fifth amendment represents any kind of prejudice to the defendants or delay attributable to the Plaintiffs is disingenuous.

---

[1] Kristof, N. (2020, December 4). The Children of Pornhub. The New York Times.
https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html

Secondly, the organizations that comprise the enterprises of MindGeek and xHamster are deliberately fragmented into a nearly impenetrable tangle of legal affiliation, making it daunting to unravel without the aid of formal and extensive discovery. Hammy's present jurisdictional motion is an example of this strategy in action, as is MindGeek's game of three-card monty that resulted in the first three amendments to the complaint. The Plaintiffs believe this to be a well-honed strategy – to make it as difficult as possible to get the correct parties before the court, obstruct and complicate the resolution of those matters, clog the docket with motion practice, and then gain dismissal based on the Plaintiffs inability to "get it right". The court should be wary of a quick dismissal under such circumstances.

## I.     DEFENDANT HAMMY MEDIA LTD IS SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT.

This Court can exercise personal jurisdiction over Hammy.[2] Fed.R.Civ.P. 4(k)(2) allows a federal court to assert jurisdiction in cases 'arising under federal law' when the defendant is not subject to personal jurisdiction in any state court, but has contacts with the United States as a whole. A primary part of the Fourth Amended Complaint is the federal law allegations that xHamster is part of an associated-in-fact enterprise under the federal RICO statutes along with others "known and unknown including agents and employees of the defendants". (Fourth Amended Complaint ¶ 134, Dk. 99). For purposes of Rule 4(k)(2), the United States is the applicable forum for the minimum contacts analysis under general and specific personal jurisdiction. See *Patterson v. Aker Solutions Inc.*, 826 F.3d 231, 234 (5th Cir. 2016). "The court uses the same legal standards developed in the Fourteenth Amendment context—i.e., the minimum contacts analysis in the assertion of specific jurisdiction—but the United States is the relevant

---

[2] Hammy Media, Ltd is merely one facet of the xHamster enterprise. If allowed, the Fifth Amended Complaint more clearly defines the scope of xHamster.

forum." *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1022 (S.D. Tex. 2018).

Therefore, the scope of Hammy's contacts with "the forum" include any forged in the United States. This Court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment." *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443 (4th Cir. 2015). Hammy is challenging jurisdiction on the basis of Fed.R.Civ.P. 12(c). Although a motion for judgment on the pleadings pursuant to Rule 12(c) is separate and distinct from a motion to dismiss under Rule 12(b)(6), federal courts apply the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6). *Indep. News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009). Thus, the court should accept as true all well-pleaded allegations and should view the complaint and make all inferences in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Without an evidentiary hearing, a plaintiff need only make a *prima facie* showing of personal jurisdiction. See, *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018). If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

There has been no opportunity for the Plaintiff to conduct discovery with regard to Hammy, creating a distinct disadvantage for the Plaintiff in a case where the allegations include the existence of a coordinated enterprise. However, Hammy's reliance on the Affidavit of Mardiros

Haladjian is insufficient to prematurely terminate this action.[3] There are, at the very least, disputed questions of fact at issue, as well as facts not addressed by Mr. Haladjian.

XHamster's own Year End Report for 2019 boasts that the largest market for xHamster is the United States:



By some independent accounts, xHamster brings in an estimated $236,175,120.00 in revenue annually.[4] The xHamster website promises that "creators" can earn up to $30,000 each month" by uploading content.[5] It is absolutely inconceivable that the United States, including South Carolina, accounts for none of this revenue. Plaintiffs are in the process of propounding discovery to Hammy to confirm the nature of the transactions with the United States and with South Carolina in particular.

---

[3] xHamster's secretive and convoluted business structure is discussed in an article published by a German magazine, Das Spiegel and references the mysterious "Mr. H". A translated copy of the article is attached as Exhibit A.
[4] https://www.worthofweb.com/website-value/xhamster.com/#how-much-is-this-website-worth
[5] See Exhibit B

Evidence of xHamster's contact with the United States is not confined to the possible payment and collection of money to providers and subscribers to its content. A cursory check of the internet shows that xHamster may indeed have servers (or contracts to provide servers) in the US:

https://myip.ms › xhamster
Xhamster.com - Cloudflare, Inc, USA - Myip.ms
11 records — **Xhamster**.com site - IP 104.18.155.3, hosting Cloudflare, Inc, 665 Third Street #207, San Francisco, CA, 94107, US USA. Hosting Site on Myip.ms.

Xhamster.com

| | |
|---|---|
| IP Address: | 104.18.156.3 |
| Host Name: | Xhamster.com |
| Domain | Xhamster.com |
| ISP: | Cloudflare, Inc. |
| Country: | 🇺🇸 United States - [w Wikipedia] |
| Latitude: | 37.751 |
| Longitude: | -97.822 |
| Distance from You: | 662 miles |
| Location: |  37°45'03.6"N 97°49'19.2"W<br>Cheney Reservoir, Kansas<br>View larger map |

The above screen shots were taken from the internet at the time of filing of this Response.

"Mr. H.'s" affidavit says xHamster's advertising is handled by "an ad broker company" which is located in Cyprus. From journalism reports and independent investigation, that company

would appear to be "Traffic Stars, Ltd." – shown on the diagram below obtained from Das Spiegel showing the intricate structure of xHamster:



When counsel for the Plaintiffs in **Louisville, Kentucky** visited the xHamster website, South Carolina porn videos were not only a category, but more importantly – the screen showed geographically targeted content <u>**for Louisville, Kentucky**</u> and placed through TrafficStars. Counsel did not in any way otherwise divulge his geographic location.



This unequivocally demonstrates that xHamster, working with TrafficStars, places advertising explicitly targeted to the forum of the user. xHamster targets South Carolina specifically through this process.

An almost duplicate business model as used by xHamster has already been found to be sufficient to confer personal jurisdiction over the website defendant. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351 (4th Cir. 2020), cert. denied, 141 S. Ct. 1057, 208 L. Ed. 2d 525 (2021). The *Kurbanov* Court found that the volume of the visits to the website were enormously plentiful. XHamster presents no evidence of how many visitors, partners, or members it has in South Carolina or its daily traffic. The Court's analysis is so relevant to this case, that it bears quoting at lenght:

> In addition to the volume of visitors, we also find the nature of the repeated interaction between the Websites and visitors to be a commercial relationship. Of course, the Websites are free to use, and no cash is exchanged. But the mere absence of a monetary exchange does not automatically imply a non-commercial relationship. It is hardly unusual for websites to be free to use in today's Internet because many corporations "make money selling advertising space, by directing ads to the screens of computers employing their software." See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 926–27, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005).
>
> Here, the visitors' acts of accessing the Websites (and downloading the generated files) are themselves commercial relationships because Kurbanov has made a calculated business choice not to directly charge visitors in order to lure them to his Websites. Kurbanov then requires visitors to agree to certain contractual terms, giving him the authority to collect, among other information, their IP addresses and country of origin. Far from being indifferent to geography, any advertising displayed on the Websites is directed towards specific jurisdictions like Virginia. Kurbanov ultimately profits from visitors by selling directed advertising space and data collected to third-party brokers, thus purposefully availing himself of the privilege of conducting business within Virginia.
>
> We are not persuaded by Kurbanov's attempt to distance himself from this commercial arrangement by contending that any commercial relationship that may exist *354 lies with advertising brokers, as opposed to directly with the advertisers or visitors. According to Kurbanov, he lacks any control over what advertising is displayed because of this lack of a commercial relationship. But at a minimum, Kurbanov facilitates targeted advertising by collecting and selling visitors' data.

> While he has outsourced the role of finding advertisers for the Websites to brokers, the fact remains that he earns revenues precisely because the advertising is targeted to visitors in Virginia. Moreover, as one court appropriately concluded, "it is immaterial whether the third-party advertisers or [the defendant] targeted California residents," or Virginia residents in Kurbanov's case. See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1230 (9th Cir. 2011). "The fact that the advertisements targeted California [or here, Virginia] residents indicates that [the defendant] knows—either actually or constructively—about its California [Virginia] user base, and that it exploits that base for commercial gain by selling space on its website for advertisements." See id.; see also uBID, Inc. v. GoDaddy Group, Inc., 623 F.3d 421, 428 (7th Cir. 2010) (rejecting the defendant's attempt to "distance itself from Illinois by casting the Illinois market as simply one among many, a place of no particular interest to it"). In this instance, we reject the notion that the relationship between Kurbanov's Websites and their visitors can hardly be labeled commercial.

Id. at 353-354. The same is true for xHamster. The site and its affiliates make hundreds of millions of dollars annually through targeted efforts under the exact same business model as described by the court in *Kurbanov*. The Defendant is well aware of exactly how much money is generated through its contacts with South Carolina and it takes affirmative actions to exploit those contacts.

Similarly, in *Doe #1 v. MG Freesites, LTD*, No. 7:21-CV-00220-LSC, 2022 WL 407147, at *24–25 (N.D. Ala. Feb. 9, 2022) (copy attached), the U.S. District Court in Alabama found that the express grant of a civil cause of action under the TVPRA created personal jurisdiction over the same Defendant in this case (MindGeek) for those who claimed to be victims of sex trafficking claims.

These Plaintiffs have sought amendment to add specific TVPRA claims to their complaint, which is pending on reconsideration by this Court. However, regardless of the outcome of that reconsideration, they have also pled their injuries under civil RICO, which also authorizes nationwide service and grants an individual right of action for injuries caused by violation of the act. RICO statutes proovide for a civil remedy for private plaintiffs. See, 18 U.S.C. § 1964(c) (1994). Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 ... may sue therefor in any appropriate United States district court

and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 285–86 (D.S.C. 1999). This grant of private action is sufficient to confer personal jurisdiction for injuries caused by the actions alleged against Hammy. *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-CV-01479-KOB, 2020 WL 2309874 (N.D. Ala. May 8, 2020).

Personal jurisdiction over xHamster has been established by the Plaintiffs in the existing Complaint under both *Roche* and *MG Freesites*, supra. XHamster cannot escape and run free simply because it has become proficient in hiding the ball from Plaintiffs and the Courts. At the very least, additional discovery should be allowed to confirm the blithe statements contained in Hammy's supporting affidavit.

## I.     HAMMY MEDIA LTD. IS NOT ENTITLED TO SECTION 230 IMMUNITY

Hammy's arguments for dismissal under Section 230 of the Communications Decency Act has been considered by this Court earlier in this case and rejected. In the spring of 2018, Congress passed the Allow States and Victims to Fight Online Trafficking Act of 2017 (FOSTA), which combined a House bill of the same name with provisions from a Senate bill, the Stop Enabling Sex Traffickers Act (SESTA). FOSTA as passed makes changes to three federal statutory schemes: the Communications Decency Act (Section 230), the Trafficking Victims Protection Act (TVPA), and the Mann Act. The intent was to narrow the very interpretation of §230 that Hammy seeks to exploit.

The U.S. District Court in Illinois considered the application of a civil RICO claim under §230 and found that the CDA did not provide immunity from such a claim. *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *9 (C.D. Ill. Aug. 3, 2012), aff'd, 512 F. App'x 635 (7th Cir. 2013). Claims brought pursuant to the civil enforcement provision of RICO may only be

brought by the Attorney General or a person injured in his business or property by reason of a violation of 18 U.S.C. § 1962. See 18 U.S.C. § 1964(b),(c). Section 1962 sets forth the activities prohibited by RICO, all of which are "unlawful." See 18 U.S.C. § 1962. Also of note, the RICO statute located in Title 18 of the United States Code, which is entitled "Crimes and Criminal Procedure." Therefore, the Court concluded that § 230 of the CDA may not be used to bar a civil RICO claim because that would impair the enforcement of a Federal criminal statute.

## CONCLUSION

For the reasons stated above, the Court should deny Hammy Media's motion for judgment on the pleadings in its entirety.

**[SIGNATURE BLOCK ON FOLLOWING PAGE.]**

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

*/s/ J. Edward Bell, III*
J. Edward Bell, III (#1280)
Joshua M. W. Salley (#13214)
BELL LEGAL GROUP, LLC
219 North Ridge Street
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@edbelllaw.com
jsalley@edbelllaw.com
*Counsel for Plaintiff*


**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**

Tyler S. Thompson (*Pro Hac Vice*)
Liz J. Shepherd (*Pro Hac Vice*)
Jeffrey L. Freeman (*Pro Hac Vice*)
DOLT, THOMPSON, SHEPHERD & CONWAY, PSC
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com
lshepherd@kytrial.com
jfreeman@kytrial.com
*Counsel for Plaintiff*


April 21, 2022
Georgetown, SC