IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>COLLINS MURPHY, LIMESTONE COLLEGE, MG FREESITES, LTD d/b/a PORNHUB.COM, and HAMMY MEDIA, LTD. d/b/a XHAMSTER.COM,<br><br>　　　　Defendants. | Civil Action Number: 7:20-cv-00947-TMC<br><br><br>**DEFENDANT MG FREESITES LTD'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PURSUANT TO 18 U.S.C. § 1595(B)** |

## **INTRODUCTION**

Plaintiffs' memorandum in opposition to the Motion to Stay is a disingenuous attempt to sidestep the unambiguous language of Section 1595(b) of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1591 *et seq*. As Plaintiffs admit, that provision ***requires*** the Court to stay any civil action that "arises out of the same occurrence and involves the same victims as the criminal action." Plaintiffs also admit, as they must, that there is an ongoing investigation by the Gaffney Police Department ("Gaffney PD") into the surreptitious video recording of visiting students; that Plaintiffs are among the students who were unlawfully recorded; that the lead defendant in this case, Collins Murphy, is a "person of interest" in the investigation; and that Plaintiffs' claims against MG Freesites arise from allegations that MG Freesites "participated" in a trafficking venture ***with Murphy***, conspired ***with Murphy*** to create and publish videos of the Plaintiffs, and was engaged in an unlawful racketeering "enterprise" ***with Murphy***. These admissions are sufficient to mandate a stay of this proceeding.

Unable to refute these basic facts, Plaintiffs offer a series of arguments that are so plainly at odds with the statutory language, factual record, and the applicable legal authorities that they border on bad faith. By way of example, Plaintiffs now claim that they are unable to determine whether the Gaffney PD's investigation involves the same incident or victims at issue in this case, even though Plaintiffs specifically alleged in their Complaint that a related criminal investigation was "ongoing;" the Gaffney PD explicitly stated that its criminal investigation is in connection with the incident that "is the subject of your civil lawsuit;" and MG Freesites received a search warrant from the Gaffney PD seeking information about the videos of Plaintiffs. Plaintiffs then claim that even if the investigation did involve the same victims and circumstances, it does not "arise out of the same occurrence" as this lawsuit, because the investigation did not involve the distribution or publication of the videos. But again, Plaintiffs fail to mention that the reports filed by the Gaffney PD make direct reference to the distribution of the videos on the Pornhub website, and confirm that the investigation includes the "*publication*" of such videos online. Even more troubling, Plaintiffs completely ignore that their lawsuit seeks to hold MG Freesites "jointly and severally" liable with Murphy, and alleges that MG Freesites and Murphy were participants in a joint sex trafficking "venture," an illegal RICO "enterprise," and civil conspiracy. Finally, Plaintiffs attempt to rewrite the statute's definition of "criminal action," by claiming that it does not apply to investigations into a "person of interest," when the statute states, in no uncertain terms, that "criminal action" "includes investigations."

Apparently realizing that their efforts to avoid the language of Section 1595(b) are strained (at best), Plaintiffs resort to arguments about the purported "purpose" of the statute, the "intent" of the Gaffney PD, or hypothetical prejudice to Plaintiffs. None of these arguments is sufficient to overcome the unambiguous statutory language, including because "intent" and "prejudice" are

not relevant to the analysis and never mentioned in the statute or case law.  The Gaffney PD is the only entity with the power to close its investigation.  Likewise, if Plaintiffs wish to avoid any further delay, then they may dismiss their TVPRA claim and proceed on their other claims.  But until either of those events occurs, Plaintiffs may not proceed with their action – and, specifically, may not seek to hold MG Freesites liable as a "participant" in Murphy's alleged criminal conduct – without also honoring the *mandatory* stay obligations placed on the Court in connection with the action including such claims.

For the reasons set forth in MG Freesites' Motion, the Court should issue a stay of this action pending the conclusion of the criminal proceeding related to this matter.

## ARGUMENT

### I.   A STAY IS MANDATED UNDER THE CIRCUMSTANCES

#### A.   There Is An Ongoing Criminal Investigation Arising Out Of The Same Occurrence At Issue In This Lawsuit.

Plaintiffs concede, as they must, that Section 1595(b)(1) is a ***mandatory*** stay provision.  18 U.S.C. § 1595(b)(1) ("Any civil action filed under subsection (a) ***shall*** be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.") (emphasis added); *Sharma v. Balwinder*, 2021 WL 4865281, at *2 (N.D. Cal. Sept. 29, 2021) ("plain language of the TVPRA mandates a stay of the present civil action pending resolution of the criminal proceedings.")  Thus, the Court does ***not*** have discretion to deny a request for a stay when the civil action arises out of the same occurrence and involves the same victim(s) as the criminal action.  *Doe v. MindGeek USA Inc.*, 2021 WL 6618628, at *3 (C.D. Cal. Dec. 28, 2021) ("Simply put, § 1591(b) requires that a civil action be stayed if the victim of the criminal action is the same as the claimant in the civil action, and if the conduct underlying both

cases arises out of the same occurrence."); *Lopez v. Davis*, 531 U.S. 230, 231 (2001) (noting that Congress's use of the mandatory term "shall" imposes "discretionless obligations").

There can be no serious dispute that the statutory requirements for a stay are met here. Plaintiffs specifically allege in their Fifth Amended Complaint that "the Gaffney Police Department opened an investigation into the illegal video recordings which took place on Limestone College's campus" and "[u]pon information and belief the investigation is ongoing." Fifth Amended Complaint, ¶ 83. The letter and affidavit from the Gaffney PD further confirm that the investigation involves the same circumstances that give rise to this lawsuit, the same victims, and at least one defendant in this lawsuit (Collins Murphy):

> There is an ongoing criminal investigation regarding the incident that occurred at Limestone College (now University) in the City of Gaffney, ***which, apparently is the subject of your civil lawsuit***. ***In that investigation, Collins Murphy has been named a person of interest and I note that he is a Defendant in your civil suit.***

Ex. E, p.1 (emphasis added). And, if there were any remaining doubt, it may be put to rest by the Gaffney PD's search warrant to MindGeek, which sought information concerning the videos at issue in this case.[1] Accordingly, the circumstances here fall precisely within the statute and a stay is mandated. *See Doe*, 2021 WL 6618628 at *4 (staying case involving alleged distribution of unlawful content where the creator of the content was the subject of a pending criminal proceeding.)

---

[1] Plaintiffs' complaint that MG Freesites "failed to attach a copy of the search warrant" is particularly disingenuous. The search warrant ***and*** all of the materials produced in response to it were produced to Plaintiffs in discovery in this action. Plaintiffs are well aware that among the information sought by the Gaffney PD (and provided by MG Freesites to the Gaffney PD) was information concerning the same videos at issue in this case. MG Freesites is prepared to provide the search warrant and any relevant materials to the Court, subject to an order protecting their confidentiality.

### B.      Plaintiffs' Arguments Are Legally and Factually Incorrect.

In an effort to avoid the unambiguous statutory language, Plaintiffs attempt to impose requirements for obtaining a stay that are not supported by the statute or the case law, while distorting the facts and ignoring their own allegations and judicial admissions.  Most notably, Plaintiffs suggest that a stay may only be issued where there is an actual or pending indictment or prosecution.  But the statute is absolutely clear that "investigations" are encompassed within the definition of "criminal action" and that a criminal action is "pending" until final adjudication. *Lunkes v. Yannai*, 882 F. Supp. 2d 545, 549 (S.D.N.Y. 2012) ("Final disposition [under § 1595(b)(2)] logically coincides with the entry of the judgment in a criminal matter, which in turn occurs when a criminal defendant is sentenced.").  Plaintiffs also make the unsupported claim that a stay must be sought by the local government – not a defendant.  That also is incorrect.  Courts routinely grant stay motions brought by a defendant.  *See, e.g. Doe*, 2021 WL 6618628 at *4 (staying the action on the request of the defendant, without joinder by law enforcement); *Sharma*, 2021 WL 4865281 at *1 (same).  If Congress had intended to require the existence of a criminal indictment or that a stay be sought by the government or law enforcement, it would have included these requirements in the statute.

*Plaintiff A v. Schair*, 744 F.3d 1247 (11th Cir. 2014), on which Plaintiffs rely in their Opposition (Opp. at 11, 13) illustrates this point.  In *Schair*, the plaintiffs filed suit in June 2011 alleging that Schair's actions violated the TVPRA.  *Schair*, 744 F.3d at 1250.  The next month, Schair moved to stay the case pursuant to Section 1595(b)(1) because there were two ongoing criminal investigations of his actions, including one by the United States Department of Justice ("DOJ").  *Id.* at 1251.  "The district court found that, in light of the ongoing U.S. investigation, § 1595(b) mandated the entry of a stay" and in August 2011 "the district court entered an order staying the plaintiffs' civil action until the domestic criminal action ended." *Id.*  Over a year later,

in November 2012, DOJ informed Schair that they had affirmatively decided not to prosecute him, and their investigation *ended*.  *Id.*  Only following confirmation from DOJ that their investigation had concluded did the district court lift the mandatory stay.  *Id.*  The same result is required here.

Plaintiffs' remaining arguments are equally unavailing.

***First***, Plaintiffs make the bizarre argument that the Gaffney PD's investigation is so "directionless and vague" that they cannot determine whether that investigation is related to this civil action.  Opp. at 5.  Indeed, Plaintiffs go so far as to assert that defendant Murphy "is not even the subject of the investigation."  *Id.*  But, as noted, the Gaffney PD's affidavit squarely ***confirms*** that the investigation involves the exact same underlying facts ***and*** the exact same perpetrator (Collins Murphy), stating that "the City of Gaffney has an ongoing criminal investigation ***regarding the matter that appears to be the subject of this civil lawsuit***."  Knight Affidavit (Ex. E), ¶ 4 (emphasis added).  Similarly, in the police report, the Gaffney PD stated that the investigation arises from surveillance "between the dates of 09/2012-10/2013 of the females changing clothes and taking showers" and the videos "were uploaded on a Porn Hub website."  Police Report (Ex. A); *see also* Police Report (Ex. B) (referencing Collins Murphy).

Plaintiffs' suggestion that the Gaffney PD investigation might involve different victims or different videos (*i.e.*, that the video of Plaintiffs was not one of the five videos referenced by the Gaffney PD) is pure sophistry.  In their Fifth Amended Complaint, Plaintiffs specifically allege that Murphy's recordings were created "between September 2012 and October 2013" (5AC, ¶ 78), that Murphy "secretly placed a video camera in the subject locker room … and recorded the Plaintiffs" (¶ 76), and that these same recordings "were uploaded to defendant Pornhub and defendant xHamster" (¶ 81).  Whether the Gaffney PD's investigation ***also*** involves recordings other than those at issue here is irrelevant.

*Second*, Plaintiffs argue that the investigation by the Gaffney PD does not "overlap" with the claims against MG Freesites, because "Defendants have offered no evidence that the Gaffney police investigation involves the crime of the subsequent uploading of the Videos to Defendants' websites." Opp. at 7. This assertion is patently false. The first Police Report specifically references that "two months ago the 5 videos were uploaded on a Porn Hub website" (Ex. A), while the second one includes "publishing" pornography as among the "Criminal Activities" being investigated. Ex. B. And, as noted, the Gaffney PD confirmed that its investigation involved the "incident" that "is the subject of your civil lawsuit." The Gaffney PD was provided with a copy of the operative complaint in this lawsuit, and concluded *on its own* that the criminal and civil matters overlapped to such an extent that disclosure of investigative material would "jeopardize" the investigation. Ex. E.

Plaintiffs' attempt to draw a distinction between Murphy's alleged acts of creating nonconsensual recordings and MG Freesites' alleged publication or distribution of those recordings on its website also is inconsistent with Plaintiffs' own allegations. The Complaint purports to directly tie Murphy's alleged conduct to that of MG Freesites. It even lumps both MG Freesites and Murphy together as "Defendants" in at least three of the causes of action: for violation of the TVPRA, violation of the RICO statute, and civil conspiracy. Plaintiffs specifically allege that MG Freesites "participated" in Murphy's sex trafficking "venture," acted in concert with Murphy, and was part of a RICO and civil conspiracy. Indeed, "Plaintiffs pray for judgment against each of the Defendants **Jointly** and **Severally.**" 5AC, Prayer (emphasis in original.)[2]

---

[2] Other similar allegations are that "Defendants [Murphy, MG Freesites, and XHamster] … participat[ed] in what they knew or should have known was a sex trafficking venture" (5AC, ¶ 105, 107, 108, 109); "Defendants formed the Enterprise[s] to execute and attempt to execute schemes to engage in the *creation* and dissemination of illegally obtained obscene footage of nonconsenting women" and "knowingly promoted, engaged in, created and published the illegal filming of women…" (¶ 116; emphasis added); and "[t]he Defendants conspired for the purpose of *creating* and trafficking sexually lewd content which directly invaded the Plaintiffs' rights to privacy…" (¶ 195; emphasis added.)

Plaintiffs cannot seek to hold MG Freesites liable for the alleged conduct of Murphy through conspiracy, agency, and joint venture allegations, while simultaneously claiming that an investigation into Murphy's alleged criminal conduct "is collateral" to their claims against MG Freesites. Opp. at 7. In any event, the very same argument Plaintiffs make here was rejected by the *Doe* court, which found that "Plaintiff's allegations in the present action arise out of the same occurrence" *even* where the criminal defendant (who created the video content) was not a defendant in the civil action against MG Freesites, which allegedly distributed those videos. *Doe*, 2021 WL 6618628 at *4.

*Third,* Plaintiffs claim – without any legal or factual support – that Section 1595(b)(1) does not apply because the Gaffney PD investigation is not sufficiently "active." As noted, the statute requires only that there is an "investigation." It says nothing about the nature or progress of that investigation, and certainly does not require that someone has been charged with a crime. *See Antonio–Morales v. Bimbo's Best Produce, Inc.,* 2009 WL 1591172, at *1–2 (E.D. La. Apr. 20, 2009) (staying case based on government investigation alone); *Schair*, 744 F.3d at 1251 (staying the plaintiffs' civil action until DOJ investigation ended).

In any event, Plaintiffs do not offer any support for their claim that the investigation is inactive, other than their dissatisfaction that the criminal investigation has taken a long time. Contrary to Plaintiffs' claim, the Gaffney PD has stated that their investigation is "ongoing," this is a "time-consuming and complex matter," and production of materials will "jeopardize its investigation." Ex. E. In fact, neither Plaintiffs nor MG Freesites know the exact status of the investigation – and whether the investigation is "leading toward a prosecution" (Opp. at 8) – because the Gaffney PD will not disclose materials from its investigatory file while the investigation is ongoing. It is not for Plaintiffs (or the Court) to determine the progress of the

Gaffney PD's "ongoing investigation." Had the Gaffney PD believed that the investigation was concluded, or would not lead to a criminal prosecution, it would have so stated in response to MG Freesites' subpoena (as the DOJ did in the *Schair* case). By the same token, whether the City of Gaffney "intended" to support a stay of this action is irrelevant. All that is relevant is that an investigation is ongoing and arises from the same occurrence as this action.[3]

The case on which Plaintiffs rely, *Kolbek v. Twenty First Century Holiness Tabernacle Church*, 2011 WL 5188424 (W.D. Ark., Oct. 31, 2011), is not on point. In *Kolbek,* the defendant sought a stay of the proceeding based on a purported quote from an Assistant U.S. Attorney that was reported in a newspaper *two years* before the stay motion was brought. Notably, in *Kolbek* the U.S. Attorneys' Office ***never once*** confirmed the existence of a criminal investigation, including in response to a subpoena from the defendant. The Court therefore denied the stay ***not*** because a criminal prosecution had not yet been filed, but because the defendant "can only surmise as to whether a criminal investigation may be ongoing" and sought a stay "based on ***mere speculation*** that the government may be involved in an ongoing investigation." *Kolbek*, at *2. By contrast, the Gaffney PD explicitly ***confirmed*** in December 2021, including in a sworn Affidavit, that the investigation is ongoing and that discovery in this action could jeopardize the investigation. Thus, MG Freesites' motion is not based on "mere speculation" or "theor[izing] that an investigation might possibly be ongoing." *Id.*, at *2. *See also Doe*, 2021 WL 6618628 at *3

---

[3] Although whether and the extent to which discovery in the civil case might interfere with a criminal proceeding is irrelevant, contrary to Plaintiffs' suggestion, the letter and affidavit from the Gaffney PD confirms that discovery in this case will, in fact, interfere with its investigation. Whether MG Freesites might be able to overcome the Gaffney PD's privilege assertion through motion practice misses the point. The Gaffney PD has stated that it will not produce those documents in response to a subpoena in light of its continuing investigation. Tellingly, Plaintiffs, as the victims, have not contested the Gaffney PD's assertion that production will "jeopardize" the investigation. They also have not waived their privacy rights related to the materials or agreed to stipulate that the production of the materials is in furtherance of their interests.

(finding *Kolbek* inapplicable because in that case "the civil defendants presented insufficient evidence that a pending criminal action existed.").

## II. THE PUPORTED "PURPOSE" OF THE STATUTE DOES NOT OVERRIDE ITS PLAIN LANGUAGE

Because the statutory language is clear, Plaintiffs digress into policy arguments, arguing that the Court may ignore the statute because Section 1595(b) purportedly was not "intended" to benefit civil defendants. Irrespective of the "purpose" of the statute, this argument is irrelevant. Section 1595(b)'s stay is mandatory, not discretionary, and does not include exceptions based on the statute's "purpose." Thus, courts expressly have rejected the very same policy argument made by Plaintiffs here. *See Doe*, 2021 WL 6618628 at *3 (rejecting argument based on intent of statute because it "is contrary to the statute's clear, broad, and mandatory language"); *Sharma*, 2021 WL 4865281 at *2 (finding "unpersuasive" plaintiff's argument that "the legislative intent behind § 1595(b) was to preserve the integrity of criminal prosecutions, not to benefit criminal defendants"); *Lunkes*, 882 F. Supp. 2d at 549. As the Supreme Court has held, "where, as here, [a] statute's language is plain, the sole function of the courts is to enforce it according to its terms." *U.S. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (quotation marks and citation omitted).

Plaintiffs' reliance on *Schair* to support grafting a "purpose" requirement onto the statute is misplaced. As noted above, the district court in *Schair* **granted** the defendant's motion for a mandatory stay under Section 1595(b) and only lifted it once the DOJ's yearlong investigation was concluded. *Schair*, 744 F.3d at 1250–51. The defendant appealed the order lifting the stay, arguing that the existence of a foreign investigation was sufficient to mandate a stay. In affirming the district court's decision to lift the stay, the Eleventh Circuit did not suggest that the district court erred in issuing the stay based on the pending investigation. Rather, the court held that it lacked *jurisdiction* over an interlocutory appeal of the district court's subsequent decision to lift the stay.

*Id*. at 1251. While the court stated that civil defendants do not have an important interest in staying TVPRA cases, it did so only in the context of the collateral order doctrine, under which the Supreme Court has explicitly required courts of appeals to consider whether interlocutory review would involve "an important issue." By contrast, Section 1595(b) neither requires nor permits consideration of the "importance" of the issues presented, and it does not authorize courts to balance the interests of the defendants against the interests of the plaintiffs.

### III. PLAINTIFFS' CLAIMS OF PREJUDICE AND BAD FAITH ARE UNSUPPORTED AND IRRELEVANT

In a last-ditch effort to avoid a stay, Plaintiffs accuse MG Freesites of being "opportunistic" or engaging in litigation gamesmanship. The accusations are incorrect, unsupported, and in any event, irrelevant. Whether a stay is required under the statute is not dependent on the purported motives of the defendant. Regardless, the reality is that MG Freesites has never sought to delay this action. It is Plaintiffs that unnecessarily delayed this case by filing *five* amended complaints (including a Fifth Amended Complaint that significantly altered the claims in the case), adding additional foreign defendants (who have not yet been served or appeared), and failing to serve the XHamster defendants until well over a year after the case was filed. MG Freesites did not seek a stay of this action until Plaintiffs expanded their lawsuit to include claims that MG Freesites was not merely liable for negligence, but was civilly liable as a participant and co-conspirator in Murphy's *criminal* sex trafficking "venture."

Plaintiffs certainly were aware (or should have been aware) that the TVPRA is first and foremost a criminal statute and that Section 1595 contains a mandatory stay provision. They also were aware that a criminal investigation was pending, since they alleged as much in their Fifth Amended Complaint. Nevertheless, they (and their highly experienced counsel) made the informed decision to add a TVPRA claim two years into the case. Thus, to the extent a stay will

delay the case, this was the choice that Plaintiffs made when they amended their complaint to include allegations of criminal conduct. If Plaintiffs now wish to avoid the procedural requirements of Section 1595(b), they may dismiss the TVPRA claim.[4] However, they cannot bring a claim under the TVPRA and then disregard its other core statutory provisions.

Finally, Plaintiffs' claims of prejudice (such as that evidence will be lost or destroyed if the case is stayed) are not just irrelevant, but also are overblown and unsupported. Delay or prejudice is not a consideration under the statute. But even if it was, MG Freesites does not seek to stay the case indefinitely; only until the Gaffney PD advises the parties that its investigation has concluded or after a criminal indictment and sentencing is complete. As for Plaintiffs' concerns regarding evidence, MG Freesites remains (and will continue to remain) compliant with its obligations to preserve evidence while this case is pending.[5] Thus, there is no cause for undue concern about an additional delay. In fact, this case already has been pending for two years, and involves conduct that took place many years ago (*i.e.*, in 2012 and 2013). A brief additional delay while the Gaffney PD concludes its investigation is appropriate and not unduly prejudicial.

---

[4] Plaintiffs' accusation that "this case has spent a great deal of time mired in motion practice" is untrue and unfair. While MG Freesites filed a Motion to Dismiss early in the case (in 2020), a decision on that Motion was delayed because Plaintiffs amended their Complaint ***three times*** in response to the Motion. Those amendments required MG Freesites to re-file its Motion on three separate occasions. Other than its Motions to Dismiss and this Motion to Stay, MG Freesites has not filed any motions in this case.

[5] By contrast, Plaintiffs offer no basis for their claim that evidence gathered by the Gaffney PD "will have little to no value."

## CONCLUSION

For the foregoing reasons, the Court should stay this action pending the conclusion of the criminal investigation into the Videos.

Respectfully submitted,

DATED July 12, 2022

Columbia, South Carolina

TURNER, PADGET, GRAHAM AND LANEY, P.A.

By: */s/ Mark Goddard*
Mark Goddard | Attorney ID: 09691
email | mgoddard@turnerpadget.com
direct | 803-227-4334

1901 Main Street, 17th Floor
Columbia, SC 29201

J. Kenneth Carter | Attorney ID: 05108
email | kcarter@turnerpadget.com
direct | 864-552-4611

Post Office Box 1509
Greenville, South Carolina 29602
facsimile | 864-282-5993

*Attorneys for Defendant MG Freesites Ltd*

Los Angeles, California

MITCHELL SILBERBERG & KNUPP LLP

Marc E. Mayer | Admitted Pro Hac Vice
email | mem@msk.com
direct | 310-312-3154

2049 Century Park East
18th Floor
Los Angeles, California 90067
facsimile | 864-282-5993

*Attorneys for Defendant MG Freesites Ltd*

12243830.3