**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

|  |  |
|---|---|
| JANE DOES 1-9,<br><br>            Plaintiffs,<br><br>vs.<br><br>COLLINS MURPHY, SHARON HAMMONDS, BRENDA F. WATKINS, LIMESTONE UNIVERSITY, MG FREESITES, LTD., d/b/a PORNHUB.COM, MG FREESITES II LTD., MINDGEEK S.A.R.L., MINDGEEK USA, INC., MG BILLING LTD., and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM, TRAFFICSTARS LTD., WISEBITS LTD, XHAMSTER IP HOLDINGS LTD, WISEBITS IP LTD.,<br><br>            Defendants. | Case No.: 7:20-cv-00947<br><br><br>**HAMMY MEDIA LTD.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR EXTENSION OF TIME** |

**INTRODUCTION**

Enough is enough is enough.

Although Plaintiffs in this case seemingly want to expand the roster of Defendants with an ever-expanding list of (unnecessary and irrelevant) foreign companies, they have proved to be wholly unwilling to do the work necessary to effectuate service on these entities in a timely manner. Instead, Plaintiffs sat on their hands as the time ticked away, despite this Court's explicit admonition during the last conference with counsel that Plaintiffs should act expeditiously. Indeed – despite claiming that their Motion was brought pursuant to Fed. R. Civ. P. 6(b)(1)(A), which governs motions for leave for additional time filed ***before the relevant deadline***, Plaintiffs acknowledge that their motion was not filed until weeks ***after*** the expiration of the relevant deadline, meaning that the motion should have been brought properly pursuant to Rule 6(b)(1)(B).

This is not simply Hammy Media Limited ("HML") being persnickety: unlike Rule 6(b)(1)(A), Rule 6(b)(1)(B) provides that the Court may only extend the relevant deadline "for good cause… on motion made after the time has expired if the party failed to act because of excusable neglect."

This hardly seems like an accident: Plaintiffs make no argument either that there was "good cause" for their delay or that their failure to move for this relief was the result of "excusable neglect." Instead, Plaintiffs seem to rely on their belief that the Court will simply rubber-stamp their request, despite a wholesale lack of explanation for the delay. At some point, however, this litigation must move past the pleading and service stage, and that time has passed. Plaintiffs' request for yet another six months to effectuate service on the additional foreign defendants (defendants who will undoubtedly move to dismiss for a lack of personal jurisdiction, just as HML has done) will simply lead to more unnecessary delay.

In further support of its opposition, HML states as follows.

## PROCEDURAL HISTORY

Plaintiffs filed their original complaint in this action on March 4, 2020, naming four defendants, including HML. Almost *sixteen months later*, Plaintiffs reached out to the undersigned counsel to ask if counsel – who had represented HML previously but who, at the time, had not been retained to represent HML in the present action – would ask if HML if it would be willing to waive service under the Hague Convention. *See* **Exhibit 1** – Email thread between Jeffrey Freeman and Evan Fray-Witzer, dated June 30, 2021. Counsel responded the same day, informing Attorney Freeman that they were not authorized to accept service on HML's behalf. *Id.*

Three months later (at the end of September 2021), HML was served with what was then the operative complaint in this case, the Fourth Amended Complaint. It appears also that, by the time HML was served, the other parties had already exchanged some discovery in this case. HML

cannot be certain of this, however, because, despite repeated requests, it has not been provided with copies of any of the discovery previously produced.

On November 9, 2021, Plaintiffs filed a motion seeking leave to file a Fifth Amended Complaint. On March 21, 2022, this Court denied Plaintiffs' Motion to Amend, rendering the Fourth Amended Complaint the active complaint in the case. Accordingly, on March 29, 2022, HML filed both an answer and a Motion for Judgment on the Pleadings with respect to the Fourth Amended Complaint. That Motion remains under consideration by this Court.

On March 30, 2022, Plaintiffs filed a Motion to Reconsider, which this Court allowed on June 2, 2022, making the Fifth Amended Complaint the operative complaint in the present case. On June 9, 2022, Plaintiffs asked HML's counsel if the newly-added foreign defendants would waive service under the Hague Convention. *See* **Exhibit 2.** Once again, this request involved foreign entities which had not (and as of the date of this Opposition have not) retained the undersigned counsel for defense in this case. On June 23, 2022, Counsel for HML informed Plaintiffs that they were not authorized to accept service on behalf of the new foreign corporations. *Id.*

For the next *two months,* Plaintiffs apparently made no efforts whatsoever to effectuate service on the newly-added foreign entities. On August 25, 2022, this Court held a status conference during which the Plaintiffs raised the fact that they had not served the new foreign defendants, noting that they would likely seek leave of the Court to extend the service deadline. The Court unambiguously told Plaintiffs to act expeditiously if they intended to seek such relief. Despite this (and despite the fact that Plaintiffs still had a week at that point to bring their motion under Rule 6(b)(1)(A)), Plaintiffs failed to do so. Instead (and despite knowing since June that the new foreign entities would not waive service under the Hague convention), Plaintiffs scheduled a

meet-and-confer with counsel for September 1, 2022.  During this meet and confer, HML again

stated that the foreign entities were not waiving service under the Hague convention.  And,

although Plaintiffs could have filed their motion the same day, they did not do so, waiting another

two and a half weeks to file their motion for an extension of time.

Plaintiffs filed the present motion on September 19, 2022, and, even then, did not issue

summonses for the foreign entities for another 10 days.

**ARGUMENT**

I.       **Plaintiffs Have Failed To Demonstrate Either Good Cause or Excusable Neglect.**

Pursuant to Rule 6(b)(1)(B), a party seeking an extension of a deadline once the deadline

has passed must show **both** good cause **and** excusable neglect.  *Hayward v. McCabe*, 2012 U.S.

Dist. LEXIS 44740, at *3-6 (D.S.C. Mar. 30, 2012)("If the motion for extension of time is made

after the time period expires, then the court may grant the request if good cause is shown *and* 'the

party failed to act because of excusable neglect.' …Here, the motion for extension of time was

stamped by the prison mailroom after the deadline for filing objections. Therefore, the petitioner

must show both 'good cause' and 'excusable neglect'. … Petitioner has not shown good cause or

excusable neglect for failing to file his objections to the Report or a timely motion for extension

of time. Petitioner should not have waited until the last minute to request additional time, assuming

that the Court would grant his request").

"Good cause" requires the moving party to show reasonable diligence in attempting to meet

the relevant deadline.  *See, e.g, Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019)("Generally,

for purposes of Rule 4(m), 'good cause' requires some showing of diligence on the part of the

plaintiffs. Put conversely, good cause generally exists when the failure of service is due to external

factors, such as the defendant's intentional evasion of service. …While 'good cause" is a flexible

standard, diligence provides a touchstone for an appellate court that is reviewing a dismissal under Rule 4(m). …Whatever the minimum requirement for good cause may be, the plaintiffs have failed to show it."); *Hoffman v. Am. Express Co.,* 2022 U.S. Dist. LEXIS 54243, at \*1 n.2 (D.S.C. Jan. 14, 2022)("Good cause requires some showing of diligence on the part of Plaintiff; cases have been dismissed where there is significant periods of inactivity and failure to seek extension of time before the deadline lapsed.")

"Excusable neglect" requires a much higher showing. *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 220 (4th Cir. 2011)("'Excusable neglect' is not easily demonstrated, nor was it intended to be. … Indeed, 'a district court should find excusable neglect only in the extraordinary cases where injustice would otherwise result.' …These limiting principles confine the circumstances under which a district court may properly find excusable neglect, particularly in instances of mere 'inadvertence, mistake, or carelessness'"); *Wilder v. James*, 2018 U.S. Dist. LEXIS 124766, at \*2-3 (D.S.C. Mar. 19, 2018)("Plaintiff has failed to show good cause and excusable neglect. Although he alleges he has met the standard for excusable neglect, he does not state how or why. Merely reciting the rule does not mandate application of that rule, and Plaintiff does not say why his neglect is excusable other than there was an oversight as to how much time had passed. However, an oversight does not meet the standard for excusable neglect").

Plaintiffs here have made no attempt to explain their delay in attempting service, much less how they believe they meet the good cause or excusable neglect standards. Far from demonstrating diligence in attempting to serve the new foreign entities, Plaintiffs have been lackadaisical, waiting three months from the time when they were first informed that the new foreign entities would not waive service under the Hague Convention to file their motion for additional time. Moreover, there is no evidence that Plaintiffs did *anything* during that period of time to attempt such service.

Instead, Plaintiffs waited until after the deadline had passed only to file a perfunctory motion to extend that clearly assumes the Court will rubber stamp such a request.

Because Plaintiffs have failed to articulate (much less demonstrate) any basis for their failure to effectuate service in a timely manner (or move for an extension before the expiration of the deadline), Plaintiff's Motion should be denied.

## II.     Even If Plaintiffs Had Bothered To Make An Argument As To Excusable Neglect, Their Motion Should Be Denied.

It is impossible to know, of course, what Plaintiffs could say to demonstrate excusable neglect given their apparent failure to take any steps towards serving the new foreign defendants. Even if Plaintiffs had articulated *some* rationale for their delay, the Court still would have had to determine if Plaintiffs' explanations satisfied the standard for a showing of excusable neglect.

"Although a party typically satisfies the standard for demonstrating excusable neglect by demonstrating that the delay is the result of circumstances beyond the party's control, courts have recognized that 'excusable neglect' may extend to inadvertent delays.  Factors for a court to consider when evaluating whether a party has demonstrated excusable neglect for a delay include (1) 'the danger of prejudice to the [other party]'; (2) 'the length of the delay and its potential impact on judicial proceedings'; (3) 'the reason for the delay, including whether it was within the reasonable control of the movant'; and (4) 'whether the movant acted in good faith.'" *Hinterberger v. Am. Nurses Ass'n (In re Am. Nurses Ass'n),* 643 F. App'x 310, 313 (4th Cir. 2016).

Preliminarily, it bears noting that Plaintiffs originally filed this case more than two and a half years ago and yet it has not progressed past the pleading stage.  Plaintiffs' request for yet another six (6) months to effectuate service on four new foreign defendants is clearly prejudicial to HML (not to mention the other defendants and the Court itself).  Presumably, if the new foreign defendants were served, they would themselves have the right to object to personal jurisdiction,

just as HML has done.  The resulting motion practice means that this case could easily be four or

five years old before it ever progresses past the pleading stage.  It is also worth noting that the

events underlying Plaintiffs' complaint took place in 2012 and 2019 and nothing has happened in

the intervening time since Plaintiffs filed their original complaint – either factually or legally –

that justified the addition of new defendants more than two and a half years after the filing of the

Complaint.  It is not as if Plaintiffs could not have identified these potential defendants at the time

they filed their complaint, they simply failed to do the work necessary to do so.

Additionally, it is hard to see how: (a) the Court has personal jurisdiction over the newly

added foreign defendants; (b) Plaintiffs can show causation for their alleged injuries connects to

the new foreign defendants; or (c) Plaintiffs will be prejudiced by the denial of their motion.

The Fifth Amended Complaint named four foreign corporations – Trafficstars, Ltd. (a

Cypriot company); Wisebits, Ltd. (a Cypriot company); XHamster IP Holdings, Ltd. (a British

Virgin Islands company); and Wisebits IP, Ltd. (a Cypriot company) – which Plaintiffs allege are

related to HML.  Fifth Amended Complaint, ¶¶32-35.  Tellingly, though, there is not a single fact

alleged in the Fifth Amended Complaint that would support an assertion of personal jurisdiction

over these foreign entities.  Instead, the Proposed Fifth Amended Complaint simply identifies these

separate, independent legal entities and then lumps them together with HML, assuming that

jurisdiction is proper solely because these entities allegedly have some connection to HML, which

runs the xHamster website.  Putting aside the fact that the operation of the xHamster website is an

insufficient basis upon which to assert jurisdiction even as to HML, even if this were not the case,

the Plaintiffs would be required to specifically state a basis for personal jurisdiction over *each* of

the defendants, not simply by aggregating them all under the term "xHamster," as the Fifth

Amended Complaint attempts.  Fifth Amended Complaint, ¶36.  "Each defendant's contacts with

the forum state must be assessed individually rather than simply viewing them collectively." *Calder v. Jones*, 465 U.S. 783, 790 (1984). *See also, Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) ("The Minnesota court also attempted to attribute State Farm's contacts to Rush by considering the 'defending parties' together and aggregating their forum contacts in determining whether it had jurisdiction.  The result was the assertion of jurisdiction over Rush based solely on the activities of State Farm.  Such a result is plainly unconstitutional."); *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Memari v. Ply Gem Prime Holdings*, 2013 U.S. Dist. LEXIS 206444, at *3 (D.S.C. Aug. 6, 2013)("Each defendant's contacts with the forum State must be assessed individually"); *Christian World Adoption, Tomilee Harding, Robert L. Harding, & Christian World Found. v. Hawley & Assocs.,* 2012 U.S. Dist. LEXIS 204881, at *4 (D.S.C. Nov. 20, 2012)(same).

In the Fifth Amended Complaint, Plaintiffs allege that: Trafficstars Ltd. is a Cypriot company that manages the advertising placement for HML's websites (¶32); Wisebits Ltd. is a Cypriot company providing IT services to HML's websites (¶33); xHamster IP Holdings Ltd. is a British Virgin Islands company that holds the xHamster trademark (¶34); and Wisebits IP Ltd. is a Cypriot company that is the parent company of xHamster IP Holdings Ltd. (¶35).  Even assuming these allegations to be true, they amount to nothing more than allegations that these four foreign corporations (each with its own separate legal identity) has some business relationship to HML (itself a foreign corporation).  The allegations say nothing about these companies' connections to South Carolina or the United States, how Plaintiffs' claims arise out of those companies directing their actions at South Carolina or the United States, or how an exercise of jurisdiction over those companies could possibly comport with the constitutional requirements of due process.

8

Similarly, the utter lack of substantive allegations suggesting *any* connection between the new foreign entities and Plaintiffs' claims belies any claim that Plaintiffs would be somehow prejudiced if the Court were to deny Plaintiffs' Motion.

Had Plaintiffs simply begun the process of service under the Hague Convention three months ago – when they first understood that the new foreign defendants did not intend to waive such service, it is likely that the new foreign defendants would already have been served. Plaintiffs offer no explanation for their failure to do so. Rather, the evidence shows that they were not diligent in pursuing the new foreign defendants, and they have made no argument whatsoever to show that their neglect was somehow excusable. Accordingly, Plaintiff's Motion should be denied.

## CONCLUSION

For the reasons stated hereinabove, Plaintiffs' Motion For Extension of Time should be denied.

Respectfully Submitted,

*/s/ Hannah Rogers Metcalfe*
Hannah Rogers Metcalfe, Fed ID. 9943
Metcalfe & Atkinson, LLC
1395 South Church Street
Greenville, South Carolina 29605
(864) 214-2319

Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

9

Valentin D. Gurvits (*pro hac vice*)
Frank Scardino (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com

*Attorneys for Defendant Hammy Media LTD*

October 3, 2022
Greenville, South Carolina