UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9,<br><br>        Plaintiffs,<br>vs.<br><br>COLLINS MURPHY, SHARON HAMMONDS, BRENDA F. WATKINS, LIMESTONE UNIVERSITY, MG FREESITES, LTD., d/b/a PORNHUB.COM, MG FREESITES II LTD., MINDGEEK S.A.R.L., MINDGEEK USA, INC., MG BILLING LTD., and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM, TRAFFICSTARS LTD., WISEBITS LTD, XHAMSTER IP HOLDINGS LTD, WISEBITS IP LTD.,<br><br>        Defendants. | Case No.: 7:20-cv-00947<br><br>**WISEBITS LTD.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) and 12(b)(6)** |

## INTRODUCTION

In a Complaint that runs for 35 pages and 197 paragraphs, Defendant Wisebits, Ltd. ("WL") is mentioned all of five times (excluding the case caption): three times in paragraphs defining the parties (*see* Fifth Amended Complaint ("FAC"), ¶¶32-35; once in a paragraph that simply states that WL owns another of the defendant companies and that WL and other allegedly-related entities (some of which are not even named defendants in the case) all operate as "alter egos" of one another (FAC, §40); and once in a paragraph that (somewhat bizarrely) alleges that WL (and another defendant) attempted to "deceive the public, government, and its users" into believing that WL was a "leading technology company[y] providing cutting edge SEO and online marketing data services," (FAC, §116), an allegation that, even if accepted as true, might serve as the dictionary definition of "irrelevance." All told, the FAC is a complaint that is so deficient (in terms of WL) as to implicate Rule 11 (not to mention Rules 8 and 12).

Put simply, there is no "there" there. Plaintiffs did not even *attempt* to state proper claims against WL, nor have they alleged facts from which the Court could find personal jurisdiction with respect to WL. It is a Complaint that cries out for dismissal and the Court should answer that cry.

In further support of its motion, WL states as follows.

## FACTS[1]

The Plaintiffs are residents of the states of Kentucky, Texas, and Indiana. FAC ¶¶7-15. In the Fall of 2012, Plaintiffs, who were then members of Indiana University's field hockey team, traveled to Limestone College ("Limestone") to participate in a game against the Limestone College team. FAC, ¶72. Unbeknownst to Plaintiffs, Collins Murphy ("Murphy"), then Limestone's intramural/summer conference director, had surreptitiously placed cameras in the locker room and recorded Plaintiffs and their teammates as they changed their clothes and showered. FAC, ¶¶73-76.

Seven years later – in 2019 – the recordings of the Plaintiffs and their teammates were uploaded to "countless pornographic websites," including xHamster.com, which is owned and operated by HML. FAC, ¶¶81. Plaintiffs believe the videos to have been uploaded to these websites by Murphy "and/or other third parties…" FAC, ¶¶ 82.

The Complaint alleges that WL provides IT and content management services to Hammy Media. FAC, §33. The Complaint further alleges that WL owns another defendant, Trafficstars, Ltd., which controls the placement of advertisements on the xHamster website. FAC §§31, 40. There is no suggestion in the FAC that any of these services are provided to Hammy Media in the United States, nor could there be. WL has no connections to the United States or South Carolina. See, Declaration of Constantinos Christoforou, ¶4-9, attached hereto as Exhibit 1.

---

[1] The Facts stated are taken from the FAC or the Declaration of Constantinos Christoforou as indicated. Where WL is without information as to the truth of certain of Plaintiffs' allegations (because those allegations concern parties other than WL), WL accepts those allegations as true for the purposes of the present motion.

WL does not now have an office in South Carolina or the United States, nor has it ever had an office in South Carolina or the United States. Christoforou Decl., ¶6. WL does not have employees in South Carolina or the United States; maintain a bank account in South Carolina or the United States; or pay taxes in South Carolina or the United States, nor has it ever had or done any of these things. Christoforou Decl., ¶¶7-9.

## ARGUMENT

### I. Legal Standards

A motion brought under Rule 12(b)(6) tests "the sufficiency of the complaint." *Id.* "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.,* 551 F.3d 218, 222 (4th Cir. 2009). The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Although the court must accept all of the complaint's factual allegations as true, this tenet 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements do not suffice.'" *Parks v. RL Enter. & Assocs.*, 2021 U.S. Dist. LEXIS 153886, at *4 (D.S.C. Feb. 23, 2021) (citations omitted). Similarly, "conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that 'they plausibly give rise to an entitlement to relief.' …The court need not accept unsupported legal allegations… legal conclusions couched as factual allegations… or conclusory factual allegations devoid of any reference to specific acts, dates, or policies. …In sum, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Harrison v. Owens,* 2013 U.S. Dist. LEXIS 113217, at *3-6 (D.S.C. Aug. 12, 2013).

Rule 12(b)(6) motions test the sufficiency of the allegations within the four corners of the complaint, considering *only* the facts as alleged in the complaint, documents attached to the complaint, and documents that are referenced in, and central to, the complaint. *See, e.g., Sullivan v. City of Frederick,* 738 F. App'x 198, 199 (4th Cir. 2018); *In re Derivium Capital, LLC v. Cathcart*, 2008 U.S. Dist. LEXIS 138245, at *4 (D.S.C. June 17, 2008). With respect to the jurisdictional portion of this motion (akin to a Rule 12(b)(2) motion), however, the Court considers not only the four corners of the pleadings, but also the affidavits submitted by the parties. And, to the extent that Defendants submit an affidavit contesting a fact asserted in the Complaint, the alleged fact is no longer assumed to be true, but rather the Plaintiffs must submit evidence to support the allegation to support their opposition to the motion. *See, e.g., Wolf v. Richmond Cty. Hosp. Auth.,* 745 F.2d 904, 908-09 (4th Cir. 1984)("In ruling on a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except insofar as controverted by the defendant's affidavit, must be taken as true"); *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (providing a district court may consider affidavits when ruling on challenges to personal jurisdiction); *Clark v. Remark*, 993 F.2d 228 (4th Cir. 1993)("The plaintiff, however, must present affidavits or other evidence if the defendant counters plaintiff's allegations with evidence that minimum contacts do not exist"); *Neal v. Cigniti Techs., Inc.,* 2018 U.S. Dist. LEXIS 170939, at *2 n.1 (D.S.C. Aug. 9, 2018)("Plaintiff incorrectly argues it is premature to consider evidence from the parties when ruling on a motion pursuant to Rule 12(b)(2). … Plaintiff may not solely rely on the allegations in her pleading to establish jurisdiction when the defendant introduces contradictory evidence"); *Callum v. CVS Health Corp.,* 137 F. Supp. 3d 817, 835 (D.S.C. 2015)(" However, whenever a defendant's sworn affidavit contests the allegations in the complaint, the plaintiff can no longer rest on those allegations. ...Instead, the plaintiff bears the burden to present an affidavit or other evidence showing jurisdiction exists over the nonresident defendant"); *Orangeburg Pecan Co. v. Farmers Inv. Co.,* 869

F. Supp. 351, 353 (D.S.C. 1994); *Orangeburg Pecan Co. v. Farmers Inv. Co.,* 869 F. Supp. 351, 353 (D.S.C. 1994)("As to the motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are to be taken as true insofar as they are not controverted by Defendant's affidavits; where affidavits of both parties contain contradictory factual allegations, those related in Plaintiff's complaint and affidavits will be accepted as true"); *Thomas v. Huff*, 2012 U.S. Dist. LEXIS 204829, at *4 (D.S.C. Dec. 6, 2012)("When a defendant provides affidavits to support a Rule 12(b)(2) motion, the plaintiff may not simply rest on the allegations of the complaint.").

##  II.    **Plaintiffs' Complaint Must Be Dismissed With Respect to WL For Lack of Personal Jurisdiction.**

Once a defendant raises a challenge to the exercise of personal jurisdiction "the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). And, although a determination of personal jurisdiction under a state's long-arm statute is often viewed as a two-step process – consideration of whether the state statute authorizes an exercise of jurisdiction, followed by a constitutional due process analysis – where, as here, the state's long-arm statute extends to the limits of the United States Constitution's Due Process Clause, the two inquiries merge into one. *See*, *e.g.*, *Wallace v. Yamaha Motors Corp., U.S.A.,* 2022 U.S. App. LEXIS 447, at *4-5 (4th Cir. Jan. 6, 2022)("Because South Carolina has interpreted its long-arm statute to extend personal jurisdiction to the constitutional limits imposed by federal due process, our inquiry must focus on due process")(citations omitted); *Goldowsky v. Gareri,* 2018 U.S. Dist. LEXIS 26212, at *4-5 (D.S.C. Jan. 29, 2018)("The South Carolina Supreme Court has held that the State's long-arm statute, S.C. Code Ann. § 36-2-(803), is coextensive with the limits of the Due Process Clause. …As a result, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'")(citations omitted). Under Fed. R. Civ. P. 4(k)(2), the Court conducts the same constitutional analysis, only applied to the entire country as opposed to a single state. *See*, *e.g.*, *Base*

*Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 215 (4th Cir. 2002)("Rule 4(k)(2) allows a federal court to assert jurisdiction in cases 'arising under federal law' when the defendant is not subject to personal jurisdiction in any state court, but has contacts with the United States as a whole.").

"To satisfy the constitutional due process requirement, a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009)(quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "The minimum contacts test requires the plaintiff to show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "This test is designed to ensure that the defendant is not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.' ... It protects a defendant from having to defend himself in a forum where he should not have anticipated being sued." *Id.* (citations omitted).

The United States Supreme Court has reaffirmed that the due process inquiry must focus "'on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). As the *Walden* court explained:

> For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant in this case.
>
> First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State.... We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State....

> Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Id.* at 284-85.

In conducting its analysis, the Court must take extra care before exercising jurisdiction over foreign defendants. As the Supreme Court and the Fourth Circuit have cautioned, "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987); *Ellicott Mach. Corp. v. John Holland Party, Ltd.,* 995 F.2d 474, 479 (4th Cir. 1993)(quoting *Asahi* and noting that the need for caution in exercising personal jurisdiction applies "with particular force in actions against foreign national defendants").

The Fourth Circuit has "synthesized the due process requirements for asserting specific personal jurisdiction in a three-part test in which 'we consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

And, perhaps most crucially for the present motion, in examining the question of personal jurisdiction, the Court must examine the jurisdictionally-relevant contacts of each defendant separately, without conflating the contacts of one defendant with another. *See, e.g., Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n.13 (1984)("It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other defendants. … It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other

7

defendants"); *Luberda v. Purdue Frederick Corp.,* 2014 U.S. Dist. LEXIS 41951, at *8-9 (D.S.C. Mar. 28, 2014)("In a lawsuit with multiple defendants, the court must examine each defendant's separate and distinct contacts with South Carolina individually"); *Gordon v. Huncke*, 2011 U.S. Dist. LEXIS 116196, at *7 (D.S.C. Sep. 27, 2011)("In either case, each defendant's contacts with the forum state must be assessed individually"); *Estate of Thomson v. Toyota Motor Corp.*, 2009 U.S. Dist. LEXIS 52144, at *4 n.5 (D. Md. June 12, 2009)("The plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant"); *Colson v. Samson Hair Restoration, LLC,* 837 F. Supp. 2d 564, 570 (D.S.C. 2011)("Although § 1367(a) permits a federal court to entertain pendent claims over which it would otherwise lack subject matter jurisdiction, federal due process still requires that a court have personal jurisdiction over each defendant.").

### A.     Purposeful Availment

The Fourth Circuit has articulated a series of nonexclusive factors to be considered in determining whether a defendant has engaged in purposeful availment including: "whether the defendant maintains offices or agents in the forum state ... whether the defendant owns property in the forum state ... whether the defendant reached into the forum state to solicit or initiate business ... whether the defendant deliberately engaged in significant or long-term business activities in the forum state ... whether the parties contractually agreed that the law of the forum state would govern disputes ... whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship ... the nature, quality and extent of the parties' communications about the business being transacted ... and whether the performance of contractual duties was to occur within the forum." *Consulting Eng'rs Corp.*, 561 F.3d at 278.

In the present case, none of the articulated factors are met: WL has no offices or agents in South Carolina or the United States; has never solicited or initiated business in South Carolina or the United States; has no significant or long-term business activities in South Carolina or the United

States; there is no contract between WL and Plaintiffs selecting South Carolina or United States law (indeed, there is no contract at all between the parties); WL has made no in-person contact with residents of South Carolina or the United States regarding a business relationship; the parties have never communicated with one another; and there were no contractual duties to be performed within South Carolina or the United States.

### B. The Claims do not Arise Out of Activities Directed at the Forum

Given that WL has not aimed any of its activities at South Carolina or the United States, as discussed in detail above, Plaintiffs' claims cannot have arisen out of such actions. Indeed, the only thing that WL can be said to have done is that it registers and maintains the intellection property for certain software, technology, and/or computer code. Plaintiffs' claims have nothing to do whatsoever with whether the registration of such back-end intellectual property. So, on both levels, Plaintiffs fail to meet this element: WL took no actions which were directed at the forum and, in any event, Plaintiffs' claims do not arise out of *any* act of WL, regardless of where such acts were directed.

### C. The Exercise of Jurisdiction Would Not Be Reasonable

In determining if an exercise of personal jurisdiction is constitutionally reasonable, the Fourth Circuit has dictated the consideration of five factors: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies. *Consulting Eng'rs Corp,* 561 F.3d at 277-79 (citations omitted).

      1.    *Burden on the Defendant* – WL is a Cypriot company. It has no employees or offices in South Carolina or the United States, does no work in the United States, has no connections to the United States and, as such, it would present a great burden for WL to be required to defend itself in this Court.

9

2.  *The Interest of the Forum State* – Certainly a state has an interest in protecting its citizens from harm, including the harm allegedly inflicted on the Plaintiffs in this action. The Plaintiffs, however, are not residents of South Carolina and WL is not alleged to have taken any actions within South Carolina or the United States, as such, the state has a diminished interest in the resolution of the present complaint, at least insofar as it sounds against WL. Indeed, although it is also true that the United States as a whole has an interest in protecting its citizens, the US has no discernable interest in allowing Plaintiffs to pursue a claim against a company that is not alleged to have done anything other than provide IT and content management services to Hammy Media, particularly where Plaintiffs' claims are wholly unrelated to the alleged provision of such services to Hammy Media.

3.  *Plaintiffs' Interests in Convenient and Effective Relief* – Plaintiffs would presumably face their own burdens in having to litigate claims against WL in Cyprus, and yet this factor, too, must be weighed against the wholesale lack of legitimate claims against WL. Additionally, Plaintiffs can obtain complete and effective relief from other defendants in this action who *are* subject to the jurisdiction of this Court.

4.  *The Final Factors* – To the extent that the final factors are applicable, they weigh in favor of a denial of personal jurisdiction given the important sovereignty concerns at play. *Ellicot Mach. Corp.*, 995 F.2d at 480 ("Continuing in the *World-Wide Volkswagen* analysis, we perceive that the issues here implicate fundamental substantive social policies affecting international trade, business, and sovereignty concerns. The involvement of these policies weighs against the reasonableness of jurisdiction in Maryland.... In our view, the total picture implicates the concerns expressed in *Asahi* for constraint in the exercise of personal jurisdiction in an international context."). *See also*, *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988) ("a higher jurisdictional

barrier" exists where, as here, the defendants are aliens as opposed to simply citizens from different states "because important sovereignty concerns exist.").

Accordingly, an exercise of personal jurisdiction over WL would not be reasonable.

### III. Plaintiffs' Wholesale Failure to Allege Facts Sufficient to Support Their Assertion that WL is the "Alter Ego" of HML (and Seven Other Companies) Means That Plaintiffs Have Failed to State a Claim Upon Which Relief May Be Granted.

Although Plaintiffs attempt to tie their assertion of personal jurisdiction over WL to their perfunctory assertion of an "alter ego theory," in the end, Plaintiffs' utter lack of allegations to support such a theory, doom both the assertion of personal jurisdiction and Plaintiffs' claims against WL in general. Plaintiffs' Fifth Amended Complaint asserts – without any factual basis whatsoever – that WL: (a) conducts business throughout the United States, including within this District in South Carolina (FAC, ¶32) and (b) is the alter ego of some eight (8) other companies (some of which are not even defendants in this action), which the FAC lumps together with no discernable basis for doing so. FAC, ¶40.

With respect to the former allegation, Plaintiffs' boilerplate allegation that WL (a company that is only alleged to have provided IT and content delivery services to Hammy Media – and even then, only from outside the United States) somehow conducts business within South Carolina and the United States, is not only made without any factual support, it is directly contradicted by the sworn declaration of Constantinos Christoforou. Christoforou Decl., ¶4.

With respect to the latter allegation, the assertion that WL is the alter ego to eight other companies is a legal conclusion (made without any foundation), which is not entitled to a presumption of truth. *See, e.g., Owens, supra,* at *3-6. Moreover, the FAC fails to allege *any* of the facts necessary for a showing of alter ego liability, dooming not only the substance of their claims against WL, but also the assertion of personal jurisdiction based on Plaintiffs' alter ego theory.

11

Under South Carolina law, alter ego liability is a means by which a plaintiff may pierce the corporate veil of a defendant by proving both that: (1) there is "total domination and control of one entity by another," and (2) the controlling entity's "fraud or misuse" of the alter ego company has resulted in "inequitable consequences." *Colleton Cty. Taxpayers Ass'n v. Sch. Dist.,* 371 S.C. 224, 237-38 (2006). The level of control must be such that the "subservient entity manifests no separate interest of its own and functions solely to achieve the goals of the dominant entity." *Id.* "Piercing the corporate veil is only reluctantly allowed. …In order to establish personal jurisdiction under the veil piercing doctrine, plaintiffs must establish a prima facie case that: (1) the corporation and its stockholder failed to observe corporate formalities and (2) recognizing the corporate veil would create 'fundamental unfairness.' … Factors to be considered under the first prong include: (1) whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation; (5) siphoning of funds of the corporation by the dominate shareholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) the corporation serving as a façade for the operations of the dominant shareholder." *Fitzhenry v. USHEALTH Grp., Inc.*, 2016 U.S. Dist. LEXIS 9226, at *11-16 (D.S.C. Jan. 27, 2016)(citations omitted). *See also Jones v. Enter. Leasing Co.-Southeast*, 383 S.C. 259, 267-68 (S.C. Ct. App. 2009)("[T]he alter ego doctrine is merely a means of piercing the corporate veil …Under this theory, when a parent company controls the business decisions and actions of its subsidiary, the subsidiary becomes an instrument or alter ego of the parent. …Control required for liability under an alter ego doctrine amounts to total domination of the subsidiary to the extent the subsidiary manifested no separate corporate interests and functioned solely to achieve the purpose of the dominant corporation. …Moreover, '[c]ommon officers and/or directors and public identification of one corporation as the other's subsidiary do not, without more, support the conclusion the subsidiary is its parent's alter ego or agent for the

transaction of its business.' However, merely establishing the level of control or dominance a parent must have over a subsidiary, in order to prove it is the alter ego of the subservient corporation, is not sufficient to maintain an alter ago action. Instead "one must [also] show that the retention of separate corporate personalities would promote fraud, wrong or injustice, or would contravene public policy")(numerous internal citations omitted).

Put simply, the FAC contains no allegation of *any* of the facts necessary to establish WL as the alter ego of HML or any other company. Plaintiffs have now had five chances to allege the facts necessary to support their claims (six, really, if you count the original complaint) and have failed to do so. Accordingly, Plaintiffs' claims against WL should be dismissed.

### IV.     Under Every Scenario, Plaintiffs' Claims Against WL Cannot Survive.

Having defined "xHamster" as "Hammy Media Ltd, TrafficStars Ltd, Wisebits Ltd, XHamster IP Holdings Ltd, Wisebits IP Ltd. and all of their parents, subsidiaries and affiliates" (FAC, ¶35)(a group that contains both parties and non-parties), the FAC purports to assert five causes of action against "xHamster" (including WL): liability under the Trafficking Victims Protections Reauthorization Act ("TVPRA"), 18 U.S.C., §§1591, 1595 (Count I); Civil RICO (Count II); Negligent Monitoring (Count IX); False Light (Count X); and Civil Conspiracy (Count XI).

If the Court accepts WL's argument that Plaintiffs have failed to plead facts to support their alter ego theory, then each of the five causes of action must be dismissed with respect to WL for the simple reason that *there is not a single substantive allegation in the FAC as to anything that WL did (or did not do) that would subject it to liability.*

Conversely, if the Court were to somehow find that Plaintiffs *had* properly pled an alter ego theory of liability, WL would then stand in the same shoes as HML and would be entitled to the same defenses, including the immunity afforded to HML under Section 230 the Communications Decency Act ("CDA"). And, while WL will not repeat here the arguments made by HML in support of its

13

Renewed Motion for Judgment on the Pleadings, it incorporates them by reference herein. Similarly, to the extent that it is necessary for WL to do so, it incorporates by reference the arguments made by HML in its Motion that Plaintiffs have failed to state a claim with respect to any of the five causes of action asserted against HML and (by extension) WL. In short, the claims against WL must be dismissed either because Plaintiffs have ailed to allege any facts with respect to WL's liability with respect to such claims, or because Plaintiffs' claims are deficient in general and, additionally, subject to the immunity afforded by Section 230.

### IV. The FAC Is So Vague In Its Allegations As To Which Defendant Committed Which Act that it Constitutes a "Shotgun Pleading," Requiring Dismissal.

Finally, dismissal is required in this case because the FAC intentionally blurs the lines between defendants, resulting in a situation where it is impossible for WL to properly respond to the allegations against it. *See, e.g., Addahoumi v. Pastides,* 2018 U.S. Dist. LEXIS 15280, at *6 (D.S.C. Jan. 30, 2018)(dismissing complaint as a shotgun pleading where the complaint required "the court to constantly cross-reference the lengthy facts section and 'wade indeterminately through the morass of superfluous detail'" in an attempt to discern which claims sounded against which defendants). The FAC is replete with instances in which Plaintiffs allege that MindGeek "and/or" "xHamster," defined to include eight different entities – some of which are not even named defendants in this case – did *something*. But, the Complaint gives no suggestion at all as to what WL did (or failed to do) that contributed in any way to the claims raised by the Plaintiffs. It is patently obvious from the face of the FAC that Plaintiffs had no good faith basis for asserting claims against WL. Their attempts to define "xHamster" as to include entities that have no role in operating the xHamster.com website does nothing to change that fact. The FAC constitutes a shotgun pleading and, given that Plaintiffs have had five (really six) chances to get it right, the FAC should be dismissed with prejudice.

## CONCLUSION

For the reasons stated hereinabove, Plaintiffs' Fifth Amended Complaint should be dismissed in its entirety with respect to Wisebits, Ltd.

    Respectfully Submitted,

/s/ Hannah Rogers Metcalfe
Hannah Rogers Metcalfe, Fed ID. 9943
Metcalfe & Atkinson, LLC
1395 South Church Street
Greenville, South Carolina 29605
(864) 214-2319
hmetcalfe@malawfirmsc.com

Evan Fray-Witzer (*pro hac vice application forthcoming*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Valentin D. Gurvits (*pro hac vice application forthcoming*)
Frank Scardino (*pro hac vice application forthcoming*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com

*Attorneys for Defendant Wisebits, Ltd.*

December 23, 2022
Greenville, South Carolina