**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| **JANE DOES 1-9,** | Case No.: 7:20-cv-00947-DCC |
| **PLAINTIFFS** | |
| **vs.** | **PLAINTIFFS' RESPONSE IN** |
| | **OPPOSITION TO DEFENDANTS'** |
| **COLLINS MURPHY, LIMESTONE** | **MOTION TO DISMISS** |
| **COLLEGE, MG FREESITES, LTD. d/b/a** | |
| **PORNHUB.COM, and HAMMY MEDIA** | |
| **LTD. d/b/a XHAMSTER.COM,** | |
| **DEFENDANTS** | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS MINDGEEK S.A.R.L.,**
**MINDGEEK USA INC. AND MG BILLING LTD'S MOTION TO DISMISS (ECF# 233)**

**INTRODUCTION**

Before the Court is a joint motion filed by MINDGEEK S.A.R.L., MINDGEEK USA INC.

AND MG BILLING LTD. (hereinafter "MindGeek") to dismiss for lack of personal jurisdiction

and/ or for failure to state a cause of action. The motion is without merit and should be denied in

its entirety.

**BACKGROUND**

The most accurate statement in MindGeek's present motion is that the interrelationship and

intertwining of its various entities is "notoriously complex and highly factual." Although the

present motion is brought by only three of the MindGeek affiliates, the fact is that MindGeek is a

hydra of entangled legal divisions in countries such as the British Virgin Islands, Canada, Curaçao,

Cyprus, Germany, Ireland, Luxembourg, Mauritius, the Netherlands, the United Kingdom, and the

United States – all operated as a group.  It is necessary for the Court to have some understanding of these relationships to gain a true perspective of what it is dealing with[1].

According to MindGeek S.A.R.L.'s consolidated financial statement for 2018, the MindGeek "Group" includes no less than 59 separate subsidiaries.[2] See Pl Exhibit 1. This structure has been described as mostly a way to avoid corporate tax by a de facto Canadian company; with billing companies in Ireland, subsidiaries in Curaçao and holding companies in Cyprus and Luxembourg, all countries that have been identified as tax havens or having lax tax regulations. Canada also has special tax treaties with Luxembourg, the legal headquarters of MindGeek, where a Canadian subsidiary is exempt from taxes paid on royalties to its Luxembourg parent.[3]  As a bonus, this structure makes it incredibly hard to identify and pin down the organization for purposes of legal liability. The byzantine complexity of MindGeek is no accident.

The magnitude of the hurdles to determining the extent and nature of MindGeek's operations is magnified because Mindgeek has fragmented its already complicated corporate structure with many companies/officers under alternate names for the same organizations. For example, terms and conditions on Bang U TV or Mofos TV state that site is operated by Cordiacon Developments Ltd, Froytal Services Ltd, and Alamea Holdings Limited.

---

[1] "The court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, 'without converting the motion to dismiss into a motion for summary judgment.' *MJM Yachts, LLC v. Ram Investments of S. Florida, Inc.* , 2:21-CV-906-MBS, 2021 WL 2418462, at *1 (D.S.C. June 11, 2021) (*citing  Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc. , 784 F. Supp. 306, 310 (D.S.C. 1992); see also  Mylan Labs., Inc. v. Akzo, N.V.* , 2 F.3d 56, 62 (4th Cir. 1993) (explaining courts may consider evidence from both sides when jurisdiction is challenged in a motion to dismiss but still must construe the evidence in the light most favorable to the Plaintiff).

[2] However, the website opencorporates.com, which tracks corporate transparency currently attributes 172 companies in 11 countries managed by MindGeek.
https://opencorporates.com/corporate_groupings/MindGeek/companies?page=1

[3] https://en.wikipedia.org/wiki/MindGeek

2

## CUSTOMER TERMS AND CONDITIONS

Before your transaction can be completed, you must read and agree to these terms and conditions. By applying for access and or services from this website, you are agreeing to these terms and conditions, and are agreeing to be legally bound by them. This agreement is subject to change by Cordiacon Developments Ltd, Froytal Services Ltd, Alamea Holdings Limited at any time. Changes are effective when posted on this site without notice upon each subscriber.

Cordiacon Developments Ltd is a company that was dissolved in 2015.[4]  Alamea Holdings Limited now is known by the name MG BILLING CY.[5]  Froytal Services Ltd is an alternate name for Canadian company MG PREMIUM LTD.[6]  *ALL* of these company names resolve to subsidiaries of MindGeek S.A R.L.  "Scattershot" is an appropriate word to describe the tactic.

However, MindGeek's own Consolidated Financial Statement helps clear the picture:

### *1. NATURE* **OF** *OPERATIONS AND GENERAL INFORMATION*

> MindGeek S.a r.l. (hereinafter "MindGeek") is a private limited liability company incorporated under the Commercial Companies Laws of Luxembourg and domiciled in Luxembourg. The address of the entity's registered head office is 32, boulevard Royal, Luxembourg L-2449. The consolidated financial statements of MindGeek as at and for the year ended December 31, 2018 *comprise MindGeek and its subsidiaries* **(together referred to as the "Group"). MindGeek is the Group's ultimate parent company. Note 25 lists the Group's subsidiaries and their country of incorporation.** The Group is an international information technology firm specializing in highly trafficked websites. The Group creates, develops and manages recognized mainstream and adult entertainment brands. It owns and licenses the trademarks and domain names used for websites[7].

(See Pl Exhibit 1 at 13.)  MindGeek S.A.R.L. is not only admitted to be "the Group's" ultimate parent company, the Consolidated Financial Statement makes it clear that the MindGeek "group" is an interrelated "international technology firm" with MindGeek S.A.R.L. exercising control over the subsidiary companies:

---

[4] https://opencorporates.com/companies/gb/06858633
[5] https://opencorporates.com/companies/cy/HE267496
[6] https://opencorporates.com/companies/ca_qc/1167412353
[7] Pl Exhibit 1 at 13.

### 2.3 Basis of consolidation

> The Group's financial statements consolidate those of MindGeek and all of its subsidiaries. **Subsidiaries are all entities over which the Group has control**. A parent controls a subsidiary if it is exposed, or has rights to variable returns from its involvement with the subsidiary and has the ability to affect those returns through its power over the subsidiary. The Group normally obtains and exercises control through more than half of the voting rights[8].

(*See* Pl Exhibit 1 at 75). The relevance of this for purposes of the present motions before the court is that it establishes that MindGeek S.A.R.L. is the controlling entity over *all* these subsidiaries, including all the named MindGeek Defendants in this case. Defendants' efforts to present a fragmented individual front is disingenuous.

From the outset of this litigation, MindGeek has taken every step to prevent Plaintiffs from accurately establishing facts related to their operations. Plaintiffs first Complaint named MindGeek S.A.R.L., however, upon conferring with counsel for MindGeek, Plaintiffs substituted by amendment MG Freesites, Ltd., based on assurances Plaintiffs later learned were unreliable. Through the tangled maze of subsidiaries and holding companies, MindGeek has made it nearly impossible for any Plaintiff to allege sufficient specific facts against the correct MindGeek pseudonym without substantial discovery. Yet, MG Freesites, Ltd. (the only MindGeek entity that could not challenge jurisdiction) has continually frustrated Plaintiffs' efforts to discover the facts regarding the operation and management of the Pornhub enterprise. [9]

Plaintiffs served their first set of discovery on Defendants in March of 2021. Defendants largely objected citing foreign laws governing the dissemination of information to the United States, among other objections. Defendants supplemented their responses to Plaintiffs' first set of

---

[8] See Pl Exhibit 1 at 75.
[9] For additional background on the evolution and true nature of MindGeek, see https://www.dossier.at/dossiers/porno/

discovery *six months* after being served on September 03, 2021. However, MindGeek only provided limited information.

MindGeek's initial responses were purposefully designed to delay Plaintiffs' ability to investigate the facts of their claims - a tactic used routinely by MindGeek to prevent Plaintiffs' from being able to adequately substantiate their claims. Although MindGeek allegedly reviews thousands upon thousands of videos to ensure that it meets their content guidelines, the company claimed difficulty in retrieving much of the requested information. Just like the affidavits submitted by MindGeek to the Court, the responses MindGeek did supply were largely conclusory in nature.

On October 28, 2021, Plaintiffs served Defendants with a **second** set of discovery. To date, Plaintiffs have not received responses to this second set of discovery. On October 19, 2022, Plaintiffs served MindGeek with their **third** set of discovery. Defendants largely objected, and provided limited responses on November 18, 2022, four days after filing their Motion to Dismiss, rendering any attempts by Plaintiff to further their efforts futile. MindGeek has also refused to produce a representative for a Rule 30(b)(6) deposition, which would be an alternate path to unmasking the MindGeek roster of culpable players. Plaintiffs have thus effectively been stymied in obtaining the details that would substantiate the allegations that MindGeek now, in conclusory fashion, attacks as baseless.

Nevertheless, the Court has jurisdiction over all the MindGeek Defendants and Plaintiffs have sufficiently pled a cause of action against them. The Motion to Dismiss should be denied.

## DISCUSSION

The first six pages of the Defendants' twenty-two-page brief are devoted mostly to repetition of previous arguments or their own slant on procedural history. For a more detailed

review of the latter, the Court is directed to ECF #184, which contains a review of the pleading issues. It seems unnecessary to repeat that history here.

Substantively, the Defendants make two arguments; 1) the Court lacks personal jurisdiction over MindGeek S.A.R.L., MindGeek USA, Inc. and MG Billing Ltd.; and 2) the operative Complaint (Dk. No. 193) fails to state a claim against any of the four added MindGeek Defendants. Neither is valid.

## I.    PLAINTIFFS HAVE ESTABLISHED A PRIMA FACIE CASE OF PERSONAL JURISDICTION

MindGeek's arguments treat all of the 'newly added' Defendants as if they were one out-of-state domestic entity subject to jurisdiction elsewhere in the United States and therefore their contacts with South Carolina under its long-arm statute are dispositive. Yet, at the same time, MindGeek argues that the added Defendants are completely separate entities – two of which (MindGeek S.A.R.L. and MG Billing Ltd.) are foreign corporations outside the United States. If the independence of these companies is indeed accurate, and not just a legal fiction designed to frustrate tax collectors and courts seeking to impose liability, then Fed.R.Civ.Pro. 4(k)(2) applies.

Rule 4(k)(2) jurisdiction is invoked where no State can exercise personal jurisdiction over the defendant and that defendant has sufficient contacts with the United States *as a whole* such that exercising jurisdiction over the defendant would be consistent with the U.S. Constitution and laws. *Epic Games, Inc. v. Shenzhen Tairuo Tech. Co.*, No. 5:21-CV-224-FL, 2022 WL 894243 (E.D.N.C, 2022) (citing *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192 (4th Cir. 2018). Since MindGeek S.A.R.L. and MG Billing are foreign entities disputing personal jurisdiction, it would seem proper to address them first.

To defeat MindGeek's motion to dismiss, the Plaintiffs need only make a *prima facie* showing of personal jurisdiction. See, e.g., *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir.

2016).  Exercise of personal jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure is proper in cases "arising under federal law" when the defendant is not subject to personal jurisdiction in any state court but has sufficient contacts with the United States as a whole.

Thus, a plaintiff who seeks to invoke Rule 4(k)(2) as a basis for jurisdiction must show that (1) the claim "arise[s] under federal law;" (2) the defendant is "not subject to the jurisdiction of the courts of general jurisdiction of any state;" and (3) the court's exercise of jurisdiction would be "consistent with the Constitution and laws of the United States." Fed.R.Civ.P. 4(k)(2); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 215 (4th Cir. 2002).

In the present case, the condition that the Plaintiffs' claims arise under federal law is incontrovertible.  The Complaint clearly alleges claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA") (18 U.S.C. §§1591, 1595) and RICO violations. (Fifth Amended Complaint, generally; Dk. 193).  The Plaintiffs indisputably allege claims arising under federal law.  This advances the inquiry to the heart of the matter; that the exercise of personal jurisdiction over MindGeek S.A.R.L. and MG Billing Ltd is "consistent with the Constitution and laws of the United States", i.e. due process.

It is the Fifth Amendment that controls due process analysis in non-diversity, or federal question, cases.  The due process inquiry under the Fifth Amendment is broader than that under the parallel clause of the Fourteenth Amendment.  The Fourth Circuit has distilled three due process requirements for the exercise of specific personal jurisdiction: (1) the defendant must have "purposefully availed" itself of the privilege of conducting activities in the forum state; (2) the plaintiff's claims must arise out of or relate to those activities directed at the forum state; (3) the exercise of jurisdiction must be "constitutionally reasonable."  *Bradley v. DentalPlans.com*, 2022

WL 2973979, at *4 (D. Md. 2022) (citing *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351–52 (4th Cir. 2020), cert. denied, ―― U.S. ――, 141 S. Ct. 1057, 208 L.Ed.2d 525 (2021)).

Although MindGeek's arguments presume that the "forum state" required for this analysis is South Carolina, that is incorrect. Rule 4(k)(2) does not link personal jurisdiction to the existence of personal jurisdiction in the local state courts. Indeed, its express purpose is to permit jurisdiction where no state court has personal jurisdiction. Thus, the due process question under Rule 4(k)(2) depends solely on whether the defendant has sufficient contacts with the United States as a whole. See, *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 597 n.16 (E.D. Va. 2003).

Accordingly, substituting the United States as the relevant forum, the proper test for personal jurisdiction over MindGeek S.A.R.L. and MG Billing Ltd requires a showing in this case (1) that the entity purposefully availed itself of the privilege of conducting activities in the United States; (2) that the plaintiffs' claims arise out of those activities directed at the United States; and (3) that the entity activity creates a potential cause of action in a person within the United States that is cognizable in the United States courts. *Epic Games, Inc.* at *3; *Raju* at 597. The Fourth Circuit has explicitly endorsed this analysis in the context of foreign internet activity. *Epic Games, Inc*., supra; *Automobili Lamborghini S.P.A. v. Lamborghini Latino Am. USA*, 400 F. Supp. 3d 471, 474 (E.D. Va. 2019).

With these precepts in mind, recognition of personal jurisdiction over both MindGeek S.A.R.L. and MG Billing Ltd. is supported under the facts of this case. When determining whether there is personal jurisdiction over a case, a district court must accept as true the uncontroverted factual allegations in the plaintiff's complaint. *Apex Advanced Tech. LLC v. RMSI Priv. Ltd.*, 2022 WL 4826335, at *3 (E.D. Va. 2022). In doing so, the court must resolve factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction. The court may also rely on the

contents of any other relevant matter submitted by the Plaintiffs to assist in determining jurisdictional facts. *Apex Advanced Tech. LLC* at *3. This includes material included in the pleadings and information found on the internet – including defendants' own website. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir.2007) (holding that "it is not uncommon for courts to take judicial notice of factual information found on the world wide web").

The Plaintiffs allege, just as MindGeek's own accountants, Grant Thornton, acknowledge, that "MindGeek" refers to MindGeek S.A.R.L., MG Freesites, Ltd., MG Freesites II, Ltd., MindGeek USA, Incorporated, MG Billing Ltd, and all of its subsidiaries including but not limited to the business and website known as PORNHUB. (ECF #193; MindGeek CFS, pp. 13, 75). Plaintiffs properly allege that MindGeek knowingly and purposely availed itself of the benefits of conducting business in the United States, and South Carolina. (Fifth Amended Complaint, ECF 193, ¶¶ 21–28). MindGeek's CFS discloses that revenue for the MindGeek Group is comprised primarily of revenue from advertising and membership subscriptions - and that advertising revenues are recognized when advertisements are viewed online.[10] Despite Defendants proclamations to the contrary, Plaintiffs have offered sufficient evidence to establish a prima facie case of jurisdiction over both entities

The strength of any argument that MindGeek S.A.R.L. or MG Billing, Ltd. do not purposely avail themselves of the privilege of doing business in the United States and South Carolina relies on the concealment of discoverable facts. Pornhub itself boasts that the United States is the country with the highest daily traffic to Pornhub.[11] It also reports that South Carolina is one of the top three States in time spent per visit.[12] In fact, when the South Carolina legislature

---

[10] MindGeek CFS pp. 26, 27.
[11] https://www.pornhub.com/insights/2022-year-in-review#traffic.
[12] Id.

proposed a bill that all computers sold in the state come with special software pre-installed to block porn sites, Pornhub published a page entitled "South Carolina Insights" alerting its South Carolina customer base.[13]

Pornhub advertisers geolocate the "third-party advertising" that appears on Pornhub site pages viewed in the United States, reaping hundreds of millions of hits every month from MindGeek's largest market. Pornhub's Terms of Service disclose: "The Website allows others to display advertisements using the Website. These third parties use technology to deliver advertisements you see using the Website directly to your browser. In doing so, they may automatically receive your IP, or "Internet Protocol", address. Others that place advertising using the Website may have the ability to use cookies and/or web beacons to collect information, including information about your usage of the Website."[14]

In other words, MindGeek sells direct access to viewers to its advertisers through geolocation. The specificity of the geolocation is not simply general to the United States as a whole – **it offers explicit advertising targeted to the locale of the user**. This means that when a South Carolina resident views a Pornhub page with advertising – that advertising (which generates income for MindGeek) is *purposely directed to the resident's locale*. MindGeek cannot hide behind the subterfuge that these advertisers (and the millions of dollars in revenue they generate) are merely third-parties over which they have no knowledge.

In *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011), the Court explained how targeted advertising by third party advertisers is express aiming of a website for purposes of exercising personal jurisdiction over the website's operator:

---

[13] https://www.pornhub.com/insights/south-carolina.
[14] https://www.pornhub.com/information/terms.

> [Defendant] makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [defendant]. A substantial number of hits to [defendant's] website came from California residents. One of the ways we know this is that some of the third-party advertisers on [defendant's] website had advertisements directed to Californians. In this context, it is immaterial whether the third-party advertisers or [defendant] targeted California residents. The fact that the advertisements targeted California residents indicates that [defendant] knows—either actually or constructively—about its California user base, and that it exploits that base for commercial gain by selling space on its website for advertisements.

*Mavrix*, 647 F.3d at 1230.  See also: *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020), cert. denied, 208 L. Ed. 2d 525, 141 S. Ct. 1057 (2021); *Will Co. v. Lee*, 47 F.4th 917 (9th Cir. 2022).

Furthermore, a substantial portion of the content displayed on MindGeek's websites is *sourced* from the United States and specifically from South Carolina. As alleged, the abuse content depicting Plaintiffs, which MindGeek displayed and profited from on Pornhub, was derived from the U.S. and South Carolina. The Complaint also alleges that Pornhub consists primarily of user uploaded content and until recently anyone with an email address could upload content. (Fifth Amended Complaint, ECF 193, ¶ 41). A reasonable inference, to which the Plaintiffs are entitled, is that at least some of this content came from the U.S.  However, even a quick search of the Pornhub website, and its own published data, reveals a substantial amount of content on Pornhub is derived from the United States. For example, four of the top five most searched for Pornstars by the U.S. audience are Americans, the fifth an Australian who primarily lives and films in the United States[15]. The same goes for the U.K. audience (Pornhub's second largest audience) and all top 5 most searched for Pornstars from the Canadian audience are American[16].

---

[15] *See https://www.pornhub.com/insights/2022-year-in-review#top-20-countries*
[16] *See https://www.pornhub.com/insights/2022-year-in-review#top-20-countries.*

A search of the term "South Carolina" on Pornhub yields several titles with South Carolina in the title[17] and then Pornhub helpfully provides "Searches related to 'South Carolina'" which include: "South Carolina Locker Room" and "Limestone college.[18]" So it seems the website is still benefitting from traffic related to Plaintiffs' abuse. Additionally, clicking on one of the uploaders whose video surfaced when searching "South Carolina" reveals in his bio that he lives in South Carolina[19] and so the content he uploads is presumably coming from South Carolina. MindGeek sources massive amounts of content from the United States and then serves it back to the United States, garnering massive profits. MindGeek cannot use the United States and South Carolina as its supplier and its cash cow and then escape liability for the harm it causes its citizens due to corporate shell games.

The evidence shows that the MindGeek "Group" of companies is exactly what their Consolidated Financial Statement says it is – "*MindGeek S.a r.l. (hereinafter "MindGeek") is a private limited liability company incorporated under the Commercial Companies Laws of Luxembourg and domiciled in Luxembourg …. The consolidated financial statements … comprise MindGeek and its subsidiaries (together referred to as the "Group"). **MindGeek is the Group's ultimate parent company**. … The Group is an international information technology firm specializing in highly trafficked websites. The Group creates, develops and manages recognized mainstream and adult entertainment brands. It owns and licenses the trademarks and domain names used for websites.*"[20] Accordingly, the Defendants' indignant accusation that the Plaintiffs

---

[17] See Pl Exhibit 3
[18] See Pl Exhibit 4
[19] See Pl Exhibit 5
[20]  See Pl Exhibit 1 at 13

are engaging in "group pleading" rings hollow.  Plaintiffs are merely following MindGeek's own designation of their enterprise.

It is worth noting that in February of this year the Northern District of Alabama found that these activities by MindGeek (including the subsidiary Defendants who filed this motion) – distributing abuse content throughout the United States and garnering substantial profit from the United States for these activities – satisfied the minimum contacts test under the Due Process Clause. *Doe #1 v. MG Freesites, LTD,* 7:21-CV-00220-LSC, 2022 WL 407147, at *26 (N.D. Ala. Feb. 9, 2022)[21].

MindGeek S.A.R.L. is the head of the group and MG Billing Ltd. handles the money. Together with the other MindGeek Defendants (and possibly other MindGeek subsidiaries) this "Group" runs Pornhub and does a massive amount of business in the United States.  Therefore, these foreign entities are subject to personal jurisdiction under Fed.R.Civ.P. 4(k)(2).

Even if the exercise of personal jurisdiction hinged on minimum contacts with South Carolina alone, the MindGeek group – which includes the subsidiaries – clearly avails itself of doing business in South Carolina as demonstrated above.  MindGeek clearly tracks the demographics and revenues generated in South Carolina and if it would answer discovery as required by the Rules, the Plaintiffs and the Court would see just how lucrative their South Carolina business is and how the money is distributed.  Moreover, the Defendants seem to overlook the fact the very genesis of this action arises from Pornhub's activities in South Carolina – where the Plaintiffs were located when they were surreptitiously filmed thereby conferring specific

---

[21] MindGeek S.A.R.L., MG Billing Ltd., and MindGeek USA, Inc. only challenged personal jurisdiction as to one Plaintiff primarily arguing that venue was improper. These defendants did challenge personal jurisdiction as to the other plaintiff. *Doe #1 v. MG Freesites, LTD,* 7:21-CV-00220-LSC, 2022 WL 407147, at *26 (N.D. Ala. Feb. 9, 2022).

jurisdiction. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.,* 682 F.3d 292, 303 (4th Cir. 2012) (explaining where the activity in the forum state is "the genesis of the dispute" the purposeful availment prong for specific jurisdiction is satisfied) (citing *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 294 (4th Cir. 2009)).

Furthermore, a portion of the very content Mindgeek peddles, including the content depicting Plaintiffs, is sourced from South Carolina. Accordingly, not only can Plaintiffs make a prima facie case for personal jurisdiction over the foreign parties under Rule 4(k)(2), both specific and general jurisdiction over **all** of the MindGeek group is proper in South Carolina federal courts because Mindgeek has purposely availed itself of conducting substantial business in South Carolina. *UMG Recordings, Inc.,* 963 F.3d at 353-54 (4th Cir. 2020) (significant web traffic to the website amounts to commercial relationships with the users).

The Defendants also cherry-pick cases to argue that jurisdiction over the MindGeek group cannot be established through a "veil-piercing" theory. They are wrong. The Fourth Circuit has long held that a court may exercise jurisdiction over a parent corporation through its subsidiary when "the parent exerts considerable control over the activities of the subsidiary." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir. 1993). Again, MindGeek's own Consolidated Financial Statement, Section 2.3, acknowledges that subsidiaries are all entities over which the Group has control. A parent controls a subsidiary if it is exposed, or has rights to variable returns from its involvement with the subsidiary and has the ability to affect those returns through its power over the subsidiary. The Group normally obtains and exercises control through more than half of the voting rights. (See Pl Exhibit 1, p. 13).

Personal jurisdiction over MG Freesites Ltd has been conceded and this Court has already determined that the claims against MG Freesites may proceed. The actions of MG Freesites may

allow an exercise of personal jurisdiction over MindGeek S.A.R.L, even if the parent company did not purposefully avail itself of South Carolina, if the acts giving rise to personal jurisdiction over MG Freesites (Pornhub) may be imputed to MindGeek S.A.R.L. *Gourdine v. Karl Storz Endoscopy-Am., Inc.,* 223 F. Supp. 3d 475 (D.S.C. 2016); *see also Newman v. Motorola, Inc*., 125 F. Supp. 2d 717, 722 (D. Md. 2000) ("[J]urisdiction over those [parent] companies must be based on the actions of their subsidiaries."); *State v. Exxon Mobil Corp*., 2019 WL 4193422, at *14 (D. Md. Sept. 4, 2019).

The basis of this action against MG Freesites (and the MindGeek group) involves much more than the simple act of the dissemination of the non-consensual videos. It implicates the knowledge, motives, policies, procedures, customs, patterns and related transactions of Pornhub, of which MindGeek S.A.R.L is the parent company that admittedly exerts control. It involves financial transactions with content suppliers. Although it describes itself as merely a 'holding company', it is clear MindGeek S.A.R.L is not a passive holding company, but takes an active role as "the ultimate parent company" of the "Group" – "*an international information technology firm specializing in highly trafficked websites. The Group creates, develops and manages recognized mainstream and adult entertainment brands.*" To hold MindGeek S.A.R.L. accountable for its "group" subsidiaries, including Pornhub, does not offend due process and personal jurisdiction is warranted.

The cases cited by the MindGeek group Defendants (none of which are binding on this Court) to oppose the ability of the Court to employ an alter ego theory of jurisdiction are distinguishable. For example, Defendants cite *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334 (D. Md. 2004) to argue that Plaintiffs must connect specific acts to each affiliate to support jurisdiction. However, in that case, the Court found jurisdiction over foreign agents of

corporation because they participated directly in securities fraud. The proposition for which MindGeek cites the case is not central to its holding. In fact, the case doesn't really analyze veil piercing or alter ego applications at all.

The MindGeek group cites *Montague v. Dixie Nat. Life Ins. Co*., No. C/A 3:09-687-JFA, 2010 WL 753342 (D.S.C. Feb. 26, 2010) to support the assertion that Courts regularly dismiss cases purporting to name alter ego defendants premised upon the recitation of legal and conclusory labels such as 'alter ego,' or general allegations of 'control' over business and finances. However, *Montague* was applying Texas veil-piercing law, which was very specific. While the court in *Montague* found the allegations were formulaic/conclusory, it is not clear (contrary to Defendants assertions) that this referred to the corporate overlap allegations instead of the fraud allegations: "Texas provides a statute directly on point. Tex. Bus. Orgs.Code. Ann. §§ 21.223–225 (Vernon 2007). Section 21.223 bars any suit proceeding on an alter ago theory, allowing an individual shareholder to be held liable only where the plaintiff establishes actual fraud for personal benefit on the part of that specific shareholder." *Montague v. Dixie Nat. Life Ins. Co*., No. C/A 3:09-687-JFA, 2010 WL 753342, at *2 (D.S.C. Feb. 26, 2010) (internal citation omitted).

In *Roper v. TAP Pharm. Prod., Inc.,* No. CA 6:11-2204-TMC, 2012 WL 2974912 (D.S.C. July 20, 2012), cited by the MindGeek group in a footnote for the assertion that Courts regularly dismiss cases purporting to name alter ego defendants premised upon the recitation of legal and conclusory labels such as 'alter ego,' 'domin[ion][,]' 'control' over business and finances generally, or reference to 'related' businesses or misuse of funds, the Plaintiffs asserted no factual allegations, argument or evidence that support a claim of general personal jurisdiction (as the Plaintiffs have done here) and made no allegation or showing of any kind that the Defendant purposefully availed itself of the privilege of conducting activities in the South Carolina. *Roper*

16

*v. TAP Pharm. Prod., Inc.*, No. CA 6:11-2204-TMC, 2012 WL 2974912, at *4 (D.S.C. July 20, 2012). This is a case that rests on the particular facts and showing of that plaintiff – not controlling precedent nor analogous to the MindGeek group.

All of the cases relied upon by the MindGeek group are of similar ilk. They are cherry-picked examples of instances where the Plaintiff failed to allege proper facts, presented no evidence, or where it was otherwise inappropriate to exercise personal jurisdiction through a proxy. Here, not only have Plaintiffs shown that the MindGeek group is subject to direct personal and specific jurisdiction, they have presented sufficient allegations, backed by sufficient evidence, to show that a significant portion of Pornhub's operation is attributable to MindGeek S.A.R.L. and its subsidiaries. The MindGeek group's sophisticated fragmentation is designed to frustrate plaintiffs and the courts – but our laws are more than adequate to the task of reaching a foreign company who uses manipulation to avoid liability for its complicity in causing harm.

## II.    IT WOULD BE APPROPRIATE FOR THE COURT TO EXERCISE PENDENT PERSONAL JURISDICTION

In the event the Court remains unconvinced that the MindGeek Group companies are not subject to the traditional exercise of specific or general personal jurisdiction, and that the facts in dispute do not allow for further development of an alter ego exercise of jurisdiction, the Court may still exercise pendent personal jurisdiction over these entities. The doctrine of pendent personal jurisdiction has its roots in the jurisprudence of pendent subject matter jurisdiction. *Olin v. Fisons PLC,* 47 F.Supp.2d 151, 155 (D. Mass. 1999). It is described as "a federal case law doctrine." *Nam Chuong Huynh v. Aker Biomarine Antarctic AS*, 2017 WL 2242299, at *13 (Wash. App. May 22, 2017); see also *United States v. Botefuhr*, 309 F.3d 1263, 1272–75 (10th Cir. 2002) (exploring the doctrine and its origin); *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 123-24 (3d Cir. 2020) (discussing the Third Circuit's recognition of the doctrine in 1973).

The exercise of personal jurisdiction under this doctrine is "entirely discretionary." *Pacira BioSciences, Inc. v. Fortis Advisors LLC*, No. CV 2020-0694-PAF, 2021 WL 4949179, at *23 (Del. Ch. Oct. 25, 2021); *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124 (Del. Ch. 2008). When deciding whether to exercise its discretion over the pendent claim, the court considers (i) whether it would have to consider a "significant number of facts wholly unrelated to those necessary to determine" the merits of the anchor claim; (ii) whether the claims seek similar or different relief; (iii) whether the claims are governed by applicable law; and (iv) whether the forum has a "strong interest" in adjudicating the issues raised by the pendent claim. Id.  The Fourth Circuit recognizes the exercise of pendent personal jurisdiction. *ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617 (4th Cir. 1997).*

The Plaintiffs' claims against the MindGeek Group are intimately related.  In fact, the claims all arise under the same law applied to the same core of operative fact and seek the same relief.  Many of the questions of fact essential to a just determination of the claims may lie with the Group subsidiaries and may be shielded from discovery in the absence of the exercise of the Court's discretion in this matter.  The claims are governed by the same federal laws (TPVRA and RICO) and, without question, the federal courts, and particularly South Carolina federal courts have a strong interest in protecting the victims of sex trafficking.  There is a firm legal foundation for the exercise of personal jurisdiction in this case directly or under a derivative application as discussed above.  Pendent personal jurisdiction is yet another avenue to hold the MindGeek group accountable.

In the alternative, if the Court finds that Plaintiffs have not established personal jurisdiction, Plaintiffs respectfully request the court order the parties to conduct jurisdictional discovery. Jurisdictional discovery is necessary where, "pertinent facts bearing on the question of

jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Connor v. Lifewatch, Inc., CIV.A. 2:13-03507, 2014 WL 4198883, at *6 (D.S.C. Aug. 20, 2014).

Although Plaintiffs have made a "prima facia showing of a sufficient jurisdictional basis to survive the jurisdictional challenge," *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F. 2d 673, 676 (4th Cir. 1989), as required, Defendants dispute key facts alleged by Plaintiffs, such as who is in control of Pornhub and how Pornhub earns revenue. Furthermore, there are certain facts about the innerworkings of the MindGeek group "that are simply not known to Plaintiffs," and could not be known without discovery, "[t]hus, jurisdictional discovery is appropriate," if these facts are necessary. *Afa Polytek (N. Am.) Inc. v. Clorox Co.*, 2:13-CV-01633-RMG, 2014 WL 12608562, at *6 (D.S.C. Jan. 17, 2014)

Plaintiffs have alleged that MindGeek intentionally obfuscates its corporate structure and ownership. Further, Plaintiffs have alleged that MindGeek operates as a group of subsidiaries, including all named defendants, with MindGeek S.A.R.L. as the parent controlling this group. Plaintiffs have requested discovery on three different occasions and requested a F.R.C.P. 30(b)6 deposition with the clear purpose of obtaining more information about MindGeek's operations, subsidiaries, affiliates, and issues of operation and control – all relevant to the jurisdiction analysis – and were rebuffed. As MindGeek is a privately held company, Plaintiffs have exhausted all possible efforts to conduct its own investigation and present evidence regarding jurisdiction as it relates to each defendant short of jurisdictional discovery. It is clear that jurisdictional discovery would answer questions regarding these issues. Therefore, jurisdictional discovery is the appropriate remedy if the current pleadings fall short.

### III.    PLAINTIFFS' HAVE SUFFICIENTLY PLED THEIR CLAIMS AGAINST DEFENDANTS.

Defendants MINDGEEK S.A.R.L., MINDGEEK USA INC., and MG BILLING LTD (MindGeek Defendants) also assert that Plaintiffs' Complaint relies on shotgun allegations against them and should be dismissed for failure to state a claim; they maintain that they are unable to discern which claims are made against which defendants.   ECF 233-1 at 26-28.

The MindGeek Defendants cite four cases in support of that assertion, none of which apply here.   First, *Doe v. WebGroup Czech Republic*, which is not authoritative and is on appeal, was about sufficiently pleading trafficking claims against defendants who had only provided servers versus the various website defendants.   *See Doe v. WebGroup Czech Republic, as*, No. 221CV02428VAPSKX, 2022 WL 982248, at *10 (C.D. Cal. Jan. 13, 2022), *amended on reconsideration in part sub nom. Doe v. WebGroup Czech Republic*, No. 221CV02428VAPSKX, 2022 WL 982245 (C.D. Cal. Feb. 25, 2022) ("There are few or no allegations that specifically relate the Server Defendants to the claims in the lawsuit. Likewise, many of the allegations against the Server Defendants rest on, or are inextricably tied to, WGCZ and the Foreign Defendants. Given that the Foreign Defendants will be dismissed, it is difficult to parse out the conduct that the Server Defendants are responsible for alone.").

The server defendants were arguing that the allegations did not adequately distinguish them from various corporations comprising the WebGroup Czech Republic conglomerate, not that the allegations did not adequately distinguish the Server Defendants *from each other*, which is effectively what the MindGeek Defendants are arguing (rather than, for example, that the allegations give them insufficient notice as to what Plaintiffs are accusing them of versus Defendant Collins Murphy or the xHamster Defendants).

Second, the other district court cases cited are not about disaggregating allegations against members of the same corporate family where plaintiffs are seeking to pierce the corporate veil, but about ambiguous allegations against clearly distinct entities, and are thus distinguishable. *See Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.*, 505 F. Supp. 3d 570 (M.D.N.C. 2020) (denying motion to dismiss where complaint's allegations did not clearly implicate individual – as opposed to corporate – defendant, but where attached, permissible extrinsic evidence did); *Ferguson v. Option One Mortg. Corp.*, No. 1:11CV670, 2012 WL 8467527, at *1 (M.D.N.C. Sept. 25, 2012), *aff'd*, 513 F. App'x 357 (4th Cir. 2013) (dismissing complaint based on foreclosure lawsuit that failed to distinguish among defendants that included a mortgage company, a law firm, and a bank).

Finally, the only authoritative case the MindGeek Defendants cite is distinguishable because it was about fraud claims, which must be pled with extra particularity. *Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228, at *2 (4th Cir. 1993) ("Further indicative of the insufficiently particular character of the complaint is its impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987) ('Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.').").  Plaintiffs do not plead fraud in the instant case.

Inapplicable case law notwithstanding, Defendants' assertion should be rejected for two other key reasons:  Plaintiffs are alleging that they are functionally the same entity, and are accusing them of doing the same thing.

"The burden rests on plaintiffs to enable a particular defendant to determine with what it is charged." *Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228 (4th Cir. 1993)(cleaned up).[22]  In this case, Plaintiffs argue their collective pleading put the MindGeek Defendants properly on notice because the MindGeek Defendants are alter egos of each other.

While the Fourth Circuit does not appear to have considered the precise question in depth, at least one other circuit court has found that the notice principle does not forbid collective pleading:  "The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Weiland*, 792 F.3d at 1323 n.14 (quoting *Kyle K. v. Chapman,* 208 F.3d 940, 944 (11th Cir.2000)).  The *Weiland* court reversed the district court's dismissal, writing:

> [T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count. This may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it.

792 F.3d at 1324.

So too here:  as to the MindGeek Defendants, the Plaintiffs here are "aver[ring] that all defendants are responsible for the alleged conduct," the MindGeek Defendants did not file a motion for a more definite statement under Fed.R.Civ.P. 12(e), and do not claim in their motion to dismiss that a particular aspect of the collective pleading is confusing to them.

That the same facts are alleged against all the MindGeek Defendants reflects their systematic attempts to obscure their own corporate structure.  *See* Exhibit 1 at 13.  As Plaintiffs

---

[22] This brief uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations.  *See, e.g., Brownback v. King*, 141 S. Ct. 740, 748 (2021); *Ashford v. Raby*, No. 19-1677, 2020 WL 1057393, at *2 (6th Cir. Mar. 5, 2020); *United States v. Reyes,* 866 F.3d 316, 321 (5th Cir. 2017); *Smith v. Kentucky*, 520 S.W.3d 340, 354 (Ky. 2017).

indicated in the previous sections of this brief, they cannot allege with more specificity because the MindGeek defendants have not only organized themselves, but have also cabined their discovery disclosures to hide this information.  The evidence Plaintiffs have uncovered supports treating the MindGeek Defendants as one entity for jurisdiction and liability purposes.  *See* Pl Exhibit 1.

This is not like a complaint against two unrelated companies for two distinct but related violations.  For example, if someone sued a police department for failure to respond quickly enough to a domestic violence claim and also the domestic abuser directly for committing the violence, group pleading would be fatal, because the claims (negligence or dereliction of duty versus assault with a deadly weapon) and defendants would be dissimilar.

And Plaintiffs do not bring all their claims against all the defendants; their Fifth Amended Complaint distinguishes between the claims against the MindGeek defendants, the xHamster defendants, Defendant Murphy, and the College defendants.  ECF 193 at ¶¶ 95-197.

Ultimately, Plaintiffs allege that the MindGeek Defendants all failed them in precisely the same way – by facilitating and profiting from their abuse, because they are effectively the same corporation, *see* Pl Exhibit 1.Failing to distinguish between defendants on the theory that they are not actually distinct is not impermissible shotgun pleading.  Accordingly, Plaintiffs' collective allegations against the MindGeek Defendants should not be dismissed for failure to state a claim.

## CONCLUSION

The Defendants, together and individually, are engaged in the litigation equivalent of trench warfare; digging resolutely into every procedural opportunity to stop the forward progress of this case, without regard to merit.  As a group, they have at their disposal nearly limitless resources and the benefit of years of planning along with years of experience defending their

lawless pursuit of global dominance of the world of pornography – which, as they are well aware, results in countless casualties in the form of human victimization. The MindGeek group has a singular focus and works together under a single set of leaders to obtain their objectives. All the while, they are practiced at discouraging the courts from venturing into the thick morass of obstruction they create every time a plaintiff or group of plaintiffs seek to hold them accountable. For the reasons stated above, and in the service of fairness and justice, their motions to dismiss should not be granted – especially before they have ever been called upon to reveal the facts in discovery that they are fighting so fiercely to suppress.

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

_s/J. Edward Bell, III_
J. Edward Bell, III (1280)
Joshua M. W. Salley (13214)
219 North Ridge Street
Georgetown, SC  29440
TEL.: (843) 546-2408
FAX: (8430 546-9604
ebell@edbelllaw.com

**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**

Tyler S. Thompson (admitted Pro Hac Vice)
Liz J. Shepherd (admitted Pro Hac Vice)
Jordan A. Stanton (admitted Pro Hac Vice)
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com
lshepherd@kytrial.com
jstanton@kytrial.com

24

**NATIONAL CENTER ON SEXUAL EXPLOITATION**

Benjamin Bull ( admitted Pro Hac Vic)
Danielle Bianculli Pinter ( admitted Pro Hac Vice)
Christen Price ( admitted Pro Hac Vice)
Peter Gentala (admitted Pro Hac Vice)
1201 F Street NW
Washington, D.C.20004
bbull@ncose.com
dpinter@ncoselaw.org
cprice@ncoselaw.org
pgentala@ncoselaw.org

**ATTORNEYS FOR PLAINTIFF**

December 28, 2022
Georgetown, SC