**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| JANE DOES 1-9,<br><br>          PLAINTIFFS<br><br><br>vs.<br><br><br>COLLINS MURPHY et al.<br><br>          DEFENDANTS | C/A No. 7:20-CV-00947-DCC<br><br><br><br>**PLAINTIFFS' RESPONSE IN**<br>**OPPOSITION TO HAMMY MEDIA**<br>**LTD.'s MOTION TO DISMISS** |

## INTRODUCTION

Defendant xHamster IP Holdings, Ltd. ("XIH") argues that the Court lacks personal jurisdiction over it and the Complaint fails to state a claim for relief. Neither of these assertions has merit and their Motion should be denied in its entirely.

## BACKGROUND

Defendant xHamster IP Holdings ("XIH") is part of a fragmented corporate pornography conglomerate that consists of at least twelve different companies (likely more) that compete as one in the 'adult entertainment' industry. XIH moves to dismiss, claiming this Court doesn't have personal jurisdiction and stating that it does not "in any way, shape, or form – own or operate the xHamster.com website." XIM MTD, ECF 241-1 at 2. However, there is substantial evidence that XIH is intimately involved with the xHamster operation well beyond that of a passive holding company and that xHamster is under the jurisdiction of the Court. The Court is already aware of the general facts of this case, the mammoth revenues brought in by the principal websites, and the

widely documented history of the legal actions arising from violations of the US laws against sexual exploitation and trafficking. Plaintiffs do not feel it necessary to repeat those facts, although they are relevant here. The Court is also, by now, aware of the basic thrust of the arguments being used by the porn companies' subsidiaries to defy jurisdiction. The Plaintiffs will strive for brevity while addressing the individual arguments for this affiliate/subsidiary entity.

Taken as a whole, the arguments that the xHamster Defendants have not availed themselves of the jurisdiction of the United States are contradicted by the public facts. The xhamster.com website profits from advertisers that identify and target U.S. users. The United States is xhamster.com's number one source of user traffic. And the load times for users of xhamster.com in the U.S. are overall faster than any other location in the world—suggesting that the xHamster Defendants use a content-delivery network focused on American users.

## DISCUSSION

### I.    THE xHAMSTER DEFENDANTS, INCLUDING xHAMSTER IP HOLDINGS, SHOULD BE TREATED AS THE SAME ENTITY FOR JURISDICTIONAL PURPOSES.

Defendant xHamster IP Holdings ("XIH") moves for dismissal under Rule 12(b)(6). For the purpose of deciding this motion all the allegations in Plaintiffs' Fifth Amended Complaint; (because it is the operative complaint and the only one relevant to this briefing, it will be referred to hereinafter as simply the "Complaint") should be considered true. *Apex Advanced Tech. LLC v. RMSI Priv. Ltd.*, 2022 WL 4826335, at *3 (E.D. Va. 2022). Factual disputes and reasonable inferences should be accorded in favor of the Plaintiffs. *Id*. Where Defendants have produced contradictory evidence through affidavits, Plaintiffs producing rebuttal evidence in the form of declarations maintain the assumption of truth for their prima facie case. "In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits in

order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020), *cert. denied*, 208 L. Ed. 2d 525, 141 S. Ct. 1057 (2021). This includes material included in the pleadings and information found on the internet – including defendants' own website. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir.2007) (holding that "it is not uncommon for courts to take judicial notice of factual information found on the world wide web"); *See generally*, Fed. R. Evid. 201(b) (permitting judicial notice where facts "can be accurately and readily determined from sources whose accuracy cannot be reasonable questioned.").

Defendant XIH is one of six affiliated Defendants (the "xHamster Defendants") named in the Complaint related to the ownership, operation and/or management of the website xHamster.com. Complaint, Dkt. No. 193, ¶¶ 29-35, 40. Defendant XIH supported this motion with the self-serving declaration of Constantinos Christoforou, who states that he is a director of XIH. Dkt. No. 241-2. In separate declarations supporting the xHamster Defendants' motions to dismiss for want of personal jurisdiction, Mr. Christoforou also states that he is a director of the entities Trafficstars, LTD., Wisebits IP, LTD., and Wisebits LTD. – which he claims are all separate and independent of xHamster. *See* Dkt. Nos. 246-2, 247-2, and 248-2.

Although Mr. Christoforou reassures us that xHamster IP Holdings Ltd. has no hand whatsoever in running the xHamster website, the numerous domain-name dispute decisions resulting from administrative actions brought by the Defendant all staunchly assert the opposite— that it "operates" the xhamster.com website. *See*, *e.g.*, *xHamster IP Holdings Ltd v. Domain Administrator, et al.*, Case No. D2021-1490 (WIPO Arb. and Med. Ctr., Jun. 26, 2021), https://www.wipo.int/amc/en/domains/search/text.jsp?case=D2021-1490 (accessed 01/05/2023).

In the WIPO Administrative Panel Decision: *xHamster IP Holdings Ltd v. Denis Popov, tgptraffic / WhoisGuard, Inc.*, Case No. D2020-3246 (attached as Exhibit A), the Opinion describes xHamster IP Holdings as:

> a company domiciled in Antigua and Barbuda, operates downloadable and streamed Internet adult entertainment services through a website found at its domain name, <xhamster.com>. The domain name <xhamster.com> has been used since 2007 when it was registered. The mark is registered with a few trademark authorities. Also, the Complainant's website was rated the fourth most popular pornography website and the twentieth most trafficked website in the world.

The inquiry appropriate to determine questions of personal jurisdiction was nicely summarized recently in *Epic Games, Inc. v. Shenzhen Tairuo Tech. Co.*, No. 5:21-CV-224-FL, 2022 WL 894243 (E.D.N.C, 2022):

> To demonstrate personal jurisdiction over a defendant consistent with the Due Process Clause, a plaintiff must show (1) a State's general jurisdiction over the defendant by demonstrating the defendant's continuous and systematic contact with the State; (2) a State's **specific** jurisdiction over the defendant by demonstrating that the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts; **or** (3) **Rule 4(k)(2)** jurisdiction by demonstrating that no State can exercise personal jurisdiction over the defendant and that the defendant has sufficient contacts with the United States such that exercising jurisdiction over the defendant would be consistent with the U.S. Constitution and laws.

*Epic Games, Inc*. at *2 (quoting *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd*., 911 F.3d 192 (4th Cir. 2018)(emphasis added)).

This issue is best analyzed under Rule 4(k)(2) – it is the most straightforward and it clearly applies in this case. Exercise of personal jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure is proper in cases "arising under federal law" when the defendant is not subject to personal jurisdiction in any state court but has sufficient contacts with the United States as a whole.

Thus, a plaintiff who seeks to invoke Rule 4(k)(2) as a basis for jurisdiction must show that (1) the claim "arise[s] under federal law;" (2) the defendant is "not subject to the jurisdiction of

the courts of general jurisdiction of any state;" and (3) the court's exercise of jurisdiction would be "consistent with the Constitution and laws of the United States." Fed.R.Civ.P. 4(k)(2); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory*," 283 F.3d 208, 215 (4th Cir. 2002).

In the present case, it is incontrovertible that the Plaintiffs' claims arise under federal law. The Complaint alleges claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA") (18 U.S.C. §§1591, 1595) and RICO violations. (See Dk. 91). The Plaintiffs clearly allege claims arising under federal law.  Strictly for the purposes of this Motion, Plaintiffs will assume the accuracy of XIH's denial of jurisdiction in any particular state.  Thus, the due process question under Rule 4(k)(2) depends solely on whether the defendant has sufficient contacts with the United States as a whole. *See*, *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 597 n.16 (E.D. Va. 2003).  Plaintiffs need only make a prima facie showing of personal jurisdiction. *See*, *e.g., Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).

Defendant XIH argues that because it (allegedly) has no ownership or operation of the other xHamster Defendants, the constitutional analysis should be conducted in isolation as to XIH, and without regard to the illegal actions of those other entities. That is incorrect. Under the facts alleged, XIH is an operational division with the other xHamster Defendants.

A.  **The xHamster Defendants act as the same corporation with common control, operations, business purpose and their combined and coordinated conduct results in harm and injustice.**

Hammy Media is a sham company to perversely avoid responsibility and to give anonymity to the real owners of xHamster. The millions of dollars of cash generated by advertising on xHamster.com, by advertising or by paid content, goes to the network of xHamster companies like Wisebits, TrafficStars, Tecom, Technius or xHamster IP Holdings which work together to operate

the xHamster dynasty. (See Pl. Exhibit I and J.)  While the truth of this arrangement is fairly straightforward - - documenting it has purposely been made profoundly difficult.  Any expectation that an average Plaintiff can negotiate the labyrinth that constitutes the business of xHamster in order to expose it to liability is dauntingly quixotic—especial without the benefit of any discovery.

The evidence is there but it requires patience.  According to opencorporates.com, Hammy Media Ltd.'s corporate grouping includes VINTELLI NOMINEE SERVICES LTD; TRAFFIC STARS LTD; KULITSO LIMITED; WISEBITS LTD; CAMON TRADING LTD; WISEBITS IP LTD; WISEBITS AD NET LTD; TECHNIUS LTD; BODO PROJECT MANAGEMENT LTD; and TECOM LTD (Cyprus, 19 Jan 2017- ).  On the first page of its brief, XIH admits that in February of 2001 XIH changed its name to **Online Media Holdings Ltd**.  Also in February of 2021, on the same date, another British Virgin Islands company, *with the same address as Online Media Holdings Ltd*. (aka XIH), which was called **On Media Holding Limited** from 07/17/2015 to 02/24/2021, also changed its name to **Online Media Entertainment Limited**. (See Pl. Exhibit B.)

If one then examines the legal registration for **Tecom Ltd** (one of the companies identified as part of the Hammy Media "group" from 2019, it reveals that Tecom Ltd is not only listed at the same address as XIH and On Holding Limited (now Online Media Entertainment Limited) as well, but that Tecom was listed as wholly owned by **On Media Holding Limited**. (See Pl. Exhibit C and D.)  This raises serious implications that the Hammy Media empire is all interconnected – and the dizzying array of ever-changing legal entities spread across the globe is an elaborate shell game to deflect responsibility for taxes, for accountability, and for liability arising from the harm it causes.

More direct evidence is provided by xHamster's Benelux business registration filed November 19, 2015. The registration lists xHamster's goods and services as:

> Digital media, namely, downloadable video recordings, motion pictures, film clips and images featuring adult entertainment. [English] Cl 35 Promotional services provided via a website, namely, promotion of online third-party offers of adult entertainment, especially videos, images and sound recordings, on the Internet; promotion of online third-party offers by providing a Web site featuring hyperlinks to the websites of others in the field of adult entertainment. [English] Cl 38 Telecommunication services, namely, streaming of adult oriented audio, visual and audiovisual material via a global computer network; transmission of voice, data and images; streaming and live streaming of audio and video content on the Internet; video broadcasting services over the Internet in the field of adult entertainment; providing on-line forums for transmission of messages among computer users concerning adult-themed materials; providing access to a website that gives computer users the ability to upload, post, show, display and tag adult-themed information, photographs, audio, and video clips; providing access to a social networking website featuring videos, photographs, images, text, and other multimedia content for entertainment purposes; providing access to a website featuring information on love, romance, and interpersonal relationships. [English] Cl 41 Entertainment services, via a website featuring adult entertainment; entertainment services, via a website featuring videos, photographs, film clips, and other multimedia materials in the field of adult entertainment; publication of on-line journals, namely, a blog and user message board featuring adult-oriented entertainment, information and stories; providing adult-oriented entertainment in the nature of live show performances. [English] Cl 42 Web-based hosting of digital adult entertainment content for others, especially images, videos, and sound-recordings, via the Internet. [English] Cl 45 Internet-based social networking services.

(*See* Pl. Exhibit E). According to this registration, who owns xHamster?

Owner                    Current Owner:
                         xHamster IP Holdings Ltd.

                         Last Reported Owner:
                         xHamster IP Holdings Ltd.
                         Nevis Street 60
                         St. John's Antigua and Barbuda

(See Pl. Exhibit E at 2). xHamster IP Holdings Ltd.'s assertion that it does not "in any way, shape, or form – own or operate the xHamster.com website." is disingenuous. (See Pl. Exhibit F.) Only by the most strained parsing of reality does that statement even approach the truth.

The attempt by XIH to insulate itself by distancing the company from any (as yet) demonstrable actions in South Carolina is unsound. The Fourth Circuit has long held that a court may exercise jurisdiction over a parent corporation through its subsidiary when "the parent exerts considerable control over the activities of the subsidiary." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir. 1993). In a similar vein, South Carolina recognizes the amalgamation—or single business enterprise theory—of civil liability for related corporations. *Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. IMK Dev. Co., LLC*, 435 S.C. 109, 120, 866 S.E.2d 542, 548 (2021). This theory applies where "where multiple corporations have unified their business operations and resources to achieve a common business purpose and where adherence to the fiction of separate corporate identities would defeat justice." *Pertuis v. Front Roe Restaurants, Inc.*, 423 S.C. 640, 652–53, 817 S.E.2d 273, 279 (2018). The doctrine preserves accountability for "the kinds of abuse, specifically identified, that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like." *Id*. at 654–55. Like alter-ego responsibility, the action lies in equity. *Stoneledge,* supra at 109.

According to XIH's own admissions in its registration with Benelux, XIH owns xHamster – and it has yet to prove (beyond a boilerplate self-serving affidavit) that it does not take part in exactly what it described to the Benelux authorities.

Personal jurisdiction over Hammy Media Ltd. has been conceded and this Court has already determined that the claims against them may proceed. The actions of Hammy via xHamster may allow an exercise of personal jurisdiction over XIH, even if the "owner" of the site did not purposefully avail itself of South Carolina, if the acts giving rise to personal jurisdiction over

Hammy Media may be imputed to its group. *Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 223 F. Supp. 3d 475 (D.S.C. 2016); *see also Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 722 (D. Md. 2000) ("[J]urisdiction over those [parent] companies must be based on the actions of their subsidiaries."); *State v. Exxon Mobil Corp.*, 2019 WL 4193422, at *14 (D. Md. Sept. 4, 2019).

There is overlap between the single business enterprise theory and the common law alter-ego factors. Unlike alter-ego analysis, "[t]he single business enterprise theory does not require a showing of the corporate defendants' failure to observe corporate formalities." *Walbeck v. I'On Co., LLC*, 426 S.C. 494, 528, 827 S.E.2d 348, 366 (Ct. App. 2019). Yet both theories of liability embrace that "an element of injustice or fundamental unfairness, to place accountability where it belongs." *Id*.

Consistent with these principles, the xHamster Defendants should be regarded as a single entity for the purpose of this Court's jurisdiction. *First*, The xHamster defendants have unified their business operations to achieve a common business purpose: the operation of adult-content websites for profit. Defendant XIH contends that its role is limited to owning and maintaining the xHamster trademark. XIH MTD at 2. It also contends that XIH "has no role in the ownership or operation of the xHamster.com website." *Id*. at 13; *and see* Christoforou Decl. at ¶ 4 ("XIH does not – in any way, shape or form – own or operate the xHamster.com website."). Yet, when XIH challenges domain names that for being too similar to xHamster.com through ICANN's Uniform Domain Name Dispute Resolution Policy it tells a different story. In that forum and context, XIH contends it is an affiliated company with "similar owners and ultimate control" of xHamster.com and should thus be "treated as a single entity" for the purpose of domain-name disputes. *Hammy Media, Ltd. and xHamster IP Holdings Ltd v. WhoisProtectService.net / PROTECTSERVICE, LTD.*, Claim Number: FA1704001725445 (May 10, 2017),

https://www.adrforum.com/domaindecisions/1725445.htm. Another domain-name dispute administrative panel decision describes XIH's role this way: "The Complainant, xHamster IP Holdings Ltd, *operates* an Internet website offering adult content, which became the third most popular website of its ilk in 2015." *xHamster IP Holdings, Ltd. v. Chong Wang*, Case No. D2019-3129 (Feb. 25, 2020), https://www.wipo.int/amc/en/domains/decisions/text/2019/d2019-3129.html (emphasis added). There are many more such administrative decisions—all concluding at XIH's own insistence that it controls and/or operates the xHamster.com website.[1] Against these consistent claims to ownership and control of xHamster.com by XIH, its assertions to the contrary in this Court ring hollow. Moreover, the consistent assertion in domain-name disputes by the XIH that operates xHamster.com is consistent with Plaintiffs' allegations that all the xHamster Defendants "operate in reality as a single business entity and are alter egos of each other." FAC ¶ 40.

    *Second*, the common business purpose of the xHamster Defendants is resulting in inequity, wrongdoing, and injustice. *See Oskin*, 400 S.C. at 397 (with alter-ego liability the connection between entities must "result in injustice"); *Pertuis*, 422 S.C. at 652-53 (same for the single business enterprise theory). The xHamster internet domains are operated in a way that permits the posting and monetization of sexually graphic images and video without the consent of the persons depicted. FAC ¶¶ 42, 44, 47, 48. The xHamster Defendants made no attempt to learn if Plaintiffs consented to the uploading of their own nude images to its websites. FAC ¶¶ 49, 52, 68. Indeed,

---

[1] *See generally*, Website of the World Intellection Property Organization ("WIPO"), https://www.wipo.int/tools/en/gsearch.html?cx=016458537594905406506%3Ahmturfwvzzq&language=en&hl=en&lr=&cof=FORID%3A11&tab=1&q=xhamster#gsc.tab=0&gsc.q=xhamster&gsc.page=1 (search for "xhamster" resulting in 172 results); *and* Website of FORUM Alternative Dispute Resolution, https://www.adrforum.com/domain-dispute/search-decisions (search for "xhamster" results in 15 cases).

the nonconsensual nature of the video was the point because sexually graphic imagery filmed without a person's consent is popular. FAC ¶ 59. The invasion of the privacy inflicted upon the Plaintiffs in this case was not a one-off mistake. It is the result of the xHamster Defendants' own business model. FAC ¶ 64.

Additionally, injustice and inequity is resulting from the xHamster Defendants refusal to be transparent with the Plaintiffs and with this Court about the connection between its various corporate entities. Counsel for the xHamster Defendants has refused service of process and refused to respond to any of Plaintiffs' request for discovery. At the same time, counsel for the xHamster Defendants has filed this and other motions opposing this Court's jurisdiction based on claims that the various entities are not related to each other. xHamster should not be permitted to simultaneously argue that its various related entities are too different to justify jurisdiction, while obscuring any reasonable opportunity for transparency into the actual relationship between the entities.

Taken as a whole, the Fifth Amended Complaint sufficiently alleges that the xHamster Defendants work in tandem to operate websites that violated the law and harmed Plaintiffs. For the purpose of this Court's jurisdiction, the xHamster Defendants should be treated as they are alleged to have acted, as a single entity engaged in a single business purpose: the operation of adult-content websites. The XIH Defendant's assertion that it operates in a vacuum, unrelated to the operation of xHamster.com is not credible based on that entity's own public positions in administrative proceedings. To the extent, however, the Court is inclined to credit these assertions, it should allow jurisdictional discovery to provide transparency into the relationships and interactions between the xHamster Defendants.

## II.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THAT THE XHAMSTER DEFENDANTS— INCLUDING XHAMSTER IP HOLDINGS—ARE SUBJECT TO THE SPECIFIC JURISDICTION OF THE UNITED STATES.

In determining specific jurisdiction for a corporation the Fourth Circuit considers: "(1) the extent to which the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). In the case of due process under Rule 4(k)(2), the focus turns from sufficient contacts with a state to that of the United States as a whole. *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 597 n.16 (E.D. Va. 2003).

The Fourth Circuit has adopted a "sliding scale" model to assess the nature and quality of commercial activity that an entity conducts over the internet. Jurisdiction may be appropriately exercised over a defendant where "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). For this inquiry the Fourth Circuit distinguishes between three categories of internet activity:

- Active websites, where "the defendant enters into contracts with residents of a foreign jurisdiction that involving knowing and repeated transmission of computer files over the internet." Jurisdiction is proper for this category. *Id*. at 713;
- Passive websites, where "where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." Without more, this category does not establish grounds for jurisdiction. *Id*. at 7714-14; and
- Interactive websites, a "middle ground," where "a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id*.

xHamster.com is not a passive website. It does not simply post information on the internet and stand indifferent to whether it is ever accessed. In its motion to dismiss XIH does not attempt to claim that xHamster.com is merely a passive website. Nor could it. xHamster.com is a highly commercial enterprise. In its domain-name dispute cases, XIH routinely points out that its website is the "fourth most popular pornography internet website and the 20th most trafficked in the world." *See, e.g., xHamster IP Holdings Ltd v. Domain Administrator et al*, Case no. D2021-1490 (June 26, 2021), https://www.wipo.int/amc/en/domains/search/text.jsp?case=D2021-1490. Moreover, the XHAMSTER trademark owned by XIH belies any possibility that xHamster.com is a merely a "passive website." For example, the mark protects the following "goods and services":

- "Digital media, namely downloadable video recordings, motion pictures, film clips and images."
- "Promotional services provided via a website, namely promotion of online third party offers of entertainment material, especially videos, images and sound recordings on the internet; promotion of online third party offers by providing a website featuring hyperlinks to the websites of others in the field of entertainment."
- "Promotional services provided via a website, namely promotion of online third party offers of entertainment material, especially videos, images and sound recordings on the internet; promotion of online third party offers by providing a website featuring hyperlinks to the websites of others in the field of entertainment."

*See* XHAMSTER, European Union Intellectual Property Office, No. 018255445, https://euipo.europa.eu/eSearch/#details/trademarks/018255445. (See also, Pl. Exhibit G.) Defendant XIH own description of its online activities, as well as the towering market position it defends rigorously in its administrative filings, is compelling evidence that xHampster.com is an "active website," designed and engaged in entering contracts within the United States and involving "knowing and repeated transmission of computer files over the internet." *ALS, supra* at 713.

**A.  THE xHAMSTER DEFENDANTS HAVE PURPOSEFULLY AVAILED THEMSELVES OF THE JURISDICTION OF THE UNITED STATES.**

Beyond the active nature of online presence, the alleged facts and available evidence specifically demonstrates that the xHamster Defendants have "purposely availed" themselves of the privilege of conducting activities in the United States. *See*, *ALS Scan, Inc.*, 294 F.3d at 712. Plaintiffs directly alleged that the xHamster Defendants, acting through alter-ego and affiliate corporate relationships, purposefully availed themselves of the benefits of conducting business in the United Sates, and in South Carolina. FAC ¶¶ 29-35. To the extent they are uncontroverted, these allegations must be accepted as true, while factual disputes and reasonable inferences should be resolved in Plaintiffs' favor. *Apex*, supra at *3.

**1.  THE xHAMSTER DEFENDANTS USE TARGETED ADVERTISING TO OFFER COMMERCIAL SERVICES TO RESIDENTS OF THE UNITED STATES.**

The Fourth Circuit recognizes that targeted advertising is compelling evidence of a party's purposeful availment of a jurisdiction. *Kurbanov*, *supra*, 963 F.3d at 353. The Fourth Circuit noted that in the online world many commercial relationships begin with free access, which then transitions to other commercial offers and relationships. "[T]he mere absence of a monetary exchange does not automatically imply a non-commercial relationship. It is hardly unusual for websites to be free to use in today's Internet because many corporations make money selling advertising space, by directing ads to the screens of computers employing their software." *Id*. (quotation omitted). The defendant in *Kurbanov* "made a calculated business choice not to directly charge visitors in order to lure them into his Websites." Website visitors were required "to agree to certain contractual terms, giving [the defendant] authority to collect, among other information, their IP addresses and country of origin," which could then be used to direct advertising "towards specific jurisdictions." *Id*. Under these circumstances, the Fourth Circuit concluded that the

defendant "ultimately profits from visitors by selling directed advertising space and data collected to third-party brokers, thus purposefully availing himself of the privilege of conducting business within Virginia." *Id.*

The defendant in *Kurbanov* argued that it was third-party advertising brokers that had the commercial relationship with website visitors from the jurisdiction, rather than the defendant itself. *Id.* at 354. The Fourth Circuit swept this argument aside:

> at a minimum, Kurbanov facilitates targeted advertising by collecting and selling visitors' data. While he has outsourced the role of finding advertisers for the Websites to brokers, the fact remains that he earns revenues precisely because the advertising is targeted to visitors in Virginia. Moreover, it is immaterial whether the third-party advertisers or [the defendant] targeted [Virginia]. The fact that the advertisements targeted Virginia residents indicates that the defendant knows— either actually or constructively—about its Virginia user base, and that it exploits that base for commercial gain by selling space on its website for advertisements.

*Id.* (internal quotation omitted). The Ninth Circuit also has recognized that targeted advertising to a specific jurisdiction is evidence of a defendant's purposeful availment. *See Will Co. v. Lee*, 47 F.4th 917, 923 ("[The defendant's website] makes its money by selling advertising space on its website to third-party advertisers, so the more visitors there are to the site, the more hits that are made on the advertisements; and the more hits that are made on advertisements….") (internal quotation omitted).

In this case, the xHamster Defendants work as one to make significant efforts to direct advertising and marketing materials to U.S. audiences and it selected a U.S. company to handle its content delivery. (FAC ¶¶ 31, 40, 45, 52, 89, 106.) In the instant motion, Defendant XIH has not contested, let alone controverted, these allegations with regard to the role of directed advertising to US-based users. (*See* Dkt. Nos. 241-1 and 241-2.)

2.  **THE XHAMSTER DEFENDANTS INTENTIONALLY APPEAL TO U.S. CONSUMERS THROUGH A CONTENT-DELIVERY NETWORK THAT ENSURES THAT U.S. USERS HAVE FAST LOADING TIMES.**

The United States is the primary audience of xhamster.com. This fact is easily confirmed with a visit to the leading services for assessing website traffic. Similarweb lists xhamster.com as fourth most popular adult website in the United States, and the 20th globally. *See* Similarweb.com, *exhamster.com*, https://www.similarweb.com/website/xhamster.com/#overview (Accessed Dec. 30, 2022). The country-by-country analysis of xhamster.com's use engagement shows that the United States makes up a clear if not dominant majority of the site's user base.



*Id.* ("Geography & Country Targeting). The xHamster Defendants not only know that most of their traffic comes from the United States. They actively work to provide their platform in the U.S. market.

In its decision in *Will Co.*, the Ninth Circuit explained the significance of content delivery networks (or "CDNs") to internet service within a jurisdiction. CDNs are "a distributed network of servers covering a particular geographic area, which permits users to access the site from any server in the network, not just the host server, and thus decreases the distance between users and

the server." *Will Co. Ltd.*, 47 F.4th at 925. The *Will Co.* Court noted the significance of the placement of CDN services. "Given how important loading speed is to achieving and maintaining an audience, **Defendants' choice is good evidence that they were motivated to appeal to viewers in the United States more than any other geographical location**." *Id.* (emphasis added).

Like the Defendant in *Will Co.*, the xHamster Defendants use CDNs in the United States to provide swift loading speeds for U.S. users. The website ICANN|LOOKUP, which is operated by ICANN, the nonprofit that coordinates the internet's naming system,[2] lists the nameservers for xhamster.com as two servers with the American company Cloudflare, Inc.



See lookup.icann.org, *xhamster.com*, https://lookup.icann.org/en/lookup (accessed Dec. 30, 2022). Defendant XIH does not address CDN placement in its motion to dismiss. However, the reply to Plaintiffs' Response in opposition to Hammy Media LTD.'s motion for judgment on the pleadings (Dkt. no. 239), suggests that xhamster.com uses Cloudflare for DNS services, but not CDN services. (*Id.* at 11). That discussion—which stops short of directly stating that xhamster.com does not use Cloudflare as its CDN provider in the United States—does nothing to clarify the jurisdictional facts for the Court. To the extent, Defendant Hammy Media is stating

---

[2] *See generally*, icann.org, *Welcome to the global community!,* https://www.icann.org/get-started (accessed Dec. 30, 2022).

that Cloudflare does not provide CDN services to xhamster.com in the United States, such a contention appears to be false based on public information subject to judicial notice.

The website CDN Finder, which looks up the names of all CDNs used on a webpage, shows the CDN for xhamster.com as Cloudflare. *See* CDNplanet.com, *CDN Finder: xhamster.com*,

https://www.cdnplanet.com/tools/cdnfinder/#id:1327562395717_4252a8ba7b57328606b4

(accessed Dec. 30, 2022). The website SecurityTrails, which "strives to make the biggest treasure trove of cyber intelligence data readily available in an instant,"[3] lists two IP addresses for xhamster.com, both of which are in the United States and hosted by Cloudflare.[4]

Furthermore, a ping test, which tests the response time from a "domain name or IP address from multiple locations around the world" shows that North American locations have faster response times for xhamster.com than other tested locations, including Asia, South America, and Europe.

---

[3] Securitytrails.com, *Our mission*, https://securitytrails.com/corp/ourstory (accessed Dec. 30, 2022).

[4] *See Id.*, *104.18.156.3 reverse IP lookup*, https://securitytrails.com/list/ip/104.18.156.3 (accessed Dec. 30, 2022); *and id.*, *104.18.155.3 reverse IP lookup*, https://securitytrails.com/list/ip/104.18.155.3 (accessed Dec. 30, 2022).

```
PING Results for xhamster.com
=============
```

| Location | IP Address | Minimum RTT | Maximum RTT | Average RTT | Packet Loss |
|---|---|---|---|---|---|
| Asia | | | | | |
| Seoul, South Korea | 104.18.155.3 | 2.122 | 2.218 | 2.170 | 0% |
| Oceania | | | | | |
| Perth, Australia | 104.18.155.3 | 0.474 | 0.531 | 0.492 | 0% |
| Sydney, Australia | 104.18.156.3 | 0.754 | 0.882 | 0.805 | 0% |
| Europe | | | | | |
| Helsinki, Finland | 104.18.155.3 | 18.004 | 18.069 | 18.047 | 0% |
| London, UK | 104.18.155.3 | 1.190 | 1.274 | 1.236 | 0% |
| Rotterdam, Netherlands | 104.18.156.3 | 3.532 | 3.864 | 3.640 | 0% |
| Sandefjord, Norway | 104.18.156.3 | 20.000 | 20.048 | 20.020 | 0% |
| North America | | | | | |
| Beauharnois, Canada | 104.18.156.3 | 7.934 | 8.007 | 7.963 | 0% |
| Atlanta, USA | 104.18.156.3 | 0.456 | 0.688 | 0.559 | 0% |
| Los Angeles, USA | 104.18.156.3 | 0.595 | 0.746 | 0.687 | 0% |
| New York, USA | 104.18.155.3 | 0.710 | 0.781 | 0.736 | 0% |
| Seattle, USA | 104.18.155.3 | 0.641 | 0.688 | 0.662 | 0% |
| South America | | | | | |
| São Paulo, Brazil | 104.18.155.3 | 1.173 | 1.266 | 1.210 | 0% |

Viewdns.info, *Ping Test: xhamster.com*, https://viewdns.info/ping/?domain=xhamster.com (test conducted Jan. 6, 2022) (attached as Exhibit K).[5] It is not possible for North America to have the fastest response times without a CDN array facilitating such responsiveness. The results of this test demonstrate the actual performance of the xHamster Defendants' network. North America has the fastest response times. This fact, combined with the actual traffic from U.S. users—which comprise a commanding majority of xhamsters.com's userbase—supports an eminently reasonable inference that the xHamster Defendants are intentionally focusing their commercial services into the United States. Indeed, they do so to a greater extent than any other country in the world.

**B.    THE EXERCISE OF JURISDICTION IS CONSTITUTIONALLY REASONABLE AND, AT A MINIMUM, JURISDICTIONAL DISCOVERY IS APPROPRIATE TO RESOLVE THE FACT-BASED CONTENTIONS OF THE PARTIES CONCERNING JURISDICTION.**

---

[5] The chart above measures response time in Round-trip time ("RTT"), which is how many milliseconds it takes for a network request to move from a given starting point, to a destination point, and back. "**Reducing RTT is a primary goal of a CDN.**" Cloudflare.com, *What is round-trip time?*, https://www.cloudflare.com/learning/cdn/glossary/round-trip-time-rtt/ (accessed Dec. 30, 2022) (emphasis added).

The third prong, constitutional reasonableness, is also met as to Defendant XIH. *See generally, Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009). Under this prong, the court considers whether the exercise of jurisdiction "would comport with fair play and substantial justice." *Givens v. Erie Ins. Co.*, 2022 WL 2759167 at *7 (D. S.C. Jul. 14, 2022). First, if the Court finds that XIH has availed itself of the privilege of conducting business with the jurisdiction, the third prong is also satisfied. *See Kurbanov*, 963 F.3d at 352 ("it is presumptively not unreasonable to require [the defendant] to submit to the burdens of litigation in that forum as well."). Second, both the United States and South Carolina have distinct interests in furthering their social policies—their laws protecting victims of sexual exploitation and invasions of privacy. The causes of action raised by Plaintiffs in this litigation reflect clear policy choices by Congress and by South Carolina to give victims of the conduct alleged in this case an opportunity to seek restitution for the harm they have suffered as well provide general deterrence to such conduct. Third, Defendant XIH's assertion that it would be burdened by the exercise of jurisdiction because it "has no connections to the United States" lacks credibility. As discussed above—even before any form of jurisdictional discovery—the available evidence shows that the majority of the traffic to the website Defendant operates comes from the United States and that the xHamster Defendants have taken deliberate steps to meet the demand from U.S. consumers and provide them the fastest and smoothest user experience available anywhere in the world.

In the alternative, if the Court finds that Plaintiffs have not yet established personal jurisdiction, Plaintiffs respectfully request the court order the parties to conduct jurisdictional discovery. Jurisdictional discovery is necessary where, "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Connor v. Lifewatch, Inc.*, CIV.A. 2:13-03507, 2014 WL 4198883, at *6 (D.S.C. Aug. 20, 2014).

Although Plaintiffs have made a "prima facia showing of a sufficient jurisdictional basis to survive the jurisdictional challenge," *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F. 2d 673, 676 (4th Cir. 1989), as required, Defendants dispute key facts alleged by Plaintiffs, such as who is in control of xHamster and how xHamster earns revenue. Furthermore, there are certain facts about the innerworkings of the Hammy group "that are simply not known to Plaintiffs," and could not be known without discovery, "[t]hus, jurisdictional discovery is appropriate," if these facts are necessary. *Afa Polytek (N. Am.) Inc. v. Clorox Co*., 2:13-CV-01633-RMG, 2014 WL 12608562, at *6 (D.S.C. Jan. 17, 2014)

Plaintiffs have alleged that the xHamster Defendants are intentionally obfuscating their corporate structure and ownership. Indeed, the xHamster Defendants' strongest assertions against this Court's jurisdiction all depend upon the nature of their relationship to each other and connections to the United States remaining shrouded in mystery. Further, Plaintiffs have alleged that Hammy operates as a group of subsidiaries, including all named defendants, with xHamster IP Holdings as a controlling entity in this group. Plaintiffs have requested discovery on three different occasions and requested a F.R.C.P. 30(b)6 deposition with the clear purpose of obtaining more information about Hammy's operations, subsidiaries, affiliates, and issues of operation and control – all relevant to the jurisdiction analysis – and were rebuffed. As the xHamster Defendants are privately held companies, Plaintiffs have exhausted all possible efforts to conduct its own investigation and present evidence regarding jurisdiction as it relates to each defendant short of jurisdictional discovery. It is clear that jurisdictional discovery would answer questions regarding these issues. Therefore, jurisdictional discovery is the appropriate remedy if the current pleadings fall short.

### III. PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CLAIMS AGAINST THE XHAMSTER DEFENDANTS TO PUT THEM ON NOTICE OF THE CLAIMS RELATING TO THEIR COLLECTIVE CONDUCT.

Defendant XIH argues that the FAC relies on shotgun allegations, which do not enable them to discern which claims are made against which defendants. XIH MTD, Dkt. 241-1 at 14. This assertion should be rejected for two key reasons: (1) Plaintiffs allege that the xHamster Defendants are functionally the same entity; and (2) are accusing them of doing the same thing.

"The burden rests on plaintiffs to enable a particular defendant to determine with what it is charged." *Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228 (4th Cir. 1993) (cleaned up).[6] In this case, Plaintiffs argue their collective pleading put the xHamster Defendants properly on notice because they are alter egos of each other. Each xHamster Defendant is on notice of the claims that apply to it because each is alleged to be equally culpable and liable for collectively engaging in the same tortious conduct.

While the Fourth Circuit does not appear to have considered the precise question in depth, at least one other circuit court has found that the notice principle does not forbid collective pleading: "The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Weiland*, 792 F.3d at 1323 n.14 (quoting *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir.2000)). The *Weiland* court reversed the district court's dismissal, writing:

> [T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count. This may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure

---

[6] This brief uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g., Brownback v. King*, 141 S. Ct. 740, 748 (2021); *Ashford v. Raby*, No. 19-1677, 2020 WL 1057393, at *2 (6th Cir. Mar. 5, 2020); *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017); *Smith v. Kentucky*, 520 S.W.3d 340, 354 (Ky. 2017).

12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it.

792 F.3d at 1324.

So too here: as to the MindGeek Defendants, the Plaintiffs here are "aver[ring] that all defendants are responsible for the alleged conduct," the xHamster Defendants did not file a motion for a more definite statement under Fed.R.Civ.P. 12(e), and do not claim in their motion to dismiss that a particular aspect of the collective pleading is confusing to them. Plaintiffs do not bring all their claims against all the defendants; their Fifth Amended Complaint distinguishes between the claims against the xHamster Defendants, the MindGeek defendants, Defendant Murphy, and the College defendants. ECF 193 at ¶¶ 95-197.

Ultimately, Plaintiffs allege that the xHamster Defendants all failed them in precisely the same way—by facilitating and profiting from their abuse, because they are effectively the same corporation. ECF at ¶ 40. This is not impermissible shotgun pleading. Accordingly, Plaintiffs' collective allegations against XIH and the rest of the xHamster Defendants should not be dismissed for failure to state a claim.

IV. **SECTION 230 OF THE COMMUNICATIONS DECENCY ACT PROVIDES NO IMMUNITY FOR THE XHAMSTER DEFENDANTS' VIOLATIONS OF THE FEDERAL SEX TRAFFICKING LAWS, NOR CLAIMS RELATED TO REVENUE-SHARING AND CONTENT CREATION, AND THIS COURT SHOULD MAINTAIN ITS PLAN TO DETERMINE THE JURISDICTIONAL QUESTIONS BEFORE CONSIDERING OTHER DEFENSES.**

Defendant XIH's invitation to reargue questions presented under §230 of the Communications Decency Act (47 U.S.C. § 230) at this time are premature. Section 230(c)(1) of the CDA provides that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." This Court has already denied a similar motion to dismiss under §230 by Defendant MindGeek in

October of 2020 (Dk. 58) under the Third Amended Complaint. Since that time, the operative Complaint in this case has been amended to allege civil causes of action under the TVPRA 18 U.S.C. § 1591, *et seq*. as modified by FOSTA/SESTA, 47 U.S.C. § 230(e)(5)(A).

The Trafficking Victims Protection Reauthorization Act ("TVPRA") was the first comprehensive law in the United States to penalize the full range of human trafficking offenses, including sex trafficking of children under the age of 18 or sex trafficking by force, fraud, or coercion. In doing so, it created a civil cause of action, codified at 18 U.S.C. § 1595. That provision of the TVPRA permits a party to bring a civil claim against perpetrators of sex trafficking and against persons or entities who, although not the direct perpetrator, knowingly benefitted from participating in what they knew or should have known was a sex trafficking venture. See 18 U.S.C. § 1595(a).

The Allow States to Fight Online Sex Trafficking Act ("FOSTA"), enacted by Congress in 2018. See Pub. L. 115-164, § 2, Apr. 11, 2018, 132 Stat. 1253; 47 U.S.C. § 230(e)(5)(A), added a specific exception to Section 230 of the CDA. It exempts certain provisions of the TVPRA, discussed above, from Section 230's immunity. Specifically, FOSTA provides that Section 230 has "no effect on sex trafficking law" and that "[n]othing in this section … shall be construed to impair or limit ... any claim in a civil action under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. § 230(e)(5)(A). The FOSTA amendment to Section 230 is retroactive. See, 132 Stat. 1253, § 4(b); *see also Woodhull Freedom Found v. United States*, 948 F.3d 363, 368 (D.C. Cir. 2020).

When it enacted FOSTA, Congress explained that Section 230 "was never intended to provide legal protection to . . . websites that facilitate traffickers in advertising the sale of unlawful

24

sex acts with sex trafficking victims." FOSTA, *supra*, at § 2.[7]  The FOSTA clarification references

both sections 1591 and 1595 of the TVPRA, abrogating Section 230 immunity for civil section

1595 claims, as long as "the conduct underlying the claim constitutes a violation of section 1591."

*See*, *Doe #1 v. MG Freesites, LTD*, No. 7:21-CV-00220-LSC, 2022 WL 407147, at *10 (N.D. Ala.

2022).  The upshot is that Section 230 immunity is no longer a bar to civil actions for violations

of the federal sex trafficking laws.

Additionally, some of Plaintiffs' claims are completely outside of any liability limitation

by Section 230 because they are unrelated to "publishing" or "speaking" information provided by

an "information content provider." 47 U.S.C. § 230(c)(1). The FAC alleges that the xHamster

Defendants share ad revenue with uploaders of pornographic material to their websites. ECF 193

at ¶ 41. Claims based on revenue sharing are outside of Section 230 and consequently are not

subject to immunity. *Gonzalez v. Google LLC*, 2 F.4th 871, 897-98 (9th Cir. 2021), *cert. granted*,

143 S. Ct. 80 (2022).

Furthermore, Section 230 does not apply to the xHamster defendants because they

materially contribute to all the content on their websites, including the abuse content depicting

Plaintiffs, and their entire business model is built on illegal activity and so they cannot benefit

from the "Good Samaritan" Protections of Section 230. Plaintiffs have alleged that the xHamster

Defendants create categories and tags attached to each video to make them easier to find and

increase views and profits. ECF 193 at ¶ 38, 39, 48, 52, 55, 63. Furthermore, Defendants create a

thumbnail of every video on their website, including the videos depicting Plaintiffs, which amounts

to new creation, directly by Defendants, of the Plaintiffs' abuse content. ECF 193 at ¶ 91. *See Doe*

---

[7]    The    full-text    of    FOSTA,    cited    *supra*,    is    available    at:
https://www.congress.gov/115/plaws/publ164/PLAW-115publ164.pdf.

#1, at *16-17  (Where the court found that the pornography website's creation of categories, tags, and thumbnails amounted to content creation barring them from Section 230 protections.) *See also Henderson v. Source for Pub. Data, L.P.,* 53 F.4th 110, 129 (4th Cir. 2022) (Where the Court found that the platform had materially contributed to the content at issue because it contributed to its illegality and therefore had no protection under Section 230.).

And finally, Defendants have intentionally designed their websites to encourage illegal material. Defendants have refused to moderate content – instead dumping this responsibility on a group of unpaid volunteers – despite knowing that users were uploading non-consensual and otherwise illegal content. ECF 193 at ¶ 41, 42, 44, 45, 47, 59, 63, 64, 68, 69, 90, 92. This disqualifies them from protection for "Good Samaritan" blocking and screening of offensive material under Section 230:

> (c) Protection for "Good Samaritan" blocking and screening of offensive
> material
> (2) Civil liability. No provider or user of an interactive computer service shall be held liable
> on account of any action voluntarily taken in good faith to restrict access to or
> availability of material that the provider or user considers to be obscene, lewd, lascivious,
> filthy, excessively violent, harassing, or otherwise objectionable,
> whether or not such material is constitutionally protected; or
> (B) any action taken to enable or make available to information content
> providers or others the technical means to restrict access to material described
> in paragraph (1).

47 U.S.C. § 230(c)(2).

As the Ninth Circuit stated: "[T]he section is titled "Protection for 'good s26amaritantan' blocking and screening of offensive material" and . . . the substance of section 230(c) can and should be interpreted consistent with its caption." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163-64. (9th Cir. 2008). *See also Doe #1*, at *16 ("In this way, Defendants do even more than merely encourage the posting of CSAM by providing a means

for users to publish what they created but rather materially contribute to it by designing their platforms for an illicit purpose.").

The more complex and intricate details of the application of the sex trafficking laws and the possible defenses available to the Defendants is more properly addressed after all of the Defendants have been served and there has been some opportunity for discovery. Several of the xHamster Defendants are still awaiting service under the Hague Service Convention. Defendants' efforts to truncate examination of their businesses through the use of §230 as both a sword and a shield should be resisted – at least in the absence of any discovery.

## CONCLUSION

The xHamster Groups operations are notorious for their system and tactics of creating an ever-changing landscape of shell companies, holding companies, mail drops, anonymous shareholders, and elaborate financial arrangements designed to highly discourage, if not thwart, close examination of their operations. (See Pl. Exhibit H.) With little effort, the Court can find numerous journalistic reports that document the deliberate obfuscation of the structure and ownership of the operation. The Plaintiffs have supplied sufficient pleading and proof that Hammy runs as a conglomerate entity and have made a prima facie case for jurisdiction over XIH, or whatever it calls itself today. Its motions should be denied and enforced; diligent discovery should be allowed to proceed.

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

_s/J. Edward Bell, III_
J. Edward Bell, III (1280)
Joshua M. W. Salley (13214)
219 North Ridge Street
Georgetown, SC  29440

27

TEL.: (843) 546-2408
FAX: (8430 546-9604
ebell@edbelllaw.com

**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**

Tyler S. Thompson (admitted Pro Hac Vice)
Liz J. Shepherd (admitted Pro Hac Vice)
Jordan A. Stanton (admitted Pro Hac Vice)
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com
lshepherd@kytrial.com
jstanton@kytrial.com

**NATIONAL CENTER ON SEXUAL EXPLOITATION**

Benjamin Bull ( admitted Pro Hac Vic)
Danielle Bianculli Pinter ( admitted Pro Hac Vice)
Christen Price ( admitted Pro Hac Vice)
Peter Gentala (admitted Pro Hac Vice)
1201 F Street NW
Washington, D.C.20004
bbull@ncose.com
dpinter@ncoselaw.org
cprice@ncoselaw.org
pgentala@ncoselaw.org

**ATTORNEYS FOR PLAINTIFF**

January 6, 2022
Georgetown, SC