# EXHIBIT A

# WIPO Arbitration and Mediation Center

**ADMINISTRATIVE PANEL DECISION**

**xHamster IP Holdings Ltd v. Nguyễn Văn Lu**

**Case No. D2020-3163**

## 1. The Parties

The Complainant is xHamster IP Holdings Ltd, Antigua and Barbuda, internally represented.

The Respondent is Nguyễn Văn Lu, Viet Nam.

## 2. The Domain Name and Registrar

The disputed domain name <xhmaster.com> (the "Disputed Domain Name") is registered with April Sea Information Technology Corporation (the "Registrar").

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on November 25, 2020. On November 25, 2020, the Center transmitted by email to the Registrar a request for registrar verification in connection with the Disputed Domain Name. On December 2, 2020, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the Disputed Domain Name which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on December 2, 2020 providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. The Complainant filed an amended Complaint on December 2, 2020.

On December 2, 2020, the Center transmitted an email in English and Vietnamese to the Parties regarding the language of the proceeding. The Complainant confirmed the request that English be the language of the proceeding on December 2, 2020. The Respondent did not comment on the language of the proceeding.

The Center verified that the Complaint together with the amended Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondent of the Complaint, and the proceedings commenced on December 7, 2020. In accordance with the Rules, paragraph 5, the due date for Response was December 27, 2020. The Respondent did not submit any response. Accordingly, the Center notified the Respondent's default on December 29, 2020.

The Center appointed Pham Nghiem Xuan Bac as the sole panelist in this matter on January 6, 2021. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

The Complainant, xHamster IP Holdings Ltd, offers adult entertainment services in the form of downloadable video recordings, motion pictures, film clips, and images. In 2020, the Complainant's website "www.xhamster.com" was ranked the 4th most popular pornography Internet website and the 20th most trafficked website in the world.

The Complainant owns some trademark registrations for XHAMSTER in Classes 09, 35, 38, 41, 42 and 45, including, but not limited to, Benelux Trademark Registration No. 0986331 registered on December 3, 2015, Antigua and Barbuda Trademark Registration No. 9039

registered on November 3, 2015, and European Union Trademark Registration No. 018255445 registered on October 31, 2020.

According to what the Complainant submitted, the XHAMSTER trademark was first used upon registration of the domain name <xhamster.com> on April 2, 2007.

The Disputed Domain Name <xhmaster.com> was registered on October 6, 2007, eight years prior to the Complainant's acquisition of relevant registered trade mark rights. As of the date of this Decision, the Disputed Domain Name is redirected to a website of a third party for advertising online gambling services. However, according to what the Complainant asserted, the Disputed Domain Name used to resolve to a parking page containing sponsored links to various third-party contents, including those associated with pornography-related products/services.

The Complainant sent a demand letter to the Respondent via the Registrar on October 16, 2020, requesting for the transfer of the Disputed Domain Name. However, the Respondent did not respond to the demand letter.

## 5. Parties' Contentions

### A. Complainant

The Complainant contends that each of the three elements specified in paragraph 4(a) of the Policy are satisfied in the present case, as follows:

(i) The Disputed Domain Name is confusingly similar to the trademark in which the Complainant has rights.

Firstly, the Complainant contends that the Complainant's XHAMSTER trademark has been used in commerce upon the registration of its domain name <xhamster.com> on April 2, 2007 and registered under Benelux Trademark Registration No. 0986331, Antigua and Barbuda Trademark Registration No. 9039 and European Union Trademark Registration No. 018255445 for adult entertainment products/services.

Second, the Complainant asserts that the Disputed Domain Name is confusingly similar to the XHAMSTER trademark owned by the Complainant since all the letters, even though they are misspelled, of the Disputed Domain Name are identical to the XHAMSTER trademark. According to the Complainant, the misspelling of a mark and adding a generic Top-Level Domain ("gTLD") are not changes sufficient to distinguish the Disputed Domain Name from the XHAMSTER trademark.

Furthermore, according to what the Complainant submitted, the Respondent uses the Disputed Domain Name to attract users to the Respondent's website using the XHAMSTER trademark awareness across the globe.

(ii) The Respondent has no rights or legitimate interests in respect of the Disputed Domain Name.

The Complainant submits that the elements set forth in Policy, paragraph 4(c) are not fulfilled.

First, the Complainant contends that its XHAMSTER trademark became a worldwide-known brand during the operation of its website "www.xhamster.com" for more than 13 years.

Second, the Complainant asserts that the Respondent has no *bona fide* offering of goods or services under the Disputed Domain Name as the Disputed Domain Name is not operational and is used to sell advertisements, or is re-directed to other websites. Thus, the Respondent uses the Disputed Domain Name for attracting users to its website and to gain profit from online traffic.

Third, the Respondent has never tried to contact the Complainant asking for the consent of use of the Disputed Domain Name and XHAMSTER trademark.

(iii) The Disputed Domain Name was registered and is being used in bad faith.

First, the Complainant submits that the Complainant tried to contact with the Respondent requesting to have the Disputed Domain Name transferred, but to no avail. Therefore, the Complainant believes that the Respondent does not have any legitimate interests in the XHAMSTER trademark since the Respondent did not provide a reply to the Complainant's claims.

Second, the Complainant believes that the Disputed Domain Name cannot be the corporate name or a registered trademark of the Respondent.

Third, the Complainant contends that the Respondent registered the Disputed Domain Name for attracting Internet users to the Respondent's website for commercial gain by creating a likelihood of confusion. Particularly, the Respondent commercially gains by displaying advertisements as the Disputed Domain Name provides re-direct to other adult-themed websites.

With the said arguments, the Complainant requests that the Disputed Domain Name be transferred to the Complainant.

### B. Respondent

The Respondent did not reply to the Complainant's contentions.

## 6. Discussion and Findings

### A. Procedural Issues

(i) Language of the Proceeding

The Complaint was filed in English. However, the Registrar confirmed that the language of the Registration Agreement was Vietnamese.

As the Complaint was filed in English, the Center, in its notification dated December 2, 2020, invited the Complainant to submit either (i) satisfactory evidence of an agreement between the Complainant and the Respondent to the effect that the proceeding should be in English, or (ii) submit the Complaint translated into Vietnamese, or (iii) a substantiated request for English to be the language of the proceeding.

On December 2, 2020, the Complainant submitted a request that English be the language of the proceeding.

According to paragraph 11(a) of the Rules, unless otherwise agreed by the Parties, or specified otherwise in the Registration Agreement, the language of the proceeding shall be the language of the Registration Agreement, subject to the authority of the Panel to determine otherwise, having regard to the circumstances of the administrative proceeding.

Similar to previous UDRP decisions, the Panel finds that the spirit of paragraph 11(a) is to ensure fairness in the selection of language by giving full consideration to the Parties' level of comfortability with each language, the expenses to be incurred and possibility of delay in the proceeding in the event translations are required and other relevant factors (see, *e.g.*, *Deutsche Messe AG v. Kim Hyungho*, WIPO Case No. D2003-0679).

In the present case, the Panel takes into account the circumstances of the proceeding, including, but not limited to:

(i) the fact that the Complainant, xHamster IP Holdings Ltd, a business entity established in Antigua and Barbuda, does not appear to be able to communicate in Vietnamese, and therefore, if the Complainant was required to have the documents translated into Vietnamese, the proceeding would be unduly delayed, and the Complainant would have to incur in substantial expenses for translation;

(ii) the English language is quite popular in Viet Nam, where the Respondent is located, and the Disputed Domain Name used to resolve to a parking page containing English content;

(iii) the Respondent did not object for English to be the language of the proceeding and did not submit a response in either English nor Vietnamese.

Therefore, for the purpose of easy comprehension of the Complainant (the party actively taking part in the proceeding) of the Panel's decision without any necessity of translations, and in the interest of fairness to both Parties as well as the Panel's obligation under paragraph 10(c) of the Rules, which provides that "the Panel shall ensure that the administrative proceeding takes place with due expedition", the Panel hereby decides, under paragraph 11(a) of the Rules, that the language of the proceeding shall be English and shall render its decision in English.

(ii) The Respondent's Failure to Respond

The Respondent's failure to file a Response does not automatically result in a decision in favor of the Complainant (see, *e.g.*, *Tradewind Media, LLC d/b/a Intopic Media v. Jayson Hahn*, WIPO Case No. D2010-1413 *and M. Corentin Benoit Thiercelin v. CyberDeal, Inc*., WIPO Case No. D2010-0941). However, the Panel may draw appropriate inferences from the Respondent's default.

(iii) Delay in bringing the Complaint

The Panel finds that the Disputed Domain Name was registered on October 6, 2007, but the Complaint was not filed with the Center until November 25, 2020. In considering this delay of 13 years in challenging the registration of the Disputed Domain Name, the Panel is of the same view as UDRP decisions mentioned in section 4.17 of the WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Third Edition ("WIPO Overview 3.0") that "[panels have widely recognized that mere delay between the registration of a domain name and the filing of a complaint neither bars a complainant from filing such case, nor from potentially prevailing on the merits". However, similar to a previous decision, the Panel has taken into account this delay when considering the second and third element requiring the Complainant to establish that the Respondent lacks rights or legitimate interests and that the Respondent registered and used the Disputed Domain Name in bad faith (see, *e.g.*, *CeltonManx Limited v. Pham Dinh Nhut*, WIPO Case No. D2014-0109).

### B. Identical or Confusingly Similar

The Complainant is required to establish the following: (i) that it has trademark rights, and, if so, (ii) that the Disputed Domain Name is identical or confusingly similar to its trademark.

First of all, the Panel finds that the Complainant has clearly evidenced that it has registered trademark rights to XHAMSTER. In addition, it is evidenced that the Complainant has a wide use of its XHAMSTER trademark in offering adult entertainment services in the form of downloadable video recordings, motion pictures, film clips, and images.

In the case at hand, the Panel notes that the Complainant does not have a registered trademark for XHAMSTER in Viet Nam. The Panel also notes that the three trademark registrations that the Complainant has obtained were issued in 2015 and 2020, after the registration of the Disputed Domain Name. However, it is well established that the jurisdictions where the trademark is valid, its date of registration (or claimed first use), and the goods and/or services for which it is registered or used in commerce, are all irrelevant for the purpose of finding rights in a trademark under the first element of the UDRP. See the section 1.1.2 of the WIPO Overview 3.0.

As to the second requirement that the Disputed Domain Name is identical or confusingly similar to the trademark, the Panel finds that the Disputed Domain Name differs from the XHAMSTER trademark by merely the inversion of the letter "m" after the letter "a". In accordance with section 1.9 of the WIPO Overview 3.0, a domain name which consists of a common, obvious, or intentional misspelling of a trademark is considered by panels to be confusingly similar to the relevant mark for purposes of the first element. Thus, the inversion of letters does not prevent a finding of confusing similarity between the Disputed Domain Name and the XHAMSTER trademark. In the Panel's view, the Disputed Domain Name is confusingly similar to the XHAMSTER trademark in terms of structure and presentation.

Thirdly, the Panel finds, similarly to other UDRP panels, that the addition of the applicable gTLD ".com" to the Disputed Domain Name is viewed as a standard registration requirement and as such can be disregarded in the determination of confusing similarity (see, *e.g., Volkswagen AG v. Privacy Protection Services*, WIPO Case No. D2012-2066; *The Coca-Cola Company v. David Jurkiewicz*, WIPO Case No. DME2010-0008; *Telecom Personal, S.A., v. NAMEZERO.COM, Inc*., WIPO Case No. D2001-0015; *F. Hoffmann La Roche AG v. Macalve e-dominios S.A.*, WIPO Case No. D2006-0451; *Telstra Corporation Limited v. Nuclear Marshmallows*, WIPO Case No. D2000-0003). Therefore, in this present case, the addition of the gTLD ".com" does not prevent a finding of confusing similarity for purposes of the Policy.

Based on the foregoing findings, the Panel finds that the Disputed Domain Name is confusingly similar to the Complainant's trademark, and paragraph 4(a)(i) of the Policy is established.

## C. Rights or Legitimate Interests

Paragraph 4(c) of the Policy lists circumstances, in particular but without limitation, which, if found by the Panel to be proved, demonstrate the Respondent's rights or legitimate interests in the Disputed Domain Name for the purposes of paragraph 4(a)(ii) of the Policy, including:

"(i) before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services; or

(ii) you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights; or

(iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue."

The Panel finds that the Complainant has made a *prima facie* showing that the Respondent has no rights or legitimate interests in the Disputed Domain Name. The Respondent did not refute the Complainant's contentions.

The consensus of previous UDRP decisions is that while the overall burden of proof in UDRP proceedings is on the complainant, once a *prima facie* case is made, the burden of production shifts to the respondent to come forward with relevant evidence demonstrating its rights or legitimate interests in the disputed domain dame (see *e.g., Document Technologies, Inc. v. International Electronic Communications Inc*., WIPO Case No. D2000-0270; *Julian Barnes v. Old Barn Studios Limited*, WIPO Case No. D2001-0121).

In this instant case, the Panel finds that the Respondent has failed to meet that burden since no Response was submitted, while the Complainant has presented evidence to the Panel that the Respondent has no rights or legitimate interests in the Disputed Domain Name.

Regarding paragraph 4(c)(i) of the Policy, although the Disputed Domain Name is currently redirected to a website offering gambling services, as asserted by the Complainant and rechecked from an independent search by the Panel on "web.archive.org", the Disputed Domain Name used to resolve to parking pages with Pay-Per-Click ("PPC") links that redirect Internet users to other online locations offering pornographic products/services. In this regard, section 2.9 of the WIPO Overview 3.0 holds that "the use of a domain name to host a parking page comprising PPC links does not represent a *bona fide* offering where such links compete with or capitalize on the reputation and goodwill of the complainant's mark or otherwise mislead Internet users".

In this present case, the Panel finds that the PPC links in question are referring to services of the Complainant's competitors. Hence, in light of foregoing viewpoint and similarly to a number of well-established prior UDRP decisions, the Panel upholds that operating PPC parking pages using a distinctive trademark or its intentionally-misspelled version in a domain name, and providing connection to goods and/or services competitive with the trademark owner, does not establish a *bona fide* offering of goods or services (see, *e.g, Virgin Enterprises Limited v. LINYANXIAO aka lin yanxiao*, WIPO Case No. D2016-2302; *Merck Sharp & Dohme Corp. v. Domain Administrator, PrivacyGuardian.org / George Ring, DN Capital Inc.*, WIPO Case No. D2017-0302; *Archer-Daniels-Midland Company v. Wang De Bing*, WIPO Case No. D2017-0363. The Panel also finds that the current redirection of the Disputed Domain Name to a website offering gambling services does not establish a *bona fide* offering of goods and services.

Regarding paragraph 4(c)(ii) of the Policy, the Panel finds that there is no evidence showing that the Respondent has been commonly known by the Disputed Domain Name. The Panel also finds that there is no evidence available that the Respondent holds any registered or unregistered trademark rights to the Disputed Domain Name. The Panel conducts an independent search for elements

"xhamster" and "xhmaster", but found no trademark nor company name regarding elements "xhamster" and "xhmaster" registered in the name of the Respondent. Further, there is also no evidence showing that the Respondent operates any *bona fide* business or organization under the Disputed Domain Name. Therefore, it is not evidenced that the Respondent is identified by "xhmaster" or that he has any right in it.

Regarding paragraph 4(c)(iii) of the Policy, the Panel finds that there is no evidence that the Respondent is making any noncommercial or fair use of the Disputed Domain Name.

Accordingly, the Panel finds that the Respondent has no rights or legitimate interests in respect of the Disputed Domain Name, and the second element under paragraph 4(a) of the Policy is established.

D. Registered and Used in Bad Faith

Paragraph 4(b) of the Policy lists four circumstances that, without limitation, shall be evidence of the registration and use of a domain name in bad faith:

"(i) circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of your documented out-of-pocket costs directly related to the domain name; or

(ii) you have registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that you have engaged in a pattern of such conduct; or

(iii) you have registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv) by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your website or other online location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your website or location or of a product or service on your website or location."

The above four circumstances are not exhaustive and bad faith may be found by the Panel alternatively. The Panel finds that the Complainant has put forth evidence that the Respondent has registered and used the Disputed Domain Name in bad faith. The Respondent did not reply to the Complainant's contentions and, therefore, did not refute the Complainant's contentions.

The Complainant contends that the domain name <xhamster.com> was used for a pornography website shortly after registration. In this respect, the Panel refers to *xHamster IP Holdings Ltd v. Domain Administrator*, WIPO Case No. D2020-3175 where the panel "verified the pages recorded by the Internet Archive at 'www.xhamster.com' which started displaying a porn website since at least September 5, 2007, already displaying a coloured logo almost identical to the one currently available, and a copyright notice 'Copyright © 2007 xHamster'". Therefore, the Panel finds it is likely that by the time the Disputed Domain Name was registered on October 6, 2007, the registrant and user of <xhamster.com> would have acquired unregistered trade mark rights of sufficient value to attract the attentions of cybersquatters. See *xHamster IP Holdings Ltd v. Domain Administrator*, *supra*.

Additionally, the Panel has considered the Complainant's assertions and evidence with regard to the Respondent's registration of the Disputed Domain Name. In this regard, the Panel also has conducted an independent search for WhoIs history of the Disputed Domain Name and found that the first registrant of such domain name is "Navigation Catalyst Systems, Inc", not the Respondent. Particularly, according to the WhoIs database of "reg.com", Navigation Catalyst Systems, Inc was still recorded as the registrant until July 27, 2009, then the name of the registrant(s) has been covered by a privacy service. Thus, although it is still not clear about the exact date when the Disputed Domain Name was acquired by the Respondent, it is probably later than July 27, 2009, several years after the XHAMSTER trademark had been put in use and gained certain reputation in the field of entertainment services for adults. Moreover, the Panel notes that according to "web.archive.org" the Disputed Domain Name displayed PPC links as early as August 22, 2008, which further supports the Respondent's likely knowledge of the domain name <xhamster.com> and the XHAMSTER trademark around the time of the registration of the Disputed Domain Name. In any event, as previously noted, the Panel finds it is likely that by the time the Disputed Domain Name was registered on October 6, 2007, the registrant and user of <xhamster.com> would have acquired unregistered trade mark rights of sufficient value to attract the attentions of cybersquatters.

Based on the foregoing, and given the extensive use of the XHAMSTER trademark, it is very unlikely that the Respondent registered the Disputed Domain Name in a fortuity. Also, in consideration of the use of the Disputed Domain Name, the Panel is of the view that the Respondent obviously knew of the domain name <xhamster.com> and the XHAMSTER trademark when acquiring the Disputed Domain Name, and the Panel considers the registration an attempt by the Respondent to take advantage of the goodwill in the XHAMSTER trademark.

Further, in Section 6.C. above, the Panel finds that the Respondent has no rights or legitimate interests in the Disputed Domain Name. In the Panel's view, the use of a domain name, to which one has no rights or legitimate interests, is very often a clear indication of use in bad faith.

On the date of this Decision, the Panel accessed the Disputed Domain Name and finds that it resolves to a website of third party for advertising online gambling services. However, it is well proved by the independent search of the Panel that the Disputed Domain Name had been used to host a parking page comprising PPC links to pornography-related products/services of others.

With all these facts and findings, the Panel finds that by using the Disputed Domain Name in this manner, the Respondent has intentionally attempted to attract Internet users to its websites and earn income from such links on a PPC basis by creating a likelihood

of confusion with the Complainant's marks as to the source, sponsorship, affiliation or endorsement of its website, for commercial gain, and earning.

In addition, the Panel finds that the Respondent was involved in several typosquatting cases of domain name disputes, *namely Thi Factory S.A. v. Vietnam Domain Privacy Services, Nguyễn Văn Lư*, WIPO Case No. D2019-2596; *Squarespace, Inc. v. April Sea Information Technology Company Ltd. / Nguyễn Văn Lư*, WIPO Case No. D2019-3064 (Of note, in these two cases, the name of the Respondent is written as "Nguyễn Văn Lư", which includes an accent mark in the first name "Lu").

Taking into account all of the above, the Panel finds that the Disputed Domain Name was registered and is being used by the Respondent in bad faith under paragraph 4(b) of the Policy, and the third element under paragraph 4(a) of the Policy is established.

## 7. Decision

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the Disputed Domain Name <xhmaster.com> be transferred to the Complainant.

Pham Nghiem Xuan Bac
Sole Panelist
Date: January 20, 2021