**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| JANE DOES 1-9,<br><br>PLAINTIFFS<br><br>vs.<br><br>COLLINS MURPHY et al.<br><br>DEFENDANTS | C/A No. 7:20-CV-00947-DCC<br><br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO WISEBITS IP, LTD.'s MOTION TO DISMISS** |

## INTRODUCTION

Wisebits IP, LTD., ("Wisebits IP") which is another of the xHamster maze of interrelated companies, makes the same arguments as its affiliates that the Plaintiffs have failed to plead a proper cause of action against it and that this Court lacks personal jurisdiction over it. As in the case of the other xHamster group entities, both assertions are wrong and Wisebits IPs' motion should be denied. Although this Response is necessarily similar to those filed in Response to other xHamster entity Motions, it contains information not previously presented to the Court.

## BACKGROUND / STANDARD OF REVIEW

Wisebits IP is another of the companies comprising the fragmented pornography conglomerate of which Defendants xHamster and Hammy Media Ltd. are a part. The operative Complaint names five (5) "xHamster Defendants"; Hammy Media Ltd. d/b/a xHamster, TrafficStars Ltd., Traffic Stars Ltd., xHamster IP Holdings Ltd. and Wisebits IP Ltd.[1] Each of

---

[1] Plaintiffs' Response to Hammy Media's MTD (Dkt. no. 258) mistakenly counts the "xHamster Defendants" at six (6). The correct count is five (5) as identified above.

these Defendants has filed motions to dismiss, making similar arguments of inadequate pleading and lack of personal jurisdiction.  Each of these Defendants, except Hammy Media, claim they are independent corporations with no identity of interest with xHamster.

Wisebits IP, like the others, brings its jurisdictional challenge pursuant to Fed.R.Civ.P. 12(b)(2).  The standards of review are set forth in previous pleadings but are repeated here for the Court's convenience.

If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  If the court chooses to address the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. *Id*.

When determining whether the Plaintiffs have made the requisite *prima facie* showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff.  *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).  The Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *Combs*, 886 F.2d at 676.  In determining whether the Plaintiff has met its burden of demonstrating a *prima facie* case, the Court may look beyond the Complaint to exhibits, material included in the pleadings and information found on the internet – including defendants' own website. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020), cert. denied, 208 L. Ed. 2d 525, 141 S. Ct. 1057 (2021); *O'Toole v. Northrop Grumman Corp*., 499 F.3d 1218, 1225 (10th

Cir.2007) (holding that "it is not uncommon for courts to take judicial notice of factual information found on the world wide web").

The inquiry appropriate to determine questions of personal jurisdiction was summarized recently in *Epic Games, Inc. v. Shenzhen Tairuo Tech. Co*., No. 5:21-CV-224-FL, 2022 WL 894243 (E.D.N.C, 2022):

> To demonstrate personal jurisdiction over a defendant consistent with the Due Process Clause, a plaintiff must show (1) a State's general jurisdiction over the defendant by demonstrating the defendant's continuous and systematic contact with the State; (2) a State's specific jurisdiction over the defendant by demonstrating that the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being hauled into court there on a claim arising out of those contacts; or (3) Rule 4(k)(2) jurisdiction by demonstrating that no State can exercise personal jurisdiction over the defendant and that the defendant has sufficient contacts with the United States such that exercising jurisdiction over the defendant would be consistent with the U.S. Constitution and laws.

Epic Games, Inc. at *2 (quoting Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192 (4th Cir. 2018)(emphasis added)).

In this instance, Fed.R.Civ.P. 4(k)(2) is the most straightforward and it clearly applies in this case. Exercise of personal jurisdiction under Rule 4(k)(2) is proper in cases "arising under federal law" when the defendant is not subject to personal jurisdiction in any state court but has sufficient contacts with the United States as a whole. Thus, a plaintiff who seeks to invoke Rule 4(k)(2) as a basis for jurisdiction must show that (1) the claim "arise[s] under federal law;" (2) the defendant is "not subject to the jurisdiction of the courts of general jurisdiction of any state;" and (3) the court's exercise of jurisdiction would be "consistent with the Constitution and laws of the United States." Fed.R.Civ.P. 4(k)(2); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 215 (4th Cir. 2002).

In the present case, it is incontrovertible that the Plaintiffs' claims arise under federal law. The Complaint alleges claims under the Trafficking Victims Protection Reauthorization Act

("TVPRA") (18 U.S.C. §§1591, 1595) and RICO violations. (See Dk. 91). Wisebits denies that it

is subject to jurisdiction in any particular state.  Thus, the due process question under Rule 4(k)(2)

depends solely on whether Wisebits IP can be said to have sufficient contacts with the United

States as a whole. See, *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 597 n.16

(E.D. Va. 2003).  These contacts can be derivative under the proper circumstances under both alter

ego and enterprise theories of liability.  *See e.g.*, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir.

1993); *Pertuis v. Front Roe Restaurants, Inc.*, 423 S.C. 640, 817 S.E.2d 273 (2018).

As with the other Defendants in the xHamster group, Plaintiffs can demonstrate a *prima*

*facie* case of personal jurisdiction over Wisebits IP.  The Complaint[2] clearly and specifically places

Wisebits IP on notice of the claims that apply to it, because each is alleged to be equally culpable

and liable for collectively engaging in (and profiting by) the same tortious conduct.  Plaintiffs have

not only stated a claim against Wisebits IP, the exercise of personal jurisdiction is proper.

I.     **PLAINTIFFS CAN ESTABLISH A *PRIMA FACIE* CASE FOR PERSONAL JURISDICTION**

   A. **THE xHAMSTER DEFENDANTS ACT AS THE SAME CORPORATION WITH COMMON CONTROL, OPERATIONS, BUSINESS PURPOSE AND THEIR COMBINED AND COORDINATED CONDUCT RESULTS IN HARM AND INJUSTICE.**

Wisebits IP claims that it has no contacts with the United States to support independent

personal jurisdiction over it and denies that it conducts any business in the United States or South

Carolina.   It relies on the carefully worded Affidavit of Constantinos Christoforou

(ΚΩΝΣΤΑΝΤΙΝΟΣ ΧΡΙΣΤΟΦΟΡΟΥ in Greek, *see* note 6 *infra*), who purports to be the

"Director" of Wisebits IP.  (Affidavit of Christoforou, ¶¶ 2)[3].  Interestingly, Christoforou is also

the "Director" for Defendant Traffic Stars Ltd.[4]  And Wisebits Ltd.[5]  And well over ***200 other***

---

[2] Dkt. no. 193
[3] Dkt. no. 247-2
[4] Dkt. no. 246-2
[5] Dkt. no. 248-2

*Cyprus companies*, including Ventelli Trustee Services Ltd. ("VTS")[6]. Coincidentally, Hammy Media Ltd. lists Ventelli *Nominee* Services, at the same Registered Office address as VTS, as its Secretary.[7] This fact alone raises questions about Wisebits IP's independence as a company.

Wisebits IP states in briefing that "the only thing that [Wisebits IP] can be said to have done is that it registers and maintains the intellection [sic] property for certain software, technology, and/or computer code." (Dk. 247-1, p. 9). Public corporate filings[8] show that it has a complex, but close relationship with the other xHamster entities. Wisebits IP was wholly owned and controlled by Defendant xHamster IP Holding Limited in Antigua in 2016.[9] However, in the latest report from the Cyprus Department Of Registrar Of Companies, Wisebits IP is now wholly owned by Defendant Wisebits Ltd. In 2022, Wisebits Ad Net Ltd., a company once wholly owned by Wisebits, Ltd.[10], reported it was in the final process of signing an agreement to merge with "related party", Wisebits IP.[11]

Wisebits IP's 2019 Financial Statements reveal that the company was then controlled by an individual named Oleg Netepenko, who owns 90% of the company's shares, and Dmitry Gusev, who owns the remaining 10%.[12] Wisebits Ltd.'s 2020 Financial Statement reports that it owns 96% of Defendant Traffic Stars Ltd.[13] Wisebits Ltd.'s 2016 Financial Statements indicate that it,

---

[6] See Traffic Stars Ltd. Cyprus Registry; https://cyprusregistry.com/companies/HE/335138
[7] Cyprus Department Of Registrar Of Companies – Hammy Media Ltd.; *See* Exhibit G, Dkt. No. 275-7, Cf. n. 6
[8] *See Scheel v. Harris*, No. 3:11-CV-00018, 2011 WL 2559880, at *3 (W.D. Va. June 28, 2011) ("a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." quoting *Witthohn v. Fed. Ins. Co.*, 164 F.e.d App'x 395, 396 (4th Cir. 2006)); *Thomas-Fish v. Ford Motor Co.*, No. CV GLR-16-496, 2017 WL 11451346, at *2 (D. Md. Mar. 2, 2017) ("Articles or certificates of merger filed with a state's department of state are public records that a court may judicially notice without converting a motion to dismiss into a motion for summary judgment.").
[9] Wisebits IP LTD Annual Report and Financial Statements for the Year Ended 31 December 2016; §14, p.16
[10] Wisebits LTD Annual Report and Financial Statements for the Year Ended 31 December 2018; §7, p.14
[11] Wisebits Ad Net Limited Annual Report and Financial Statements for the Year Ended 31 December 2020; p. 2.
[12] Wisebits IP LTD Annual Report and Financial Statements for the Year Ended 31 December 2019; §14, p.17
[13] Wisebits LTD Annual Report and Financial Statements for the Year Ended 31 December 2020; §9, p.17

too, is owned by Netepenko.[14]  In 2014 and 2015, Defendant Traffic Stars Ltd. reported that it is also owned by Netepenko.[15]

In 2022, ownership of Wisebits Ltd. was transferred to Mindserve (Trustees) Limited as trustees of The Bigbee Trust and The Eagle Owl Trust, in the same percentages held by Netepenko and Gusev.[16]  According to the 2022 Cyprus Department of Registrar of Companies, Mindserve (Trustees) Ltd is the sole shareholder of Defendant Hammy Media Ltd.[17]

Without the benefit of discovery, it is almost impossible to trace and establish the interconnected business dealings of these companies.  That difficulty has been the subject of several media reports including Globe Echo World News, which published an investigative report on xHamster in October of 2021, entitled "Who Is Behind The Porn Platform xHamster?".[18]  That report detailed the veil of secrecy and anonymity under which the xHamster group of companies, and its ultimate owner Oleg Netepenko, operate.[19]

This is only a sample of the labyrinth facing any Plaintiff who seeks to impose liability on xHamster's empire.  The open-source website Opencorporates.com lists Wisebits IP and twelve (12) other companies as part of the xHamster Group[20], although there are likely many, many more.  These include, in addition to Wisebits IP, Defendants Hammy Media Ltd., Traffic Stars Ltd. and Wisebits Ltd.[21]  The only exception is Defendant xHamster IP Holdings, ("XIH") a British Virgin Islands company which changed its name in February of 2021 to **Online Media IP Holdings**

---

[14]  Wisebits IP LTD Annual Report and Financial Statements for the Year Ended 31 December 2016; §12, p.15

[15]  Traffic Stars LTD Annual Report and Financial Statements for the Year Ended 31 December 2014; §12.2, p.16; Traffic Stars LTD Annual Report and Financial Statements for the Year Ended 31 December 2015; §14, p.17

[16]  Cyprus Department Of Registrar Of Companies – Wisebits Ltd.; *See* Exhibit F, Dkt. No. 275-6

[17]  *See* Exhibit G, Dkt. No. 275-7

[18]  See:  https://web.archive.org/web/20211119110028/https://globeecho.com/news/europe/germany/who-is-behind-the-porn-platform-xhamster

[19]  *Id*.

[20]  https://opencorporates.com/companies/cy/HE335138

[21]  *Id*.

**Ltd**.[22]  Also in February of 2021, *on the same date*, another British Virgin Islands company, *with the same address as Online Media Holdings Ltd*. (aka XIH), called **On Media Holding Limited** from 07/17/2015 to 02/24/2021, also changed its name to **Online Media Entertainment Limited**.[23]  On Media Holding Ltd was listed as a subsidiary of Wisebits Ltd. in 2018, incorporated in the British Virgin Islands.[24]

If one then examines the legal registration for **Tecom Ltd** (one of the companies identified as part of the xHamster Group), it reveals that Tecom Ltd is not only listed at the same address as XIH and On Media Holding Limited (now Online Media Entertainment Limited), but that Tecom is listed as wholly owned by **On Media Holding Limited**.[25]  This illustrates the extent to which the Defendants have constructed an ever-changing, ever moving, interconnected shell game of corporate entities acting as roadblocks to discovery of the nature of their business dealings. Nevertheless, as demonstrated above, there is ample evidence to support the allegation that all of these roads lead to the same destination.

One method of navigating the maze is to follow the money.  Of course, the Defendants are less than forthcoming about their financial dealings.  Some indication can be gleaned without discovery through their financial statements.  Hammy Media, Inc. appears to be merely a pass-through entity.  For example, in 2015, Hammy reported $25.8M in revenue and $25.6M in "cost of sales" expense during the same period.[26]  This is typical. Globe Echo reported that Hammy Media reported only $778,443 in profits over a period of nine years.[27]  After administration expenses and finance costs, Hammy reported a *loss* of $264,959 in 2015.[28]

---

[22] See Dkt. no. 241-1, n.1
[23] BVI Financial Services Commission, Registry of Corporate Affairs Report, attached as **Exhibit A**
[24] Wisebits LTD Annual Report and Financial Statements for the Year Ended 31 December 2018; §9, p.16
[25] *See* **Exhibit B**
[26] Hammy Media Ltd Annual Report and Financial Statements for the Year Ended 31 December 2015; p.5
[27] See n. 17, *infra*.
[28] Hammy Media Ltd Annual Report and Financial Statements for the Year Ended 31 December 2015

In 2016, $48.6 million in trademarks were transferred to Wisebits IP limited and amortized.[29]  Almost all of Wisebits IP's revenue for 2016 was royalties generated by "related parties".[30]  In 2017, $15.2M payable to XHamster IP Holding Limited (owner of Wisebits IP) was netted against receivables from "related parties", indicating that the related parties are operating out of the same set of funds.

Wisebits Ltd.'s 2016 Financial Statements shows before tax profits of $3.57M and it paid a dividend of $3.56M to 'shareholders'.[31]  It states that the company's ultimate controlling party is Mr. Oleg Netepenko.[32]  In 2017, Wisebits Ltd. made a $1.483 interest free loan to Tecom Ltd., a $600K loan to Bodo Project Management Limited, paying no dividend income that year.[33]  Bodo Project Management Ltd. is a Cyprus Corporation, also under the direction of Constantinos Christoforou, that reports its principal activity as "provision of management services".[34]  In 2017, Bodo was owned by Oleg Netepenko (90%) and Dmitry Gusev (10%).[35]

In its 2017 Financial Statement, Bodo reports €8.6M in revenue from these management services.[36]  Of this amount, €6.1M was paid out as salaries and other benefits.[37]  The loan to Bodo Project Management Ltd. appears to have been transferred to another subsidiary and considered fully settled, indicating comingled assets between entities.[38]

According to the Cyprus Registrar, all of Bodo's shares have now been transferred to Mindserve (trustees) limited as trustees of The Bigbee Trust and The Eagle Owl Trust, in the same

---

[29]  Wisebits LTD Annual Report and Financial Statements for the Year Ended 31 December 2016; p.9; §9, p.14
[30]  Id. pp.6, 13.
[31]  Wisebits LTD Annual Report and Financial Statements for the Year Ended 31 December 2016; p.16
[32]  Wisebits LTD Annual Report and Financial Statements for the Year Ended 31 December 2016; §12, p.15
[33]  Wisebits LTD Annual Report and Financial Statements for the Year Ended 31 December 2018; §9, p.14
[34]  Bodo Project Management Ltd Annual Report and Financial Statements for the Year Ended 31 December 2017; p.2, 3
[35]  *Id.* §15, p.20; §18, p.21
[36]  *Id.* p.7; p.16
[37]  *Id.*
[38]  *Id.* pp. 19, 20

percentages held by Netepenko and Gusev.[39]  In 2022, ownership of Wisebits Ltd. was transferred to Mindserve (Trustees) Limited as trustees of The Bigbee Trust and The Eagle Owl Trust, in the same percentages held by Netepenko and Gusev.[40]  According to the 2022 Cyprus Department of Registrar of Companies, Mindserve (Trustees) Ltd is the sole shareholder of Defendant Hammy Media Ltd.[41]

While these facts do not, by any means, constitute anything approaching an audit trail of the revenues generated by Wisebits IP or Hammy Media Ltd., they are sufficient to raise serious questions of fact about the independence and control of these companies and how they fit into the network of constantly morphing incarnations of what appears to be a singular operation.  The interconnected dealings, commingling of assets through interest-free loans, "licensing agreements" and exchange of revenues and expenses generated by each other creates the reasonable inference (and question of fact) that these companies are simply shuttling money around before it goes to the ultimate owners – which appear to be Oleg Netepenko and Dmitry Gusev.  They are sheltered by the sheer and volume of ever-changing incorporations, registrations, loans, holding companies, licensing agreements, and transfers across the globe, dissuading any individual, court, tax authority or media interest from reaching them.

As will be discussed more fully below, there is ample evidence to present a *prima facie* case for personal jurisdiction over Wisebits IP.  Wisebits Ltd., owner of Wisebits IP, owns Traffic Stars Ltd.  ("TSL")[42].  Demographics supplied by the website wappalyzer.com reports that 76% of TSL customers come from the United States.[43]  Although personal jurisdiction need not be

---

[39] Cyprus Department Of Registrar Of Companies – Bodo Project Management Ltd., attached as **Exhibit C**
[40] Cyprus Department Of Registrar Of Companies – Wisebits Ltd.; *See* Exhibit F, Dkt. No. 275-6
[41] Cyprus Department Of Registrar Of Companies – Mindserve (Trustees) Ltd.; *See* Exhibit G, Dkt. No. 275-7
[42] Wisebits LTD Annual Report and Financial Statements for the Year Ended 31 December 2020; §9, p.17
[43] https://www.wappalyzer.com/technologies/advertising/trafficstars/

founded on specific South Carolina contacts to confer jurisdiction under Rule 4(k)(2), TSL certainly does business there as well – as discussed in Plaintiffs' Response to Traffic Stars Ltd.'s Motion to Dismiss.[44]

The Fourth Circuit has long held that a court may exercise jurisdiction over a parent corporation through its subsidiary when "the parent exerts considerable control over the activities of the subsidiary." *Mylan Labs., Inc. v. Akzo, N.V*., 2 F.3d 56, 61 (4th Cir. 1993).  In a similar vein, South Carolina recognizes the amalgamation—or single business enterprise theory—of civil liability for related corporations.  *Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. IMK Dev. Co., LLC*, 435 S.C. 109, 120, 866 S.E.2d 542, 548 (2021). This theory applies where "where multiple corporations have unified their business operations and resources to achieve a common business purpose and where adherence to the fiction of separate corporate identities would defeat justice." *Pertuis v. Front Roe Restaurants, Inc.*, 423 S.C. 640, 652–53, 817 S.E.2d 273, 279 (2018). The doctrine preserves accountability for "the kinds of abuse, specifically identified, that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like." *Id*. at 654–55. Like alter-ego responsibility, the action lies in equity. *Stoneledge,* supra at 109.

There is overlap between the single business enterprise theory and the alter-ego factors. Unlike alter ego analysis, "[t]he single business enterprise theory does not require a showing of the corporate defendants' failure to observe corporate formalities." *Walbeck v. I'On Co., LLC*, 426 S.C. 494, 528, 827 S.E.2d 348, 366 (Ct.App. 2019). Both theories of liability embrace that "an element of injustice or fundamental unfairness, to place accountability where it belongs." *Id*.

---

[44] Filed contemporaneously with this filing.

Consistent with these principles, the xHamster Defendants should be regarded as a single entity for the purpose of this Court's jurisdiction. *First*, the xHamster Defendants have structured their business operations to achieve a common business purpose: the operation of adult-content websites for profit. The Complaint sufficiently alleges that the xHamster Defendants work in concert to operate websites that violated the law and harmed these Plaintiffs.[45] For the purpose of this Court's jurisdiction, the xHamster Defendants should be treated as they are alleged to have acted as a single entity engaged in a single business purpose: the operation of adult-content websites.

The requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at his disposal at the outset. A "complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the claim. *Robertson v. Sea Pines Real Est. Companies, Inc.*, 679 F.3d 278, 291 (4th Cir. 2012). The Defendant's assertion that it operates in a vacuum, unrelated to the operation of xHamster.com is not credible based the interrelationships detailed above. To the extent, however, the Court is inclined to credit these assertions, it should allow jurisdictional discovery to provide transparency into the relationships and interactions between the xHamster Defendants.

*Second*, the common business purpose of the xHamster Defendants is resulting in inequity, wrongdoing, and injustice. *See Oskin*, 400 S.C. at 397 (with alter-ego liability the connection between entities must "result in injustice"); *Pertuis*, 422 S.C. at 652-53 (same for the single business enterprise theory). The xHamster Defendants are operated for a common purpose that permits the posting and monetization of sexually graphic images and video without the consent of the persons depicted. The xHamster Defendants made no attempt to learn if Plaintiffs consented

---

[45] Dkt. no. 193, ¶¶ 42, 44, 47, 48, 49, 52, 59, 64, 68

to the uploading of their own nude images to its websites. Indeed, the nonconsensual nature of the video was the point because sexually graphic imagery filmed without a person's consent is popular. The harm inflicted upon the Plaintiffs in this case was not a one-off mistake. It is the result of the xHamster Defendants' own business model.

Additionally, injustice and inequity are resulting from the xHamster Defendants refusal to be transparent with the Plaintiffs and with this Court about the connection between its various corporate entities. Counsel for the xHamster Defendants refused service of process, forcing resort to the Hague Service Convention, delaying this case. And they have refused to respond to any of Plaintiffs' request for discovery. At the same time, counsel for the xHamster Defendants has filed this and other motions opposing this Court's jurisdiction based on claims that the various entities are not related to each other.

xHamster should not be permitted to simultaneously argue that its various related entities are too different to justify jurisdiction, while obscuring any reasonable opportunity for transparency into the actual relationship between the entities. South Carolina has a substantial interest in protecting its citizens from unfair actions by out of state defendants who use the corporate form as a shield from liability. *Charleston Equities, Inc. v. Winslett,* No. 3:17-CV-137-JFA, 2017 WL 10504748, at *4–5 (D.S.C. Aug. 8, 2017). Plaintiffs have presented a *prima facie* case sufficient to support personal jurisdiction against Wisebits IP.

## II.    Defendant Wisebits IP has purposefully availed itself of the jurisdiction of the United States.

The Defendant Wisebits IP argues that its role is limited to registering and maintaining intellectual property for "certain software, technology, and/or computer code." Dkt. 247-1 at 9. A declaration of Christoforou also claims that Wisebits IP does not do business in the United States. Dkt. 247-2 at ¶ 6. The available public evidence tells a different story. Wisebits IP is part of the

online adult website empire that is structured to take advantage of the lucrative markets in the United States for both consumers and advertisers. As discussed above, Wisebits LTD owns both Wisebits IP and Trafficstars LTD.[46] Trafficstars sells advertising on xHamster.com and its affiliated websites. Plaintiffs have shown that the xhamster.com website prioritizes the experience of users in the United States: It is hosted by a CDN network located in the United States, which enables North American users to have some of the fastest response times in the world.[47] For its part, TSL makes that investment in technological infrastructure profitable by selling advertisements that target American users. Selling that advertising space is the purpose of its website, trafficstars.com.

In determining specific jurisdiction for a corporation, the Fourth Circuit considers: "(1) the extent to which the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). In the case of due process under Rule 4(k)(2), the focus turns from sufficient contacts with a state to that of the United States as a whole. *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 597 n.16 (E.D. Va. 2003).

Targeted advertising is compelling evidence of a party's purposeful availment of a jurisdiction. *Kurbanov*, *supra*, 963 F.3d at 353. The defendant in *Kurbanov* "made a calculated business choice not to directly charge visitors in order to lure them into his Websites." Website visitors were required "to agree to certain contractual terms, giving [the defendant] authority to

---

[46] Supra note 42.
[47] *See* Dkt. no. 258 at 16-19. In its Reply brief, Defendant Xhamster IP Holdings, LTD. did not address or rebut Plaintiffs arguments and evidence concerning the CDN network of the xhamster.com website. *See* Dkt. No. 263.

collect, among other information, their IP addresses and country of origin," which could then be used to direct advertising "towards specific jurisdictions." *Id*. Under these circumstances, the Fourth Circuit concluded that the defendant "ultimately profits from visitors by selling directed advertising space and data collected to third-party brokers, thus purposefully availing himself of the privilege of conducting business within Virginia." *Id*.

The Ninth Circuit agrees with the Fourth Circuit that targeted advertising to a specific jurisdiction is evidence of a defendant's purposeful availment. *See Will Co. v. Lee*, 47 F.4th 917, 923 (9th Cir. Aug 31, 2022) ("[The defendant's website] makes its money by selling advertising space on its website to third-party advertisers, so the more visitors there are to the site, the more hits that are made on the advertisements; and the more hits that are made on advertisements….") (internal quotation omitted); *and see Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021). ("By advertising on Instagram with the words "ATTENTION USA BABES WE NOW ACCEPT afterpay," Alya Skin targeted its promotional materials specifically towards the United States. This post was an intentional, explicit appeal to American consumers and no others.").

Here the targeting of residents of the United States (including residents of South Carolina) is even more direct. Wisebits IP sister company Trafficstars does not merely sell advertising through third parties—as did the defendant in *Kurbanov*—it sells advertising targeting the United States itself. The trafficstars.com website allows specific targeting by country, by "tier" or groups of countries, and even by specific regions within a country. Here is Trafficstar's own example of regionally targeted advertising:



48

Another article on the trafficstarts.com website details TSL's tier categories.

**Tier-1 GEOs:** the wealthiest countries and the most competitive GEOs (Northern and Western Europe, North America, Australia, etc.)

**Tier-2 GEOs:** less competitive locations and lower average income per person (Eastern and Central Europe, Central Asia ,etc.)

**Tier-3 GEOs:** developing countries and consumers with low purchasing power (South and East Asia, LatAm & Caribbean, Africa, etc.).

49

The "Tier-1 Geo"—which includes the United States—is the most expensive of the three tiers to advertise. *Id*. It is not surprising that Trafficstars places a premium on advertisements targeting the United States. That is also where xhamster.com users get the fastest response times because of the investments the xhamster Defendants have made in infrastructure in the United States.[50] A job posting on Defendant Trafficstar's website confirms that it has U.S.-based infrastructure: "Every day our advertising network registers over 6 billion events using 300 servers located in 5 data

---

[48]    TSL, *How can I create a campaign? Ad targeting best practices.* https://support.trafficstars.com/en/articles/1840593-how-can-i-create-a-campaign#h_6090faa1c3  (*See* Exhibit K, Dkt. No. 275-11)

[49] Wade Wilson, *Minimum bids: Minimum traffic cost,* https://support.trafficstars.com/en/articles/6235505-minimum-bids (*See* Exhibit L, Dkt. No. 275-12)

[50] *See* Dkt. No. 258 at 18-19 (detailing response times from the xhamster.com web domain for North American users).

centres in Europe and the United States."[51] As the Ninth Circuit recently noted: "Given how important loading speed is to achieving and maintaining an audience, **Defendants' choice is good evidence that they were motivated to appeal to viewers in the United States more than any other geographical location**." *Will Co. Ltd. v. Lee,* 47 F.4th 917, 925 (9th Cir. Aug. 31, 2022) (emphasis added).

In addition to targeted advertising, Trafficstars has taken numerous other steps targeting business in the United States. Since March of 2017, Trafficstars has maintained a DMCA Designated Agent for the trafficstars.com website, as well as six other domain-name variants.[52] *See Kurbanov*, 963 F.3d at 354 (noting the Defendant "registered a Digital Millennium Copyright Act agent with the U.S. Copyright Office, thereby qualifying the Websites for certain safe harbor defenses to copyright infringement claims."). Trafficstars uses a U.S. Based domain name register—Namecheap, Inc.[53] And crucially, both the video content of xhamster.com and the ads exclusively sold on xhamster.com by TSL are delivered to the U.S. using U.S. CDN services utilizing U.S.-based servers. *See* Decl. of D. Pinter; Exhibit N, Dkt. No. 275-14. *See Kurbanov*, 963 at 354 (noting that Defendants' website was hosted on U.S.-based servers).[54]

---

[51] TSL, trafficstars.com, *DevOps – TrafficStars*, https://trafficstars.com/vacancie/7 (accessed 02/17/23); *See* Exhibit M, Dkt. No. 275-13

[52] *See* U.S. Copyright Office, *DMCA Designated Agent Directory: Trafficstars LTD*, (accessed 02/09/23) https://dmca.copyright.gov/osp/publish/history.html?search=trafficstars&id=7329b9a21e2ee1abd176b99d1f823fd6.

[53] https://lookup.icann.org/en/lookup, trafficstars.com; *and see* Namecheap, Inc., *Where is your company located?*, https://www.namecheap.com/support/knowledgebase/article.aspx/490/5/where-is-your-company-located/ (accessed 02/09/23) ("Namecheap, Inc. is a US-based company.").

[54] In the context of a Motion to Dismiss, the Court may take judicial notice of a party's own website. *See, e.g., WinRed, Inc v. Ellison*, 581 F. Supp. 3d 1152, 1167 n. 9 (D. Minn. 2022) ("A cursory look at [party's website] confirms that this website is used to fundraise for non-federal elections…."), *aff'd sub nom. WinRed, Inc. v. Ellison*, No. 22-1238, 2023 WL 1790699 (8th Cir. Feb. 7, 2023); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) ("the case law applying Federal Rule of Evidence 201 states that, for purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination, judicial notice should be taken.") (internal quotes omitted); *W. Marine, Inc. v. Watercraft Superstore, Inc.*, No. C11-04459 HRL, 2012 WL 479677, at *10 (N.D. Cal. Feb. 14, 2012) ("Courts have taken notice of defendants' websites or characteristics thereof when determining personal jurisdiction.") (compiling cases); *and O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218,

Wisebits IP and Trafficstar are owned by Wisebits LTD. Trafficstar's own website directs advertising and marketing materials to U.S. audiences. The Defendant Wisebits IP says it only owns and manages an intellectual property portfolio. But at this stage, before there has been any discovery, it is too soon to conclude that Wisebits IP has no relationship with xhamster.com, its related websites, and with trafficstars.com—all of which target the United States.

Plaintiffs have met their burden of carrying their *prima facie* case for as to the first prong. Beyond the active nature of online presence, the alleged facts and available evidence demonstrate that Wisebits IP through its association with Trafficstars and the rest of the xHamster Defendants website has "purposely availed" itself of the privilege of conducting activities in the United States. *See*, *ALS Scan, Inc.*, 294 F.3d at 712.

### B. PLAINTIFFS' CLAIMS AGAINST THE DEFENDANT TRAFFICSTARS LTD. ARISE OUT OF THE ACTIVITIES IT HAS DIRECTED TOWARD THE UNITED STATES IN CONJUNCTION WITH THE OTHER xHAMSTER DEFENDANTS.

The second prong of the analysis— "whether the plaintiffs' claims arise out of those activities directed at the State"—also supports personal jurisdiction over Defendant Wisebits IP. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). "The analysis here is generally not complicated" the Fourth Circuit has explained. "Where activity in the forum state is the genesis of the dispute, this prong is easily satisfied." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020) (citations omitted).

A claim arises out of a defendant's activities when "substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." *Id.* (internal quotation omitted). In *Kurbanov*, the defendant "made two globally

---

1225 (10th Cir. 2007) (taking judicial notice of party's own website found appropriate where party failed to demonstrate that the information on its website was unreliable.).

accessible websites" which were visited by visitors from Virginia and used for music piracy. Additionally, the defendant "knew the Websites were serving Virginian visitors and yet took no actions to limit or block access, all while profiting from the data harvested from the same visitors." *Id*. Under these circumstances, the defendant's contacts with Virginia were a "substantial and formed a central part of the [plaintiffs'] claims. *Id*. (citing *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 306 (4th Cir. 2012).

Here the Plaintiffs were victims of tortious, non-consensual filming in the United States. FAC at ¶¶ 71-80. Wisebits IP conducts business throughout the United States. FAC ¶ 34. The abuse videos were uploaded to the xHamster Defendants' website and monetized through the display of ads. *Id.* at ¶¶ 40, 81, and 89.

The Declaration of Mr. Christoforou claims that Wisebits IP "does not conduct business in the United States." Dkt. no. 247-2 at ¶ 6. Trafficstars own website confirms, however, that the United States is one of the most valuable advertising target areas for the ads it sells on the xHamster.com website. Moreover, to this day Trafficstars conducts advertising targeting American audiences combined with xhamster.com videos in the spycam/voyeurism "genre"—the very type tortious and invasive conduct that harmed Plaintiffs in this case. In the example below, Trafficstars provides ads on the xhamster.com website geo-targeted to United States alongside a "spycam" video.





*See* Decl. of D. Pinter at Exhibit N, Dkt. No. 275-14 at Decl. exs. 7-8 (accessing from an IP address

in Washington D.C.). Just as with video in the image above, the nonconsensual, abuse videos

depicting Plaintiffs on xhamster.com, were also combined with advertising geo targeted to American users. FAC at ¶¶ 40, 45, 52, 89, and 106.

The xHamster Defendants' role is like that of the defendant in *Kurbanov* who "enabled location-based advertising in order to pique visitors' interest" and "directly profited from a substantial audience of Virginia visitors…" *Kurbanov*, 963 F.3d at 355. Under these circumstances, Wisebits IP's facilitation of the sale of advertising targeting the United States clearly forms the basis of Plaintiffs' claims.

### C. THE EXERCISE OF JURISDICTION IS CONSTITUTIONALLY REASONABLE AND, AT A MINIMUM, JURISDICTIONAL DISCOVERY IS APPROPRIATE TO RESOLVE THE FACT-BASED CONTENTIONS OF THE PARTIES CONCERNING JURISDICTION.

The third prong, constitutional reasonableness, is also met as to Defendant Wisebits IP. *See generally, Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009). Under this prong, the court considers whether the exercise of jurisdiction "would comport with fair play and substantial justice." *Givens v. Erie Ins. Co.*, 2022 WL 2759167 at *7 (D. S.C. Jul. 14, 2022). "When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Sunny Days Ent., LLC v. Traxxas, L.P.*, 376 F. Supp. 3d 654, 663 (D.S.C. 2019) (quoting *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885 (Fed. Cir. 2008)). TSL's self-serving arguments to avoid jurisdiction in this case accomplish neither "fair play" nor "substantial justice."

First, both the United States and South Carolina have distinct interests in furthering their social policies—their laws protecting victims of sexual exploitation and invasions of privacy. The causes of action raised by Plaintiffs in this litigation reflect clear policy choices by Congress and

by South Carolina to give victims of the conduct alleged in this case an opportunity to seek restitution for the harm they have suffered as well provide general deterrence to such conduct.

Second, Defendant Wisebits IP assertions that it would be burdened by the exercise of jurisdiction because it "does no work in the United Sates" and "has no connections to the United States" utterly lack credibility. Dkt. No. 247-1 at 9. It is part of the overall business that operates the xhamster.com website and the trafficstars.com website—both of which do considerable business in the United States.

If Wisebit IP's assertion that it does not do business in the United States is to be accorded any weight, Plaintiffs respectfully submit that it is appropriate for the parties to conduct jurisdictional discovery. Jurisdictional discovery is necessary where, "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Connor v. Lifewatch, Inc.*, CIV.A. 2:13-03507, 2014 WL 4198883, at *6 (D.S.C. Aug. 20, 2014).

Although Plaintiffs have made a "prima facia showing of a sufficient jurisdictional basis to survive the jurisdictional challenge," *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F. 2d 673, 676 (4th Cir. 1989), the Defendant TSL claims it does not conduct business in the United States.  Dkt. No. 246-2. Yet both the xHamster.com and Trafficstars.com websites regularly show regular targeting of the United States for business, whether in the form of advertising, the sale of advertising, or pornographic material behind paywalls. (*See* Decl. of D. Pinter; Exhibit N, Dkt. No. 275-14)

Under these circumstances, the Plaintiffs should be able to conduct jurisdictional discovery to determine if Defendants' business operations really do have nothing to do with the United States. Furthermore, there are certain facts about the innerworkings of the Hammy group "that are simply

not known to Plaintiffs," and could not be known without discovery, "[t]hus, jurisdictional discovery is appropriate," if these facts are necessary. *Afa Polytek (N. Am.) Inc. v. Clorox Co*., 2:13-CV-01633-RMG, 2014 WL 12608562, at *6 (D.S.C. Jan. 17, 2014).

Moreover, Plaintiffs have alleged that the xHamster Defendants—including Wisebits IP—are intentionally obfuscating their corporate structure and ownership. Indeed, the xHamster Defendants' strongest assertions against this Court's jurisdiction all depend upon the nature of their relationship to each other and connections to the United States remaining shrouded in mystery. Further, Plaintiffs have alleged that Hammy operates as a group of subsidiaries, including all named defendants, with xHamster IP Holdings as a controlling entity in this group. Plaintiffs have requested discovery on three different occasions and requested a F.R.C.P. 30(b)6 deposition with the clear purpose of obtaining more information about Hammy's operations, subsidiaries, affiliates, and issues of operation and control – all relevant to the jurisdiction analysis – and were rebuffed.

As the xHamster Defendants are privately held companies, Plaintiffs have exhausted all possible efforts to conduct its own investigation and present evidence regarding jurisdiction as it relates to each defendant short of jurisdictional discovery. It is clear that jurisdictional discovery would answer questions regarding these issues. Therefore, jurisdictional discovery is the appropriate remedy if the current pleadings fall short.

### D. PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CLAIMS AGAINST THE xHAMSTER DEFENDANTS TO PUT THEM ON NOTICE OF THE CLAIMS RELATING TO THEIR COLLECTIVE CONDUCT.

Defendant Wisebit IP argues that the FAC relies on shotgun allegations, which do not enable them to discern which claims are made against which defendants. WIP MTD, Dkt. 247-1

at 14. This assertion should be rejected for two key reasons: (1) Plaintiffs allege that the xHamster

Defendants are functionally the same entity; and (2) are accusing them of doing the same thing.

"The burden rests on plaintiffs to enable a particular defendant to determine with what it is

charged." *Juntti v. Prudential-Bache Sec., Inc.*, 993 F.2d 228 (4th Cir. 1993) (quotation omitted).

In this case, Plaintiffs argue their collective pleading put the xHamster Defendants properly on

notice because they are alter egos of each other.  Each xHamster Defendant is on notice of the

claims that apply to it because each is alleged to be equally culpable and liable for collectively

engaging in the same tortious conduct. *See Burn v. Lend Lease (US) Pub. Partnerships LLC, No.*

*7:20-CV-174-D*, 2021 WL 4164685, at *6 (E.D.N.C. Sept. 13, 2021) (complaint alleging "each

such entity may fairly be deemed the alter ego of each other entity" and also making "collective

allegations against 'Defendants' without, in many instances, further identifying the individual

defendants." provided fair notice to Defendants of the claims against them.); *and Page v. Corvias*

*Grp., LLC*, No. 5:20-CV-336-D, 2021 WL 4163562, at *6 (E.D.N.C. Sept. 13, 2021) (Complaint

alleging defendants were "joint tortfeasors, agents of the other, joint venturers, and/or engaged in

[a] joint enterprise" and making "collective allegations against "Defendants" …without, in many

instances, identifying the individual defendants" held to "provide defendants with fair notice of

the claims against them."). Under these circumstances, the requirements of Rule 8 are met.

As the Eleventh Circuit has noted: "The fact that defendants are accused collectively does

not render the complaint deficient. The complaint can be fairly read to aver that all defendants are

responsible for the alleged conduct." *Weiland*, 792 F.3d at 1323 n.14 (quoting *Kyle K. v. Chapman*,

208 F.3d 940, 944 (11th Cir.2000)). The *Weiland* court reversed the district court's dismissal,

writing:

> [T]his is not a situation where a failure to more precisely parcel out and identify the
> facts relevant to each claim materially increased the burden of understanding the

> factual allegations underlying each count. This may explain why the defendants did
> not move for a more definite statement under Federal Rule of Civil Procedure 12(e)
> or otherwise assert that they were having difficulty knowing what they were alleged
> to have done and why they were liable for doing it.

792 F.3d at 1324.

So too here: as to all the xHamster Defendants, the Plaintiffs here are "aver[ring] that all defendants are responsible for the alleged conduct," the xHamster Defendants did not file a motion for a more definite statement under Fed.R.Civ.P. 12(e), and do not claim in their motion to dismiss that a particular aspect of the collective pleading is confusing to them. Plaintiffs do not bring all their claims against all the defendants; their Fifth Amended Complaint distinguishes between the claims against the xHamster Defendants, the MindGeek defendants, Defendant Murphy, and the College defendants. Dkt. no.193 at ¶¶ 95-197.

Ultimately, Plaintiffs allege that the xHamster Defendants all harmed them in precisely the same way—by facilitating and profiting from their abuse, because they are effectively the same corporation. Dkt. no.at ¶ 40. This is not impermissible shotgun pleading. Accordingly, Plaintiffs' collective allegations against Wisebits IP and the rest of the xHamster Defendants should not be dismissed for failure to state a claim.

## I.  SECTION 230 OF THE COMMUNICATIONS DECENCY ACT DOES NOT BAR PLAINTIFFS' CLAIMS

"Section 230(c)(1) of the Communications Decency Act … is not a license to do whatever one wants online. Protection under § 230(c)(1) extends only to bar certain claims imposing liability for specific information that another party provided." *Henderson v. Source for Pub. Data, L.P.,* 53 F.4th 110, 117 (4th Cir. 2022). Defendants lean heavily on the 1997 Fourth Circuit opinion *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) for the proposition that Section 230 immunity should be construed broadly and preclude liability for their own actions merely because they are

an interactive computer service (ICS), and third-party content is involved. *See* Dkt. no.231 at 14-15.

However, the Fourth Circuit has clarified its precedent and held that websites are responsible for their own bad behavior even if disseminating third party content is a piece of the puzzle. *Henderson*, 53 F. 4th at 120. "§230(c)(1) does not provide blanket protection from claims . . . just because they depend in some way on publishing information." *Id.* at 123. *See also Erie Ins. Co. v. Amazon.com, Inc.,* 925 F.3d 135, 140 (4th Cir. 2019).

Wisebits IP is an essential part of the Hammy Media LTD enterprise, an alter ego, therefore Section 230 does not bar any of Plaintiffs' claims against Traffic Stars LTD[55], or any of the Hammy Media Defendants, because Hammy Media LTD 1) has materially contributed to the illegal content on the xHamster website disqualifying it from Section 230 immunity, 2) it has engaged in profit sharing activities with sex traffickers which falls outside the scope of Section 230 protection, and 3) it has financially benefitted from what it knew or should have known was a sex trafficking venture which falls under the FOSTA-SESTA amendment to Section 230 precluding immunity.

**A. SECTION 230 IMMUNITY DOES NOT APPLY TO ANY OF THE PLAINTIFFS' CLAIMS BECAUSE DEFENDANTS DEVELOP AND MATERIALLY CONTRIBUTE TO THE ILLEGAL CONTENT ON THEIR WEBSITES.**

Section 230 immunity does not apply to information content providers, defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). "A defendant is an information content provider if they 'contribute[d] materially to the

---

[55] Defendant Wisebits IP has only raised Section 230 immunity as a defense if this Court finds Plaintiffs have sufficiently pled an alter-ego theory; and argue only that Section 230 should apply to Hammy Media LTD and incorporate only Hammy Media LTD's 230 arguments made in its Renewed Motion for Judgement on the Pleadings, Dkt. no.Dkt. no. 231, in its motion. Dkt. no.247-1 at 10-11.

alleged illegality of the conduct.'" *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 127 (4th Cir. 2022) (citing *Roommates.com*, 521 F.3d at 1162).

"A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider.'" *Roommates.com*, 521 F.3d at 1162. "[W]here a company materially contributes to a message's unlawful content, that company stops being a mere "intermediary" for another party's message. Instead, the company is adding new content to the message that harms the plaintiff." *Henderson*, 53 F.4th at 128. And when a website is designed for an illicit purpose, it is responsible for the development of illegal content distributed on the site. *See Doe #1 v. MG Freesites, LTD*, 7:21-CV-00220-LSC, 2022 WL 407147, at *16 (N.D. Ala. Feb. 9, 2022) ("In this way, Defendants do even more than merely encourage the posting of CSAM by providing a means for users to publish what they created but rather materially contribute to it by designing their platforms for an illicit purpose.").

In *Henderson,* the Court found that the way the Defendant Public Data had displayed the information supplied by third parties "contributed in a material way to what made the content at issue . . . inaccurate and thus improper." 53 F.4th at 128. Because it left out some information and then added its own summaries of the information, the result was ultimately misleading. *Id.* In *MG Freesites LTD*, the Court found that because the MindGeek websites were designed for an illicit purpose, encouraged illegal material, edited it, then added to it by its own creation of tags, keywords, categories, and thumbnails it had developed the illegal content at issue. 2022 WL 407147, at *16. Like both these cases, Hammy Media delivered the content depicting Plaintiffs, on the xHamster website, in a way that was misleading. It designed its website for the illicit

purpose of distributing and selling illegal and otherwise non-consensual pornographic content and materially contributed to the content through its own additions and omissions. Therefore, all the xHamster Defendants are information content providers as to the content at issue in this case and cannot claim Section 230 immunity for the harms it caused to Plaintiffs.

Plaintiffs have alleged that the xHamster Defendants intentionally designed their websites to encourage illegal material. Defendants have refused to moderate content – instead dumping this responsibility on a group of unpaid volunteers – despite knowing that users were uploading non-consensual and otherwise illegal content. Dkt. no.193 at ¶¶ 41, 42, 44, 45, 47, 59, 63, 64, 68, 69, 90, 92. Furthermore, Defendants operate the xHamster websites in bad faith by encouraging, soliciting, creating, developing, and distributing criminal content including secretly recorded, non-consensual sex trafficking content depicting Plaintiffs. Dkt. no.193 at ¶ ¶ 42, 44, 45, 47, 48, 49, 52, 53, 59, 63, 64, 68, 69, 81, 82, 85, 86, 89, 90, 90-92. Like the Defendant website in *MG Freesites*, this disqualifies them from protection under Section 230. *See also Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 842 (C.D. Cal. 2021), *adhered to on denial of reconsideration*, 574 F. Supp. 3d 760 (C.D. Cal. 2021) ("The suggestion that Defendants merely provide a neutral platform for third parties to post whatever they like simply cannot be squared with allegations that aspects of Defendants' platforms facilitate both the dissemination of child pornography (which is unlawful in and of itself, *see* 18 U.S.C. § 2252A) *and* the development of child pornography.").

Defendants' incorrectly claim that 230 immunity cannot be "stripped . . . by virtue of having (allegedly) structured its website in such a way that users could more easily find nonconsensual content." Dkt. no. 231-1 at 20. And cite the now disfavored[56], and infamous, *Doe*

---

[56] *See* Brief for the United States, at 18-19, *Gonzalez, et al., v. Google LLC*, (No.21-1333), https://www.supremecourt.gov/DocketPDF/21/21-1333/249441/20221207203557042_21-1333tsacUnitedStates.pdf ("[T]he *Backpage.com* decision was erroneous. The plaintiffs did not seek to treat Backpage.com as the publisher or speaker of the ads through which others carried out sex trafficking. Rather, they sought to hold the operator liable

*v. Backpage.com, LLC,* 817 F.3d 12, 29 (1st Cir. 2016). So outraged were the public and Congress

by this First Circuit decision that it was a significant motivation behind the FOSTA amendment[57]

to Section 230. Not only should the Court construe all of Section 230 differently in light of the

FOSTA amendment[58], but the Fourth Circuit has recently made clear that when a website

contributes to illegal content it cannot benefit from Section 230 immunity for that content.

*Henderson v. Source for Pub. Data, L.P.,* 53 F.4th 110, 128 (4th Cir. 2022).

Plaintiffs have alleged that the xHamster Defendants materially contribute to the illegal

content on their site by creating categories and tags attached to each video to make them easier to

find and increase views and profits, including tags identifying the illegal nature of the videos. Dkt.

no.193 at ¶¶ 38, 39, 48, 52, 55, 63, 189. Through these keywords and tags Defendants encouraged

the creation and upload of surreptitiously recorded content, including that of Plaintiffs. Dkt. no.193

at ¶¶ 48, 90-91, 119, 125, 189. And Defendants modify, edit, and enhance these videos they know

depict non-consensual content, including those depicting Plaintiffs', to drive traffic to them. Dkt.

no.193 at ¶¶ 52, 53, 59, 63, 64, 69, 90-91. Defendants advertised the Plaintiffs' secretly recorded

nude bodies for the sexual gratification of others for profit. Dkt. no.193 at ¶¶ 116-119, 188-193,

195-196. Furthermore, the addition of these keywords and tags, provided by Defendants, fetishized

---

for its own policies and platform-design choices that facilitated sex trafficking. Where a website operator's conduct in furthering unlawful activities goes well beyond failing to block or remove objectionable third-party content from its platform, holding the operator liable does not "treat" it "as the publisher or speaker of " the third-party posts.").
[57] *See* H.R. Rep. No. 115-572 at 4-5 (2018); and S. Rep. No. 115-199 at 2, n. 6 (2018) (both referencing *Backpage.com*, 817 F. 3d at 19-22).
[58] FOSTA-SESTA consists of a package of bills signed into law in April 2018 to clarify that the Communications Decency Act ("CDA"), 47 U.S.C. § 230 "does not prohibit the enforcement against providers and users of interactive computer services of Federal and State criminal and civil law relating to sexual exploitation of children or sex trafficking" because it "was *never* intended by Congress to provide legal protection to websites that unlawfully promote and facilitate prostitution and contribute to sex trafficking[.]" H.R. Rep. No. 115-572 (2018) (emphasis added). *See also Malwarebytes, Inc. v. Enigma Software Group USA, LLC,* 141 S. Ct. 13 (2020). (Thomas, J., concurring) (Justice Thomas recently articulated that the originally intended scope of Section 230 is "a far cry from what has prevailed in court," and implored courts to stop "reading extra immunity into statutes where it does not belong."); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, § 40 at 256 (2012) ("If the legislation amends . . . a provision . . .a significant change in language is presumed to entail a change of meaning.").

the Plaintiffs' invasion of privacy. Defendants have catered to this "spy cam", "hidden cam," genre

on their websites, Dkt. no.193 at ¶¶ 42, 47-48, 58-59, 63-64; and created these categories and tags

so that people can take sexual pleasure in the humiliation of women, like the Plaintiffs. Dkt. no.193

at ¶¶ 48, 52, 63-64. And so, Defendants can profit from this abuse. Dkt. no.193 at ¶¶ 42, 45, 47-

48, 52. This content creation activity by the Defendants provided the "content and context" which

made the videos depicting the Plaintiffs fraudulent, commercialized, sexualized, and contributed

to their unlawfulness. Dkt. no.193 at ¶¶ 39, 42, 44, 48, 52, 59, 63, 124, 188-193, 195, 196; *see J.S.*

*v. Village Voice Media Holdings, L.L.C.*, 184 Wash. 2d 95 (2015) (finding Section 230 did not

shield Backpage.com from liability because "Backpage has a 'substantial role in creating the

content and context of the advertisements on its website.").

Furthermore, Defendants create a customized thumbnail of every video on their website to

advertise the videos, including the videos depicting Plaintiffs, which amounts to new creation,

directly by Defendants, of the Plaintiffs' abuse content. Dkt. no.193 at ¶ 91. *See Doe #1 v. MG*

*Freesites, LTD*, 7:21-CV-00220-LSC, 2022 WL 407147, at *16-17 (N.D. Ala. Feb. 9, 2022)

(Where the court found that the pornography website's creation of categories, tags, and thumbnails

amounted to content creation barring them from Section 230 protections.) Like the website in

*Henderson*, whose "summaries and omissions materially contribute[d] to the [content's]

impropriety," xHamster's formatting, editing, thumbnails, keywords, and tags contributed to the

abuse videos' impropriety and harmfulness in this case. 53 F.4th at 128-29. These activities

developed an invasion of privacy into a pornography film. "The[se] are not merely an exercise of

traditional editorial functions." *Id.*

> **B.  SECTION 230 DOES NOT APPLY TO PLAINTIFFS' CLAIMS BECAUSE THEY ARE PREDICATED ON SHARING AD REVENUE WITH SEX TRAFFICKERS.**

In *Gonzalez v. Google*, the Ninth Circuit held that Section 230 "does not immunize Google

from the claims premised on revenue-sharing." 2 F. 4th 871 (9th Cir. 2021) *cert. granted*, 143 S.

Ct. 80 (2022); *see also Lemmon v. Snap*, 995 F. 3d 1085 (9th Cir. 2021) (finding that a negligent

design claim did not implicate publishing functions and was therefore outside Section 230

immunity protections). Google had approved a terrorist group for its advertising revenue sharing

program, and the court held that Section 230 did not bar the claims related to this profit-sharing

arrangement with terrorists because they were not premised on publisher liability. Id. at 898-99.

Similarly, here, Plaintiffs' claims based on revenue sharing are outside of Section 230

protection because they have nothing to do with "publishing" or "speaking" information provided

by an "information content provider." *Id.* at 897-98. In this case, Plaintiffs allege that the xHamster

Defendants share ad revenue with uploaders of pornographic material to their websites. Dkt.

no.193 at ¶ 41. Furthermore, Plaintiffs allege that the xHamster Defendants conspired with and

shared ad revenue with those who uploaded the content of Plaintiffs. Dkt. no.193 at ¶¶ 82, 88-89.

Therefore, claims based on this activity, which touches on virtually all of Plaintiffs' claims against

these Defendants, Dkt. no.193 at ¶¶ 106, 125, 185, are not barred by Section 230.

### C. PLAINTIFF'S TVPRA CLAIMS ARE SUFFICIENTLY PLED THEREFORE, SECTION 230 IMMUNITY DOES NOT APPLY TO THEM.

The Trafficking Victims Protection Reauthorization Act ("TVPRA") was the first

comprehensive law in the United States to penalize the full range of human trafficking offenses,

including sex trafficking of children under the age of 18 or sex trafficking by force, fraud, or

coercion.  In doing so, it created a civil cause of action, codified at 18 U.S.C. § 1595. That provision

of the TVPRA permits a party to bring a civil claim against perpetrators of sex trafficking and

against persons or entities who, although not the direct perpetrator, knowingly benefitted from

participating in what they knew or should have known was a sex trafficking venture. See 18 U.S.C.

§ 1595(a).  *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 964 (S.D. Ohio

2019) ("The plain text of § 1595(a) requires is that the plaintiff be "a victim of this chapter." § 1595(a). The text evidences Congress's intent to broaden the behavior that can form the basis of civil liability to participation in ventures where the defendant 'knew or should have known' that the venture was involved in sex trafficking.").

The Allow States to Fight Online Sex Trafficking Act ("FOSTA"), enacted by Congress in 2018. See Pub. L. 115-164, § 2, Apr. 11, 2018, 132 Stat. 1253; 47 U.S.C. § 230(e)(5)(A), added a specific exception to Section 230 of the CDA.  It clarifies that certain provisions of the TVPRA, discussed above, are outside any immunity from Section 230's. Specifically, FOSTA provides that Section 230 has "no effect on sex trafficking law" and that "[n]othing in this section ... shall be construed to impair or limit ... any claim in a civil action under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. § 230(e)(5)(A).

When it enacted FOSTA, Congress explained that Section 230 "was never intended to provide legal protection to . . . websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims." FOSTA, *supra*, at § 2.[59]  The FOSTA clarification references both sections 1591 and 1595 of the TVPRA, abrogating Section 230 immunity for civil section 1595 claims, as long as "the conduct underlying the claim constitutes a violation of section 1591." *See*, *Doe #1 v. MG Freesites, LTD*, No. 7:21-CV-00220-LSC, 2022 WL 407147, at *10 (N.D. Ala. 2022).  The result is that Section 230 immunity is no longer a bar to civil actions for violations of the federal sex trafficking laws. However, there is disagreement among the Courts on the precise interpretation of FOSTA and the knowledge standard it requires.

### 1.  FOSTA and the Pleading Standard

---

[59] The full-text of FOSTA is available at: https://www.congress.gov/115/plaws/publ164/PLAW-115publ164.pdf.

Section 230 explicitly eliminates immunity for civil claims "brought under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591[.]" 47 U.S.C. § 230(e)(5)(A). Defendants assert that this only applies to civil cases against defendants who violate 1591, but the text states that the "conduct underlying the claim," not the "defendant's conduct," must violate § 1591, 47 U.S.C. § 230(e)(5)(A). Congress used this language to target sex trafficking claims, as opposed to labor trafficking claims which are also covered by § 1595, and to provide a clear and uniform definition for sex trafficking so that websites do not have to comply with each variant State law sex trafficking definition[60]. 18 U.S.C. § 1595.

Defendants rely on the *Does 1-6 v. Reddit, Inc.,* 51 F.4th 1137 (9th Cir. 2022) (*cert pending*) decision which held that FOSTA raised the knowledge standard for beneficiary liability from the "should have known" standard under §1595, to the criminal knowledge standard under §1591. *Id.* at 1143. Specifically, that the language "conduct underlying the claim," means a Plaintiff must plead facts sufficient to establish that the website Defendant could be criminally liable under §1591, requiring actual knowledge. *Id.* Plaintiffs contend the *Reddit* Court's interpretation is wrong. For example, the *Reddit* Court demanded knowledge beyond even the requirements of §1591 under the plain text which says, "benefits . . . from participation in a venture . . knowing, *or in reckless disregard of the fact* that means of force, fraud, coercion will be used . . . or the person has not attained the age of 18 years" §1591(a)(2) (*emphasis added*). The *Reddit* Court acknowledged that the website in that case "turned a blind eye" to illegal content on its

---

[60] This notion that websites would need to content with varying standards was a point of particular concern raised by the tech industry while SESTA and FOSTA were being contemplated and this was Congress's attempt to assuage the industry. *See* Online Sex Trafficking and the Communications Decency Act: Written Test. of Chris Cox Before the Subcomm. on Crime, Terrorism, and Homeland Sec. of the H. Comm. on the Judiciary, 115th Cong., 1 Sess., p. 10 (Oct. 3, 2017) http://web.archive.org/web/20210506134118/https://netchoice.org/wpcontent/uploads/2017-10-03-Testimony-of-Chris-Cox-on-behalf-of-NetChoicebefore-House-Judiciary-Subcommittee-on Crime.pdf ("If every State were free to adopt its own policy governing when an internet platform will be liable for criminal or tortious conduct—that is to say, for the criminal and tortious conduct of another—not only would compliance become oppressive, but the Federal policy itself would quickly become undone.").

website yet found this was not enough, ignoring the reckless disregard standard. 51 F.4th at 1145.

Additionally, the *Reddit* interpretation requires a heightened pleading standard to bring a case

against a website Defendant as opposed to a brick-and-mortar Defendant[61]. This inequity

completely thwarts the clear purpose of the FOSTA statute: to make it easier for sex trafficking

victims to bring claims against websites[62].

Furthermore, the *Reddit* decision departs from the almost universal approach trial courts

have taken in interpreting 1595 claims, particularly by requiring "actual knowledge and a causal

relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a

benefit" to meet the "knowingly benefit" element of §1591. *See e.g. A.D. v. Wyndham Hotels &*

*Resorts, Inc.,* 4:19CV120, 2020 WL 9550005, at *1 (E.D. Va. Sept. 21, 2020) ("A.D. had alleged

a knowing benefit on the part of Defendant by stating that [defendant] receives a percentage of the

gross room revenue generated by [its hotels], including a percentage of the revenue generated from

---

[61] The majority of Courts have found that for a Plaintiff to establish beneficiary liability under §1595 they need only plead facts sufficient to demonstrate that the Defendant knowingly benefitted from what they "should have known" was a sex trafficking venture. *See e.g, S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1255-1256 (M.D. Fla. 2020); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020); *A.B.*, 455 F. Supp. 3d at 191; *H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *Doe S.W. v. Lorain-Elyria Motel, Inc.,* 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020); *A.C. v. Red Roof Inns, Inc*., 2020 WL 3256261, at *4 (S.D. Ohio Jun. 16, 2020); *A.B. v. Hilton Worldwide Holdings Inc*., 484 F.Supp.3d 921, at 935 (D. Or. Sept. 8, 2020*); M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). *But see Doe 1 v. Red Roof Inns, Inc*., 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) (requiring "some participation in the sex trafficking act" for Section 1595 liability) (internal citation omitted); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (same).

[62] *See The Latest Developments in Combatting Online Sex Trafficking Before the Subcomm. on Comm. and Tech. of the H. Comm. on Enr'g and Comm.*, 115th Cong., Ser. No. 115-84 (2017) 17-19 (statement of Hon. Ann Wagner), https://www.govinfo.gov/content/pkg/CHRG-115hhrg28792/html/CHRG-115hhrg28792.htm (last visited 02/18/2023) ("Why are these websites able to sell our children? Because judges have ruled that section 230 prevents websites that exploit the most vulnerable members of our society from being held accountable. Congress' response to these rulings must be patently clear. Section 230 of the Communications Decency Act was never intended to allow businesses to commit crimes online that they could never commit offline.") *See also* 164 Cong. Rec. S1849, Consideration of H.R. 1865, S1851 (Mar. 21, 2018) https://www.govinfo.gov/content/pkg/CREC-2018-03-21/pdf/CREC-2018-03-21- senate.pdf (statement of Sen. Blumenthal) ("The purpose of our measure, very simply, is to give survivors their day in court."); 164 Cong. Rec. S1849, supra, at S1859 (statement of Sen. Fischer) ("SESTA is critical to empowering survivors, providing the legal tools needed to seek and receive justice from all those involved in these monstrous crimes.").

the rate charged for the rooms in which Plaintiff was sex trafficked.'")).).

The *Reddit* Court's non-binding interpretation is far from settled law. The Plaintiffs in *Reddit* have petitioned the Supreme Court for certiorari review. *See Jane Does 1-6, et al. v. Reddit, Inc.*, No. 22-695 (Jan. 25, 2023), https://www.supremecourt.gov/DocketPDF/22/22-695/252975/20230123160043058_22-_PetitionForAWritOfCertiorari.pdf. Moreover, even within the Ninth Circuit there are two more FOSTA cases on appeal, on this very issue, and set for oral argument in April of this year. *See* U.S. Ct. App., *Ninth Circuit Oral Argument Notice for 04/20/23*, https://www.ca9.uscourts.gov/calendar/panel_sittings/763392.html. Additionally, there is a FOSTA case currently before the 11th circuit on this same issue. *See M.H., et al. v. Omegle.com LLC*, 22-10338 (*appeal pending*) (11th Cir. 2022).

Because the Courts of Appeals are just now grappling with how to interpret FOSTA, and the Fourth Circuit has not yet interpreted the statute, this Court must conduct its own interpretation. *Mast, Foos & Co. v. Stover Mfg. Co.,* 177 U.S. 485, 488–89 (1900); *Rosmer v. Pfizer Inc.*, 263 F.3d 110, 118 (4th Cir. 2001) ("we cannot allow the fact that other circuits have called a statute ambiguous to negate this circuit's duty to interpret the text of the enactment."); *M&M Poultry, Inc. v. Pilgrim's Pride Corp.*, No. 2:15-CV-32, 2015 WL 13841400, at *6 (N.D.W. Va. Oct. 26, 2015) (quotation omitted, citing *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (relying on the plain text to reverse scores of contrary circuit decisions).

Accordingly, Plaintiffs urge this Court to find that FOSTA allows for victims of sex trafficking to bring a beneficiary claim against a website defendant unhampered by Section 230, so long as they establish 1) they are a victim of sex trafficking according to the definition under §1591, and 2) that the website was knowingly benefitting from what it knew or *should have known* was a sex trafficking venture. *See Doe v. Twitter, Inc.,* 555 F. Supp. 3d 889, 920-21 (N.D. Cal.

2021) (abrogated by *Does 106 v. Reddit*, 51 F.4th 1137, 1141 (9th Cir. 2022), *cert. docketed* No. 22-695 (Jan. 23, 2023)). However, under either an actual knowledge and active participation standard, or the "should have known" standard, Plaintiffs' claims should succeed this motion.

### 2. Defendants Knowingly Benefitted from a Sex Trafficking Venture.

A violation under §1591(a) includes "obtain[ing], advertis[ing], maintain[ing] . . . by any means[63] a person," and through means of, "force, . . . fraud, coercion . . .cause the person to engage in a commercial sex act." 18 U.S.C. §1591(a). A commercial sex act is defined as "any sex act, on account of which anything of value is given or received by any person[.]" § 1591(e)(3). Participation in a venture is "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." § 1591(e)(4). Pornography can be the basis for a Section1591(a)(1) claim[64]. *See*, *e.g.*, *United States v. Flanders*, 752 F.3d 1317, 1330 (11th Cir. 2014) (upholding defendant's sex trafficking conviction for violating 1591(a)(1) by using fraud to induce adults to participate in pornography film). In this case, the Plaintiffs have alleged sufficient facts that the xHamster Defendants knew they were participating in and benefitting from the sex trafficking of the Plaintiffs.

First, the Plaintiffs were sex trafficked through fraud on the xHamster website. The surreptitious recording, and invasion of the Plaintiffs' privacy was only the first abuse they suffered[65]. Dkt. no.193 at ¶¶ 70-80. When those abuse videos were then uploaded – in partnership

---

[63] The phrase "by any means" is not defined and contains no exception for electronic or virtual actions.

[64] *See also U.S. v. Marcus*, 487 F. Supp. 2d 289, 306 (E.D. NY 2007) (rev'd on other grounds) ("Essentially, the defendant's interpretation of the term 'commercial sex act' would limit the purview of the statute to prostitution and exclude pornography. The court finds no support for this contention.").

[65] Plaintiffs have alleged enough to infer that Defendant Murphy surreptitiously filmed Plaintiffs for the purpose of uploading the videos to pornography websites, including xHamster, for financial gain. Dkt. no.193 at ¶¶ 71-79, 82, 86-89. In this way, the Plaintiffs were frequently caused to participate in a commercial pornographic film. *See also United States v. Helton*, 944 F.3d 198, 207 (4th Cir. 2019) (holding that even though the South Carolina voyeurism statute does not require physical contact with another, the defendant's conduct falls under the definition of "sex offense" under SORNA).

with the xHamster Defendants, onto their pornography platform for profit, Dkt. no.193 at ¶¶ 81-82, 86, 88-92; – then advertised for the sexual gratification of viewers via thumbnails, tags, titles, all of which were created by the Defendants, Dkt. no.193 at ¶¶ 48, 52, 91-92; – for profit and monetization, Dkt. no.193 at ¶¶ 38-39, 40,-41, 45, 69, 82, 88-89, 91; – they were sex trafficked. Certainly, pornography is sexual, and therefore, the sexual gratification of viewers consuming the nude images of Plaintiffs, on the xHamster website, constitutes a sex act under the statute's plain language. *See* § 1591(e)(3) ("any sex act"). And this pornographic content was monetized. Value was shared between the XHamster Defendants and the uploader, in the form of ad revenue, traffic to the websites, and data gathered, Dkt. no.193 at ¶¶ 38-39, 40-41, 45, 69, 82, 88-89, 91. This made the sex acts commercial. *See* § 1591(e)(3) (". . . anything of value is given or received by any person[,]"). When nude images of the Plaintiffs became pornography videos consumed by millions on some of the world's largest pornography websites against their will, through fraud, for profit, these videos went from being a record of a crime and a privacy violation, to commercial sex activity and sex trafficking.

Next, the Defendants knew they were participating in a sex trafficking venture because the videos were obvious on their face as being surreptitiously recorded. Dkt. no.193 at ¶¶ 47, 74-76, 78. The Defendants created a portion of the content themselves, by creating thumbnails of the content, putting them on notice of exactly what the content was. Dkt. no.193 at ¶¶ 91. And the Defendants directly shared ad revenue with the sex trafficker who uploaded the content, again making them aware of this specific content and its nature as sex trafficking content. Dkt. no.193 at ¶¶ 88-89, 91.

And finally, the Defendants knew they were benefitting from this sex trafficking venture because they are constantly monetizing all of the content on their website aggressively through

advertisements and data mining, and because they were directly sharing revenue with the sex trafficker who uploaded the content depicting Plaintiffs. Dkt. no.193 at ¶¶ 38-39, 40-41, 45, 69, 82, 88-92.

### 3.  Defendants Participated in a Venture that Furthered Plaintiffs' Trafficking.

To establish "participation in a venture," the "Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement." *M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019); *see also Doe v. Mindgeek USA Inc.,* 558 F. Supp. 3d at 837. In *MG Freesites,* the Court found that the Plaintiffs had sufficiently alleged participation in a venture by their allegations that the website Defendants "refus[ed] to remove child pornographic content, profit[ed] from that content, and shar[ed] those profits with Plaintiffs' sex traffickers." 2022 WL 407147, at *18. The court concluded, "Plaintiffs have alleged facts from which it can be reasonably inferred that their sex traffickers had not only tacit agreements with Defendants—which is all that is required under section 1595—but in fact had explicit agreements with Defendants." *Id.* The same is true in this case.

Hammy Media knew they were facilitating and actively participating in a sex trafficking venture because they created a space on their website for exactly this type of activity, encouraged it, advertised it to users with their own keywords, categories, and tags, Dkt. no.193 at ¶¶ 45, 47-48, 52, 59, 63-64, 69, 88-92, and profited from this activity. Dkt. no.193 at ¶¶ 38-39, 40-41, 45, 69, 82, 88-92. Furthermore, they created a process whereby they could engage in business partnerships with sex traffickers for non-consensual content and split the profits. Dkt. no.193 at ¶¶ 41, 88-89, 91. They were in a direct business partnership with a sex trafficker. Dkt. no.193 at ¶¶

88-89, 91. And actively advertised and promoted this sex trafficking content. Dkt. no.193 at ¶¶ 45,

48, 52, 59, 63, 64, 69, 87-92.

**CONCLUSION**

For the reasons stated above, TSL's motion to dismiss should be denied in its entirety.

**[SIGNATURE BLOCK ON THE FOLLOWING PAGE.]**

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

*s/J. Edward Bell, III*
J. Edward Bell, III (1280)
Joshua M. W. Salley (13214)
219 North Ridge Street
Georgetown, SC  29440
TEL.: (843) 546-2408
FAX: (8430 546-9604
jeb@belllegalgroup.com
jsalley@belllegalgroup.com

**DOLT, THOMPSON, SHEPHERD &
CONWAY, PSC**

Tyler S. Thompson (admitted Pro Hac Vice)
Liz J. Shepherd (admitted Pro Hac Vice)
Jordan A. Stanton (admitted Pro Hac Vice)
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com
lshepherd@kytrial.com
jstanton@kytrial.com

**NATIONAL CENTER ON SEXUAL
EXPLOITATION**

Benjamin Bull (admitted Pro Hac Vic)
Danielle Bianculli Pinter (admitted Pro Hac Vice)
Christen Price (admitted Pro Hac Vice)
Peter Gentala (admitted Pro Hac Vice)
1201 F Street NW
Washington, D.C.20004
bbull@ncose.com
dpinter@ncoselaw.org
cprice@ncoselaw.org
pgentala@ncoselaw.org

***ATTORNEYS FOR PLAINTIFF***

February 20, 2023
Georgetown, SC