UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9,<br><br>   Plaintiffs,<br><br>vs.<br><br>COLLINS MURPHY, SHARON HAMMONDS, BRENDA F. WATKINS, LIMESTONE UNIVERSITY, MG FREESITES, LTD., d/b/a PORNHUB.COM, MG FREESITES II LTD., MINDGEEK S.A.R.L., MINDGEEK USA, INC., MG BILLING LTD., and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM, TRAFFICSTARS LTD., WISEBITS LTD, XHAMSTER IP HOLDINGS LTD, WISEBITS IP LTD.,<br><br>   Defendants. | Case No.: 7:20-cv-00947<br><br>**WISEBITS IP, LTD.'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO PRECLUDE THE RECONVENING OF DEPOSITION** |
| JANE DOE,<br><br>   Plaintiff,<br><br>vs.<br><br>LIMESTONE UNIVERSITY F/K/A LIMESTONE COLLEGE, COLLINS MURPHY, MG FREESITES, LTD., d/b/a PORNHUB.COM, and HAMMY MEDIA, LTD. d/b/a XHAMSTER.COM,<br><br>   Defendants. | Case No.: 7:21-cv-03193<br><br>**WISEBITS IP, LTD.'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO PRECLUDE THE RECONVENING OF DEPOSITION** |

## **INTRODUCTION**

From the start, the present case has been less a good-faith attempt to vindicate wrongs which may well have been perpetrated on Plaintiffs by one or two of the defendants in this case,

and more a morality crusade dressed up in the guise of a lawsuit.[1] Nowhere has this been more evident than in the discovery served and taken by Plaintiffs, where the vast majority of both written discovery any depositions have had nothing whatsoever to do with the videos actually at issue in the present case and everything to do with an attempt to demonize the website defendants and their entire business models. Plaintiffs' litigation strategy is clear: attempt to obfuscate the actual legal and factual issues just enough to escape summary judgment, with the hope that they can simply enrage a jury against an entire industry.

And, while Plaintiffs are certainly entitled to take legitimate discovery within the boundaries of the Federal Rules of Civil Procedure, they are not entitled to ask questions that are

---

[1] Plaintiffs are represented in this case by, among others, a legal team spearheaded by the "National Center on Sexual Exploitation," formerly known as "Morality in Media," an organization dedicated to the eradication of all adult entertainment, First Amendment be damned. *See, e.g.,* Wikipedia entry on National Center on Sexual Exploitation at https://en.wikipedia.org/wiki/National_Center_on_Sexual_Exploitation (last accessed February 28, 2024)("The National Center on Sexual Exploitation (NCOSE), previously known as Morality in Media and Operation Yorkville, is an American conservative anti-pornography organization. The group has also campaigned against sex trafficking, same-sex marriage, sex shops and sex toys, decriminalization of sex work, comprehensive sex education, and various works of literature or visual arts the organization has deemed obscene, profane or indecent"); Watson, B., "The New Censorship: Anti-sexuality Groups and Library Freedom," *Journal of Intellectual Freedom and Privacy* (2020)("The National Center on Sexual Exploitation (NCOSE) was originally founded in 1962 as Morality in the Media, an anti-homosexual, anti-Hollywood, anti-birth control organization. …In 2015 the group rebranded, recalibrated its targets, and launched a new web presence designed to inspire activists nationally via the internet rather than the sustained and slow process of building small local efforts. …Each year, accompanied by pomp and circumstance, NCOSE presents an annual "Dirty Dozen List" of corporations or organizations for activists to target over the coming year. In the past, the list has included the U.S. Department of Justice for their 'gross negligence' in not upholding federal obscenity laws …Wikipedia, for 'hous[ing] thousands of pornographic images', Walmart (and others) for selling Cosmopolitan Magazine, which NCOSE sees as 'verbally pornographic'; and a slew of major media corporations (including Facebook, Twitter, Comcast, and HBO) for allowing sexual representation on their platforms…."); LaRue, James, "False Witness: Morality in Media and EBSCO," *Journal of Intellectual Freedom and Privacy,*"(Vol 2, No 3-4 (2017))("[NCOSE's Dirty Dozen List, an] intended-to-be-shocking list of porn-pushing human traffickers also includes Amazon, Amnesty International, Comcast, Cosmopolitan, and social media destinations Snapchat, Twitter, and YouTube.")

wholly unrelated to their claims; not reasonably calculated to lead to the discovery of admissible evidence; or simply in violation of the Rules. This, unfortunately, is precisely what Plaintiffs have done throughout the discovery process, most recently in connection with the Rule 30(b)(6) deposition of Wisebits IP, Ltd ("Wisebits").

So, for example, despite establishing early on that Wisebits was nothing more than a holding company for certain intellectual property (something Wisebits attested to under oath prior even to the start of the 30(b)(6) deposition), Plaintiffs sought to engage in broad questioning of Wisebits' witness on a wide range of topics including the operation and conduct of companies other than Wisebits; agreements entered into by companies other than Wisebits; the guidelines used by auditors in producing an audited financial statement; and when and how the Plaintiffs might have suffered damages (as a result of the posting of videos by an individual unconnected to Wisebits, on a website not operated by Wisebits).

Even more egregiously, Plaintiffs' counsel repeatedly asserted that the witness could – and indeed was obligated to – testify in his *individual* capacity, despite the fact that he was: (a) present only as Wisebits' 30(b)(6) witness and (b) not subject to subpoena individually.

Unsurprisingly, Wisebits' 30(b)(6) witness declined to answer questions that were outside of the scope of the Rule 30(b)(6) notice and, more importantly, outside of the knowledge of Wisebits, on whose behalf the witness appeared. At no point in time did Wisebits' counsel instruct the witness not to answer questions and, to the contrary, he stated repeatedly on the record that he was not so instructing the witness.

Plaintiffs refused to conclude the witness's deposition, insisting that they had the right to – and would – seek to reconvene the same. Plaintiffs, however, have received the information to which they were actually entitled (more actually), and the Court should enter a protective order

3

declaring the deposition concluded.

Accordingly, pursuant to Local Rule 30.04; Fed. R. Civ. P. 26(c); and Fed. R. Civ. P. 30(d)(3), Wisebits respectfully moves for a protective order declaring the deposition concluded. In further support of its motion, Wisebits states as follows.

## PROCEDURAL BACKGROUND

Plaintiffs served Wisebits with a 30(b)(6) deposition notice on October 5, 2023. A true and accurate copy of the deposition notice and its accompanying list of categories, along with the transmittal email is attached hereto as **Exhibit 1**.[2] On October 10, 2023, Wisebits objected to Plaintiffs' list of categories. A true and accurate copy of Wisebits' objections and the transmittal email is attached hereto as **Exhibit 2**. Because the parties contemplated that Wisebits' 30(b)(6) deposition would occur only a week later (Wisebits' attorney was already scheduled to traveled to Cyprus, where Wisebits is located in connection with the deposition of another defendant, Hammy Media, Ltd. and, for reasons of economy, wanted to schedule Wisebits' deposition for the same time), Wisebits offered to allow the deposition to proceed as scheduled (on October 16 or October 18 of last year), with the understanding that the objections could be worked out after the deposition if Plaintiffs thought it necessary. This offer was made specifically to allow the deposition to proceed as scheduled in October.

Plaintiffs, however, chose not to proceed with the deposition in October as the parties had discussed, instead waiting over four (4) months to actually take Wisebits' 30(b)(6) deposition. During that time, Plaintiffs could easily have sought the Court's intervention if they believed any of Wisebits' objections to be improper or unfounded, but they chose not to do so. Indeed, Plaintiffs

---

[2] Plaintiffs had earlier served a "Draft Notice" of 30(b)(6) deposition on Wisebits, but served the new notice – which included different categories – on October 5, 2023, in anticipation of the deposition taking place within the next couple of weeks as had been discussed by counsel.

did not even seek to *discuss* the objections with Wisebits' counsel prior to the deposition. Instead, Plaintiffs chose to proceed knowing full well what categories of questions Wisebits had agreed to provide a witness to address. It is important to stress that Plaintiffs did not even attempt to serve a personal deposition notice on the deponent – noticing only a 30(b)(6) corporate representative deposition.

On Wednesday, February 21, 2024, Plaintiffs took the deposition of Wisebits' 30(b)(6) corporate representative, Constantinos Christoforou. A true and accurate copy of the entire deposition transcript is filed separately under seal as **Exhibit 3.** At various points in the deposition, Wisebits' corporate representative declined to answer questions which were outside the scope of the Rule 30(b)(6) notice and, more importantly, outside of the knowledge of the company. At no point in time did Wisebits' counsel instruct the witness not to answer such questions and, to the contrary, he repeatedly stated on the record that he was not instructing the witness to refuse to do so. Nevertheless, the witness, a Cyprian resident not personally subject to a subpoena issued by a United States Court, declined to answer questions in his personal capacity.

## ARGUMENT

Fed. R. Civ. P. 30(b)(6) allows a party to take the deposition of a corporate representative. The deposition notice or subpoena "must describe with reasonable particularity the matters for examination." *Id.* Often, courts are "not inclined to require Defendant to produce information outside the scope of the Rule 30(b)(6) deposition notice…" and, where such questions are posed during a deposition, "the deponent's answers to questions outside the scope of the notice will not bind the organization, and the organization cannot be penalized if the deponent does not know the answer." *United States v. Albemarle Corp.,* 2013 U.S. Dist. LEXIS 179775, at *11-12 (D.S.C. Dec. 23, 2013)

And, although the scope of discovery is, of course, broad, it is nonetheless limited to matters that are "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b).

The Court has the power to limit discovery to conform with these limitations, including limiting a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3). *See also* Fed. R. Civ. P. 26(c).

In the present case, over the course of approximately four hours, Wisebits' representative was asked approximately 437 questions, with more than a third of those (approximately 165) being outside the scope of the Rule 30(b)(6) notice; not within the knowledge of Wisebits; and/or wholly irrelevant to Plaintiffs' actual claims in this litigation.[3]  This is precisely the type of bad faith behavior that Rule 30(d)(3) contemplates prohibiting.

Because it would be impractical to list out here all 165 improper questions and the witness's responses thereto (and because Wisebits cannot imagine that the Court would want it to do so), Wisebits provides a small sampling of the types of improper questions posed to the witness to give the Court a flavor of what transpired (and would transpire again if the deposition were reconvened).

---

[3] Despite being outside of the scope of the Rule 30(b)(6) notice, Mr. Christoforou nonetheless answered approximately 65 of the 165 improper questions.  And, in truth, the number of improper questions is likely much higher than counted here as Wisebits has attempted to be conservative in its characterization of such questions for purposes of this motion.  The entire transcript has been provided so that the Court may judge for itself.

6

### Questions Concerning the Witness's Employment By Companies Other Than Wisebits

After first establishing that the witness was employed by a company he founded, Global HR Solutions (Transcript, p. 14, li. 2-3) Plaintiffs sought to ask questions about how many individuals Global HR Solutions employed:

> Q: Are there other employees in -- in the company?
> A: Yes.
> Q: How many other employees are there?
> A: This is not appropriate. I'm here to speak about Wisebits IP. It's not related.
> Q: Are you going to answer my question, how many employees are in your company?
> A: No, it's not within the categories to be discussed. It's a company not related to.

Tr. p. 14, li. 6-14.

Plaintiffs continued, asking the witness about services that Global HR Solutions provided to companies *other than* Wisebits IP:

> Q: Do you perform fee for service work for Hammy Media Limited?
> A: No.
> Q: Do you perform fee for service work for xHamster.com?
> A: No. These companies have nothing to do with what [we] are here to discuss.
> Q: Do you perform fee for service work for Hammy Media Limited?
> A: No.
> Q: Do you perform fee for service work for xHamster.com?
> A: No.· These companies have nothing to do with what are here to discuss.· They are not Wisebits LP.
> Q: Do you perform fee for service work for any related company to Wisebits IP?
> MR. GURVITS:· Objection to the form.
> BY MR. GENTALA:
> Q: You can answer the question.
> A: It's -- I would -- I would just answer about Wisebits IP.
> Q: I'm going to ask again. Do you perform any work for related companies to Wisebits IP?
> MR. GURVITS:· Objection as to form.
> A: I will not answer.

Tr. pp. 17-18, li. 24 – 17.

Similarly, Plaintiffs' counsel attempted to ask questions of Wisebits' witness about whether he had served as a director for companies *other* than Wisebits, asserting that the witness had some obligation to answer such questions in his personal capacity, even though he was not present at the deposition in such a capacity and *could not have been compelled to appear for a deposition in his individual capacity*. As such, the questions (and counsel's assertions) were an improper attempt to compel the individual testimony of a foreign citizen, while skirting the requirements for taking such a deposition:

> Q:  Have you served as a director of any of the other entities in this caption?
> A:  I'm here to answer about Wisebits IP.
> Q:  Are you refusing to answer that question?
> A:  Yes.
> Q:  That question is not outside the scope of this 30(b)(6) deposition, but even in your personal capacity you can answer that question.
> MR. GURVITS:  Well, I have to disagree with that entire statement. This is exactly outside of the scope. And he's not here personally. He's here as a designated 30(b)(6) witness for a specific entity.
> MR. GENTALA:  Sorry.
> A:  I would --
> MR. GENTALA:  Sorry.
> A:  Excuse me. I will not answer.

Tr., p. 24, li. 6-22.

As the Court can well see, none of these questions fall within the scope of Plaintiffs' 30(b)(6) notice and, more importantly, none of these questions are within the scope of *Wisebits'* knowledge. The fact that the witness might, in his personal capacity, know information that Wisebits does not know, does not make such questions fair game in a 30(b)(6) deposition. And, finally, there is no way in which any of these questions pertain to Plaintiffs' claims.

### Accounting Questions Concerning Audited Financial Statements

Having learned earlier in the deposition that Mr. Christoforou was trained as an accountant

(something wholly unrelated to any services he performed for Wisebits), Plaintiffs' counsel attempted to question the witness about accounting decisions made by the firm Deloitte, the firm that audited Wisebits' financial statements. Such questions were not only outside the scope of the 30(b)(6) notice, but they were also wholly inappropriate questions for the company's 30(b)(6) witness.[4]

> Q: What is a -- as an accountant, what does it mean when -- when an auditor gives a financial opinion?
> A: I'm not here to advise as an accountant. I will not answer.
> Q: Are there different types of opinions?
> A: Yes, there are.
> Q: What are the types of opinions?
> A: I will not answer. And the financial statements are not part of what we agreed to discuss today.

Tr. pp. 38-39 li. 22 – 6.

> Q: What are the different -- remember I asked you about the word "opinion," you see the word "opinion" there in the title, and then the bases for the opinion below that, what are the different types of --
> A: No.
> Q: -- opinions released by auditors?
> A: I will not answer that.
> Q: Does this annual report limit its opinion with any findings or qualifications?
> A: I will not answer that.
> Q: Do you see any qualifications to the opinion in any of the paragraphs that are there on the screen?
> A: I will not answer that.

Tr. pp. 41-42, li 17-4.

It should go without saying, of course, that a company's 30(b)(6) witness has no obligation (or ability) to answer questions concerning the decisions made by the company's accounting firm

---

[4] If Plaintiffs want to ask questions about Wisebits' audited financial statements, those questions are properly posed to Wisebits' accountants, assuming that they are within the Court's jurisdiction and subject to a properly served subpoena.

in auditing the company's financial statements. This, however, did not stop Plaintiffs' counsel from improperly inquiring into such matters.

**Questions Concerning Contracts to Which Wisebits Was Not a Party**

At one point in time, Mr. Christoforou served as a director of a separate (though similarly-named) legal entity, Wisebits Ad Net, Ltd. ("WAN"). WAN is not a party to this litigation and, as noted, is a separate and distinct legal entity. This did not, however, stop Plaintiffs' counsel from first trying to confuse the witness by representing a contract between WAN and CenturyLink, concerning the use of CDN (Content Delivery Network) servers for the xHamster.com website as having been "produced by his attorneys" (in reality, the documents were produced by Hammy Media, Ltd., hence the "HAM" designation on their bates stamps). And, despite unequivocal testimony from Mr. Christoforou that Wisebits had nothing to do with CDN servers and the company had no knowledge of CDN servers or any technical aspects of the website, Plaintiffs counsel spent copious amounts of time questioning the witness about the same:

> Q: This -- this document was produced in discovery by your attorneys.· You see the - the number that says HAM 000441 in the bottom right-hand corner?
> A: Yes, I can see.
> Q: Thank you. We're going to use that -- those – those numbers in the bottom right corner there in blue for being around -- going around in this document. Please go to page using the bottom right-hand number 444. This document is signed by you, correct?
> A: This document on the first page, it's named the company Wisebits Ad Net. I will not comment on it.
> Q: What is -- what is a CDN server?
> A: I have no idea.· And it's not a document of Wisebits IP, I will not comment anything on it.
>
> … Q: …Are you aware of any of the CDN servers –
> A: No, I am not.
> Q: -- that has been used from 2019 to the present?
> A: Sorry to interrupt you.· I am not aware.
> Q: Are you aware of -- of any CDN servers that were used prior to -- to 2019?
> A: Wisebits IP does not hire servers for CDN or anything technical, anything that has to do with xHamster.com. And I don't know.

Q: When I asked you a question about this, you said that you would refuse -- you're refusing to answer any questions about this, but your attorney is saying that Wisebits IP will provide a witness to testify as to the location of all CDN and cache servers, right; that's what it says, right?
MR. GURVITS: It does not say that. It says to the extent that information is available, and he just testified he doesn't have any of that information and neither does the company. Literally, he just told you there was no information. Why would you mischaracterize it like that, his response.
BY MR. GENTALA:
Q: The -- is there any information available responsive to this category, Mr. Christoforou?
A: No. And as I said, Wisebits IP does not recruit servers of CDN. And even if I testified about the other company, I still wouldn't know. I'm not technical, I don't…
MR. GENTALA:     Let's go back to Tab 12.
BY MR. GENTALA:
Q: Do you know if this document covers the provision of CDN servers?
A: I don't know.

Tr. pp. 91-94.

Despite these responses, Plaintiffs' counsel then spent the next three pages of the transcript trying to get Mr. Christoforou to answer questions about a contract that Wisebits was not party to, on a topic that Wisebits (and the witness) had no knowledge. *See,* Tr. pp. 94-97. Counsel continued to question Wisebits' 30(b)(6) witness about other agreements to which Wisebits was not a party. *See, e.g.,* Tr. pp. 97-105. This is not proper questioning of a Rule 30(b)(6) witness; this is abusive, plain and simple.

**Questions Concerning the Posting of the Videos and Plaintiffs' Purported Damages**

Finally – and understanding that Wisebits' sole role was as a holding company for intellectual property (*see, e.g.,* Tr., p. 29 "Wisebits IP simply licenses the intellectual property out. It does not operate the -- it has nothing to do with the actual website") – Plaintiffs' counsel nonetheless insisted on asking Wisebits' corporate representative questions not only outside the scope of the 30(b)(6) notice, but rather questions that counsel knew Wisebits could not possibly

11

answer concerning the posting of videos to the xHamster website and plaintiffs' purported damages:

> Q: When did the harm occur to the plaintiffs in this case?
> MR. GURVITS: Objection.
> A: Excuse me? I don't understand the question.
> Q: Were the plaintiffs in this case harmed?
> A: Yes.
> Q: When were they harmed?
> MR. GURVITS: Objection.
> A: I don't know. In 2012 when it was uploaded. Both.
> Q: When was it originally recorded?
> A: I believe it was before 2012.
> Q: So they were harmed at that time in 2012 when it was originally recorded?
> MR. GURVITS: Objection.
> BY MR. GENTALA:
> Q: You can answer the question. Were they harmed in 2012 when they were originally recorded?
> MR. GURVITS: Objection.
> A: I will not answer.
> Q: Were they harmed in 2019 when they were posted to xHamster.com?
> MR. GURVITS: Objection.
> A: I will not answer.

Tr. pp. 29-30 li. 5-12.

> Q: On behalf of the company, do you think that it was appropriate for the women in this situation to have their videos posted on xHamster and to be viewed on the xHamster.com website?
> MR. GURVITS: Objection.
> A: I will not comment on this.
> Q: Does the company think it's appropriate for that to have occurred?
> MR. GURVITS: Objection.
> A: I will not comment on that.

Tr. p. 122 li. 5-14.

There is no world (at least no world governed by the Federal Rules of Civil Procedure) in which these questions were appropriate questions to be asked of Wisebits' 30(b)(6) witness.

12

Plaintiffs' counsel surely was aware of this and yet made the tactical decision to ask the questions anyway. Having so abused the deposition process, Plaintiffs' counsel should not get a second chance to do the same.

## CONCLUSION

For the reasons stated hereinabove, Wisebits IP, Ltd. respectfully requests that the Court issue a protective order declaring the 30(b)(6) deposition of Wisebits to be concluded.

Respectfully Submitted,

/s/ Hannah Rogers Metcalfe
Hannah Rogers Metcalfe, Fed ID. 9943
Metcalfe & Atkinson, LLC
1395 South Church Street
Greenville, South Carolina 29605
(864) 214-2319

Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Valentin D. Gurvits (*pro hac vice*)
Frank Scardino (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com

*Attorneys for Wisebits IP, Ltd.*

February 28, 2024
Greenville, South Carolina