## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9,<br><br>          Plaintiffs,<br><br>vs.<br><br>COLLINS MURPHY, SHARON HAMMONDS, BRENDA F. WATKINS, LIMESTONE UNIVERSITY, MG FREESITES, LTD., d/b/a PORNHUB.COM, MG FREESITES II LTD., MINDGEEK S.A.R.L., MINDGEEK USA, INC., MG BILLING LTD., and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM, TRAFFICSTARS LTD., WISEBITS LTD, XHAMSTER IP HOLDINGS LTD, WISEBITS IP LTD.,<br><br>          Defendants. | Case No.: 7:20-cv-00947 |
| JANE DOE,<br><br>          Plaintiff,<br><br>vs.<br><br>LIMESTONE UNIVERSITY F/K/A LIMESTONE COLLEGE, COLLINS MURPHY, MG FREESITES, LTD., d/b/a PORNHUB.COM, and HAMMY MEDIA, LTD. d/b/a XHAMSTER.COM,<br><br>          Defendants. | Case No.: 7:21-cv-03193 |

### WISEBITS IP, LTD.'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO PRECLUDE THE RECONVENING OF DEPOSITION

    **I.**     **Wisebits' Motion, Which Was Filed All of Fourteen Minutes Late Due To Technical Issues Should Not Be Deemed a "Waiver" of Wisebits' Objections.**

It says a lot about the actual substance of one's argument, when one opens its opposition with the rhetorical version of hopping up and down while pointing and saying "gotcha" – claiming that a ***fourteen-minute*** delay in filing a motion should result in the wholesale denial of that motion and the waiver of valid objections.  And yet, that is where we are.  Had Plaintiffs simply picked up the phone (or emailed) to inquire about the fourteen-minute delay (as would ordinarily be expected of lawyers practicing in the Federal Courts), Wisebits IP, Ltd. ("Wisebits") would have explained that glitches with the court's online electronic filing system resulted in the inadvertent delay.  Since Plaintiffs chose not to do so, Wisebits provides the Court with the attached Exhibit A, the affidavit of Estefania Zapata, in which Ms. Zapata attaches a screenshot of the error messages encountered and explains that it took almost 35 minutes to get the PACER system to properly accept the PDFs attached to Wisebits' motion.   Wisebits certainly regrets that technological issues resulted in its motion being filed fourteen minutes late, but assumes that the Court would prefer to address the present motion on the merits and, as such, Wisebits provides the following brief reply to the arguments raised in Plaintiffs' Opposition.[1]

## II.    Plaintiffs Were Not Entitled To Inquire Into Work Mr. Christoforou Performed For Companies Other Than Wisebits.

Plaintiffs' Opposition strongly suggests that they do not understand whose deposition they noticed: they did not notice the deposition of Constantinos Christoforou (although he certainly appeared as the corporate representative of Wisebits), they noticed the deposition of Wisebits.  And while this "confusion" was evident throughout the deposition (with counsel repeatedly attempting to ask the witness questions that were not within Wisebits' knowledge), it was particularly on

---

[1] Plaintiffs separately filed a motion to compel the resumption of the Wisebits 30(b)(6) deposition, which Wisebits will oppose in due course.  To the extent that Plaintiffs raise different arguments in that motion, they will be addressed in Wisebits' opposition and not in this Reply.

display in connection with Plaintiffs' attempts to question the witness about work that he may have performed for non-Wisebits companies.

It is important to first recall that Mr. Christoforou is a resident of Cyprus (*see* D.E. 292-2, p. 1, ¶3) and, as such, is not subject to this Court's jurisdiction individually. This is a crucial distinction because, unlike the typical situation where the parties might, by agreement, stipulate that a witness may be asked questions in both his personal capacity and as a corporate representative so that the witness is not required to return for a second deposition *which the party would otherwise be entitled to conduct*, such is not the case here. Plaintiffs have no right to question Mr. Christoforou individually and could not have compelled his attendance at a deposition (in his individual capacity).

Plaintiffs nonetheless attempted to do an end-run around the constitutional limitations on the Court's power by using the 30(b)(6) deposition of Wisebits to question Mr. Christoforou in his personal capacity about (among other things) roles that he may have played (or services he may have provided) to companies other than Wisebits. In their Opposition, Plaintiffs specifically deny having done so, claiming that "Plaintiffs did not ask the deponent 'questions in his personal capacity…'" *Opposition,* p. 6. It is hard to understand how the Plaintiffs feel comfortable making this representation to the Court, given the following exchange, taken directly from the deposition transcript:

> Q:     Have you served as a director of any of the other entities in this caption?
> A:     I'm here to answer about Wisebits IP.
> Q:     Are you refusing to answer that question?
> A:     Yes.
> Q:     That question is not outside the scope of this 30(b)(6) deposition**, *but even in your personal capacity you can answer that question.***
> MR. GURVITS:  Well, I have to disagree with that entire statement. This is exactly outside of the scope. And he's not here personally. He's here as a designated 30(b)(6) witness for a specific entity.

MR. GENTALA:  Sorry.
A:       I would --
MR. GENTALA:  Sorry.
A:       Excuse me.  I will not answer.

Tr., p. 24, li. 6-22 (emphasis added).

Even putting aside for a moment that it was improper of Plaintiffs to try to elicit information from Wisebits' corporate representative in his personal capacity (when it could not have otherwise properly subpoenaed the witness in his personal capacity), the questions were outside the scope of the Rule 30(b)(6) notice and the information sought not within the purview of Wisebits and Plaintiffs cannot reasonably argue otherwise.  Indeed, unlike the other portions of Plaintiffs' Opposition, with respect to the questions concerning services provided by Mr. Christoforou to non-Wisebits entities, Plaintiffs cite to no specific request within their 30(b)(6) notice that they even claim covers the improper questions.  Similarly, Plaintiffs continue to ignore the fact that the information sought was not information that *Wisebits* possessed, arguing that if Mr. Christoforou knew the information in his personal capacity, that the information was fair game.  This is simply not how a Rule 30(b)(6) deposition is supposed to proceed, at least where (as here), the designated witness is not himself subject to being deposed.

Recognizing all of that, Plaintiffs instead pivot, essentially arguing that they should be entitled to the information sought not because they were entitled to (or could) obtain that information from Wisebits, but rather because they believe the information to be relevant to their alter ego argument.  Even if supposed "relevance" entitled Plaintiffs to question Wisebits' corporate representative about information that Wisebits did not possess, Plaintiffs are incorrect about the relevance of the information sought.

First, Plaintiffs argue that they are entitled to question Mr. Christoforou about services that his *personal company* (not Wisebits) may have provided to Hammy Media because, somehow,

4

this information will enable them "to determine if the dealings between Wisebits IP and Hammy Media are 'at arm's length.'" *Opposition*, p. 5.  The supposition is absurd on its face.  The questions were not about services that *Wisebits* provided, they were questions about services that Mr. Christoforou's personal company, Global HR Solutions, may have provided.  Tr. pp. 17-18, li. 24 – 17.  Moreover (and pointing up the absurdity of Plaintiffs' position), Mr. Christoforou actually answered those questions:

Q:    Do you perform fee for service work for Hammy Media Limited?
A:    No.
Q:    Do you perform fee for service work for xHamster.com?
A:    No.  These companies have nothing to do with what [we] are here to discuss.
Q:    Do you perform fee for service work for Hammy Media Limited?
A:    No.
Q:    Do you perform fee for service work for xHamster.com?
A:    No.· These companies have nothing to do with what are here to discuss. They are not Wisebits LP [sic].

Tr. pp. 17-18.

Next, Plaintiffs complain that Mr. Christoforou refused to answer questions about on which non-Wisebits companies he served as a director.  Plaintiffs claim that the questions were relevant to their claims that Wisebits "is one of the alter ego and affiliate corporations that manages XHamster IP Holdings, Ltd. and controls the use of the xHamster brand."  *Opposition*, p. 4-5.  Putting aside the fact that xHamster IP Holdings, Ltd. is not even a named party to this litigation, the Plaintiffs are simply wrong about the importance of an overlap of directors in companies.  As the Fourth Circuit has repeatedly held: "One-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil."  *Bittle-Lindsey v. Seegars Fence Co.,* 2022 U.S. App. LEXIS 13490,

at *8 (4th Cir. May 18, 2022)(citations omitted); *Johnson v. Flowers Indus., Inc.,* 814 F.2d 978, 982 (4th Cir. 1987)(same); *Hukill v. Auto Care, Inc.,* 192 F.3d 437, 444 (4th Cir. 1999)(same).[2]

And, finally, to the extent that Plaintiffs wished to know if Mr. Christoforou was a director of some other entity, such as Hammy Media, they were free to ask Hammy Media that question when they took the deposition of *its* corporate representative.  In fact, Plaintiffs *did* ask Hammy Media's 30(b)(6) witness to name Hammy's directors and that witness testified that Hammy had a single director, whom the witness named, and who was not Mr. Christoforou.

To summarize, Plaintiffs complain that they were entitled to ask Wisebits' 30(b)(6) witness in his personal capacity for information that the company did not have; which was outside the enumerated 30(b)(6) categories; which is almost entirely irrelevant to the case; which information they actually had (either from Wisebits' witness or Hammy Media's witness).  If anything, Plaintiffs prove Wisebits' point about why the deposition should be ruled completed.

### III.   Plaintiffs Should Not Be Able To Turn Wisebits' Corporate Representative Into Some Sort of Expert Witness.

Plaintiffs next argue that they are entitled to ask Wisebits' corporate representative detailed questions about why the company's third-party auditors issued a "qualified" audited financial statement in one year (but not another).[3]

---

[2] Indeed, even the one case cited by Plaintiffs in support of their position (which does not list the overlap of directors as a primary consideration, but rather as an "other factor" which the Court *may* find relevant in examining the totality of the circumstances, holds that piercing the corporate veil is done only in "extraordinary cases, such as the corporate form being used for wrongful purposes…." *Vitol, S.A. v. Primerose Shipping Co.,* 708 F.3d 527, 544 (4th Cir. 2013).  In the *Vitol* case, which contained far more substantial allegations concerning the parties' alter ego status, the Fourth Circuit nonetheless upheld the dismissal of the alter ego claims at the motion to dismiss stage, much like this Court did with certain of the previously-named defendants.

[3] Although Plaintiffs claim in one breath that they will no again ask the witness about the auditor's opinions if the deposition is reconvened, in the next breath they state that "questions relating to any auditor statements on the financial statements… remain fair game." *Opposition,* p. 9.

First, Plaintiffs point out that their 30(b)(6) notice of deposition did include a category that included "items contained in the financial statements." Plaintiffs fail to provide the Court, however, with Wisebits' objection to this category, provided to Plaintiffs four months before they took the deposition. The category and objection were as follows:

**Topic 3:**
All services by which Wisebits generates revenues and profit for, by, from, or through xHamster.com and/or Hammy Media, along with the financial statements for Wisebits during the relevant time period. This topic would include explanation of items contained in the relevant financial statements.

**Objections and Response.**
This topic is overbroad and unduly burdensome. Wisebits IP will provide a witness to testify generally as to how Wisebits IP generates income.

*See* Exhibit 2 to Wisebits' Memorandum of Law.

Wisebits then proceeded to provide a witness to testify about the areas on which Wisebits said the witness would provide answers.

The questions that Plaintiffs wanted answered, however, were inappropriate for a corporate witness (as opposed to the accounting firm that did the work) and amounted to an improper attempt to turn Mr. Christoforou into an expert witness. For example, the following exchange occurred:

Q· · All right.· Could you read the -- in -- in the second full paragraph, could you read the first sentence the one that starts "in our opinion"?

A· · In our opinion, except for the possible effects  of the matter described in the basis for QUALIFIED OPINION section of our report, the accompanying financial statements give a true and fair view of the financial position of the Company as at 31 December 2020, and of its financial performance and its cash flows for the year then ended in accordance with International Financial Reporting Standards (IFRSs) as adopted by the European Union and the requirements of the Cyprus Companies Law."

Q· · Okay.· Next line.· I'll stake this one.· "Basis for qualified opinion.  The company as financial statements do not comply with the disclosure requirements of IAS 24, related-party disclosures, which requires that the name of the entity's ultimate controlling party and that the relationships involving control should be disclosed, even when they -- "even when there have been no transactions between the parties to enable users of the financial statements to form a ·7· view about the effects of the related-party relationships on the entity".  Did I read that correctly?

A· · Yes.

Q· · What is IAS 24?

A· · I don't know.· It's related to company disclosures, related, about.· I don't expert for this.· I don't -- I've seen some -- I don't know the standards.· I mean, this is the job of the auditors.· They do the audit.· They wrote this, this is what they mean.

Q· · What was disclosed in the 2016 financial statement that is not disclosed in this financial statement that led to this qualified opinion?

A· · It's in the financial statements of 2016 all that was disclosed differently.
Q· · What's the difference?

A· · I will not answer.

Q· · Is this a financial statement of Wisebits IP?

A· · Yes.

Q:    Do you know the reason why this -- this opinion was rendered as a qualified opinion as opposed to a normal opinion?

A· · It writes there, according to "IAS 24 ("Related party Disclosures") which requires that the name of the entity's ultimate controlling party and that relationships involving control should be disclosed, even when there have been no transactions between the parties, to enable users of financial statements to form a view about the effects of related party relationships on the entity."· This is what it says.

Q· · Are there related parties that were not disclosed on this annual report that were previously disclosed on prior annual reports?

A· · This is what it writes.

There is little more that can be (or need be) said as to why such questions are not appropriate for Wisebits' 30(b)(6) witness and the Court should allow Wisebits' motion to declare the deposition concluded, lest Plaintiffs travel back down this path of irrelevant and improper questioning.[4]

---

[4] There is a reason why Wisebits chose to provide this Court with the entire deposition transcript and not just excerpts: it is only when faced with the entirety of the transcript that one can fully understand how absurd the questions posed to the witness really were; how much time was spent on such irrelevancies; and how many improper questions the witness actually answered.

IV.    **Plaintiffs' Argument That Wisebits' Corporate Representative Was Required To Testify About Matters Wholly Outside of the Company's Knowledge Is So Nonsensical as to Implicate Rule 11.**

Finally, Plaintiffs insist that they were entitled to inquire (more than the four pages of questions that they already asked) about contracts between Cloudflare (a non-party), on the one hand; and Wisebits Ad Net, Ltd (another non-party), on the other.  In their Opposition, Plaintiffs state that:

> On March 14, 2018, Doug Kramer and Constantinos Christoforou, on behalf of Hammy Media Ltd. d/b/a xHamster.com, Traffic Stars Ltd., Wisebits Ltd., xHamster IP Holdings Ltd., [and] Wisebits IP Ltd. signed the Cloudflare Enterprise Subscription Level Service Agreement.  The Plaintiffs line of questioning sought to determine if Mr. Christoforou had any involvement with Cloudflare or the Wisebit Ad Net Ltd-Century Link contract.

Opposition, p. 7.

This statement is patently false in a way that should cause this Court grave concern.  The contract referenced in Plaintiffs' Opposition – which was Exhibit 11 to Wisebits' 30(b)(6) deposition does not mention nor reference Hammy Media Ltd. d/b/a xHamster.com, Traffic Stars Ltd., Wisebits Ltd., xHamster IP Holdings Ltd., or Wisebits IP Ltd.  The Agreement, which is signed by Mr. Christoforou is not signed on behalf of *any* of those entities.  Instead, the Agreement identifies Wisebits Ad Net Ltd as the *sole* customer:

# Enterprise Service Order Form



**Customer Information**

| Customer Legal Name | Contract Number |
|---|---|
| WISEBITS AD NET LTD | 00005795.0 |

| Billing Address | |
|---|---|
| 132 Arch. Makariou III, Sagro Building | |

| City/State/Zip or Postal Code | Country |
|---|---|
| Limassol, , CY-3021 | Cyprus |

Plaintiffs' misrepresentation on this point is at one and the same time shocking and, sadly, not.[5] Here, too, Plaintiffs' Opposition proves something, just not what Plaintiffs seem to think. There is no conceivable reason why Wisebits' corporate representative could or should testify to a contract to which it was not party.

Plaintiffs then double down on their misleading statements, telling the Court that their questions about this contract dealt with CDN servers, which they portray as "common equipment used by Wisebits IP and the suspected alter ego corporations." Opposition, p. 8. None of this is correct. As the Court undoubtedly recalls, Wisebits IP is an intellectual property holding company. It does not operate the website and does not use CDN servers, as Mr. Christoforou repeatedly stated in response to Plaintiffs' questions about the agreements. Tr. pp. 91-104.

Finally, Plaintiffs' Opposition closes on the absurd proposition that a company's representative not only has to be prepared to testify about the company's collective knowledge, but that the witness must also be prepared to testify on any topic for which the company could reasonably educate itself.[6] Using Plaintiffs' logic, Mr. Christoforou could have been asked to testify about Taylor Swift's latest album or the Peloponnesian War, simply because information about both are on the internet and, as such, that information is "readily available" to Wisebits. It should not need to be said, but this is not the purpose of a Rule 30(b)(6) deposition.

---

[5] This is not a case of confusion on the part of Plaintiffs. During the deposition, they correctly stated that the contract was with Wisebits Ad Net Ltd. ("Q: …this is executed on behalf of Wisebits Ad Net Limited, correct?" Tr. p. 101). It is only in its representations to this Court that Plaintiffs have represented the Agreement as being something it is not.

[6] Ironically (but, again, not surprisingly), the case cited by Plaintiffs in support of this absurd proposition says nothing of the sort. Quite to the contrary, *United Prop. & Cas. Ins. v. Couture*, 2021 U.S. Dist. LEXIS 213576, at *20 (D.S.C. Nov. 4, 2021) actually holds that the insurance company's 30(b)(6) witness need not have been prepared to testify about whether or not certain pictures evidenced damage to defendants' property because "UPC claimed that they relied on someone else to make that determination—specifically, Vladimir Chery ("Chery"), a claims adjuster at UPC." *Id*, at *21.

**CONCLUSION**

For the reasons stated hereinabove and in Wisebits' Memorandum of Law in Support of its

motion, Wisebits respectfully requests that the Court issue a protective order declaring the 30(b)(6)

deposition of Wisebits to be concluded.

Respectfully Submitted,

/s/ Hannah Rogers Metcalfe
Hannah Rogers Metcalfe, Fed ID. 9943
Metcalfe & Atkinson, LLC
1395 South Church Street
Greenville, South Carolina 29605
(864) 214-2319

Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com


Valentin D. Gurvits (*pro hac vice*)
Frank Scardino (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com

*Attorneys for Wisebits IP, Ltd.*

March 20, 2024
Greenville, South Carolina