**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| JANE DOES 1-9,<br>                Plaintiffs,<br>vs.<br><br>COLLINS MURPHY, et al.<br>                Defendants. | Case No.: 7:20-cv-00947 |

<u>DECLARATION OF CONSTANTINOS CHRISTOFOROU</u>

Constantinos Christoforou being duly sworn, does hereby depose and state:

1.      My name is Constantinos Christoforou.  Unless otherwise stated, I make this affidavit of my own personal knowledge.

2.      I am a resident of Cyprus and previously served as the Director of Wisebits IP, Ltd.

3.      I was designated as the 30(b)(6) witness for Wisebits IP, Ltd. and was deposed as such on Wednesday, February 21, 2024.  I was designated in part because I had been the Director of Wisebits IP, Ltd. in 2019, when the events relevant to this case occurred.

4.      Prior to being deposed as the corporate representative for Wisebits IP, Ltd., I reviewed the 30(b)(6) deposition notice sent to the Company as well as the objections to that notice sent to Plaintiffs by Wisebits' counsel.  I spent time before the deposition preparing myself to be able to answer questions on behalf of Wisebits IP, Ltd., as I understood that this was the purpose of the deposition.

5.      Wisebits IP, Ltd. was simply a holding company for certain intellectual property, including the xHamster trademark and certain computer software that was used in connection with the xHamster.com website.  Other than licensing this intellectual property, Wisebits IP, Ltd. had no other function.

6.      During the deposition, I was asked many questions about matters that Wisebits IP, Ltd. (as a company) had no knowledge.  For example, I was asked questions about Content Delivery Network (CDN) servers, which Wisebits IP, Ltd. does not use and did not contract for because, again, Wisebits IP, Ltd.'s only function was as a holding company for intellectual property.  It did not operate the xHamster.com website.  I was also asked a lot of questions about contracts between other companies (contracts that Wisebits IP was not party to).  Wisebits has no knowledge or information about those contracts.

7.      I was also asked some questions for which I personally may have had some knowledge – for example, questions about how many employees a separate company that I own has and what non-Wisebits IP, Ltd. companies my company provides service to.  Wisebits IP does not have information about these topics and I was not at the deposition to testify in my personal capacity.  As I said, I am a resident of Cyprus and my understanding is that I cannot be asked questions in my personal capacity unless I agree to be deposed personally, which I did not do.

8.      Attached to this affidavit as Exhibit A is a list of questions that I was asked that I did not answer because Wisebits IP, Ltd, the company, had no knowledge of the answers to those questions.  I understood that I was required to testify as to whatever knowledge Wisebits IP, Ltd.

had and, to be clear, it did not have information from which it could have answered the questions in Exhibit A.

9.     Attached to this affidavit as Exhibit B is a list of questions that I was asked that I answered to the best of the Company's ability (even though sometimes I thought that I should not be required to answer those questions and said so).  With respect to those questions, the Company simply has no more information to provide.  I am not sure why the Plaintiffs say that I did not answer these questions, since the transcript shows I did.

10.     During the course of the deposition, I was asked the source of my compensation for serving as the Director of Wisebits IP, Ltd., a question that I declined to answer.  The bottom line answer to this question is that I was compensated by Wisebits IP, Ltd.  The compensation was paid to me pursuant to a consulting agreement that I had with Wisebits IP, Ltd.  The contract was between Wisebits IP, Ltd. and a consulting company that I own and operate.  I did not (and do not) want to make the name of that consulting company public because I do not want it to be publicly connected to adult content.  Companies (and individuals) connected to the adult entertainment industry are often targeted for threats and violence and I do not want to risk that kind of exposure.  I do not believe that the name of my consulting company is relevant to the Plaintiffs' claims.  Had I thought about it at the time, I would have simply testified to the fact that my compensation came from Wisebits IP, Ltd., as I have in this affidavit.

11.     Also during the course of the deposition, I was asked about the current shareholder of Wisebits IP, Ltd.  As I testified, the shareholder in 2019-2020 (which I believed to be the relevant point in time given the claims made in this case) was xHamster IP Ltd.  And,

3

although I do not understand why the name of the corporate shareholder that currently owns Wisebits IP, Ltd. is relevant to the Plaintiffs' claims, the company that is currently the sole shareholder of Wisebits IP, Ltd. is a Cyprus company called IT Masterland, Ltd. (To be clear, IT Masterland Ltd. was also the sole shareholder of Wisebits IP, Ltd. on the day of my deposition.)

12.    Finally, I was asked a number of times about when the Plaintiffs were damaged and how they were damaged. These are questions that Wisebits IP, Ltd. could not possibly know the answer to, not just because Wisebits IP, Ltd. didn't operate the xHamster.com website, but also because the Company has no way of knowing any of that information. When I was first asked that question, though, I responded by saying that I thought they might have been injured in 2012 (when I understand the videos of them were recorded) or 2019 (when the videos were uploaded) or both. I answered this way simply because I am personally sympathetic to the situation. But in answering that way, I was simply talking about my feelings and assumptions. I had no personal information to support that statement and Wisebits IP, Ltd. certainly had no information to support (or not support) that statement. I regretted answering the question that way and when I was asked the same questions again, I declined to answer because it's not information that the company has or, honestly, information that I have even in my personal capacity.

Signed under the pains and penalties of perjury this 27th day or March, 2024.

_____
Constantinos Christoforou

# EXHIBIT A

Q.  How many other employees are there?
A.  This is not appropriate.  I'm here to speak about Wisebits IP.  It's not related.
Q.  Are you going to answer my question, how many employees are in your company?
A.  No, it's not within the categories to be discussed.  It's a company not related to.

P. 14 ln. 8-14.

Q.  Do you perform fee for service work for xHamster.com?
A.  No.  These companies have nothing to do with what are here to discuss. They are not Wisebits LP.

P. 18 ln. 2-5.

Q.  I'm going to ask again.  Do you perform any work for related companies to Wisebits IP?
MR. GURVITS: Objection as to form.
A.  I will not answer.

P. 18 ln. 13-17.

Q.  Have you served as a director of any of the other entities in this caption?
A.  I'm here to answer about Wisebits IP.
Q.  Are you refusing to answer that question?
A.  Yes.
Q.  That question is not outside the scope of this 30(b)(6) deposition, but even in your personal capacity you can answer that question.
…
A. Excuse me. I will not answer.

P. 24 ln. 6-13, 22.

Q.  When did the harm occur to the plaintiffs in this case?
MR. GURVITS: Objection.
A.  Excuse me?· I don't understand the question.
Q.  Were the plaintiffs in this case harmed?
A.  Yes.
Q.  When were they harmed?
MR. GURVITS: Objection.
A.  I don't know. In 2012 when it was uploaded. Both.
…
Q.  So they were harmed at that time in 2012 when it was originally recorded?
MR. GURVITS: Objection.
Q.  You can answer the question. Were they harmed in 2012 when they were originally recorded?
MR. GURVITS:· Objection.

A.  I will not answer.
Q.  Were they harmed in 2019 when they were posted to xHamster.com?
MR. GURVITS:· Objection.
A.  I will not answer

P. 29 ln. 13-22, pp. 29-30 ln 25-12.

Q.  What is a -- as an accountant, what does it mean when -- when an auditor gives a financial opinion?
A.  I'm not here to advise as an accountant. I will not answer.

P. 38 ln. 22-25.

Q.  What are the types of opinions?
A.  I will not answer. And the financial statements are not part of what we agreed to discuss today.

P. 39 ln. 3-6.

Q.  What are the different -- remember I asked you about the word "opinion," you see the word "opinion" there in the title, and then the bases for the opinion below that, what are the different types of --
A.  No.
Q.  -- opinions released by auditors?
A.  I will not answer that.

P. 41 ln. 17-23.

Q.  Are you designated as the director in paragraph 2 of Wisebits Ad Net Limited?
A.  At the time of the signature I was director, yes, the company Wisebits Ad Net, Bodo Project Management. This document does not include Wisebits IP, and I will not answer any more questions about it.

P. 55 ln. 4-10.

Q.  Was the agreement for royalties in place after this date?
A.  As I'm reading the line below, "the companies are in the process of signing an agreement to merge with related party Wisebits Ad Net." This is what's going to happen but didn't happen yet. And this is beyond the scope of our discussion, and please do not ask me any more questions on it.  It's irrelevant to the case, irrelevant for this process.  I'm trying move on to other things.

Pp. 61-62 ln 22-6.

Q.  The question is "do you have a contract with Traffic Stars?"  And down on page -- or on line 3, the answer comes back:· "Yes. Yes, we do".  Now, would you -- would you read the question and answers beginning on line 4?

A.  Line 4. "What about Wisebits IP Limited, can you be more specific; can you explain the relationship between Hammy Media Limited and Wisebits IP Limited." Wisebits IP they hold different corporate rights which we use on our website."  Yes.

Pp. 77-78 ln. 18-4.

Q.  In the middle of it, you see the line that says, "the company is in the final process of signing an agreement to merge with related party Wisebits IP Limited"?
A.  This is financial statements of Wisebits Ad Net.  I will not comment on them.

P. 83 ln. 2-7.

Q.  Do you see under 16.2 purchases of services, "related party connected with the ultimate controlling party royalty fees, 33,362,165," did that come from Wisebits IP services?
A.  I will not answer anything else on Wisebits Ad Net and the related financial statements.

P. 84 ln. 9-15.

Q.  Did any -- are -- of the other entities for which you were a director have their own dedicated office?
A.  I'm not discussing about the other entities.

P. 88 ln 11-14.

Q.  How can have you been or how long were you the director of Wisebits Ad Net Limited?
A.  I will not answer about Wisebits Ad Net.

P. 89 ln. 2-4.

Q.  What's the -- how -- how many companies are you a -- a director of currently?
A.  I am not answering this question.  It's not relevant.
Q.  During the time that you were the director of Wisebits IP, how many different companies were you the director of in addition to –
A.  I will not -- sorry.  I will not answer other engagements I had.
Q.  Just -- just organizations that are connected to the -- the work of xHamster.
A.  I will not answer that.
Q.  So just to be clear, my -- my question is when you were the director of Wisebits IP Limited, how many other xHamster-affiliated entities were you the director of?
A.  I will not answer this question.

Pp. 90-91 ln. 12-3.

Q.  Thank you.  We're going to use that -- those -- those numbers in the bottom right corner there in blue for being around -- going around in this document. Please go to page using the bottom right-hand number 444.  This document is signed by you, correct?

A.  This document on the first page, it's named the company Wisebits Ad Net. I will not comment on it.

P. 91 ln. 15-23.

Q.  Do you see here that this talks about the provision of CDN MSCID and then it has pricing details about various different arrays of CDN service?
A.  I will not answer.
Q.  Is this document available to you now -- is this information available to you now to talk related to CDN servers?
A.  I can see the document if this is the question.
Q.  But you won't answer questions about it?
A.  No, I will not answer.

Pp. 94-95 ln. 18-2.

Q.  When did you sign it?
A.  I will not answer anymore questions on this.  This document. It is not a document -- it is not content related to Wisebits IP.

P. 95 ln. 8-11.

Q.  Mr. Christoforou, are you -- are you -- as the individual who signed this document, are you qualified to speak to it?
A.  I don't understand the question.
Q.  Is there any reason why you couldn't speak to a document that you yourself have signed in your personal capacity not -- not for Wisebits IP?
MR. GURVITS: Objection.
A.  We here to answer questions about Wisebits IP. I don't understand the question.

P. 96 ln. 12-21.

Q.  Has -- has the term of this agreement expired; do you know if it's expired?
A.  I will not answer.
Q.  The question is is do you -- I just want to make sure you understand the question. Do you know if this agreement has expired?
A.  I will not answer.

P. 97 ln. 11-17.

Q.  Are you the director or were you the director of it at the time and that's why you executed it?
A.  I will not answer questions about other companies, only about Wisebits IP.
Q.  And the -- do you see the redacted portions here in this?
A.  I will not answer any questions on documents that are not related to Wisebits IP.

Q.  What if I have a question where I'm trying to figure out if it's related? You're cutting off my ability to ask questions about that. I -- I appreciate your assertion, but in order to -- really you need to -- to answer the questions that I have to you.

A.  No, I will object things beyond IP in areas that I was asked to testify, and I hope you appreciate that. I will not comment anything on it.

Q.  At the time that this document was executed, was the sole shareholder of Wisebits IP xHamster IP Limited?

A.  I will not answer questions about the document.

P. 101 ln. 4-23.

Q.  You see at the bottom of page 373 there it says governing law and venue. "The agreement and any action related will be governed and interpreted by and under the laws of the state of California without giving effect to any conflicts of laws, principles that require the application of the law of a different jurisdiction." Is that what that says in the first sentence there under 11.1?

A.  I will not comment on this agreement.

P. 103 ln. 11-19.

Q.  According to that language, where is the service available and appropriate?

MR. GURVITS:· Objection.

A.  I will not comment on this agreement.

Q.  Did you sign this agreement?

A.  I will not comment on this agreement.

MR. GENTALA:· Could we go to --

BY MR. GENTALA:

Q.  Oh, just one more question.  This -- this -- this agreement is – is available to you now, had you -- had you -- had you seen it in preparation for this deposition?

A.  I will not comment on this agreement.

P. 104 ln 7-19.

Q.  What kind of agreement is it?

A.  I will not comment on this agreement as it is not an agreement of Wisebits IP.

P. 105 ln. 15-17.

Q.  Is any of the license by Wisebits IP Limited used by Traffic Stars Limited?

A.  This is not something that Wisebits IP would know. It's the business of the licensee.

Q.  Are you personally aware if Traffic Stars Limited uses the IP that is licensed by Wisebits IP?

A.  I am not here to answer that question.

Q.  Are you refusing to answer that question?

A.  Yes.

P. 106-07 ln. 19-2.

Q.  Was there voyeuristic content on xHamster.com before 2019?
A.  Wisebits IP wouldn't know anything about the domain, the website, the material, the uploads. Wisebits IP licenses out the intellectual property.
Q.  I understand.  But will you answer questions about periods of time before 2019?
A.  About what?  I have answered many questions before '19.  I have answered everything that has to do with Wisebits IP before and after the time period that my legal advisors agreed what they would advise me. I gave the whole history of Wisebits IP, the trademarks, the shareholders, (indiscernible) the restructuring, everything.

P. 107 ln. 11-24.

Q.  On behalf of the company, do you think that it was appropriate for the women in this situation to have their videos posted on xHamster and to be viewed on the xHamster.com website?
MR. GURVITS: Objection.
A.  I will not comment on this.
Q.  Does the company think it's appropriate for that to have occurred?
MR. GURVITS: Objection.
A.  I will not comment on that.

P. 122 ln. 5-14.

# EXHIBIT B

Q.  What is -- what is an intangible asset?
A.  An intangible asset is an asset that doesn't -- that you cannot touch.  It's what we call intellectual property.  It doesn't say that -- I'm not here to explain the financial statements, accounting statements, financial accounting issues, comments on accounts.  I am here to give the general how Wisebits IP generates its income.

Pp. 44-45 ln. 23-6.

Q.  Thank you.  You can stop there.  Thank you for reading that.  Phas [sic] any other entity -- I -- I see that it says hundred percent of the company shares.  Has any other entity ever owned shares of Wisebits IP Limited besides xHamster IP Holding Limited?
A.  Not during the that period.
Q.  During what period?
A.  Until 2020 was xHamster IP Holdings.
Q.  And then what happened in 2020 that made it different than being a hundred percent owned by xHamster IP Holding?
A.  In 2020 it was xHamster IP Holdings.
Q.  Is it still xHamster IP Holdings?
A.  No, it's not.

P. 46 ln. 12-25.

Q.  But before that --
A.  If you have the financial statement, you can have a look.
Q.  I'm sorry, I talked over you.  I didn't get the full answer.
A.  So if you have the financial statements, you can see when it stopped having income.

Pp. 53-54 ln. 21-2.

Q.  Do you recognize this document?
A.  I recognize the document, yes, but it's -- it's -- it relates to Wisebits IP.

P. 54 ln. 21-23.

Q.  Are you designated as the director in paragraph 2 of Wisebits Ad Net Limited?
A.  At the time of the signature I was director, yes, the company Wisebits Ad Net, Bodo Project Management….

P. 55 ln. 4-8.

Q.  Was the agreement for royalties in place after this date?
A.  As I'm reading the line below, "the companies are in the process of signing an agreement to merge with related party Wisebits Ad Net."  This is what's going to happen but didn't happen yet.

And this is beyond the scope of our discussion, and please do not ask me any more questions on it.  It's irrelevant to the case, irrelevant for this process.  I'm trying move on to other things.  Yes, so in 2020, it ceased to receive royalties and the royalties remained with the company that they merged, Wisebits Ad Net.

Pp. 61-62 ln. 22-9.

Q.  I'm talking about the 2016 statement that we looked at together.
A.  Yes. I don't remember.
Q.  Did it say qualified opinion or opinion?
A.  I don't remember.

Pp. 62-63 ln. 25-4.

Q.  Are there related parties that were not disclosed on this annual report that were previously disclosed on prior annual reports?
A.  This is what it writes.

P. 66 ln. 12-15.

Q.  Who's the ultimate controlling party?
A.  Wisebits IP is the shareholder. It's --
Q.  Is it your decision -- I'm sorry.
A.  Yeah. It's not the same shareholder as Wisebits Ad Net, even though I'm not supposed to discuss about Wisebits Ad Net today.

P. 68 ln. 10-15.

Q.  And who is the -- the person that was designated to testify?
A.  Nikita Popov.
Q.  Do you know Mr. Popov?
A.  Yes.

P. 76 ln. 21-25.

Q.  Okay. Thank you. Then Mr. Gurvits objects, right, and then on page -- would you read the answer on page -- on line 24?
A.  "I mean, we -- I'm here to testify about Hammy Media. And as I said, we have one UBO. And we have -- "

Pp. 78-79 ln. 23-3.

Q.  What percentage of your time was focused on Wisebits IP as opposed to other duties for other entities?
A.  I will not answer that. I don't know.

P. 87 ln. 8-11.

Q.  Would it be less than 20 hours a week?
A.  I cannot measure it. I explained it. I cannot quantify it over nine years how much time a week.
Q.  Did you ever have weeks where you would be full time just working on Wisebits IP business as opposed to other entities?
A.  I don't know. I don't remember. I think no.

P. 90 ln. 5-11.

Q. What is – what is a CDN server?
A.  I have no idea. …

P. 91 ln. 24-25.

[Q.]  Are you aware of any of the CDN servers --
A.  No, I am not.
Q.  -- that has been used from 2019 to the present?
A.  Sorry to interrupt you. I am not aware.
Q.  Are you aware of -- of any CDN servers that were used prior to -- to 2019?
A.  Wisebits IP does not hire servers for CDN or anything technical, anything that has to do with xHamster.com.  And I don't know.

P. 93 ln. 7-15.

Q.  As the representative of Wisebits IP Limited, do you have any objection to providing that agreement?
A.  I will consult with my lawyers to decide.

P. 103 ln. 4-6.

Q.  This one also has been produced by your attorneys.  You're listed as -- Wisebits Ad Net Limited is represented by you as its director at the top of this, right?
A.  Yes.

P. 105 ln. 10-14.

Q.  What time period are you willing to answer questions about?
A.  As communicated, '19 and '20. That's what my legal advisors consulted me.

P. 107 ln. 7-10.

Q.  Will you provide us every licensing agreement related to the intellectual property that is held by or was held by Wisebits IP?
A.  You can ask our consultants to.

P. 111 ln. 10-13.