## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

JANE DOES 1-9,                              CASE NO. 7:20-CV-00947-DCC

        Plaintiffs,

v.

COLLINS MURPHY et al.,

        Defendants.

## DEFENDANTS MG FREESITES AND MINDGEEK S.À R.L'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL INDEPENDENT MENTAL EXAMINATIONS (FED. R. CIV. P. 35)

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

III.    THE COURT SHOULD ORDER DOES 2, 4, 5, 6, 7, AND 9 TO SUBMIT TO
        RULE 35 MENTAL EXAMINATIONS ........................................................ 10

        A.    The Subject Plaintiffs Have Placed Their Mental Condition "In Controversy." .. 11

        B.    There Is "Good Cause" To Order The IMEs Of The Subject Plaintiffs. ............. 13

        C.    The Court Should Order The Subject Plaintiffs To Submit To IMEs In
              Accordance With The Reasonable Parameters Proposed By Dr. Shelby. ............ 15

IV.     CONCLUSION .................................................................................................. 18

## TABLE OF AUTHORITIES

### CASES

*Doe ex rel. Doe v. Haley*,
2013 WL 6834598 (D.S.C. Dec. 23, 2013) ...........................................................11

*Duncan v. Upjohn Co.*,
155 F.R.D. 23 (D. Conn. 1994)..............................................................12, 14, 17

*Gavin v. Hilton Worldwide, Inc.*,
291 F.R.D. 161 (N.D. Cal. 2013)............................................................11, 13, 14

*Hayer v. Liverant*,
2023 WL 6062916 (N.D. Cal. Sept. 17, 2023) .......................................................12

*Holland v. U.S.*,
182 F.R.D. 493 (D.S.C. 1998) ...........................................................................17

*Hung Nguyen v. Regents of the Univ. of Cal.*,
2018 WL 6112617 (C.D. Cal. July 26, 2018)..........................................................10

*Jones v. Campbell Univ., Inc.*,
2020 WL 4451173 (E.D.N.C. Aug. 3, 2020)..................................................11, 13

*Ragge v. MCA/Universal Studios*,
165 F.R.D. 605 (C.D. Cal. 1995).........................................................10, 14, 16, 17

*Schlagenhauf v. Holder*,
379 U.S. 104 (1964)............................................................................11, 14

*Shirsat v. Mut. Pharm. Co.*,
169 F.R.D. 68 (E.D. Pa. 1996)...........................................................................17

*Simonelli v. Univ. of California-Berkeley*,
2007 WL 1655821 (N.D. Cal. Jun. 4, 2007)...........................................................18

*Smith v. Bd. of Governors of the Univ. of N. Carolina*,
2008 WL 4877131 (E.D.N.C. Nov. 10, 2008)..................................................13, 17

*Walton v. N. Carolina Dep't of Agric. & Consumer Servs.*,
2011 WL 883579 (E.D.N.C. Mar. 11, 2011) ..................................................13, 18

*Young v. CareAlliance Health Servs.*,
2013 WL 12162454 (D.S.C. Feb. 21, 2013)................................................10, 17, 18

### RULES

Fed. R. Civ. P. 35 ............................................................................. *passim*

Pursuant to Rule 35 of the Federal Rules of Civil Procedure, defendants MG Freesites Ltd. and Mindgeek S.à r.l. (together, "Defendants") hereby move the Court to compel certain of the Plaintiffs in this action—namely, Does 2, 4, 5, 6, 7, and 9 (the "Subject Plaintiffs")[1]—to appear for an independent mental examination ("IME") by Dr. Janine Shelby, Ph.D, in accordance with the reasonable parameters proposed by Dr. Shelby.

## I.    INTRODUCTION

This is exactly the type of case for which Rule 35 was intended.  Plaintiffs in this action are nine women who claim that the publication of "hidden camera" videos ("Videos") that depict them changing in a college locker room has caused them "severe," "permanent," and in some cases "debilitating" mental anguish and agony.  Plaintiffs have refused to disclose the amount of damages they are seeking in connection with these psychological injuries, and are apparently not seeking compensation for any documented monetary injuries, such as lost earnings or medical expenses.  Yet their counsel has indicated that they expect to recover millions, if not tens of millions, of dollars in compensatory damages.

Depositions and affidavits submitted by Plaintiffs have now confirmed that, far from seeking damages for "garden variety" embarrassment and humiliation, most of the Plaintiffs are claiming that they are experiencing a host of diagnosable psychiatric disorders such as paranoia, generalized anxiety, hypervigilance, depression, and post-traumatic stress disorder.  For example,

---

[1] Defendants have agreed not to seek IMEs for Does 1, 3, and 8.  *See* Declaration of Marc E. Mayer ("Mayer Decl."), *Id.* ¶¶ 2, 6.  There is another plaintiff—referred to herein as "Doe 10"—in the action *Doe v. Murphy*, No. 7:21-CV-03193-DCC (D.S.C.).  Mayer Decl. ¶ 2.  The deposition of Doe 10 was scheduled for April 26, 2024.  *Id.*  However, Doe 10 failed to provide Defendants with her medical records prior to the deposition, and thus her deposition was postponed.  *Id.*  To date, Doe 10 still has not provided medical records, and thus her deposition has not yet been rescheduled. *Id.*  To the extent necessary, Defendants will file a motion to compel Doe 10's IME after the deposition is complete.

several of the Subject Plaintiffs claim that ████████████████████████████████
███████████████████████████████████████████████. Others claim that ████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████. One of the Subject

Plaintiffs testified that ███████████████████████████ Another says that ████████████
████████████████████████. While some of the Subject Plaintiffs have sought

treatment, others have allowed their symptoms to go undiagnosed and untreated. Yet *all* of them

claim in one way or another that their injuries are "permanent" and their lives have been altered

irrevocably. All of the Subject Plaintiffs will testify to the jury about these injuries, and the jury

will rely on this testimony in determining the amount of damages to be awarded.

Rule 35 permits the Court to order individuals to submit to a mental examination in these

precise circumstances—namely, where the party's mental condition is "in controversy" and "good

cause" exists for such examination. There can be little dispute that both prongs of Rule 35 easily

are met here. Plaintiffs' Complaint, discovery responses, affidavits, and deposition testimony

confirm that Plaintiffs' mental and emotional injuries form the ***entire basis*** of their damages claim.

And even Plaintiffs concede that the severity and validity of their injuries cannot fairly or

reasonably be evaluated by the jury without some expert assistance; for that reason, ***Plaintiffs have***

***designated their own expert to testify as to their psychological harm***.

Due process requires that a seasoned, licensed mental health professional be permitted

examine the nature and scope of Plaintiffs' alleged injuries. Without such expert examination,

Defendants cannot adequately assess or refute Plaintiffs' claims concerning the severity of their

injuries, whether their condition is in fact permanent, and—perhaps most importantly—whether

the publication of the Videos is the sole (or even primary) cause of such injuries. Moreover, as set

2

forth below, the procedures proposed by Dr. Shelby are standard, fair, and are not unduly intrusive or burdensome.

Defendants are sensitive to Plaintiffs' concerns about being "re-traumatized" with intrusive examinations.  However, such concerns are unfounded here.  Dr. Shelby is a qualified, experienced psychological expert, who will conduct the examinations with industry-standard testing protocols and ensure that the results of the examinations are kept confidential pursuant to the Court's protective order.  Dr. Shelby also is prepared to conduct her examinations remotely via Zoom, so that the Subject Plaintiffs may participate from the comfort of their homes and take regular breaks. Dr. Shelby also will work with the Subject Plaintiffs to find dates that are not unduly burdensome.

Plaintiffs, for their part, will have an opportunity to depose Dr. Shelby concerning her report and are, of course, free to conduct another IME should they wish to do so.  While it is understandable that Plaintiffs would prefer not to have these examinations taken, it was their decision to bring claims for permanent emotional and mental damage and to seek substantial damages based on these claims.  The inconvenience of speaking to an independent expert ultimately cannot outweigh Defendants' right to a fair trial.

## II.    BACKGROUND

**Plaintiffs and The Videos.**  Plaintiffs in this action are nine former college students who visited defendant Limestone University in 2012 and 2013 for athletic events and, during their visit, were surreptitiously recorded changing clothes in a locker room.  In or about 2019, videos depicting Plaintiffs were uploaded by third parties to the website www.pornhub.com (the "Website").[2]  The Website, which is operated by defendant MG Freesites Ltd., is an ad-supported,

---

[2] In the Videos, some of the Plaintiffs briefly appear partially clothed, while others appear in undergarments or athletic attire.  One of the Subject Plaintiffs is very briefly fully exposed.  No sexual conduct is depicted in the Videos.

free video-sharing platform (akin to websites such as YouTube or Instagram) through which members of the public may upload and view audiovisual content (including lawfully produced adult-oriented or sexually explicit content).[3]

On March 4, 2020, Plaintiffs initiated this action.  The operative Fifth Amended Complaint asserts claims against Defendants for violations of the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), negligence, conspiracy, false light invasion of privacy, and violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.  *See* Dkt. No. 193 (cited herein as "5AC" or "Complaint").  All of Plaintiffs' claims against Defendants are premised entirely on the alleged publication and dissemination of the Videos on the Website.

In their Complaint, Plaintiffs do not identify the amount of damages that they are seeking to recover against Defendants.  Instead, they allege that they seek "actual and consequential damages, including damages for emotional distress, pain and suffering, in an amount to be determined at trial" and seek "special damages in an amount to be determined at trial."  5AC, Prayers for Relief.  This prayer is premised on allegations that Plaintiffs "have sustained, and will continue to sustain, injuries and damages, including but not limited to anxiety, humiliation, embarrassment, *serious mental and emotional distress and mental pain and suffering*."  5AC, ¶ 94 (emphasis added); *see also id.* ¶ 110 ("Defendants' conduct has caused Plaintiffs serious harm including, without limitation, physical, psychological, financial, and reputational harm.").

**Defendants' Ongoing Efforts To Obtain Information Concerning Plaintiffs' Mental and Emotional Distress Claims.**  Starting in 2021, Defendants attempted to obtain information about Plaintiffs' emotional distress and damages claims via written discovery.  Plaintiffs refused

---

[3] The Videos also appeared on other websites, including those allegedly operated by co-defendant Hammy Media, Ltd. d/b/a xHamster and/or its affiliated entities.  *See* Mayer Decl., Exs. A-F, Answer to Interrogatory No. 2 (identifying URLs at which Plaintiffs contend the Videos appeared).

to provide any information other than a single, boilerplate interrogatory answer, which was repeated verbatim in *all* of the Plaintiffs' written responses:

> Plaintiff has suffered injury to her reputation, humiliation, embarrassment, along with accompanying mental and psychological damage. Money was made from Plaintiff's image without her consent. The actual dollar amount of these damages will be presented to a jury for determination. Discovery is still ongoing, Plaintiff reserves the right to supplement this answer as information becomes available.

Mayer Decl., Exs. A-F, Answer to Interrogatory No. 3. Additionally, in response to an interrogatory requesting that "[f]or each claim of damages set forth in the immediately preceding interrogatory, identify all DOCUMENTS that support your damages claim," each Plaintiff stated: "Plaintiff has no documents in her possession responsive to this Interrogatory at this time." *Id.*, Exs. A-F, Answer to Interrogatory No. 5.

Defendants first requested that Plaintiffs consent to an IME in October 2021. Plaintiffs refused to do so. *See* Mayer Decl. ¶ 4. On June 14, 2023, Defendants renewed their request in a letter which identified a proposed expert, Dr. Janine Shelby, Ph.D, and outlined the parameters of the examination. *Id.* ¶ 4, Ex. G. After several conferences of counsel, the parties came to an agreement that they would defer the issue until after Plaintiffs' depositions had been completed and at that time re-assess whether IMEs were necessary. *Id.* ¶ 4.

**The Depositions Confirm That At Least Six Plaintiffs Claim To Be Suffering From Severe And Permanent Mental and Emotional Injuries.** Between April 11 and 25, 2024, Defendants took the depositions of Plaintiffs. *Id.* ¶ 5. The depositions made clear that at least *six* of the nine Plaintiffs in this action are claiming to have suffered severe, permanent (and in some

cases debilitating) mental and emotional injuries that they contend resulted from the publication of the Videos on the Website. *See generally* Mayer Decl., Exs. H-M.[4]  By way of example:



**Doe 2.**  Doe 2 claimed during her deposition that

**Doe 4.**  Doe 4 claimed during her deposition that

_____

[4] The deposition transcripts of the Subject Plaintiffs, namely, Does 2, 4, 5, 6, 7, and 9, are attached to the Mayer Declaration as Exhibits H-M and cited herein as "Doe 2 Tr.," "Doe 4 Tr.," and so on.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████

**Doe 5.** Doe 5 claimed during her deposition that ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

**Doe 6.** Doe 6 claimed during her deposition that ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

16562008.1



**Doe 7.** Doe 7 claimed during her deposition that

**Doe 9.** Doe 9 claimed during her deposition that

16562008.1

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

**Plaintiffs Continue to Refuse To Stipulate To IMEs**  Immediately following Plaintiffs' depositions, Defendants contacted Plaintiffs' counsel to request that the six Subject Plaintiffs (Does 2, 4, 5, 6, 7, and 9) stipulate to an IME conducted by Dr. Shelby.  *See* Mayer Decl. ¶ 6. Defendants agreed not to seek an IME for three of the Plaintiffs (Does 1, 3, and 8).  *Id.*  Plaintiffs did not respond to Defendants' request or propose any modifications to the proposed parameters for the IMEs.  *Id.*

On May 9, 2024, the parties held yet another conference to discuss the IMEs.  *Id.* ¶ 7. During that conference, Plaintiffs ***agreed that a mental examination was appropriate for Does 6 and 9***, but adamantly ***refused*** to stipulate to an examination of the other four Subject Plaintiffs (Does 2, 4, 5, and 7).  *Id.*  Moreover, with respect to Does 6 and 9, Plaintiffs stated that they would agree to the examination ***only if***: (1) Dr. Shelby's examination is confined to a set of specific, limited, pre-defined protocols that Plaintiffs' counsel never provided; (2) another person is present during the examination; and (3) there is a strict time limit, which Plaintiffs never definitively stated but have made clear must be significantly shorter than Dr. Shelby's proposal of approximately eight hours.  *Id.*  Plaintiffs' counsel would not entertain a compromise on any of these issues, each of which would materially impede Dr. Shelby's examination.  *Id.*; *see also* Shelby Decl. ¶¶ 4, 5, 8.  Accordingly, Defendants had no choice but to file this Motion.

### III.    THE COURT SHOULD ORDER DOES 2, 4, 5, 6, 7, AND 9 TO SUBMIT TO RULE 35 MENTAL EXAMINATIONS

Rule 35 of the Federal Rules of Civil Procedure provides, in pertinent part:

> The court where the action is pending may order a party whose mental or physical condition … is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.… The order: (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Fed. R. Civ. P. 35(a)(1)-(2).  Accordingly, under Rule 35, "the party moving for a physical or mental examination must meet two requirements: first, the physical or mental condition of the party must be 'in controversy'; and second, 'good cause' for the examination must be established." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 117-20 (1964)).  "The purpose of Rule 35 is to level the playing field between parties" and put the parties on more "equal footing" with respect to evaluating the plaintiff's mental state.  *Young v. CareAlliance Health Servs.*, 2013 WL 12162454, at **1-2 (D.S.C. Feb. 21, 2013) (internal citations and quotations omitted).

The decision to permit an IME is addressed to the sound discretion of the Court.  Courts routinely hold that Rule 35 should be construed liberally, however, in favor of granting the IME. *See*, *e.g.*, *Hung Nguyen v. Regents of the Univ. of Cal.*, 2018 WL 6112617, at *2 (C.D. Cal. July 26, 2018).  Although a party may have "ample opportunity for psychiatric or mental examination by [her] own practitioner or forensic expert," courts recognize that "[o]nly if no additional relevant information could be gained by an examination [by the opposing party] should the motion for a psychiatric examination be denied." *Ragge*, 165 F.R.D. at 608 (citation omitted)

As set forth below, there can be little dispute that both requirements of Rule 35—namely, the "in controversy" and "good cause" requirements—are easily satisfied with respect to the Subject Plaintiffs.

### A.     The Subject Plaintiffs Have Placed Their Mental Condition "In Controversy."

A plaintiff's mental condition is considered "in controversy" for purposes of Rule 35 when it is "itself the subject of the litigation."  *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 164 (N.D. Cal. 2013); *accord Jones v. Campbell Univ., Inc.*, 2020 WL 4451173, at *4 (E.D.N.C. Aug. 3, 2020) ("When a plaintiff asserts a mental or physical injury, 'he places that mental or physical injury clearly in controversy.'") (collecting cases).  The Subject Plaintiffs have made clear throughout this litigation that their alleged mental and emotional distress are central to this litigation and form the entire basis of their damages claims.

*First*, in their Complaint, the Subject Plaintiffs repeatedly allege that they have sustained "serious mental and emotional injuries and distress" as a result of Defendants' conduct (*see, e.g.*, 5AC ¶¶ 94, 140, 163), including "permanent mental anguish" (*id.* ¶ 191) and ongoing "anxiety, humiliation, embarrassment, … and mental pain and suffering" (*id.* ¶ 94).  *See Schlagenhauf*, 379 U.S. at 118-19 (pleading mental injury puts that "injury clearly in controversy"); *see also, e.g.*, *Doe ex rel. Doe v. Haley*, 2013 WL 6834598, at *1 (D.S.C. Dec. 23, 2013) (finding plaintiff's "mental injury is clearly in controversy" and ordering him to submit to a Rule 35 examination, where he alleged that defendants caused him to suffer "great and permanent mental harm and injury, ... emotional distress, alteration of his lifestyle, psychological trauma, apprehension, anxiety, depression, embarrassment, shame, and a loss of enjoyment of life") (citation omitted). In fact, the Subject Plaintiffs have asserted, and intend to pursue at trial, a claim for intentional infliction of emotional distress against defendant Murphy.  *See* 5AC ¶¶ 158-164; *see also, e.g.*,

11

*Hayer v. Liverant,* 2023 WL 6062916, at *3 (N.D. Cal. Sept. 17, 2023) ("Plaintiff's mental condition is 'in controversy,' as it is the subject of litigation based on her tort claim for intentional infliction for emotional distress.") (citations omitted).

 ***Second***, in response to Defendants' Interrogatories, the Subject Plaintiffs stated that they "suffered injury to her reputation, humiliation, embarrassment, along with accompanying mental and psychological damage." Mayer Decl., Exs. A-F, Answer to Interrogatory No. 3; *see also, e.g.*, *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D. Conn. 1994) (holding plaintiff placed his mental condition "in controversy" and ordering him to submit to a Rule 35 examination, where "Mr. Duncan's responses to defendant's discovery requests establish that plaintiffs' claims are based on Mr. Duncan's 'suffer[ing] and ... continue[d] ... suffer[ing of] physical and psychological damage as a direct and proximate result of his use of the defendant's [alleged conduct]").

 ***Third***, in affidavits they submitted to an expert witness and again during their depositions, the Subject Plaintiffs extensively described the mental and emotional distress that they allegedly suffered as a result of the allegations in the Complaint. *See* Mayer Decl., Ex. N, ¶¶ 19, 48. Although Plaintiffs' counsel argued during the meet-and-confer process that Plaintiffs' claims are simply "garden variety" claims of emotional distress, it is clear that the Subject Plaintiffs' claims go far beyond that. As discussed *supra*, their claimed symptoms include paranoia, severe anxiety, panic attacks, inability to maintain intimate relationships, inability to engage in activities such as shopping and travel, and in one case suicidal ideation and planning. *See also* Mayer Decl., Ex. N, ¶ 48. Presumably, the Subject Plaintiffs will testify to all of these symptoms at trial and, according to their counsel, intend to seek a massive damages award based on this testimony. As Rule 35 itself contemplates, the Subject Plaintiffs cannot be permitted to offer such deeply serious and

16562008.1

highly prejudicial testimony without according Defendants a full opportunity for an independent examination of their claims.

**B.    There Is "Good Cause" To Order The IMEs Of The Subject Plaintiffs.**

Courts consider a variety of factors in determining whether "good cause" exists for a Rule 35 examination.  Among the factors considered by courts are (1) "whether plaintiff is claiming ongoing emotional distress;" (2) "whether plaintiff plans to prove her claim through testimony of expert witnesses;" (3) "whether the desired materials are relevant;" and (4) "the possibility of obtaining desired information by other means."  *Gavin*, 291 F.R.D. at 165 (citation omitted); *see also Smith v. Bd. of Governors of the Univ. of N. Carolina*, 2008 WL 4877131, at *2 (E.D.N.C. Nov. 10, 2008) (finding "good cause for a mental examination to diagnose Plaintiff's asserted emotional distress and to independently assess the cause and extent of any emotional distress caused to Plaintiff by Defendants" where plaintiff claimed emotional distress damages and may present related expert testimony).  Courts in the Fourth Circuit also consider whether an examination is needed by Defendant "in order to defend against the claim," and "[w]here the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries."  *Jones*, 2020 WL 4451173, at *4 (collecting cases); *accord Walton v. N. Carolina Dep't of Agric. & Consumer Servs.*, 2011 WL 883579, at *3 (E.D.N.C. Mar. 11, 2011).  Each of these circumstances militates in favor of an IME of the Subject Plaintiffs here.

**Ongoing Emotional Distress.**    The Subject Plaintiffs' allegations and deposition testimony confirm that they claim that their mental and emotional distress is not only serious but also ***ongoing*** *See, e.g.*, 5AC ¶ 94 ("Plaintiffs have sustained, ***and will continue to sustain***, injuries and damages, including but not limited to anxiety, humiliation, embarrassment, serious mental and emotional distress and mental pain and suffering") (emphasis added).  This is sufficient to warrant

13

a Rule 35 examination.  Indeed, as multiple courts have noted, the "in controversy" and "good cause" requirements of Rule 35 "are merged" when, as here, a plaintiff claims "that her emotional distress is ongoing."  *Gavin*, 291 F.R.D. at 165, n.3; *see also, e.g.*, *Ragge*, 165 F.R.D. at 609 ("Sometimes the two requirements of Rule 35 are merged…. Thus, plaintiff's allegation in [ ] the Complaint, that her emotional distress is ongoing, is sufficient to establish good cause to compel a mental examination of her."); *Duncan*, 155 F.R.D. at 25 ("Courts have read [the U.S. Supreme Court's decision in] *Schlagenhauf* as merging the 'in controversy' and 'good cause' requirements of Rule 35 when a plaintiff claims an ongoing mental injury…. By claiming ongoing psychiatric harm caused by the negligence of the defendant, therefore, the plaintiff has placed his mental state in controversy, which in turn constitutes good cause for ordering a psychiatric examination under *Schlagenhauf*.") (citation omitted).

**Expert Witnesses.**   Plaintiffs have designated and produced a report from their proffered expert Peter Collins, "a physician … specializing in Forensic Psychiatry," discussing the Subject Plaintiffs' mental conditions.  *See* Mayer Decl., Ex. N, ¶ 48.  Thus, ***Plaintiffs themselves*** intend to offer expert testimony in addition to their own personal testimony.  It would be wholly unfair to deny Defendants an opportunity to have the Subject Plaintiffs examined by an independent licensed examiner that can ask the Subject Plaintiffs key questions that go to a fair assessment of causation and harm.

**Relevance.**   As discussed above, there can be little dispute that the requested examination is directly relevant to the issues in this case.  The Subject Plaintiffs intend to testify at trial concerning their mental injuries.  Moreover, the only measure of compensatory damages sought by the Subject Plaintiffs is for mental and emotional distress.  Accordingly, their testimony on such injuries forms the entire basis for their damages claims.

14

**Possibility of Obtaining Information Through Other Means.**  Defendants cannot obtain the desired information by other means.  Information about the Subject Plaintiffs' mental condition is uniquely within their possession and Defendants cannot meaningfully assess or rebut testimony concerning their mental condition without an opportunity to have the Subject Plaintiffs submit to an IME.  Rule 35 examiners are important because Defendants' counsel are not licensed or certified medical examiners and are simply not in a position to elicit and assess important information relating to the Subject Plaintiffs' mental injuries, and thus to issues of causation and damages based on those injuries.

**Ability of Average Layperson to Evaluate the Claims.**  The Subject Plaintiffs have testified to serious, complex, and diagnosable psychological injuries.  Critically, the testimony also reflects that the Subject Plaintiffs may have been experiencing many of these conditions prior to or for matters unrelated to the Videos.  In fact, there appears to be evidence of childhood trauma, family alcoholism, post-partum depression, and marital and relationship issues and dysfunctions. A licensed or certified medical expert is needed to professionally examine the Subject Plaintiffs, analyze these claims, assess whether the publication of the Videos is the cause of these injuries and conditions, and explain these concepts to the jury.  Plaintiffs apparently agree, since they designated an expert witness on similar topics.

C.    **The Court Should Order The Subject Plaintiffs To Submit To IMEs In Accordance With The Reasonable Parameters Proposed By Dr. Shelby.**

The accompanying Declaration of Dr. Janine Shelby (cited herein as "Shelby Decl.") sets forth the time, place, manner, conditions, and scope of the examination to be conducted, including the types of psychological tests that she may choose to administer.  *See* Shelby Decl. ¶¶ 3-9.  There is nothing unusual or improper proposed.  *Id.*.  During the meet-and-confer process, Plaintiffs

16562008.1

vaguely objected to Dr. Shelby's proposed parameters for the IMEs[5] and sought to impose several conditions.  *See* Mayer Decl. ¶ 7.  The Court should reject each of Plaintiffs' conditions, as they would unreasonably impede Dr. Shelby's ability to properly examine the Subject Plaintiffs.  *See* Shelby Decl. ¶¶ 4, 5, 8.

*First*, the Court should reject Plaintiffs' attempt to require that Dr. Shelby only use certain specific tests or otherwise adhere to certain specific protocols (which Plaintiffs have never identified or proposed).  The IMEs will be Dr. Shelby's only opportunity to examine the Subject Plaintiffs.  It is critical that she be afforded leeway to exercise her professional discretion and administer the IME in a manner that she believes, in her expert opinion, will enable her to best assess the nature of the Subject Plaintiffs' claimed injuries.  *See Ragge*, 165 F.R.D. at 609 ("Because the mental examination provides one of the few opportunities for a defendant to have access to a plaintiff, and the only opportunity for a defendant to have a plaintiff examined by defendant's expert, some preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted, provided it is not an improper examination.").  There is no basis "to require Dr. [Shelby] to select, and disclose, the specific tests to be administered in advance of the examination," let alone restrict her to certain tests.  *Id.*; *see also Smith*, 2008 WL 4877131, at *3 (rejecting plaintiff's request to limit the scope of questioning and finding no need for further disclosure by the expert as to the proposed testing).

*Second*, the Court should reject Plaintiffs' proposed condition that another person be present during the IME.  Courts have routinely barred third parties, attorneys, and other experts

---

[5] These parameters are set forth in Dr. Shelby's Declaration and the accompanying Proposed Order.  Plaintiffs did not expressly object to the "place" of the IME (*i.e.*, via Zoom, provided each Plaintiff is physically present in Kentucky for her IME) or "the person [ ] who will perform" the IME (*i.e.*, Dr. Shelby).  To the extent that Plaintiffs raise objections in this regard (or any other objections) in Opposition to this Motion, Defendants will address them on reply.

from attending IMEs, recognizing that their presence may constitute a distraction and impede the psychologist's ability to conduct a thorough examination. *See Holland v. U.S.*, 182 F.R.D. 493, 495 (D.S.C. 1998) ("the majority of federal courts have rejected the notion that a third party should be allowed, even indirectly through a recording device, to observe a Rule 35 examination") (citation omitted); *Young*, 2013 WL 12162454, at *1 (denying plaintiff's request for third party to attend her Rule 35 examination, noting "the greater weight of federal authority is to disallow the presence of third parties during these examinations," including the plaintiff's own attorneys or other experts) (collecting cases); *see also Shirsat v. Mut. Pharm. Co.*, 169 F.R.D. 68, 71 (E.D. Pa. 1996) ("it is recognized that psychological examinations necessitate an unimpeded, one-on-one exchange between the doctor and the patient") (collecting cases). Especially given that Dr. Shelby does not propose to use any unorthodox or potentially harmful techniques, Plaintiffs' request that another party be present during the IMEs is without merit. *See, e.g.*, *Ragge*, 165 F.R.D. at 609-10 ("Third party observers may, regardless of their good intentions, contaminate a mental examination. … Moreover, Dr. Lees-Haley does not propose to use unorthodox or potentially harmful techniques in his examination of plaintiff, requiring a third party to be present.… Accordingly, plaintiff's request for a third party observer during her mental examination is without merit.") (citations omitted); *Duncan*, 155 F.R.D. at 27 ("Because Dr. Jacobs does not propose to use unorthodox or potentially harmful techniques in his examination of Mr. Duncan, the court finds that there is no need for any of plaintiff's physicians or other mental health professionals to be present during the examination of Mr. Duncan.").

*Finally*, the Court should reject any effort by the Subject Plaintiffs to limit the IME to fewer than eight hours. *See Young*, 2013 WL 12162454, at *2 ("declin[ing] to place any limitations on the length of [the] examination," noting that "[t]he purpose of Rule 35 is to level the playing

17

field between the parties" and "[a] Plaintiff's medical examiner typically has unfettered access to the Plaintiff") (citations omitted).  To properly administer the IME, Dr. Shelby expects that she will need approximately eight hours with each of the Subject Plaintiffs, exclusive of breaks, which can be conducted in one day.  *See* Shelby Decl. ¶ 4.  This is reasonable and in line with what other courts have ordered.  *See, e.g.*, *Walton*, 2011 WL 883579, at *4 (ordering plaintiff to submit to "psychological examination and testing to last not longer than eight hours in one day"); *Smith*, 2008 WL 4877131, at *3 (finding "one eight (8) hour day is sufficient time to conduct the examination"); *Simonelli v. Univ. of California-Berkeley*, 2007 WL 1655821, at **1-3 (N.D. Cal. Jun. 4, 2007) (finding that "eight hours is a reasonable time frame for [p]laintiff's psychiatric examination" and denying plaintiff's request to limit it to three hours, because "the interests of both parties in the examiner's arriving at an accurate diagnosis militates against setting an artificially short time limit on Plaintiff's examination").  Anything shorter will prevent Dr. Shelby from fully evaluating the Subject Plaintiffs.  *See* Shelby Decl. ¶ 4.

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an Order compelling the Subject Plaintiffs to submit to an IME regarding their claimed mental and emotional injuries and distress.  In compliance with Rule 35(a)(2)(B), Defendants have submitted with this Motion a Proposed Order specifying "the time, place, manner, conditions, and scope of the examination, as well as the person [ ] who will perform it."

DATED: May 30, 2024                    TURNER, PADGET, GRAHAM AND LANEY, P.A.

Columbia, South Carolina              By: /s/ Mark Goddard
                                      Mark Goddard | Attorney ID: 09194
                                      email | mgoddard@turnerpadget.com
                                      direct | 803-227-4334

18

1901 Main Street, 17th Floor
Columbia, South Carolina 29209

J. Kenneth Carter | Attorney ID: 05108
email | kcarter@turnerpadget.com
direct | 864-552-4611
Post Office Box 1509
Greenville, South Carolina 29602
facsimile | 864-282-5993

Los Angeles, California                    MITCHELL SILBERBERG & KNUPP LLP

Marc E. Mayer | admitted *pro hac vice*
email | mem@msk.com
direct | 310-312-3154
2049 Century Park East
18th Floor
Los Angeles, California 90067

*Attorneys for Defendants MG Freesites, Ltd. and*
*Mindgeek S.à r.l*

16562008.1