**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| **JANE DOES 1-9,** | Case No.: **7:20-CV-00947-DCC** |
| **Plaintiffs,** | **PLAINTIFF JANE DOES 1-9'S RESPONSE IN OPPOSITION TO DEFENDANTS MG FREESITES AND MINDGEEK S.A.R.L.'S MOTION TO COMPEL INDEPENDENT MENTAL EXAMINATIONS** |
| **vs.** | |
| **COLLINS MURPHY et. al.,** | |
| **Defendants.** | |

Plaintiffs Jane Does 1-9, by counsel, submit the following response in opposition to Defendants' MG Freesites Ltd. and Mindgeek S.à.r.l.'s (Pornhub Defendants) motion to compel independent medical examinations of some of them:

## I. INTRODUCTION

The Court should deny the MG Defendants' motion to compel Rule 35 examinations of Jane Does 2, 4, 5, and 7[1] because their claimed emotional distress damages do not rise to the level that such an examination is required. To be sure, Does 2, 4, 5, and 7 have suffered emotional distress because of the Pornhub Defendants' dissemination of the video content. However, good cause does not exist for a Rule 35 examination because an average juror can certainly understand the humiliation, mortification, anxiety, and stress caused by having nonconsensual, nude or partially nude, spy cam videos of oneself displayed *on Pornhub*. Furthermore, good cause does not exist because a Rule 35 examination is not necessary. Less invasive discovery tools have already been used to gather the information needed to analyze these Does' damages. Furthermore,

---

[1] The parties have agreed that Does 1 and 8 will not undergo examination by the Pornhub Defendants' paid expert.

Does 2, 4, 5, and 7 also have not placed their mental condition "in controversy," such that they meet Rule 35's requirement for same.

The Does concede that Does 6 and 9 may meet the Rule 35 standard for an examination but not under the conditions outlined by the Pornhub Defendants. Does 6 and 9 have attached an affidavit from their expert suggesting a more streamlined testing process, given that many of the tests proposed are redundant and/or unnecessary.

## II. COUNTERSTATEMENT OF FACTS

Does 1-9 were all college athletes playing an away game at Limestone College in October 2012 when they were videoed without their knowledge or consent while showering and changing in a locker room. The video content was uploaded to numerous pornographic websites. Sometime in October 2019, the Does were informed through the university they all had previously attended, Bellarmine University, that the video content was on Pornhub.com. Some of the Does were able to perform a search and locate the video on Pornhub.com and xHamster.com. Despite requests by Bellarmine University and the Does to remove the video content, it was not immediately removed. By the time the websites removed the content, some of the Does were able to ascertain that the video had been viewed over 14,000 times.

The video was edited so that different video clips appeared on the websites, including Pornhub.com and xHamster.com. It is evident from viewing the videos that the Does were not aware they were being videoed.

After Pornhub and xHamster informed the Does that the nonconsensual videos had been removed, the videos were again found on Pornhub in October 2020. Thereafter, the Does retained an expert to perform an extensive search of the internet; the expert was able to locate the videos on numerous pornographic websites, including the following:

- https://Pornhub.com/view_video.php?viewkey=ph5d6f817008bfb
- https://www.pornhub.com/model/lordfauger18
- https://fap18.net/video/65729562/lockerroom-spy-cam-2
- https://pj222.top/videos/frente-a-su-novio-11831022
- https://xmobi.pro/xh5264695.html
- https://pj222.top/videos/frente-a-su-novio-11831022
- https://xmobi.pro/xh5264695.html
- https://xhamster.adultiq.club/videos/spring-break-college-girl-shower-window-spy-10257637
- https://mp4porn.space/video/hidden+locker+8+12197039
- https://xmobi.pro/xh12954667.html
- http://adultjoy.net/movies/12327800/sexy-ebony-teen-in-bathroom-hidden-cam-clip
- http://adultjoy.net/movies/12947334/webslut-claire-k-amazing-tits
- https://mp4porn.space/video/hidden+locker+7+12197038.
- https://xhamster.com/videos/hidden-locker-8-12197039
- https://xhamster.com/videos/hidden-locker-7-12197038
- https://www.faptube.xyz/media/xh12197038.html
- https://mp4porn.space/video/hidden+locker+7+12197038
- https://xmobi.pro/xh12197038.html
- https://mp4porn.space/video/hidden+locker+8+12197039
- https://xmobi.pro/xh13115477.html
- http://adultjoy.net/movies/12197038/hidden-locker-7
- http://adultjoy.net/movies/12197039/hidden-locker-8
- http://www.hothomemade.com/video/156842/hidden-locker-7
- https://xhamster.one/videos/hidden-locker-7-12197038
- https://pimpandhost.com/image/121833006
- https://pimpandhost.com/image/121833011
- https://xhamster.com/videos/hidden-locker-1-12197032
- https://xhamster.com/videos/hidden-locker-2-12197034
- https://xhamster.com/videos/hidden-locker-4-12197033
- https://xhamster.com/videos/hidden-locker-5-12197036
- https://xhamster.com/videos/hidden-locker-6-12197037
- https://mp4porn.space/video/hidden+locker+8+12197039
- https://mp4porn.space/video/hidden+locker+7+12197038
- https://xhamster.com/videos/hidden-locker-7-12197038
- https://xhamster.com/videos/hidden-locker-8-12197039
- https://xhamster.sitescrack.site/videos/hidden-locker-7-12197038
- https://xhamster.sitescrack.site/videos/hidden-locker-8-12197039
- https://xhamster.one/videos/hidden-locker-7-12197038
- https://xhamster.one/videos/hidden-locker-8-12197039
- http://www.hothomemade.com/video/156842/hidden-locker-7
- http://adultjoy.net/movies/12197039/hidden-locker-8
- http://adultjoy.net/movies/12197038/hidden-locker-7
- https://thumb-v-cl2.xhcdn.com/a/ljFlE-

3uuY1UOQ0XU3ryvA/012/197/039/240x135.8.jpg
- https://thumb-vcl2.
xhcdn.com/a/E4h67bz1NAOlgExiQofBqg/012/197/039/240x135.9.jpg
- https://thumb-vcl2.
xhcdn.com/a/s_7mV6KFyL4hZDAlHSwmAQ/012/197/038/2000x2000.1.jpg
- http://thumbv8.
xhcdn.com/a/Zab_08QnyZHe4POIzYHWXg/012/197/038/320x240.1.jpg
- https://thumb-vcl2.
xhcdn.com/a/6lu4f1CDnvnrbhVsTSRKdQ/012/197/038/240x135.1.jpg
- https://thumb-v-cl2.xhcdn.com/a/XKzG14sdMCnjyueR09-
Qyg/012/197/038/1280x720.1.jpg
- http://img.ohcdn.top/i/6434/2332.jpg
- https://10438-13.s.cdn13.com/contents/videos_screenshots/15000/15421/preview.jpg
- https://im0-tubcom.
yandex.net/i?id=efe0e38c37e0d5311c425f6698f76627&n=13&exp=1
- https://im0-tub-com.yandex.net/i?id=1ed2e4485aa76b720b069ea36bd16177&n=16
- https://im0-tub-com.yandex.net/i?id=e0ad19799f7766c7c75223faac778426&n=16
- https://pimpandhost.com/image/121833011
- https://pimpandhost.com/image/121833006
- https://xhamster.com/videos/voyeur-from-sports-team-locker-room-full-of-shyteens-
xhdoqGX
- https://xhamster1.desi/videos/voyeur-from-sports-team-locker-room-full-of-shyteens-xhdoqGX
- https://xhamster7.com/videos/voyeur-from-sports-team-locker-room-full-of-shyteens-
xhdoqGX
- http://adultjoy.net/movies/xhdoqGX/voyeur-from-sports-team-locker-room-full-ofshy-
teens
- http://www.tube3.com/search-voyeur%20from%20sports%20team/1.html
- http://voyeurteen.hteenz.com/dtr/link.php?gr=2&id=591e7f&url=nUE0pQbiY3Mir
JI1paEyMJ4hnUEyMJ56YzAioF94YaObpQ9jLKEbCJIUnTgvZ0MVI0L1ATSQA
GWuI1WfLax5ARjmnT9nEmy4HwSaCFMwLKD9qz95MKIlK3EyMJ4zMQ1JoG
x1JyuJrHyUJayvZwOaLmAPqzAhHacWFSWfJIpjM2WUBJcuZyM5FHuXqzVlZ
TqnoyMmLxAPqyccDacuFTgaMRqJoTWhGzIBIT94G1R9CD==
- http://www.foxporns.com/straight-video-
48051642.html?track=3384220840459110975323321121821878
- https://mofosex.net/play/KTiRiQ6ebbk/voyeur-from-sports-team-locker-room-fullof-
shy-teens/
- http://livehomemade.com/voyeur-from-sports-team-locker-room-full-of-shy-teens-
3868020.html
- http://www.paradisenudes.com/click/4-98/video/voyeur-from-sports-team-lockerroom-
full-of-shy-teens-8wgXXGnXE3y.html

The Does were distraught to discover the videos had been widely disseminated on other

sites, after thinking they had been removed. As a result of the videos being disseminated across

numerous pornographic platforms, all of the Does have experienced emotional distress and have either minimized or avoided the use of public dressing rooms, locker rooms, and restrooms.

Dr. Peter Collins is a forensic psychiatrist and has been retained by the Does as an expert. Dr. Collins has consulted previously with law enforcement regarding deviant sexual behaviors. He is an expert in paraphilic sexual deviant disorder—known as voyeurism—and the harms arising from video voyeurism to women and children. Dr. Collins has not conducted an examination or interviewed the Does. However, through his expertise, Dr. Collins will testify that voyeurism is sexually deviant behavior. He will further testify that the victims of video voyeurism, such as the Jane Does, can be traumatized by the fact their privacy has been breached. The victims feel betrayed over the fact that countless men are satisfying their sexual needs by viewing these videos and images, and the Does have no control over how these images are shared with others. The Does' avoidance of public dressing rooms, restrooms, and locker rooms is expected as a result of the invasion of privacy the women have experienced. These feelings are typical of victims like the Does.

However, the Does' emotional distress does not give rise to the need for eight hours of psychological testing and examination by the Pornhub Defendants' paid expert. The Does that are in dispute—Nos. 2, 4, 5, and 7—███████████████████████████████████. All of the

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████.

The Plaintiffs will address each Doe's need for a Rule 35 examination separately:

**Doe 2** – Jane Doe 2 ████████████████████████████

██████ ██████████████████████████████████████

████████████████████████████████

████████████████████████████

██████████████████████████████████████

████████████████████████ ████████████████

██████████████████████████ ██████████

██████████████████████████████████████

████████████████████████████

██████████████████████████

██████████████████████████████████████

██████████

**Doe 4** – Jane Doe 4 ████████████████████████ █████

████████████████████ ██████████████████████

██████████████████████████████████████

██████ ██████████████████████████████





**Doe 5** – Jane Doe 5 ███████████████████████



**Doe 7** – Jane Doe 7



**Does 6 and 9** – Does 6 and 9 ███████████████. However, the eight-hour testing and evaluation requested by the Pornhub Defendants' expert, Janine Shelby Ph.D., is disputed by the parties. The proposal to allow Dr. Shelby to interview each Doe for four hours is excessive. The Does were each deposed for six to seven hours. There is enough information contained in their deposition testimony to provide Dr. Shelby with necessary background information. It is unfair to subject the Does to a second de-facto deposition by Dr. Shelby by allowing her to interview same for several additional hours.

**Doe 6** – Doe 6 is ████████████████████





26 ███████████████████████



**Doe 9** – Doe 9 is ██████████████████████████████████



██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ ████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

Does 6 and 9 contest portions of the testing proposed by the Pornhub Defendants and have attached a supporting curriculum vitae and affidavit of Michael Herkov Ph.D., tendered confidentially under seal at **Exhibits 5 and 6**. Below is an overview of Doe 6's and 9's objection to the proposed testing and of Dr. Herkov's supporting rationale:

    a. <u>**Cognitive Instruments**</u> – Dr. Shelby seeks to administer tests of cognitive functioning, including the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) or Test of Memory and Learning (TOMAL). These tests would be appropriate in a case where there was alleged cognitive impairment, such as in a traumatic brain injury (TBI). However, the Does' case is of alleged psychological

---

[39] *Id*. at 107:8-11.
[40] *Id*. at 135:9-13.
[41] *Id*. at 70:20-71:17.

distress, with no assertion of cognitive impairment. As such, these tests are unnecessary and should be removed from the protocol.

b. **<u>Wide Scope Assessment Instruments</u>** – A wide range assessment instruments would be appropriate in this case. The Personality Assessment Inventory, Minnesota Multiphasic Personality Inventory (MMPI-2 or MMPI-2-RF), and Millon Clinical Multiaxial Inventory-IV (MCMI-IV) are all acceptable instruments. However, these tests are similar in their score. Therefore, only one of these instruments should be used per evaluation, although the particular test selected could vary between the Does. Again, the tests are duplicative, and only one of these should be allowed.

c. **<u>Instruments Designed to Assess Specific Symptoms or Issues</u>** – Dr. Shelby outlines four tests in this section, including the:

   i. Risk Inventory and Strengths Evaluation (RISE) – This test is more tailored for children and adolescents and is normed for clients ages 9 to 25 years. The test is more tailored for children and adolescents with school and community behavior problems. The test is inappropriate for these Does and should be excluded.

   ii. Suicide Probability Scale and/or Substance Abuse Subtle Screening Inventory-4 (SASSI-4) –

      1. The Suicide Probability Scale would not be appropriate unless there is specific suicidal ideation/behavior reported by the Does. Even then, this area would be covered in the interview and the Wide Scope

Instruments noted in "b"; all have items that cover this area. This scale would not be appropriate.

2. The SASSI-4 is for individuals with substance-use disorders. It is not widely used and would not be appropriate for these Does, unless there was some specific, credible evidence of a substance use disorder, which there is not. Again, the Wide Scope Instruments noted in "b" all have items that cover this area. This scale would not be appropriate.

iii. The Trauma Symptom Inventory-2 (TSI-2) – is frequently used in trauma cases. However, it is non-specific to a particular event. It also contains scales that are covered in the Wide Scope Instruments. This test, however, could have some utility in the evaluation if there is indication from the interview that the Does suffer from post-traumatic stress disorder (PTSD). But Does 6 and 9 have not been diagnosed with PTSD.

iv. Clinician-Administered PTSD Scale for the DSM-5 – this is a structured interview for assessing PTSD. Similar to the TSI-2, this test might be appropriate if the interview raises questions regarding PTSD.

v. The Adult Manifest Anxiety Scale – is an instrument designed to assess anxiety symptoms. This test would be redundant with any of the Wide-Scope Instruments listed in "b" and would not be appropriate if any of those instruments were used.

vi. Out of all of the tests listed in this section, only the TSI-2 or CAPS should be allowed.

d.  **Instruments Designed to Assess Adverse Experiences, Response Style, and Life Quality/Functional Impairment and Adverse Experiences.**

    i.  Adverse Childhood Experiences Scale – The items in this scale are not germane to the issues in this case, and many of the items are irrelevant and intrusive. These areas could be addressed in the interview.

    ii.  Miller Forensic Assessment of Symptoms (M-FAST) – is a measure of symptoms exaggeration and malingering. The PAI, MMPI, MCMI and TSI, identified above, all have similar and better internal measures of symptom validity, making this test unnecessary.

    iii.  Validity Indicator Profile (VIP) and Test of Memory Malingering (TOMM) – these are used in neuropsychological assessment for detecting malingering of cognitive deficits. Given that there are no claims of a brain injury or cognitive impairment in this case, these tests are unnecessary and should be excluded from the evaluation.

    iv.  The Structured Inventory of Malingered Symptomology (SIMS) is a malingering assessment of psychological and cognitive symptoms. It is usually used in cases where there are claims of severe mental impairment. The former would be covered in the other tests identified above, and the latter is not an issue in this case.

    v.  The Morel Emotional Numbing Test (MENT) assess PTSD symptoms and would be addressed by the Wide Scope Assessment Instruments, TSI-2, or CAPS identified above.  If there is some concern regarding PTSD, only one of these tests should be allowed.

14

vi. Quality of Life Inventory (QOLI) – measures various areas of life (e.g., relationships, money, neighborhood, etc). It seems inappropriate for this type of evaluation and would be addressed in the interview.

**Additional Instrumentation**: The Beck Depression Inventory-2, Hamilton Depression Rating Scale, and Beck Anxiety Inventory are all screening instruments. These instruments should be allowed only if none of the Wide-Scope instruments are used.

Finally, none of the Does have asserted a claim for intentional or negligent infliction of emotional distress against the Pornhub Defendants. The Does lone claim for IIED is against Collins Murphy, who has not requested a Rule 35 examination for any Doe.[42]

### III. ARGUMENT

**A.    The Pornhub Defendants' motion to compel should be denied as to Does 2, 4, 5, and 7 because the claimed emotional distress damages do not meet the Rule 35 standard.**

The Court should deny the Pornhub Defendants' motion to compel mental examinations of Jane Does 2, 4, 5, and 7 because the emotional distress damages claimed by them do not meet the Rule 35 standard. Unlike other discovery tools, physical and mental examinations under Rule 35 require more than a showing of mere relevance. *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964); *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 272 F.2d 921, 923-24 (4th Cir. 1962). "Under Rule 35, the invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate." *Guilford Nat'l Bank*, 272 F.2d at 924. Thus, Rule 35 requires (1) an affirmative showing by the movant of "good cause" for ordering an examination by the movant's paid expert and (2) a showing that the mental or physical condition of the nonmovant is truly "in controversy." Fed. R. Civ. P. 35. The "in controversy" and "good cause" requirements of Rule 35,

---

[42] Fifth Am. Compl. ¶¶ 158-64, June 3, 2022 (DE 193).

> are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

*Schlagenhauf*, 379 U.S. at 118.

### 1. Good cause does not exist for a Rule 35 examination when an average person can understand the nature and extent of the claimed injury.

Under Rule 35, good cause exists for a party's expert to conduct a medical or mental evaluation "when the claimant's condition is not only relevant *but necessary*." *E.E.O.C. v. Maha Prabhu, Inc.*, 2008 WL 2559417, at *2 (W.D.N.C. June 23, 2008) (citing *Guilford Nat'l Bank*, 272 F.2d at 924; emphasis added). "[G]ood cause does not exist where desired information could have been obtained through less invasive tools of discovery." *Id.* (citing *Schlagenhauf*, 379 U.S. at 118). "Under Rule 35, the invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate." *Guilford Nat'l Bank*, 272 F.2d at 924. If an average lay person can understand the nature, extent, and cause of the injury, good cause does not exist. *See id.* (citing *Greenhorn v. Marriott Int'l Admin. Servs., Inc.*, 216 F.R.D. 649, 652 (D. Kan. 2003)). "[N]ecessity . . . is the element that separates the procedures involving independent medical examinations and other tools of discovery." *Maha Prabhu*, 2008 WL 2559417, at *2 (citing *Schlagenhauf*, 379 U.S. at 118; emphasis added).

### 2. When a plaintiff's condition does not rise above the level of garden-variety emotional distress, the "in controversy" requirement is not met.

A plaintiff's mental condition is not "in controversy" unless her "condition rises above the level of 'garden variety' emotional distress." *Maha Prabhu*, 2008 WL 2559417, at *3 (citing *Cauley v. Ingram Micro, Inc.*, 216 F.R.D. 241, 244 (W.D.N.Y. 2003)). The in-controversy requirement may be met when a plaintiff (1) has asserted a cause of action for IIED or NIED

against the party seeking the Rule 35 examination, (2) claims "unusually severe emotional distress," (3) alleges the defendant caused "a specific type of disorder" or psychiatric injury, (4) has disclosed an expert to support her claimed unusually severe emotional distress, or (5) concedes that her mental condition is in controversy. *Id.* (citing *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)).

"'The majority of courts have held that plaintiffs do not place their mental condition in controversy merely by claiming damages for mental anguish or 'garden variety' emotional distress.'" *Roe v. Marshall Univ. Bd. of Governors*, 2024 WL 712868, at *5 (S.D.W. Va. Feb. 21, 2024) (quoting *Boone v. Saginaw Health Clinic, PLLC*, 2021 WL 3771872, at *3 (E.D. Mich. Aug. 25, 2021)). "Events that give rise to lawsuits usually cause the plaintiffs some form of emotional distress. Although this emotional distress sometimes is severe and rises to the level of a clinical condition, it is more often the less serious sort of emotional pain that everyone feels when something bad happens." *Ricks v. Abbott Laboratories*, 198 F.R.D. 647, 648 (D. Md. 2001). There is a "difference between more serious emotional distress that might be diagnosed and treated as a disorder by a psychiatrist and the less severe grief, anxiety, anger, and frustration *that everyone experiences when bad things happen.*" *Id.* at 649 (emphasis added). And while a plaintiff can recover for either type of emotional distress, "a defendant *cannot require* a plaintiff to submit to a mental examination when the plaintiff alleges only the latter kind of emotional distress." *Id.* (emphasis added). If there is no specific mental injury or disorder claimed to have been caused by a defendant, then the plaintiff's condition is not in controversy. *Id.* at 650.

The outlined approach makes sense because it is consistent with Federal Rule of Evidence 702 and the role of an expert. *Id.* at 649 If the alleged emotional distress is so complex that only a

clinician can evaluate, then it may be helpful to a juror to hear from an expert on the subject. *Id.* However, a trier of fact

> does not need help understanding the ordinary grief, anxiety, anger, and frustration that any person feels when something bad occurs. *Most triers of fact are already experts in that*. Therefore, a defendant would not need to offer expert testimony on this kind of emotional distress. By the same token, a defendant would not need to consult an expert to understand the ordinary emotional distress that any person in the plaintiff's claimed position would experience. *Because laypersons can understand this kind of ordinary emotional distress without the help of an expert, there is no need for an expert to conduct a mental examination of the plaintiff who claims only ordinary and uncomplicated emotional distress.*

*Id.* (emphasis added).

The in-controversy standard is also consistent with Federal Rule of Civil Procedure 26(b)(2), which allows a trial court to limit discovery "if the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). Because an "expert is not needed to explain ordinary emotional distress, the likely benefit of a mental examination is minimal. The burden, however, is substantial. Any mental examination involves an intrusion upon the privacy of the subject. This is especially true where, as here, the [paid expert] performing the examination would report to an adverse party." *Ricks*, 198 F.R.D. at 649. Because of "the minimal benefit and the intrusive nature of these examinations, the policy of Rule 26(b)(2) also counsels against ordering a mental examination when a party alleges only ordinary emotional distress." *Id.*

> **3.    *The emotional distress damages claimed by Does 2, 4, 5, and 7 do not meet Rule 35's standard for undergoing mental examinations by the Pornhub Defendants' paid expert.***

To be sure, Does 2, 4, 5, and 7 have suffered emotional distress because of the Pornhub Defendants' dissemination of the video content. However, good cause does not exist for a Rule 35 examination because *an average juror* can certainly understand the humiliation, mortification,

anxiety, and stress caused by having nonconsensual, nude or partially nude, spy cam videos of oneself displayed *on Pornhub*. *See, e.g.*, *Ricks*, 198 F.R.D. at 648-49 (finding common emotional distress "*that everyone experiences when bad things happen*" does not meet Rule 35 standard); *Maha Prabhu* 2008 WL 2559417, at *2 (same). Furthermore, good cause does not exist because a Rule 35 examination is not *necessary*. *See Maha Prabhu* 2008 WL 2559417, at *2 (reasoning that good cause requires necessity); *see also Schlagenhauf*, 379 U.S. at 118 (discussing good cause standard). Less invasive discovery tools have already been used by the Pornhub Defendants to gather the information needed to analyze the Does' damages. The Does have provided affidavits outlining their emotional distress. Written discovery has been exchanged. And Does 2, 4, 5, and 7 have each been deposed for full days. Good cause is lacking.

Does 2, 4, 5, and 7 also have not placed their mental condition "in controversy," such that they meet Rule 35's requirement. *See Roe*, 2024 WL 712868, at *5 (reasoning that ordinary emotional distress does not place mental condition in controversy); *Ricks*, 198 F.R.D. at 648-49 (same). They have not alleged causes of action for IIED or NIED against the Pornhub Defendants;[43] they have not claimed "unusually severe emotional distress," they have not alleged that the Pornhub Defendants caused "a specific type of disorder," they have not disclosed an expert to relate any specific psychiatric disorder to their emotional distress damages, and they have not conceded that their mental condition is in controversy. *See Maha Prabhu*, 2008 WL 2559417, at *3 (setting forth criteria to meet the in-controversy requirement). Instead, Does 2, 4, 5, and 7 are alleging damages that "usually cause . . . some form of emotional distress," and "[a]lthough this emotional distress sometimes is severe," laypersons "can understand this kind of ordinary emotional distress without the help of an expert[.]" *See Ricks*, 198 F.R.D. at 649. The in-

---

[43] And Collins Murphy—for which the lone claim of IIED has been alleged—did not request at Rule 35 examination of any of the Does.

controversy element of Rule 35 is also lacking. The Court should deny the Pornhub Defendants' motion as to Does 2, 4, 5, and 7. *See* sources cited *supra* this section.

**B.**     **While Does 6 and 9 may meet the Rule 35 standard for a mental examination, the Court should not order that they undergo same under the conditions outlined by the Pornhub Defendants.**

As set forth above at pages 9-15 and in the affidavit of Dr. Herkov, Does 6 and 9 should not be ordered to undergo the breadth of testing—and for a full day each—proposed by the Pornhub Defendants. Because many of the proposed tests are redundant and/or unnecessary, Doe 6's and 9's examination should be streamlined using the guidance set forth in Dr. Herkov's affidavit.

In addition, because of the already lengthy deposition transcripts, affidavits, and written discovery responses available to Dr. Shelby, the examinations of Does 6 and 9 should be limited to four hours each. *See Doe ex rel. Doe v. Haley*, 2013 WL 6834598, at \*2 (D.S.C. Dec. 23, 2013) ("Dr. Mack should use the record in this case to 'prepare himself and make more efficient use of the time allotted to him by the Court.'"). Also, a "psychiatric examination by a defendant's doctor is in reality adversarial in nature." *Di Bari v. Incaica Cia Armadora, S.A.*, 126 F.R.D. 12, 14 (E.D. N.Y. 1989). Due to the sensitive nature of this matter, Does 6 and 9 request that the examination be recorded "to preserve an accurate record of this examination." *See Haley*, 2013 WL 6834598, at \*2.[44] They also request that a third party be present to observe. *See id.* (allowing counsel to be present to ensure that plaintiff is comfortable but shall not interfere); *see also* Cal. Code Civ. Proc. § 2032.510(a) & (b) (West 2024) (allowing counsel to be present for mental examination); Ill. Comp. Stat. Ann., Chp. 735, § 5/2–1003(d) (West 2024) (same).

---

[44] While *Haley* dealt with a minor, this case involves sensitive content that Does 6 and 9 believe would allow their counsel to be present for the examinations.

## IV. CONCLUSION

For the aforementioned reasons, the Court should deny the Pornhub Defendants' motion to compel Rule 35 examinations of Jane Does 2, 4, 5, and 7. While the Does concede that Does 6 and 9 may meet the Rule 35 standard for an examination, the Court should limit such testing, as argued above.

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

*/s/ J. Edward Bell, III*
J. Edward Bell, III (#1280)
Joshua M. W. Salley (#13214)
Gabrielle A. Sulpizio (#12715)
219 North Ridge Street
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@edbelllaw.com
jsalley@edbelllaw.com

~ and ~

**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**

TYLER S. THOMPSON (admitted *Pro Hac Vice*)
LIZ J. SHEPHERD (admitted *Pro Hac Vice*)
CHAD O. PROPST (Admitted *Pro Hac Vice*)
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com
lshepherd@kytrial.com
cpropst@kytrial.com

~ and ~

**NATIONAL CENTER ON SEXUAL EXPLOITATION**

Benjamin Bull (admitted Pro Hac Vic)
Danielle Bianculli Pinter ( admitted Pro Hac Vice)
Christen Price ( admitted Pro Hac Vice)
Peter Gentala (admitted Pro Hac Vice)
1201 F Street NW
Washington, D.C.20004
bbull@ncose.com
dpinter@ncoselaw.org
cprice@ncoselaw.org
pgentala@ncoselaw.org

*Counsel for Plaintiffs Jane Does 1-9*

June 10, 2024
Georgetown, SC