# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9, <br><br> Plaintiffs, <br><br> v. <br><br> COLLINS MURPHY et al., <br><br> Defendants. | CASE NO. 7:20-CV-00947-DCC |

**DEFENDANTS MG FREESITES AND MINDGEEK S.À R.L'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL
INDEPENDENT MENTAL EXAMINATIONS (FED. R. CIV. P. 35)**

I.     **INTRODUCTION**

Defendants MG Freesites Ltd. and Mindgeek S.à r.l. (together, "Defendants") respectfully submit this reply brief in further support of their motion to compel (Dkt. No. 401) ("Motion" or "Mot.") certain of the Plaintiffs in this action—namely, Does 2, 4, 5, 6, 7, and 9 (the "Subject Plaintiffs")—to appear for an independent mental examination ("IME") by Dr. Janine Shelby, Ph.D, pursuant to Rule 35 of the Federal Rules of Civil Procedure. For the reasons set forth in Defendants' Motion, IMEs are warranted here because the Subject Plaintiffs' mental conditions plainly are "in controversy" and "good cause" exists for the examinations. Moreover, the Subject Plaintiffs—and their newly-proffered expert—should not be allowed to dictate the manner in which Dr. Shelby conducts the IMEs. As discussed below, nothing in the Subject Plaintiffs' opposition (Dkt. No. 410) ("Opposition" or "Opp.") requires any other conclusion.

The Subject Plaintiffs—all highly-educated, professional adults (some with advanced degrees)—certainly knew or should have expected that filing this lawsuit against Defendants for "severe," "permanent" "emotional distress" and "trauma" would require them to submit to an IME. Indeed, Plaintiffs have proffered *their own expert*, a forensic psychiatrist who apparently will testify that the Subject Plaintiffs have been traumatized, along with self-serving affidavits and deposition testimony describing their symptoms. Moreover, the Opposition's statements as to the low-level, garden-variety nature of the Subject Plaintiffs' harm directly contradicts the testimony of one of those Plaintiffs that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇,[1] and to the other Plaintiffs' utter refusal to testify about what damages they believe would compensate them for the harms they have suffered. The Opposition's statements also cannot be

---

[1] *See* Reply Declaration of Marc E. Mayer dated June 14, 2024 ("Mayer Reply Decl."), Ex. A (Doe 4 Depo. Tr.) at 161:12-162:19 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

16603253.1

reconciled with Plaintiffs' refusal to respond to Defendants' proposal to negotiate a stipulation limiting the presentation of severe emotional harm evidence at trial[2] or to identify in their Rule 26 disclosures or interrogatory responses the amount of damages they are seeking at trial or the methodology used to calculate such damages. Suffice it to say that any claim that the Subject Plaintiffs are claiming only "garden variety" emotional damages is disingenuous at best. In these circumstances, it would be wholly unfair and prejudicial, if not an outright violation of due process, to deny Defendants the right to conduct a Rule 35 examination. Certainly, Plaintiffs cannot offer their own expert testimony without affording Defendants the ability to do the same. Accordingly, the Court should grant Defendants' Motion in its entirety and order the Subject Plaintiffs to submit to IMEs in accordance with Dr. Shelby's reasonable parameters.

## II.     THE COURT SHOULD COMPEL ALL OF THE SUBJECT PLAINTIFFS TO SUBMIT TO IMES

### A.     The Subject Plaintiffs' Mental Condition Plainly Is "In Controversy."

There can be no legitimate dispute that the Subject Plaintiffs have placed their mental condition "in controversy." As set forth in Defendants' Motion (at 11-13), the Subject Plaintiffs not only repeatedly allege "serious mental and emotional injuries and distress" in their pleadings, but have made clear throughout this litigation—including in their written discovery responses, affidavits, and depositions—that such injuries are severe, ongoing, and form the entire basis of their damages claims. In the seminal case on Rule 35 examinations, the Supreme Court held that this is sufficient to satisfy the "in controversy" requirement. *Schlagenhauf v. Holder*, 379 U.S.

---

[2] Such a proposal is reasonable and consistent with both Rule 35 and the normal practice of district courts within this Circuit. *See, e.g., Roe v. Marshall Univ. Bd. of Governors*, 2024 WL 712868, at *5 (S.D.W. Va. Feb. 21, 2024) (holding plaintiff did not have to submit to an examination ***only after*** plaintiff "submit[ed a] stipulation and a motion in limine to exclude evidence of severe mental injury" and chose not to pursue an IIED claim or a psychological expert report on damages).

104, 119 (1964) ("A plaintiff in a negligence action who asserts mental [ ] injury places that mental [ ] injury clearly in controversy…."); *accord Jones v. Campbell Univ., Inc.*, 2020 WL 4451173, at *4 (E.D.N.C. Aug. 3, 2020) ("When a plaintiff asserts a mental or physical injury, 'he places that mental or physical injury clearly in controversy.'") (collecting cases).

Disregarding binding and persuasive authority, the Subject Plaintiffs argue that their mental condition is not "in controversy" because they merely claim "garden variety" emotional distress. *See* Opp. at 16-20. This is wholly disingenuous and belied by the Subject Plaintiffs' own testimony. Far from the mild "grief, anxiety, anger, and frustration that everyone experiences when bad things happen" (*id.* at 17 (citation and emphasis omitted)), the Subject Plaintiffs testified at their depositions that ██████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

---

[3] *See, e.g.*, Declaration of Marc E. Mayer dated May 30, 2024 (Dkt. No. 401-2) ("Mayer Mot Decl."), Ex. H at 60:3-14, 61:8-18, 102:4-103:16, 113:8-22 (Doe 2, testifying that ██████ ██████████████████████████████████████████████████ *id.*, Ex. I at 44:19-45:13, 49:12-52:3, 104:21-106:5, 130:20-131:23 (Doe 4, testifying that ██████████ ██████████████████████████████████████████████████ *d.*, Ex. J at 57:17-58:21, 67:9-21, 79:15-80:9, 120:12-121:7 (Doe 5, testifying that ██████████████████████████████████████████████████ *id.*, Ex. L at 89:13-90:7, 94:20-95:2, 96:2-16, 105:10-106:19, 141:1-21, 197:11-14, 203:17-204:6, 212:2-20 (Doe 7, testifying that ██████ ██████████████████████████████████████████████████ *see also, e.g., id.*, Ex. K at 62:2-63:11, 70:4-23, 72:5-11, 73:3-74:2, 145:5-22 (Doe 6, testifying that ██████

███████████████████████████████████████████████

███ *See* Mot. at 5-8; *see infra* n.2. These are exactly the type of claims that warrant an IME. That some of the Subject Plaintiffs claim that they have not (yet) been ***diagnosed*** with a specific condition is irrelevant. *See, e.g., Javeed v. Covenant Med. Ctr., Inc.*, 218 F.R.D. 178, 179-80 (N.D. Iowa 2001) (finding the plaintiff's mental state was "in controversy" and ordering Rule 35 examination where the plaintiff claimed that she experienced "panic attacks," "saw a psychologist for anxiety and lack of confidence," and "discussed [but did not take] antidepressant medication" "exceed the magnitude of symptoms associated with a garden-variety emotional distress claim," even though "she had never been diagnosed with any mental disorder").[4]

The Subject Plaintiffs also ignore that they have offered their own expert witness to support their claimed emotional distress damages. The Subject Plaintiffs themselves admit—and their own authority confirms—that the "majority of courts" would find that the foregoing is more than sufficient to meet the "in controversy" requirement. *Ricks v. Abbott Lab'ys*, 198 F.R.D. 647, 648-49 (D. Md. 2001) (courts generally find the "in controversy" is met where, "in addition to a claim for emotional distress damages, ***one or more*** of the [five *Turner*] factors is also present," which include that the "plaintiff has offered expert testimony in support of her claim for emotional

---

███████████████████████████████████████████████; *id.*, Ex. M at 61:4-62:22, 108:18-25, 109:1-14, 141:19-142:5 (Doe 7, testifying that ███████████████████████████████████████████████.

[4] All of the cases that the Subject Plaintiffs cite are distinguishable. For example, in *E.E.O.C. v. Maha Prabhu, Inc.*, 2008 WL 2559417 (W.D.N.C. June 23, 2008), the court found the plaintiff's emotional distress was "garden-variety" where, unlike here, she made "no claim of specific psychiatric injury, but rather generalized feelings of distress." *Id.* at *3 (citations omitted). In *Roe*, 2024 WL 712868, the plaintiff herself "decided to … limit her claims to 'garden variety' emotional distress to avoid further trauma." *Id.* at *2.

distress damages") (emphasis added and citations omitted).[5] This is because it is fundamentally unfair for the Subject Plaintiffs to employ expert testimony to amplify their testimony of how much they were harmed and then deny Defendants the opportunity to conduct medical examinations of the Subject Plaintiffs that might rebut that testimony.

Moreover, another *Turner* factor is present here, namely, that the Subject Plaintiffs have asserted a specific cause of action for intentional infliction of emotional distress ("IIED"). *See* Dkt. No. 193 (cited herein as "5AC") ¶¶ 158-164; *see also, e.g.*, *Simon v. Bellsouth Advert. & Pub. Corp.*, 2010 WL 1418322, at **2-3 (W.D.N.C. Apr. 1, 2010) (listing among the *Turner* factors that the "plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress," and finding plaintiff's mental condition was "in controversy" and ordering an examination where plaintiff "asserted a specific cause of action for [IIED]," alleged emotional distress that "could be fairly categorized as 'unusually severe;'" testified to "health conditions" such as "depression, anxiety[,] and post traumatic stress disorder;" and designated an expert "who may testify at trial and would seem very likely to supplement [his] claim of emotional distress"). That the IIED claim is asserted against Murphy (and not Defendants) is irrelevant; the point is that the Subject Plaintiffs brought this cause of action, which confirms they are claiming to have suffered severe emotional distress from the events at issue in this lawsuit. *See, e.g.*, *Walton v. N. Carolina Dep't of Agric. & Consumer Servs.*, 2011 WL 883579, at *3, n.1 (E.D.N.C. Mar. 11, 2011) (finding "plaintiff's mental condition is clearly in controversy" where the plaintiff

---

[5] The five *Turner* factors are: (1) the "plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress;" (2) the "plaintiff has claimed unusually severe emotional distress;" (3) the "plaintiff has alleged a specific mental or psychiatric injury or disorder;" (5) the "plaintiff concedes that her mental condition is 'in controversy' within the meaning of Rule 35(a);" (5) "the "plaintiff has offered expert testimony in support of her claim for emotional distress damages." *Ricks*, 198 F.R.D. at 648-49 (citing *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D. Cal. 1995)).

asserted that she "suffered severe emotional distress" and "specific causes of action for intentional and negligent infliction of emotional distress," even though those "claims [had] been dismissed as against [the defendant seeking the IME]").[6] Plaintiffs' argument that the IIED claim is asserted only against Murphy is particularly unpersuasive given that Plaintiffs bring multiple claims against Defendants alleging that Murphy and Defendants conspired and schemed to perform the alleged conduct on which Plaintiffs' IIED claim is based. *See* 5AC ¶¶ 112-32, 194-97. Indeed, untangling the cause of that emotional distress (*i.e.*, whether and to what extent it is attributable to Murphy's conduct and/or the subsequent posting of the Videos) is a significant issue in this case and cannot be addressed without expert evaluation and testimony.

Finally, Plaintiffs' claim that they have not placed their medical condition at issue because they are not seeking "lost wages" or "medical expenses" (Opp. at 5, 8) is misleading. Plaintiffs are *exclusively* seeking damages for emotional distress and trauma—and not any other form of compensatory damages. And with the exception of one of the nine Plaintiffs that has been deposed thus far, who testified that ▮▮▮▮▮ (Mayer Reply Decl., Ex. A at 161:12-162:19), they have consistently refused, on instruction of counsel, to disclose the amount of damages, any estimate of what amounts would compensate them for harm suffered, or any method by which they intend to calculate their damages. *See* Mayer Mot. Decl., Exs. A-F, Answer to Interrogatory No. 3; *see also, e.g.*, Opp. Ex. 1 at 124:5-126:3 (Doe 2, testifying that ▮▮▮▮▮

---

[6] In any event, as discussed *supra*, the assertion of an IIED claim is only one factor under *Turner*, and the absence of such a claim certainly is not dispositive of the "in controversy" requirement. *See Smith*, 2010 WL 1418322, at *2 (emphasizing the word "or" to make clear that "[c]ourts have found mental [ ] conditions to be in controversy" where only one of the *Turner* factors is present).

██████████); Mayer Reply Decl., Ex. A at 158:12-160:3 (Doe 4, similar); Opp. Ex. 4 at 160:3-164:10 (Doe 5, similar); Mayer Reply Decl., Ex. B at 176:13-179-24 (Doe 6, similar); Opp. Ex. 3 at 217:9-219:4 (Doe 7, similar); Opp. Ex. 2 at 153:13-155:19 (Doe 9, similar). With Plaintiffs' counsel choosing to leave the door open for Plaintiffs to each claim damages of tens of, or hundreds of, millions of dollars, while obstructing Defendants' ability to learn how Plaintiffs themselves quantify the harm they suffered,[7] Defendants must be permitted to exercise their right under Rule 35 to have a trained medical expert explore and examine the scope and nature of the claimed injuries.

### B.    "Good Cause" Exists to Compel the Subject Plaintiffs to Submit to IMEs.

As set forth in Defendants' Motion (at 13-15), there also is "good cause" to compel the Subject Plaintiffs to submit to IMEs. Plaintiffs argue that IMEs are "not *necessary*"—and, thus, that "good cause does not exist"—for two reasons. Opp. at 18-19. Neither is persuasive here.

*First*, Plaintiffs argue that IMEs are not necessary because "an average juror can certainly understand the humiliation, mortification, anxiety, and stressed caused by having nonconsensual, nude or partially nude, spy cam videos of oneself displayed on Pornhub" without the help of an expert. Opp. at 18-19 (emphasis omitted). While an average layperson may be able to empathize with the Subject Plaintiffs, the average layperson "would have difficulty evaluating the nature, extent, and [especially] cause of the [Subject Plaintiff's] injuries." *Walton*, 2011 WL 883579, at *3 (citation omitted). ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[7] In addition, as noted above, each Plaintiff refused to respond to a proposal to avoid an IME by limiting the amount of damages she was seeking.



A certified medical expert, such as Dr. Shelby, is needed to professionally examine the Subject Plaintiffs and evaluate whether and to what extent the relevant incident—particularly, the publication of the Videos on Defendants' website—caused their claimed emotional injuries.

Furthermore, Plaintiffs' contention that no expert is needed is wholly disingenuous given that ***Plaintiffs retained their own expert***, a "forensic psychiatrist," to testify about the "harms" suffered by the Subject Plaintiffs as "victims of video voyeurism." *Id.* at 5; *see also* Mayer Decl., Ex. N ¶¶ 47-48 (report of Plaintiffs' retained expert, describing Plaintiffs' psychological symptoms and behavior "since learning that they had been surreptitiously videotaped" and stating that "harms inflicted upon victims [of video voyeurism] can be long-lasting, far-reaching, and highly damaging"). Even Plaintiffs admit that their expert will testify that the Subject Plaintiffs have been "traumatized" and experienced behavioral changes. Opp. at 5. Having themselves concluded that expert testimony is needed for the jury to understand the nature and extent of the Subject Plaintiffs' harm, they cannot now argue to the contrary when Defendants seek to offer their own expert testimony. Regardless, even assuming, *arguendo*, that an average layperson would be able to evaluate the Subject Plaintiffs' emotional injuries (which Defendants dispute), the fact that the

Subject Plaintiffs have proffered an expert report and intend to call that expert to testify about the Subject Plaintiffs' injuries requires a finding of good cause. *See Simon*, 2010 WL 1418322, at *3 ("This Court explained in [*Prabhu*] that good cause is not satisfied where a reasonable lay person would be able to understand the symptoms of emotional distress; however, if Plaintiff indicates expert witnesses will be called to testify regarding Plaintiff's mental state, then good cause would exist.") (citing and distinguishing *Prabhu*, 2008 WL 2559417, at *4). All of the cases that Plaintiffs cite are distinguishable on this basis (and others) and support a finding of good cause here.[8]

***Second***, Plaintiffs argue that IMEs are not necessary because the Subject Plaintiffs already "provided affidavits" and "[w]ritten discovery" and have "been deposed for full days." Opp. at 18-19. Deposition testimony and self-serving affidavits are not substitutes for an examination by a certified medical professional using standardized psychological tests, which would provide additional information pertinent to the assessment of the Subject Plaintiffs' claimed emotional distress. *See* Declaration of Dr. Janine S. Shelby (Dkt. No. 401-3) ("Shelby Decl.") ¶ 5 ("In my experience, IME participants often raise new issues during the course of the IME that they have not previously disclosed during deposition—or even to their own counsel."); *see also Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 196, 200 (N.D. Tex. 1995) ("plaintiff's deposition

---

[8] For example, in *Ricks*, the court found no good cause where the "Plaintiff ha[d] expressly stated that she 'does not seek to introduce expert psychiatric evidence,'" but noted that "[i]f Plaintiff did intend to introduce expert testimony on her mental state, [the court] would probably grant Defendant's request for a mental examination so that Defendant could meet Plaintiff's expert testimony with its own." *Ricks*, 198 F.R.D. at 650 (citations omitted). Similarly, in *Roe*, the court found no good cause where the plaintiff had "not disclosed a psychological expert or supplied an expert report to support an allegation of severe mental or psychiatric injury," but noted that "courts have found good cause for an examination when it is … necessary to provide a counter-expert opinion in response to the expert opinions offered by the plaintiff's health care providers." *Roe*, 2024 WL 712868, at **4-5.

testimony and counselors' reports … do not provide the type of first-hand observation and analysis needed to evaluate her claims of mental and emotional distress"), *aff'd* 164 F.R.D. 204 (N.D. Tex. 1996); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995) ("Only if no additional relevant information could be gained by an examination of [the plaintiff] should the motion for a psychiatric examination be denied.") (citation omitted).

In fact, courts routinely find good cause for a Rule 35 examination notwithstanding prior relevant discovery and deposition testimony. *See, e.g.*, *Perona v. Time Warner Cable Inc.*, 2016 WL 9051867, at *5 (C.D. Cal. May 5, 2016) (finding good cause even though "documentation of plaintiff's medical condition [was] accessible to defendant through previously discovered medical records and deposition testimony"); *Ali v. Wang Lab'ys, Inc.*, 162 F.R.D. 165, 168 (M.D. Fla. 1995) ("While plaintiff may be content to offer only his own testimony [regarding his alleged emotional injuries] to a jury, defendant is not compelled to limit its case to mere cross examination," and is entitled to "challenge plaintiff's claim and testimony" through the "testimony of an expert" based on an "examination of plaintiff by that expert.").

### III. PLAINTIFFS ARE NOT ENTITLED TO UNFAIRLY RESTRICT THE EXAMINATIONS.

Plaintiffs "concede that Does 6 and 9 may meet the Rule 35 standard for an examination" (Opp. at 2), but request that the Court limit the manner and scope of the examinations. Specifically, Plaintiffs request: (1) that the examinations be limited to certain specific tests; (2) that the examinations "be limited to four hours each;" and (3) that "a third party be present to observe" them. *Id.* at 20.[9] Each of these limitations directly conflicts with what Dr. Shelby has deemed

---

[9] Plaintiffs also request that "the examination be recorded." Opp. at 20. Defendants already agreed to this. *See* Defendants' Proposed Order (Dkt. No. 401-4) ¶ 7 ("Each IME will be recorded, except for the portion of the psychological assessment involving standardized administration of tests that

necessary to conduct effective IMEs in this case. *See* Shelby Decl. ¶¶ 4, 5, 8 ("It is important that I have the flexibility to pick which specific instruments I use," that "[I] have a full eight hours so that I can complete all of the [necessary] portions of the IME," and that "no other person [ ] be allowed in the room with Plaintiff during the IME").

Court-ordered "limit[ations] [on] the type of examination an expert has indicated is necessary in order to analyze [a] plaintiff's claims [ ] subvert the truth finding function inherent in Rule 35 examinations. Accordingly, courts refrain from limiting the manner in which an examination is conducted or the questions asked absent good cause for a protective order." *Fiello v. Daimler Trucks N. Am. LLC*, 2021 WL 1381131, at *6 (M.D.N.C. Apr. 12, 2021) (citation omitted). Plaintiffs have failed to meet this burden for any of the requested limitations. Indeed, the limitations they seek to impose on the IMEs are unfair, prejudicial, and contrary to the law and to standard practice in similar circumstances.

### A. Dr. Shelby Must Be Permitted to Select the Tests At Her Discretion.

There is no basis—and, indeed, it would be highly prejudicial—"to require Dr. [Shelby] to select, and disclose, the specific tests to be administered in advance of the examination," *Ragge*, 165 F.R.D. at 609, let alone to require her to administer only the specific tests that Plaintiffs' newly-proffered expert, Michael J. Herkov, Ph.D, deems necessary. *See* Opp. at 20; Opp. Ex. 6, Affidavit of Michael J. Herkov dated June 10, 2024 ("Herkov Aff.") ¶ 4 (opining that certain of Dr. Shelby's proposed potential tests are "unnecessary," "duplicative," "redundant," and should be "excluded from the Evaluation").[10] There is no evidence that Dr. Shelby is unqualified; to the

---

contain trade secrets, which Dr. Shelby is ethically and legally obliged to keep secure."); *id.* ¶ 10 ("Following the IMEs, … Defendants will provide Plaintiffs with copies of Dr. Shelby's recordings of the IMEs.").

[10] Notably, in certain instances, the parties appear to be in agreement. *Compare* Shelby Decl. ¶ 5(B) ("usually *only one* of [the] four [wide-scope] assessment measures will be administered")

contrary, as her resume reflects, Dr. Shelby has had a thirty-year career dedicated to the study, assessment, and treatment of trauma survivors and is eminently qualified to assess the Subject Plaintiffs' harm in a thorough, professional, and respectful manner. *See* Shelby Decl. ¶ 1, Ex. A. Nor is there evidence that any of the potential tests Dr. Shelby identified are improper.[11] *Id.* ¶ 5.

Moreover, there is good reason for Dr. Shelby not to restrict or further specify the potential tests; not only does this type of examination require flexibility (since Dr. Shelby cannot know what the Subject Plaintiffs may disclose to her during the IME, which may impact the applicable tests (*id.* ¶ 5)), but prior disclosure of the specific tests could taint the examination since it would allow the Subject Plaintiffs to unfairly prepare for their examination by, for example, rehearsing the answers with their counsel. Accordingly, Dr. Shelby should be allowed the flexibility to administer the tests that she deems appropriate. *See Ragge*, 165 F.R.D. at 609 ("examiner [should be allowed] to exercise discretion in the manner and means by which the examination is conducted, provided it is not an improper examination"); *Smith v. Bd. of Governors of the Univ. of N. Carolina*, 2008 WL 4877131, at *3 (E.D.N.C. Nov. 10, 2008) (declining to limit scope of questioning).

### B.    There is No Factual or Legal Support for Imposing a Four-Hour Limit.

"[C]ourts generally do not limit the amount of time an examining physician will have to conduct the examination," *Fiello*, 2021 WL 1381131, at *6, and Plaintiffs have not offered any legitimate reason why the Court should do so here. (citation omitted). Dr. Shelby has explained that she needs approximately eight hours to conduct the IMEs (Shelby Decl. ¶ 4), and courts have routinely found that this amount of time is reasonable for a Rule 35 examination. *See* Mot. at 18 (collecting cases). As discussed *supra*, the fact that the Subject Plaintiffs already sat for depositions

---

with Herkov Aff. ¶ 4(b) ("only one of these should be allowed").

[11] Plaintiffs only argue that certain potential tests are "redundant and/or unnecessary" (Opp. at 20), arguments that are more properly raised via a rebuttal report.

and produced discovery is irrelevant. The one case that Plaintiffs cite does not hold otherwise or in any way support imposing a time limit here. *See* Opp. at 20 (citing *Doe ex rel. Doe v. Haley*, 2013 WL 6834598, at *2 (D.S.C. Dec. 23, 2013) (suggesting the examiner "use the record" to "prepare himself" and imposing four-hour limit on examination of "a fourteen year old child with attention deficit hyperactivity disorder")). The Subject Plaintiffs are not minors (as in *Haley*), do not claim to have special or unusual needs, and do not offer any compelling reasons why a full-day examination would be unduly burdensome or oppressive. Moreover, Defendants have agreed that the examinations may take place remotely (so the Subject Plaintiffs may participate from their homes or another comfortable location) and with ample time for breaks. *See* Shelby Decl. ¶ 7.

C.      **There is No Compelling Justification for the Presence of a Third Party.**

Finally, Plaintiffs' request that "a third party be present to observe" the IMEs (Opp. at 20) is improper and unfair. "[T]he greater weight of federal authority is to disallow the presence of third parties during these examinations, and [the Subject Plaintiffs have] failed to establish a countervailing need for the presence of [any third party]." *Young v. CareAlliance Health Servs.*, 2013 WL 12162454, at *1 (D.S.C. Feb. 21, 2013) (collecting cases). Neither the purported "adversarial [ ] nature" of an IME (Opp. at 20 (citation omitted)), nor the "sensitive nature" of this matter (*id.*), warrants allowing a third party—especially Plaintiffs' **counsel**—to directly observe the IMEs in real-time—especially given that the IMEs will be recorded (*see supra* n.5).[12] *See Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 324 (N.D. Ga. 2000) (excluding plaintiff's

---

[12] Plaintiffs rely on *Di Bari v. Incaica Cia Armadora, S.A.*, 126 F.R.D. 12 (E.D.N.Y. 1989), but there, the court did **not** allow plaintiff's counsel to attend in effort to "divest[] [the examination] as far as possible of any adversary character." *Id.* at 13-14 (citations omitted). Plaintiffs cite only one case allowing the presence of a third party and, as noted *supra*, it is inapposite. *See Haley*, 2013 WL 6834598, at *2 (allowing "[p]laintiff's counsel [to] be present at the examination for the purposes of ensuring that the [p]laintiff, **a minor child**, remains comfortable") (emphasis added).

counsel from examination because their presence "would only increase the likelihood of creating an adversarial atmosphere"); *Barraza v. 55 W. 47th St. Co.*, 548 N.Y.S.2d 660 (1st Dep't 1989) (affirming order excluding plaintiff's counsel from psychiatric examination in a sensitive matter alleging negligence arising from rape and sodomization of an infant).  The Subject Plaintiffs have not offered any justification for this demand.  To the contrary, as "college graduates" with "full-time jobs," some with "advanced degrees" and "children" (Opp. at 5), the Subject Plaintiffs are capable of spending one day with a professional forensic psychologist over Zoom.

Because the Subject Plaintiffs have not shown good cause for the requested limitations, the liberal rules of discovery dictate that the examinations of the Subject Plaintiffs go forward on the reasonable terms set forth in Dr. Shelby's Declaration.

## IV.    CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' Motion, Defendants respectfully request that the Court enter an Order compelling the Subject Plaintiffs to submit to an IME regarding their claimed mental and emotional injuries and distress, and denying all of the limitations requested by Plaintiffs.

| DATED: June 14, 2024 | TURNER, PADGET, GRAHAM AND LANEY, P.A. |
|---|---|
|  | By: /s/ Mark Goddard |
| Columbia, South Carolina | Mark Goddard | Attorney ID: 09194<br>email | mgoddard@turnerpadget.com<br>1901 Main Street, 17th Floor<br>Columbia, South Carolina 29209 |
| Los Angeles, California | MITCHELL SILBERBERG & KNUPP LLP |
|  | Marc E. Mayer | admitted *pro hac vice*<br>email | mem@msk.com<br>2049 Century Park East, 18th Floor<br>Los Angeles, California 90067 |
|  | *Attorneys for Defendants MG Freesites, Ltd. and Mindgeek S.à r.l* |