# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9, <br><br> Plaintiffs, <br> vs. <br><br> COLLINS MURPHY, SHARON HAMMONDS, BRENDA F. WATKINS, LIMESTONE UNIVERSITY, MG FREESITES, LTD., d/b/a PORNHUB.COM, MG FREESITES II LTD., MINDGEEK S.A.R.L., MINDGEEK USA, INC., MG BILLING LTD., and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM, TRAFFICSTARS LTD., WISEBITS LTD, XHAMSTER IP HOLDINGS LTD, WISEBITS IP LTD., <br><br> Defendants. | Case No.: 7:20-cv-00947 |
| JANE DOE, <br><br> Plaintiff, <br> vs. <br><br> LIMESTONE UNIVERSITY F/K/A LIMESTONE COLLEGE, COLLINS MURPHY, MG FREESITES, LTD., d/b/a PORNHUB.COM, and HAMMY MEDIA, LTD. d/b/a XHAMSTER.COM, <br><br> Defendants. | Case No.: 7:21-cv-03193 |

## DECLARATION OF NIKITA POPOV

Nikita Popov, being duly sworn, does hereby depose and state:

1. My name is Nikita Popov. Unless otherwise stated, I make this affidavit of my own personal knowledge, as well as information that I have obtained by consulting with the employees of Hammy Media Ltd. ("Hammy") and/or the records of Hammy.

2. I am in-house counsel to Hammy and I served as Hammy's 30(b)(6) witness in connection with the present matter.

3. Hammy operates the xHamster.com website.

4. Hammy received Plaintiffs' Third Request for Production of Documents and provided both objections and responses and, as appropriate, it produced relevant documents within its care, custody, or control.

5. With respect to some of Plaintiffs' requests, however, Hammy simply did not have any responsive documents. Sometimes that was because the documents requested were not things that Hammy ever had and sometimes that was because – to the extent that responsive documents had existed at one point in time, they no longer exist because they were not kept in the ordinary course of business and were deleted prior to our having been notified of the existence of the present lawsuit.

6. So, for example, some of the requests in dispute now are related to documents that might have existed at one time related to the thumbnails that were created when the videos in question were uploaded to the xHamster.com website. The way our software works, however, information about thumbnails exists in the system only for so long as the videos themselves remain live on the website. So, when Hammy was informed by the local police that the videos in question were non-consensual, it provided a copy of the videos to the police (as they requested)

and then deleted the videos from Hammy's servers (also as requested by the police). When the videos were deleted, the thumbnails were also automatically deleted, as was all of the data connected to those thumbnails. All of this took place, as I said, before Hammy was aware of the present litigation.

7. Other of the Plaintiffs' requests involve documents related to the software used to operate the website during the 2017-2019 time frame. As Hammy explained in its responses to the Plaintiff, that software was created internally back when the website was first created. If there were ever any documents relating to that software (and it's not really clear what documentation Plaintiffs think might have existed) that would have been responsive to Plaintiffs' requests, such documents have long since been deleted. Again, that would have taken place long before Hammy was aware of the present litigation.

8. Plaintiffs also asked for documents concerning guidelines for Hammy's content moderators, as such documents existed in 2019. Hammy conducted a diligent search for such guidelines but was unable to locate any responsive documents. The closest Hammy came to a responsive document was the Reviewer's Guide as it existed in 2021 and, although we probably could have simply said that we had no responsive documents, Hammy instead chose to produce the 2021 Reviewers Guide since it was the closest thing we were able to locate. I should note that, although I was asked a lot of questions about how content moderation *currently* works for the xHamster.com website during the 30(b)(6) deposition, I was not asked a single question about how content moderation worked in 2019 nor was I asked any questions about how the guidelines for reviewers that existed in 2019 differed from the 2021 Reviewer's Guide.

9. Plaintiffs also ask for documents concerning Hammy's use of search engine optimization ("SEO") in connection with the terms "voyeur," "hidden camera," "spy camera," and variations

3

of those terms. Hammy does not have any such documents because it did not conduct any specific research or analysis relative to those terms. To the extent that Hammy undertook any SEO efforts at all, it simply applied the same automated steps to all popular categories on the website. I would note that (in Hammy's Interrogatory Answers) we *did* provide Plaintiffs with statistics concerning the popularity of various categories of videos (as measured by how many videos were posted on the xHamster.com website at the end of 2020 for each of the categories asked about by Plaintiffs). And, I would like the Court to know that none of the categories identified by Plaintiffs were particularly popular. At the end of 2020, there were 5,435,555 videos posted on the xHamster.com website in total. So, for example, the number of videos posted on the xHamster website at the end of 2020 for some of those categories were as follows:

> **Voyeur**: 36156 videos, or **0.67%** of the total number of videos available on the platform by the end of 2020;
> **Hidden**: 6487 videos, or **0.12%** of the total number of videos available on the platform by the end of 2020;
> **Spy**: 18430 videos, or **0.34%** of the total number of videos available on the platform by the end of 2020;
> **Secret**: 18709 videos, or **0.35%** of the total number of videos available on the platform by the end of 2020;
> **Locker room**: 6997 videos, or **0.13%** of the total number of videos available on the platform by the end of 2020;
> **Shower**: 37537 videos, or **0.69%** of the total number of videos available on the platform by the end of 2020; and
> **Public nudity**: 23097 videos, or **0.43%** of the total number of videos available on the platform by the end of 2020.

So, contrary to Plaintiffs' suppositions, we did not have any reason to prioritize SEO efforts towards these categories. And, in any event, we simply don't have documents responsive to Plaintiffs' requests.

10.     Finally, Plaintiffs asked Hammy to produce documents regarding the amounts of revenue generated by advertising placed on the xHamster.com website relating to specific tags or

categories. Our first (and primary) response is that Hammy has never had any such documents. If any entity was going to have such documents, it would be TrafficStars, Ltd. ("TrafficStars"), though it is my understanding – because Hammy asked TrafficStars about the existence of such documents – that TrafficStars does not have such documents either and could not create such documents even if it wanted to. I will leave it to TrafficStars to explain its position on that matter more fully.

11. I understand also, however, that Plaintiffs allege that Hammy and TrafficStars are "alter egos" of one another and for that reason, Hammy should be able to produce documents that are in the possession of TrafficStars. This is not true.

12. TrafficStars and Hammy are separate and distinct corporate entities. I can state that the two companies do not share any Directors.

13. The CEO of TrafficStars is not the CEO of Hammy and there is no overlap in officers between the two companies.

14. To the best of my knowledge, there is no overlap in employees between TrafficStars and Hammy.

15. TrafficStars and Hammy operate independently and, as far as I know, have entirely different operating procedures.

16. The relationship between TrafficStars and Hammy is contractual in nature. TrafficStars provides services for the xHamster.com website, just as it does for thousands of other websites.

17. Hammy does not have the right (or the ability) to require TrafficStars to produce documents in TrafficStars' possession. We did make inquiry of TrafficStars, as I said, when we received the most recent document request but were told that TrafficStars did not have any responsive documents.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 20th DAY OF NOVEMBER, 2024.

_____
Nikita Popov, Hammy Media, Ltd.