**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| JANE DOES 1-9, | |
| Plaintiffs, | |
| vs. | Case No.: 7:20-cv-00947 |
| COLLINS MURPHY, et al., | |
| Defendants. | |
| JANE DOE, | |
| Plaintiff, | Case No.: 7:21-cv-03193 |
| vs. | |
| LIMESTONE UNIVERSITY, et al., | |
| Defendants. | |

**WISEBITS IP LTD'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56**

**<u>INTRODUCTION</u>**

There is no genteel way to say this: Plaintiffs' continued prosecution of their claims against Wisebits IP, Ltd. ("Wisebits") – despite a wholesale lack of factual or legal support – is so frivolous as to be sanctionable. The Parties and the Court are precisely where they were when Plaintiffs named Wisebits as a defendant in this litigation more than two years ago, except that all involved have now traveled down a rabbit hole of unnecessary expenditures of time and money.

After years of discovery, Plaintiffs have adduced no admissible evidence whatsoever for their conclusory assertion that Wisebits – a Cypriot holding company that simply holds and licenses certain intellectual property to Hammy Media, Ltd. ("Hammy") – has connections to the

1

United States, much less South Carolina, that could possibly support an assertion of personal jurisdiction over it in this Court. Instead, Plaintiffs – at most – gesture vaguely at an inadmissible article on a German website for the unremarkable general proposition that Wisebits has some connections to Hammy and Hammy, in turn, has some connections with other companies.[1] This amounts to nothing more than Plaintiffs making spooky noises while waving their hands in the air – hardly the stuff that would allow them to avoid summary judgment.

More egregious still, Plaintiffs can point to no admissible evidence that remotely supports any of their claims against Wisebits. This is not even a little bit surprising. Plaintiffs' claims arise out of: (1) their having been improperly recorded in 2012 by a third party who had no connections to either Wisebits or Hammy; and (2) the posting of the improper recordings in 2019 to various websites including xHamster.com, again by a third party who had no connections to either Wisebits or Hammy. And, while Plaintiffs' Fifth Amended Complaint ("FAC"), which contained barely a mention of Wisebits, managed to barely avoid dismissal owing to the deferential standard afforded to pleadings at the Rule 12 stage, that time has passed. Now is the time for admissible evidence and legal arguments. With respect to Wisebits, Plaintiffs have neither. Accordingly, Wisebits' Motion for Summary Judgment should be allowed in its entirety.

## FACTS

The operative facts have not really changed from what Wisebits represented them to be two years ago; there are simply more details and the existence of record citations that the Court could not previously consider at the Rule 12 stage. One thing, however, is remarkably clear, two years of discovery have produced not a scintilla of evidence to support Plaintiffs' case, either from a

---

[1] Wisebits has never denied that there are connections between it and Hammy and it would be odd for it to do so given that it is the holding company for the xHamster trademark and other related intellectual property.

personal jurisdiction standpoint or from a substantive standpoint.  The material undisputed facts are as follows:

The Plaintiffs are residents of the states of Kentucky, Texas, and Indiana. FAC ¶¶7-15. In the Fall of 2012, Plaintiffs, who were then members of Indiana University's field hockey team, traveled to Limestone College ("Limestone") to participate in a game against the Limestone College team. FAC, ¶72. Someone – Plaintiffs allege Collins Murphy ("Murphy"), then Limestone's intramural/summer conference director – surreptitiously placed cameras in the locker room and recorded Plaintiffs and their teammates as they changed their clothes and showered. FAC, ¶¶73-76.

At the time these videos were recorded, Wisebits *did not even exist*, not having been incorporated until 2015.[2]  *See* Wisebits Rule 30(b)(6) Deposition Transcript (Constantinos Christoforou, company designee, "Wisebits Depo", attached hereto as Exhibit 11), pp. 16, li. 19; 26, li. 17-20; 53, li. 15; 61, li. 18-21).

Each of the Plaintiffs admit either that the Hammy Defendants[3] played no role in the creation of the videos at issue in this case,[4] or, at a minimum, that they have no evidence that the

---

[2] It should go without saying but apparently must be said that a company that did not exist at the time surreptitious videos were taken could not have encouraged the taking of such videos.

[3] For the purposes of their Depositions, the parties agreed that the term "Hammy Defendants" (or "Hammy Media Defendants") included "xHamster.com, Hammy Media Ltd., Wisebits IP Ltd., Wisebits Ltd., TrafficStars Ltd., and xHamster IP Holdings Ltd."  Doe 1 Tr. pp. 119-20, li. 20-2; Doe 2 Tr. pp. 148-49, li. 19-1; Doe 3 Tr. pp. 132-33, li. 21-6; Doe 4 Tr. pp. 210-11, li. 13-2; Doe 5 Tr. p. 208, li. 10-21; Doe 6 Tr. p. 205, li. 3-14; Doe 7 Tr. p. 241 li. 12-23; Doe 8 Tr. p. 120, li. 5-14; Doe 9 Tr. pp. 177-78 li. 19-3; Doe 10 Tr. pp. 147-48, li. 18-2.  (respective transcripts excerpts filed under seal as Exhibits 1-10).

[4]*See* Doe 1 Tr., p. 120, li. 13-18; Doe 2 Tr., p. 149, li. 7-16; Doe 3 Tr., p. 133, li. 13-22; Doe 4 Tr., p. 211, li. 5-15; Doe 5 Tr., p. 209, li. 7-23; Doe 6 Tr., pp. 205-06, li. 19-4; Doe 8 Tr., p. 120, li. 15-25; Doe 9 Tr., pp. 180-81, li. 23-8.

Hammy Defendants played such a role.[5]  In addition, each of the Plaintiffs admit that they have no evidence or knowledge of Collins Murphy, ever communicating with the Hammy Defendants or receiving any form of compensation from the Hammy Defendants.[6]   Likewise, the Plaintiffs admit that they have no evidence or knowledge of the person who uploaded the videos in question ever communicating with the Hammy Defendants or receiving any form of compensation from the Hammy Defendants.  *See id.*

Seven years later – in 2019 – the recordings of the Plaintiffs and their teammates were uploaded to "countless pornographic websites," including xHamster.com, which is owned and operated by Hammy.  FAC, ¶¶81.

Wisebits has never owned or operated the xHamster.com website.  *See*, Declaration of Constantinos Christoforou, ("First Christoforou Decl." DE 241-2, attached hereto as <u>Exhibit 12</u>), ¶4; Wisebits Depo., pp. 29, li. 5-12; p. 107, li. 11-15; Christoforou Declaration ("Second Christoforou Decl." DE 374-1 attached hereto as <u>Exhibit 13</u>), ¶6. Instead, Wisebits IP, as its name suggests, has always been a holding company for certain intellectual property, serving no other function but that one.  Wisebits Answers to Interrogatories (attached hereto as <u>Exhibit 14</u>), p. 2, Ans. 1.; Second Christoforou Decl., ¶6; Wisebits Deposition on Written Questions (attached hereto as <u>Exhibit 15</u>), p. 7, li. 1-3.  More specifically, Wisebits held the intellectual property in the trademark "xHamster," the hamster logo, the phrase "just porn, no bullshit," and certain software (which it did not create), which is utilized by Hammy in connection with its operation of the

---

[5] *See*, Doe 7 Tr., pp. 244-45, li. 25-11; Doe 10 Tr., pp. 149-50 ln. 14-6.

[6] *See* Doe 1 Tr., pp. 121-22, li. 15-14; Doe 2 Tr., pp. 150-51, li. 16-14; Doe 3 Tr., pp. 134-35, li. 22-20; Doe 4 Tr., pp. 212-13, li. 14-15; Doe 5 Tr., pp. 211-13, li. 9-11; Doe 6 Tr., p. 208, li. 1-24; Doe 7 Tr., pp. 247, li. 4-11, 248-49, li. 10-10; Doe 8 Tr., pp. 122-23, li. 4-2; Doe 9 Tr., pp. 182-84 li. 14-13; Doe 10 Tr., pp. 151-53, li. 16-1).

website.  Wisebits Depo, pp. 27, li. 7-20; p. 28, li. 3-21; p. 109, li. 4-6.  Wisebits has a single licensing agreement with Wisebits Ad Net, Ltd. (also a Cyprus company) for the use of that intellectual property and the proceeds from that licensing agreement constitute the entirety of Wisebits' revenues.  Wisebits Depo., pp. 49-50, li. 21 –8; Wisebits Answers to Interrogatories, p. 3, Ans. 2.

Mr. Christoforou was the sole Director of Wisebits from its formation in 2015 through 2023.  Wisebits Depo, pp. 15, li. 2-13; p. 16, li. 17-19; Wisebits Answers to Interrogatories, p.3, Ans. 5; Wisebits Deposition on Written Questions, p. 5., li. 15-23.   In that position, Mr. Christoforou had ultimate decision-making power and discretionary authority for the management of Wisebits.  Wisebits Depo, p. 17, li. 10-16; Wisebits Deposition on Written Questions, p. 6, li. 14-23; p. 7, li. 4-8.  During the relevant time period, Wisebits had no shared management with Hammy and no shared Directors with Hammy.  Wisebits Depo., p. 108, li. 15-22; Wisebits Deposition on Written Questions, p. 5, li. 15-23.  The relationship between Wisebits and Hammy was simply that Wisebits was designated as the holding company for certain intellectual property, as described above.  Wisebits Answers to Interrogatories, p. 4, Ans. 7.  Wisebits had no relationship whatsoever with TrafficStars.   Wisebits Depo., p. 106, li. 8-13; Wisebits Answers to Interrogatories, p. 4, Ans. 6.

During the relevant time-period, Wisebits had a single shareholder, xHamster IP, Ltd, which is an Antiguan company.[7]  Wisebits Depo., p. 31, li. 22-25.  Wisebits has no subsidiaries.  *Id.*, p. 31, li. 19.  This is the entirety of Wisebits' corporate organization.  *Id.*, p. 34, li. 3-24.

---

[7] Although it has no relevance to any of the issues before the Court, Wisebits today has a single shareholder, IT Masterland, Ltd., which is also a Cypriot company.  Second Christoforou Decl., ¶11.

During the relevant time period, Wisebits had a single contract with an outside vendor for the provision of services to Wisebits, Bodo Project Management, which provided administrative and consulting services, and which was also a Cypriot company.  Wisebits Deposition on Written Questions, p.8, li. 5-10.  Wisebits had no employees in the United States or anywhere else for that matter.  Wisebits Depo, p. 30, li. 13-21; Wisebits Answers to Interrogatories, p. 3, Ans. 5.

Wisebits does not now have an office in South Carolina or the United States, nor has it ever had an office in South Carolina or the United States.  First Christoforou Decl., ¶8. Wisebits does not have employees in South Carolina or the United States; does not maintain a bank account in South Carolina or the United States; and does not pay taxes in South Carolina or the United States, nor has it ever had or done any of these things. *Id*., ¶¶8-11.

## ARGUMENT

### I.    Summary Judgment Standard

Rule 56 provides that, as to a party who has moved for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law."  *Progressive Se. Ins. Co. v. Rodriguez,* 2024 U.S. Dist. LEXIS 193519, at *4-6 (D.S.C. Oct. 24, 2024), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Id.*

The party seeking summary judgment bears the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, (1986).  "Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. …Rather,

the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. …Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. …Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. …Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted…"  *Progressive Se. Ins. Co., supra* (citations omitted).

When Rule 56(c) "has shifted the burden of proof to the non-movant, he must produce evidence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits." *Id.  See also Gillespie v. Spartanburg Cty. Sch. Dist. Five,* 2024 U.S. Dist. LEXIS 127783, at *5-7 (D.S.C. July 18, 2024).

## II.      **Plaintiffs Have Failed to Adduce Any Evidence That This Court Can Assert Personal Jurisdiction Over Wisebits.**

Following a hearing before this Court on Defendants' Motions to Dismiss, this Court specifically held that, although it was not at that time dismissing Wisebits from the case on jurisdictional grounds, that the issue remained open to be revisited at the summary judgment stage:

> There are questions about exactly how these entities work together, how they reach into this jurisdiction, whether or not your showing of purposeful availment is ultimately justified based upon the facts that will be demonstrated through discovery. Jurisdiction is something that can be raised at any -- any time and all of these other things can be raised on summary judgment.

Transcript of August 16, 2023 Hearing (DE 305), p. 62.

With discovery now closed, it is obvious that – as Wisebits said from the start – it has no connections with South Carolina that would permit an exercise of personal jurisdiction over it in this forum.

Once a defendant raises a challenge to the exercise of personal jurisdiction "the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). And, although a determination of personal jurisdiction under a state's long-arm statute is often viewed as a two-step process – consideration of whether the state statute authorizes an exercise of jurisdiction, followed by a constitutional due process analysis – where, as here, the state's long-arm statute extends to the limits of the United States Constitution's Due Process Clause, the two inquiries merge into one. *See, e.g.*, *Wallace v. Yamaha Motors Corp., U.S.A.,* 2022 U.S. App. LEXIS 447, at *4-5 (4th Cir. Jan. 6, 2022)("Because South Carolina has interpreted its long-arm statute to extend personal jurisdiction to the constitutional limits imposed by federal due process, our inquiry must focus on due process")(citations omitted); *Goldowsky v. Gareri,* 2018 U.S. Dist. LEXIS 26212, at *4-5 (D.S.C. Jan. 29, 2018)("The South Carolina Supreme Court has held that the State's long-arm statute, S.C. Code Ann. § 36-2-(803), is coextensive with the limits of the Due Process Clause. …As a result, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'")(citations omitted). Under Fed. R. Civ. P. 4(k)(2), the Court conducts the same constitutional analysis, only applied to the entire country as opposed to a single state. *See, e.g.*, *Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 215 (4th Cir. 2002)("Rule 4(k)(2) allows a federal court to assert jurisdiction in cases 'arising under federal law' when the defendant is not subject to personal jurisdiction in any state court, but has contacts with the United States as a whole.")

"To satisfy the constitutional due process requirement, a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009)(quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "The minimum contacts test requires the plaintiff to show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "This test is designed to ensure that the defendant is not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.' ... It protects a defendant from having to defend himself in a forum where he should not have anticipated being sued." *Id.* (citations omitted).

The United States Supreme Court has reaffirmed that the due process inquiry must focus "'on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). As the *Walden* court explained:

> For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant in this case.
>
> First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State.... We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State....
>
> Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Id.* at 284-85.

In conducting its analysis, the Court must take extra care before exercising jurisdiction over foreign defendants. As the Supreme Court and the Fourth Circuit have cautioned, "Great care and

9

reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987); *Ellicott Mach. Corp. v. John Holland Party, Ltd.,* 995 F.2d 474, 479 (4th Cir. 1993)(quoting *Asahi* and noting that the need for caution in exercising personal jurisdiction applies "with particular force in actions against foreign national defendants").

The Fourth Circuit has "synthesized the due process requirements for asserting specific personal jurisdiction in a three-part test in which 'we consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 712 (4th Cir. 2002)).

And, perhaps most crucially for the present motion, in examining the question of personal jurisdiction, the Court must examine the jurisdictionally-relevant contacts of each defendant separately, without conflating the contacts of one defendant with another. *See, e.g., Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n.13 (1984)("It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other defendants. … It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other defendants"); *Luberda v. Purdue Frederick Corp.,* 2014 U.S. Dist. LEXIS 41951, at *8-9 (D.S.C. Mar. 28, 2014)("In a lawsuit with multiple defendants, the court must examine each defendant's separate and distinct contacts with South Carolina individually"); *Gordon v. Huncke*, 2011 U.S. Dist. LEXIS 116196, at *7 (D.S.C. Sep. 27, 2011)("In either case, each defendant's contacts with the forum state must be assessed individually"); *Estate of Thomson v. Toyota Motor*

*Corp.*, 2009 U.S. Dist. LEXIS 52144, at *4 n.5 (D. Md. June 12, 2009)("The plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant"); *Colson v. Samson Hair Restoration, LLC,* 837 F. Supp. 2d 564, 570 (D.S.C. 2011)("Although § 1367(a) permits a federal court to entertain pendent claims over which it would otherwise lack subject matter jurisdiction, federal due process still requires that a court have personal jurisdiction over each defendant.")

### A.     Purposeful Availment

The Fourth Circuit has articulated a series of nonexclusive factors to be considered in determining whether a defendant has engaged in purposeful availment including: "whether the defendant maintains offices or agents in the forum state ... whether the defendant owns property in the forum state ... whether the defendant reached into the forum state to solicit or initiate business ... whether the defendant deliberately engaged in significant or long-term business activities in the forum state ... whether the parties contractually agreed that the law of the forum state would govern disputes ... whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship ... the nature, quality and extent of the parties' communications about the business being transacted ... and whether the performance of contractual duties was to occur within the forum." *Consulting Eng'rs Corp.*, 561 F.3d at 278.

As the above recitation of facts should make clear – and as discovery has confirmed – none of the articulated factors are met: Wisebits has no offices or agents in South Carolina or the United States; has never solicited or initiated business in South Carolina or the United States; has no significant or long-term business activities in South Carolina or the United States; there is no contract between Wisebits and Plaintiffs selecting South Carolina or United States law (indeed, there is no contract at all between the parties); Wisebits has made no in-person contact with residents of South Carolina or the United States regarding a business relationship; the parties have

11

never communicated with one another; and there were no contractual duties to be performed within South Carolina or the United States.

Before proceeding to the next factor, it seems at least necessary to at least give voice to what should already be painfully obvious: this exercise – with respect to Wisebits at least – is absurd. It is an entity that should never have been named in this litigation and which should have been voluntarily dismissed from the litigation by Plaintiffs. Nevertheless, onward we proceed.

**B.    The Claims do not Arise Out of Wisebits' Activities Directed at the Forum**

Given that Wisebits has not aimed any of its activities at South Carolina or the United States, as discussed in detail above, Plaintiffs' claims cannot have arisen out of such actions. The undisputed record evidence shows that Wisebits is – and at all relevant times has been – nothing more than a holding company for certain intellectual property. Plaintiffs' claims have nothing to do whatsoever with the intellectual property licensed by Wisebits and the holding of such intellectual property cannot be said to be aimed at South Carolina or the United States. So, on both levels, Plaintiffs fail to meet this factor: Wisebits took no actions that were directed at the forum and, in any event, Plaintiffs' claims do not arise out of ***any*** act of Wisebits, regardless of where such acts were directed.

**C.    The Exercise of Jurisdiction Would Not Be Reasonable**

In determining if an exercise of personal jurisdiction is constitutionally reasonable, the Fourth Circuit has dictated the consideration of five factors: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies. *Consulting Eng'rs Corp,* 561 F.3d at 277-79 (citations omitted).

1. *Burden on the Defendant* – Wisebits is a Cypriot company. It has no employees or offices in South Carolina or the United States, does no work in the United States, has no connections to the United States and, as such, it would present an inordinate burden for Wisebits to be required to defend itself in this Court.

2. *The Interest of the Forum State* – Although a state certainly has an interest in protecting its citizens from harm, including the harm allegedly inflicted on the Plaintiffs in this action, it should first be noted that Plaintiffs are not actually residents of South Carolina. More importantly, Wisebits is not alleged to have taken any actions within (or aimed at) South Carolina or the United States, as such, the state has a diminished interest in the resolution of the present complaint, at least insofar as it sounds against Wisebits. Indeed, although it is also true that the United States as a whole has an interest in protecting its citizens, the US has no discernable interest in allowing Plaintiffs to pursue a claim against a company that has done nothing other than serve as a holding company for certain intellectual property utilized by another Defendant in this action, particularly where Plaintiffs' claims do not arise out of that intellectual property. Plaintiffs' claims are completely unconnected to the intellectual property rights held by Wisebits and would be precisely the same if such intellectual property did not exist.

3. *Plaintiffs' Interests in Convenient and Effective Relief* – Plaintiffs would presumably face their own burdens in having to litigate claims against Wisebits in Cyprus, and yet this factor, too, must be weighed against the wholesale lack of legitimate claims against Wisebits.

4. *The Final Factors* – To the extent that the final factors are applicable, they weigh in favor of a denial of personal jurisdiction given the important sovereignty concerns at play. *Ellicot Mach. Corp.*, 995 F.2d at 480 ("Continuing in the *World-Wide Volkswagen* analysis, we perceive that the issues here implicate fundamental substantive social policies affecting international trade, business, and sovereignty concerns. The involvement of these policies weighs

against the reasonableness of jurisdiction in Maryland.... In our view, the total picture implicates the concerns expressed in *Asahi* for constraint in the exercise of personal jurisdiction in an international context.") *See also*, *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988) ("a higher jurisdictional barrier" exists where, as here, the defendants are aliens as opposed to simply citizens from different states "because important sovereignty concerns exist.")

### III.     Neither the Alter Ego Theory Nor The Single Business Entity Theory Saves Plaintiffs' Jurisdictional Arguments.

In an attempt to sidestep this wholesale lack of connection between Wisebits and the jurisdiction, Plaintiffs previously attempted to argue that jurisdiction is appropriate because of Wisebits' relationships with one or more of the other Defendants in this action (as well as certain unnamed entities, though it's unclear how Plaintiffs believe that to be relevant), claiming that jurisdiction is appropriate under either an alter ego theory or a single business enterprise theory. Again, however, discovery has produced not a shred of evidence to support either theory.

Under South Carolina law, alter ego liability is a means by which a plaintiff may pierce the corporate veil of a defendant by proving *both* that: (1) there is "total domination and control of one entity by another," *and* (2) the controlling entity's "fraud or misuse" of the alter ego company has resulted in "inequitable consequences." *Colleton Cty. Taxpayers Ass'n v. Sch. Dist.*, 371 S.C. 224, 237-38 (2006).

The level of control must be such that the "subservient entity manifests no separate interest of its own and functions solely to achieve the goals of the dominant entity." *Id. See also Guldenzoph v. Indigo Rd. Hosp. Grp.*, 2024 U.S. Dist. LEXIS 98989 at *12 (D.S.C. June 4, 2024) ("The alter-ego doctrine is a theory of piercing the corporate veil under South Carolina common law… As with other veil-piercing theories, it 'is not to be applied without substantial reflection.' … It 'requires a showing of [1] total domination and control of one entity by another

and [2] inequitable consequences caused thereby.' … Notably, the inequitable consequences element requires some 'fraud or misuse of control by the dominant entity which results in some injustice.'" (emphasis in original); *Jones v. Enter. Leasing Co.-Southeast*, 383 S.C. 259, 267-68 (S.C. Ct. App. 2009)("[T]he alter ego doctrine is merely a means of piercing the corporate veil …Under this theory, when a parent company controls the business decisions and actions of its subsidiary, the subsidiary becomes an instrument or alter ego of the parent. …Control required for liability under an alter ego doctrine amounts to total domination of the subsidiary to the extent the subsidiary manifested no separate corporate interests and functioned solely to achieve the purpose of the dominant corporation. …Moreover, '[c]ommon officers and/or directors and public identification of one corporation as the other's subsidiary do not, without more, support the conclusion the subsidiary is its parent's alter ego or agent for the transaction of its business.' However, merely establishing the level of control or dominance a parent must have over a subsidiary, in order to prove it is the alter ego of the subservient corporation, is not sufficient to maintain an alter ago action. Instead "one must [also] show that the retention of separate corporate personalities would promote fraud, wrong or injustice, or would contravene public policy")(numerous internal citations omitted).

Indeed, "one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil*." Bittle-Lindsey v. Seegars Fence Co.,* 2022 U.S. App. LEXIS 13490, at *8 (4th Cir. May 18, 2022). "Nor does the exercise of 'oversight' permit disregard of the incidents of separate corporate entities. *Johnson v. Flowers Indus., Inc.,* 814 F.2d 978, 982 (4th Cir. 1987)

Plaintiffs have adduced no evidence that would allow them to meet either prong of the articulated test. Presumably (and it is only presumably because Plaintiffs have never actually articulated which entity they believe Wisebits to be the alter ego of), Plaintiffs are arguing that

Wisebits is the alter ego of Hammy.  The problem with this argument, of course, is that there is no evidence that Hammy had any control over Wisebits (pervasive or otherwise).  Indeed, the record evidence shows that there was no overlap of officers and directors between the two companies; and that Hammy did not exercise control over Wisebits.  Nor is there any evidence that Hammy somehow misused Wisebits' corporate identity in some sort of fraudulent manner.  In short, Plaintiffs' alter ego theory fails in its entirety.

Plaintiffs' "single business enterprise theory," fares no better.  Three South Carolina state cases set out the scope of this theory.  In *Walbeck v. I'On Co., LLC*, 426 S.C. 494 (Ct. App. 2018), the South Carolina Appeals Court discussed a then recently-decided South Carolina Supreme Court case, *Pertuis v. Front Roe Restaurants, Inc.*, 423 S.C. 640 (2018), where the state Supreme Court first adopted and outlined the single business entity theory.  More recently, in *Stoneledge at Lake Keowee Owners' Association v. IML Dev. Co., LLC*, 435 S.C. 109 (2021), the South Carolina Supreme Court took the opportunity to expand on its holding in *Pertius*, explaining in more detail the contours of the "single business enterprise theory."

In *Walbeck* (the case relied on by Plaintiffs), the court thusly summarized the single business entity theory as adopted by the *Pertuis* Court:

> …"the single business enterprise theory requires a showing of more than the various entities' operations are intertwined," as the theory had previously been applied by our courts. ...Rather, "[c]ombining multiple corporate entities into a single business enterprise requires further evidence of bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions."

*Walbeck* 426 S.C. at 528, quoting *Pertuis.*

As the *Walbeck* Court noted the "resulting from" language in *Pertuis* was crucial: "Here, even though there is evidence showing the various entities' operations are intertwined, there is no

evidence of 'bad faith, abuse, fraud, wrongdoing, or injustice *resulting from* the blurring of the entities' legal distinctions.'" *Id.* (emphasis in *Walbeck*).

In adopting the single business entity rule, the South Carolina Supreme Court quoted at length from a Texas Supreme Court case, specifically adopting its reasoning:

> Creation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace. We have never held corporations liable for each other's obligations merely because of centralized control, mutual purposes, and shared finances. There must also be evidence of abuse, or . . . injustice and inequity. By 'injustice' and 'inequity' we do not mean a subjective perception of unfairness by an individual judge or juror; rather, these words are used . . . as shorthand references for the kinds of abuse, specifically identified, that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like. Such abuse is necessary before disregarding the existence of a corporation as a separate entity. Any other rule would seriously compromise what we have called a 'bedrock principle of corporate law' - that a legitimate purpose for forming a corporation is to limit individual liability for the corporation's obligations. Disregarding the corporate structure involves two considerations. One is the relationship between two entities . . . . The other consideration is whether the entities' use of limited liability was illegitimate.

*Pertuis* 423 S.C. at 654-55, *quoting SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008).

The *Pertius* Court stressed, however, that the single business entity rule was not to be applied lightly:

> As with other methods of piercing the corporate form that have previously been recognized in South Carolina, equitable principles govern the application of the single business enterprise remedy, and this doctrine 'is not to be applied without substantial reflection.' … If any general rule can be laid down, it is that a corporation will be looked upon as a legal entity until sufficient reason to the contrary appears; but when the notion of legal entity is used to protect fraud, justify wrong, or defeat public policy, the law will regard the corporation as an association of persons. The party seeking to pierce the corporate veil has the burden of proving that the doctrine should be applied.

*Pertius* 423 S.C. at 655 (internal citations and quotation marks omitted).

And, in *Stoneledge*, the South Carolina Supreme Court reversed the findings of the trial court and appeals court, which had found that the defendants constituted a single business entity based (in part) on a unification of business operations between the defendants, self-dealing between the defendants, and a finding that, because the defendants' "profits were entirely dependent" on their joint venture to sell townhomes in a residential development that "their operations were clearly in pursuit of a common business purpose…." *Stoneledge* 435 S.C. at 125. In rejecting the lower courts' findings that the defendants together constituted a single business entity, the *Stoneledge* Court held that:

> Viewing the facts of this case with the requisite hesitancy to invade the LLC form, we do not believe these facts warrant the application of the single business enterprise theory. As noted above, in *Pertuis*, we held the single business enterprise theory requires more than just a showing that the various entities' operations are intertwined. A "common business purpose" is simply not enough. … For a court to combine different business entities into a single business enterprise, there must also be a showing of "bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions." …The conduct of Marick, Thoennes, and IMK did not rise to this level. Like other methods of invading the corporate form, invocation of the single business enterprise theory should be reserved for drastic situations and is the rare exception, not the rule.

*Id.* at 126.

Similarly, this Court recently had the opportunity to consider the single business entity rule in a case where Plaintiff made allegations similar to those made by Plaintiffs here to support its single business entity theory of liability. *Turtle Factory Bldg. Corp. v. ECS Southeast, LLP,* 2021 U.S. Dist. LEXIS 125238 (D.S.C. July 6, 2021). The defendants there included ECS Southeast, LLP, ECS Carolinas, and ECS Corporate, each of which was an operating subsidiary of Engineering Consulting Services, Ltd. *Id.* at *4-5. In *Turtle Factory Bldg. Corp.*, Plaintiff alleged that it had been harmed as a result of a Property Condition Assessment Report ("PCR") prepared and provided by Defendant ECS Carolinas. In support of its motion for summary judgment, ECS Corporate provided affidavits showing that it did not prepare the PCR at issue and, indeed, it "does

not provide engineering services, is not licensed to perform those services, and its primary function is to oversee corporate, human resources, IT and general management matters pursuant to a Master Services Agreement [the 'MSA'] with Engineering Consulting Services, Ltd." *Id.* at *4 (brackets in original). The plaintiff, on the other hand, argued that: (1) defendants had failed to comply with corporate formalities, including the lack of a signed written agreement delineating "the scope of services it provided to ECS Carolinas, LLP"; (2) there was a lack of "clear identification of its corporate officers and structure which would help distinguish it from any of the other ECS entities"; (3) "because ECS Corporate states it provided human resource services to all ECS entities, ECS Corporate was thus responsible for … a failure to properly train and supervise" the employee who prepared the PCR; (4) "ECS Corporate Services, LLC is part of the whole that has cause [sic] the harm to the Plaintiff"; and (5) "all Defendants appear to have the same address and utilize the same web address." *Id.* at *6-9.

Nonetheless, this Court had no hesitation in rejecting plaintiffs' single business entity theory, holding that "Plaintiff has put forth no evidence indicating bad faith, abuse, fraud, wrongdoing, or injustice resulting from an improper blurring of legal entities. …'It is commonplace for companies to establish multiple corporate entities, who maintain individual corporate identity despite close collaboration between the different entities' …'Combining multiple corporate entities into a single business enterprise requires further evidence of bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions.'" *Id.* (internal citations omitted).

One last case from this Court deserves mention as representative of just how extensive connections between companies can be and still not qualify as a single business entity if the intertwining corporate structure enabled the defendants to engage in some sort of fraud or abuse. *Guldenzoph v. Indigo Rd. Hosp. Grp.*, 2024 U.S. Dist. LEXIS 98989 (D.S.C. June 4, 2024). In

19

*Guldenzoph*, the Plaintiffs alleged that Defendant the Indigo Road Hospitality Group ("IRHG"), a South Carolina Limited Liability Company, operated a number of sushi restaurants across the South under the name O-Ku. "Each Restaurant Defendant is a separate LLC organized according to the laws of its respective state. …For example, O-Ku Charleston is a South Carolina LLC, O-Ku Nashville is a Tennessee LLC, O-Ku Atlanta is a Georgia LLC, and so on. …However, each of the Restaurant Defendants lists its principal office in its respective state business registration paperwork as 1426 Meeting Street in Charleston, South Carolina." *Guldenzoph* at *3-4. The *Guldenzoph* plaintiffs alleged that IRHG exercised complete control over each of the restaurant LLCs:

> Notably, Guldenzoph asserts that IRHG makes all employment related decisions for the Restaurant Defendants, including hiring and firing the Restaurant Defendants' employees and providing centralized Human Resources services for all Restaurant Defendants. … This control includes directly hiring the various general managers, chefs, and other management level employees for the Restaurant Defendants. … IRHG also allegedly controls the material aspects of the Restaurant Defendants' non-management workers' employment. … Guldenzoph accuses IRHG of defining the employees' job titles, positions, and duties; determining whether each position is hourly or exempt; determining whether each job receives the tip wage or the federal minimum wage; setting labor budget and staffing levels for each restaurant; mandating employee qualifications and training; retaining the ability to fire non-management employees; and mandating that all of the Restaurant Defendants use the same job descriptions, which include the name, "Indigo Road Hospitality Group," when advertising vacancies.
> In addition, IRHG asks employees working for one of the Restaurant Defendants to work for one of the other Restaurant Defendants. For example, while Guldenzoph regularly worked at O-Ku Nashville, she was asked to work at O-Ku Jacksonville for a few months when the latter was first opening.

*Id.* at *4-5.

Despite all of this evidence of pervasive control, this Court declined to find the single business entity theory applicable:

> The South Carolina Supreme Court… has made especially clear that the injustice requirement under the single business enterprise theory analysis necessitates something more than "a subjective perception of unfairness."

> [R]ather, these words are used . . . as shorthand references for the kinds of abuse, specifically identified, that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like. Such abuse is necessary before disregarding the existence of a corporation as a separate entity. Any other rule would seriously compromise what we have called a 'bedrock principle of corporate law'—that a legitimate purpose for forming a corporation is to limit individual liability for the corporation's obligations.

*Id.* at *13.

And, while the Court found that the Plaintiff there had alleged "that IRHG exerted an extreme level of control over the Restaurant Defendants," it nevertheless found that "her allegations fall short of indicating that defendants' corporate structure allowed them to perpetuate their allegedly unlawful employment practices." *Id.* at *15.

In the present case, and after years of discovery, Plaintiffs can show nothing but that there is some relationship between the companies and that they directly or indirectly play some role in ultimate operation of Hammy's business. As this Court noted during the hearing on the parties' Motions to Dismiss, there is nothing unusual or improper about such an arrangement:

> I mean, in many industries, separate subsidiaries are created for different purposes for -- for exactly that reason. There's nothing illegal about that.

Hearing Transcript, August 16, 2023, p. 9 (DE 305).

Ultimately, despite years of costly discovery, there remains no evidence that would support an exercise of personal jurisdiction over Wisebits and, accordingly, Wisebits' Motion for Summary Judgment should be allowed.

### IV.   <u>Wisebits is Entitled To Judgment on Each of Plaintiffs' Claims as a Matter of Law.[8]</u>

---

[8] Although Wisebits believes that the Court can and should dismiss the action against it on jurisdictional grounds, it would also respectfully ask this Court – given the time and expense invested at this point – to also rule on the substantive grounds of its motion so as to provide a more fulsome record for the Fourth Circuit if the Plaintiffs were to appeal dismissal of their complaint.

### A.     Section 230 of the Communications Decency Act

As this Court is well aware, Section 230 of the Communications Decency Act ("Section 230") creates a broad federal immunity protecting computer service providers against liability of any kind for information originating with a third-party user of the service.  *See, e.g., Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330 (4th Cir. 1997) and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 254-55 (4th Cir. 2009).  If the Court were to accept Plaintiffs' alter ego or single business entity theories and consider Wisebits to somehow be part of a unified entity operating the xHamster.com website, then Wisebits would be equally entitled to the immunity offered by Section 230.  To that end, and to avoid inundating the Court with duplicative arguments, Wisebits incorporates by reference herein the Section 230 arguments made by Hammy in its Motion for Summary Judgment.

On the flip side, to the extent that the Court finds that Plaintiffs have failed to produce sufficient evidence to support their alter ego or single business entity theories and thereby concludes that Wisebits has no role in operating the xHamster.com website and is, therefore, not a "computer service provider," it necessarily follows that, while Wisebits cannot rely on Section 230 immunity, it is nonetheless entitled to Summary Judgment because each of Plaintiffs' claims against it would fail as a matter of law.  Indeed, although it becomes somewhat nonsensical to even attempt to discuss the myriad of ways in which Plaintiffs' claims fail with respect to Wisebits once the Court has rejected Plaintiffs' alter ego and single business entity theories, in the interest of being comprehensive, Wisebits will attempt to do so.

### B.     18 U.S.C. §1591 (a)(1) and (a)(2) and §1595 (Count I)

The Trafficking Victims Protection Reauthorization Act ("TVPRA") provides a civil right of action for persons who have been subjected to sex trafficking. *See* 18 U.S.C. §§1591(a), 1595.

Section 1591 of the TVPRA articulates criminal provisions of the statute and section 1595 provides that, under certain circumstances, a civil right of action is available for the crimes articulated in §1591.  More specifically, Plaintiffs may assert a civil cause of action against: (1) those who directly trafficked the Plaintiff; and (2) those who did not "directly traffic the victim, but benefitted from what the facilitator should have known was a trafficking venture." *See, e.g., J.C. v. Choice Hotels Int'l, Inc.,* 2020 WL 6318707, at *3 (N.D. Cal. Oct. 28, 2020) (citation omitted).

In January 2023, the TVPRA was amended to include liability for anyone who "attempts or conspires to benefit" from a TVPRA violation, but the amendment does not apply retroactively to conduct that occurred prior to the amendment. *See* Abolish Trafficking Reauthorization Act of 2022, Pub. L. No. 117-347, § 102, 136 Stat., 6199 (2023) (hereinafter, the "ATRA"); *Ratha v. Rubicon Res., LLC,* 111 F.4th 946, 969 (9th Cir. 2024)("we conclude that ATRA does not apply to pre-enactment conduct.")

Turning to Plaintiffs' TVPRA claim, then, the claim – insofar as it sounds against Wisebits – can only be a beneficiary claim.  To succeed on such a claim, Plaintiffs must prove that (1) Wisebits knowingly benefited financially or by receiving anything of value; (2) from its participation in an undertaking or enterprise; (3) that the undertaking or enterprise violated the TVPRA with respect to the Plaintiffs; and (4) that Wisebits knew or should have known was violating the TVPRA with respect to the Plaintiffs.  *See, e.g., K.H. v. Riti, Inc*., 2024 U.S. App. LEXIS 3127, at *6 (11th Cir. Feb. 9, 2024); *Doe v. Red Roof Inns, Inc.,* 21 F.4th 714, 723 (11th Cir. 2021); *Doe v. Twitter, Inc.,* 555 F. Supp. 3d 889, 922 (N.D. Cal. 2021).

### i.     Section 1595 has no extraterritorial application

As a threshold matter, however, and before the Court even turn to an examination of the factors outlined above, Plaintiffs' TVPRA claim fails in its entirety for one simple reason: Section 1595, the only section that permits Plaintiffs to bring a civil claim, has no extraterritorial

application. *See, e.g., Doe v. Apple Inc.,* 2021 U.S. Dist. LEXIS 237710, at *38-39 (D.D.C. Nov. 2, 2021)("The foregoing assumes that § 1595 of the TVPRA even applies in this case, which involves allegations of conduct and harm in the DRC. But not every statute applies extraterritorially. Indeed, courts 'presume that a statute applies only domestically.' …This presumption can be rebutted only if the statute 'gives a clear, affirmative indication' that it covers foreign conduct. … 'When a statute gives no clear indication of an extraterritorial application, it has none'"); *Doe v. WebGroup Czech Republic*, 2024 U.S. Dist. LEXIS 131697, at *30 (C.D. Cal. July 24, 2024)("First, the court presumes that a statute applies only domestically. …This presumption can only be rebutted if the statute 'gives a clear, affirmative indication' that it covers foreign conduct. … 'When a statute gives no clear indication of an extraterritorial application, it has none.' … This appears to be the case here. The text of § 1595 does not include anything concerning extraterritorial jurisdiction.")  Wisebits is a Cypriot company and any acts or omissions it is charged with occurred fully within Cyprus.  As such, §1595 has no application and Wisebits is entitled to judgment on this claim as a matter of law.

### ii.      No violation of §1591(a)(1) or §1591(a)(2)

Even if the Court were to consider the merits of Plaintiffs' TVPRA claim, however, it fails from start to finish.  Before turning to the four-factors required to prove a claim under the statute, there is again a simpler and more structural reason why Plaintiffs' TVPRA claim fails as a matter of law.  In order to have a civil cause of action under §1595, there first must be an underlying "violation of this chapter."  In this case, Plaintiffs allege underlying violations of §1591(a)(1) and (a)(2).

A violation of §1591(a)(1) – the direct violation portion of the statute – makes it an offence for whomever knowingly "in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports,

provides, obtains, advertises, maintains, patronizes, or solicits by any means a person." 18 U.S.C.S. § 1591(a)(1). *The only act that could arguably meet this definition is the original surreptitious recording of the Plaintiffs in 2012.*

A violation of §1591(a)(2) – the beneficiary portion of the statute penalizes whomever knowingly "benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)." In other words, the benefit derived must come from participation *in the venture engaged in the act that violated paragraph 1.*

Here, the seven-year disconnect between the violation of paragraph 1 and the alleged "benefit" being derived in paragraph 2 makes it impossible for a reasonable jury to conclude that the benefit arose from "participation" in an act that took place seven years earlier (and, possibly, involved different actors). Indeed, with respect to Wisebits, it is an event that took place at a time before Wisebits had even been formed. As a matter of law, the statute simply cannot be twisted to reach such an absurd result.

### iii.    Plaintiffs cannot prove any of the four factors of a violation of the TVPRA

Even if this were not the case, however, Plaintiffs have failed to meet their burden of proof with respect to any of the four factors required to prove their claim for a violation of the TVPRA.

First, there is no evidence that Wisebits knowingly received a benefit from its participation in a sex trafficking venture. To the contrary, the undisputed evidence demonstrates that the only revenues Wisebits received was a licensing fee paid to it for the licensing of its intellectual property. Wisebits does not deny that this intellectual property was eventually sublicensed for use in connection with the xHamster.com website and that the revenues received by Wisebits were calculated as a percentage of revenues earned from the website as a whole. This is a far cry, however, from proof that Wisebits knowingly benefitted from its participation in an enterprise that sexually trafficked the Plaintiffs, which is required to meet just the first prong of the test and which

25

cannot be met with proof of generalized revenue. *See, e.g., Does v. Reddit, Inc.,* 51 F.4th 1137, 1145-46 (9th Cir. 2022)("Moreover, the plaintiffs have not alleged a connection between the child pornography posted on Reddit and the revenue Reddit generates, other than the fact that Reddit makes money from advertising on all popular subreddits"); *citing Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (finding insufficient connection between general benefits defendant received from working for individual who perpetrated sex trafficking and the perpetrator's conduct toward the victim).

Next, Plaintiffs cannot prove, as they must, that Wisebits knew that it was participating in an enterprise or venture.[9] And, although §1595 does not define "participation," a number of the cases have endeavored to do so, finding that the term requires a defendant to have provided actual substantive assistance to the trafficking venture. *See, e.g., K.H. v. Riti, Inc.,* 2024 U.S. App. LEXIS 3127, at *10 (11th Cir. Feb. 9, 2024)("allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex trafficking 'is not the same as participating in it.'") And, in *Does v. Reddit, Inc.,* 51 F.4th 1137 (9th Cir. 2022), the Ninth Circuit specifically addressed the question of what it meant for a website defendant to "participate" in a sex trafficking venture:

> In a sex trafficking beneficiary suit *against a defendant-website*, the most important component is the *defendant-website's* own conduct—its 'participation in the venture.' *See* 18 U.S.C. § 1595(a) (authorizing lawsuits against those who "benefit[] . . . from participation in a [trafficking] venture"). A complaint against a website that merely alleges trafficking by the website's users—without the

─────────────────────

[9] Although it is admittedly a little confusing, the second prong of §1595, participation in a venture, requires actual knowledge, as opposed to the fourth prong of §1595, which requires either actual or constructive knowledge. *See, e.g., Woodhull Freedom Found. v. United States,* 461 U.S. App. D.C. 425, 443, 72 F.4th 1286, 1304 (2023)("While both Sections 1591 and 1595 prohibit 'participation in a venture' that has engaged in sex trafficking, Section 1595's civil liability provision does not explicitly specify a *mens rea* for 'participation in a venture[.]' While the statutory text is not explicit and a few initial rulings were contradictory, court rulings are now consistent that Section 1595 requires an actual knowledge *mens rea* for participation in a venture.")

participation of the website—would not survive. Proof that a user committed criminal trafficking may "entitle a plaintiff to relief" in a case against the *user*, but not against the website.

*Id.* at 1142 (emphasis in original).

And, with respect to Wisebits, of course, there is even less of a basis to find "participation," given that Wisebits is a step removed from even being a "website defendant" having only held intellectual property that was licensed for the eventual use by a website, hardly the type of "participation" required under §1595.

Finally, there is no evidence whatsoever that Wisebits knew – or had reason to know – either that the Plaintiffs had allegedly been trafficked or that it was involved in any way (if it was) with such a violation of the TVPRA. As the evidence demonstrates, Wisebits had no connection with the operation of the xHamster.com website and did not know what was or was not posted on the website. As such, it could not have known anything about Plaintiffs' alleged trafficking.

Because §1595 does not apply extraterritorially and because Plaintiffs, in any event, cannot meet there burden to prove any of the elements of a claim under that section, Wisebits is entitled to judgment as a matter of law on Count I of the FAC.

### C.    Civil RICO (Count II)

In order to prevail on claim for Civil RICO, Plaintiffs would first have to have admissible evidence to show that Wisebits engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that must include at least two racketeering acts." *Brooks v. Field*, 2015 U.S. Dist. LEXIS 33950, at *24 (D.S.C. Feb. 20, 2015), *citing Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479 (1985). Again, and with apologies for the repetition, there is no record evidence to support any of these factors because Wisebits is nothing more than a holding company for intellectual property.

Although the Court's inquiry could certainly end there, establishment of the four elements

27

outlined above is only the first part of establishing a claim for relief under the Civil RICO statute. "To make out a civil action for damages under the RICO statute a private plaintiff must demonstrate not only that the defendants have violated § 1962, but also that he has been 'injured in his business or property by reason of [the alleged] violation of section 1962.' 18 U.S.C. § 1964(c). The quoted language requires the plaintiff to make two closely related showings: (1) that he has suffered injury to his business or property; and (2) that this injury was caused by the predicate acts of racketeering activity that make up the violation of § 1962. …it is clear that a civil RICO complaint is vulnerable to a motion to dismiss if it fails to allege either an adequate injury to business or property… or an adequate causal nexus between that injury and the predicate acts of racketeering activity alleged…" *Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988).

And, to add to the laundry list of infirmities in Plaintiffs' Civil RICO case, Plaintiffs have no admissible evidence of an injury to their "business or property." This is fatal to their Civil RICO claim. *See, Brandenburg, supra; Bast v. Cohen, Dunn & Sinclair, P.C.,* 59 F.3d 492, 495 (4th Cir. 1995)("Bast does not have standing to assert a claim for civil damages under 18 U.S.C. § 1964(c) because he fails to allege any 'injury in his business or property' that was proximately caused by the alleged RICO violation. 18 U.S.C. § 1964(c); ...At most, Bast pleads that he 'suffered extreme mental anguish' when he learned of Pettit's recordings. … An allegation of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property'")(citations omitted); *Dickerson v. TLC The Laser Eye Ctr. Inst., Inc.,* 493 F. App'x 390, 394 (4th Cir. 2012) ("Dickerson can only recover if he shows that his injury caused by the RICO violation damaged his business or property. … Thus, any allegation of personal injuries and losses from those injuries will not be considered injuries to business or property under the act"); *Bowen v. Adidas Am., Inc.,* 541 F. Supp. 3d 670, 676 (D.S.C.

2021)("Allegations of personal injuries and the pecuniary losses incurred therefrom do not qualify as injury to 'business or property.'")

Because Plaintiffs have failed to adduce evidence that could support any of the required elements of a claim for relief for Civil RICO, Wisebits is entitled to Summary Judgment on Count II of the FAC.

### D.     Negligent Monitoring (Count III)

Plaintiffs next attempt to state a claim for the "negligent monitoring" of the xHamster.com website, alleging that Wisebits had a legal duty to properly monitor the content of the xHamster.com website for illegal and nonconsensual material. FAC, §183.  Given that it is undisputed that Wisebits had no role in operating the xHamster.com website, it had neither the ability nor the obligation to monitor the content posted there by third parties.  And, even if Wisebits had the *ability* to monitor the content posted to the xHamster.com website by third parties, Plaintiffs' claim for "negligent monitoring" would still fail as a matter of law as there is no independent duty for a website to monitor the content posted by third parties. *See. e.g., Doe v. GTE Corp.,* 347 F.3d 655, 661 (7th Cir. 2003)(internet service provider that hosted website selling videotapes of collegiate athletes secretly recorded in sports team locker rooms and bathrooms had no duty to plaintiffs to prevent the misuse of its services); *Est. of Bride v. YOLO Techs., Inc.,* 112 F.4th 1168, 1181 (9th Cir. 2024)("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content"); *Teasley v. Tyler Techs., Inc.,* 2024 U.S. Dist. LEXIS 207486, at *7 (M.D.N.C. Nov. 15, 2024)("Ms. Teasley alleges that Tyler owed her a duty of care to ensure that it 'was not publishing false and libelous information about her in the internet website portal,' and to 'remove any false and libelous information published.' But these conclusory allegations do not give rise to a duty of care. Ms. Teasley has not provided any cases, statutes, or other legal authority suggesting that corporations

29

that operate websites owe a duty of care to members of the public")(citations omitted); *M.L. v. Craigslist Inc.,* 2020 U.S. Dist. LEXIS 166836, at *38 (W.D. Wash. Apr. 17, 2020)("plaintiff provides no factual basis or argument supporting her assertion that craigslist has a generally duty to ensure that their website is not endangering minors. Additionally, plaintiff cites no authority, and the undersigned is aware of none, supporting the proposition that craigslist has a general duty to ensure that their website does not endanger minors. Accordingly, plaintiff's bald assertion  that craigslist has some duty to protect minors is insufficient to state a claim for negligence"); *Doe v. MySpace, Inc.,* 474 F. Supp. 2d 843, 851-52 (W.D. Tex. 2007)("Plaintiffs have failed to state a claim for negligence or gross negligence because MySpace had no legal duty to prevent the alleged sexual assault….MySpace had no duty to protect Julie Doe from Pete Solis's criminal acts nor to institute reasonable safety measures on its website.")

Because Wisebits neither had nor breached any duty to the Plaintiffs to monitor the xHamster.com website, they are entitled to judgment as a matter of law on Count IX of the FAC, alleging Negligent Monitoring.

### E.    False Light (Count X)

In Count Ten, Plaintiffs claim that the posting of the videos on the xHamster.com website cast them in a false light because they "falsely portray the Plaintiffs as exhibitionists/sexual deviants/pornstars, which the Plaintiffs are not."  FAC, ¶190.  Preliminarily, there is something unseemly about having spent so much time and energy arguing that the videos in question were clearly taken without the consent of the Plaintiffs only to turn around and argue that the videos somehow portray the Plaintiffs as having consented to their recording.  Be that as it may, the claim again fails at its root because Wisebits had no control over what was or was not posted on the xHamster.com website.  And, even if this were not the case, Wisebits would still be entitled to judgment as a matter of law because South Carolina simply does not recognize a cause of action

for "false light." *See, e.g., Wedlake v. Bd. of Dirs. of Woodington Homeowners' Ass'n*, 2022 S.C. App. Unpub. LEXIS 224, at *3-4 (Ct. App. Apr. 27, 2022)(noting that no South Carolina case has recognized a cause of action for false light); *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 482 (2006)(same)*; Brown v. Peterson*, 326 S.C. 409, 422 (1997)(same); *Parker v. Evening Post Publishing Co.*, 317 S.C. 236, 246 (1994)(same).

Because South Carolina does not recognize a cause of action for false light and because, even if it did, the undisputed evidence demonstrates that Wisebits had no control over what was or was not published on the xHamster.com website, Wisebits is entitled to judgment as a matter of law on Count X of the FAC, alleging False Light.

### F.    Civil Conspiracy (Count XI)

Finally, Plaintiffs' claim for Civil Conspiracy has, surprise, found absolutely no factual support through the course of discovery.  Under South Carolina law, "a plaintiff asserting a civil conspiracy claim must establish (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cty. Sch. Dist.*, 433 S.C. 562, 574 (2021).  One is, of course, left to guess with whom Wisebits allegedly combined to commit an unlawful act (since the complaint simply lumps all of the defendants together as having joined together to do so), but since the improper acts described are: (1) the surreptitious recording of the Plaintiffs in 2012, and (2) the posting of the recordings of the Plaintiffs to various websites including xHamster.com in 2019, one would have to assume that Wisebits would have had to have entered into some sort of combination and agreement with the individual responsible for recording the plaintiffs and/or uploading the videos. There is no evidence whatsoever of either and – with respect to the former – it would have been an impossibility since Wisebits had not even been formed when the recordings were made.  And,

with respect to the uploader of the videos, there is no evidence that Wisebits (or Hammy for that matter) ever communicated with the person responsible for uploading the videos. And, moreover, there is no evidence that Wisebits (or Hammy) had the intent to post non-consensual videos of the Plaintiffs.

In considering the level of intent and causal connection necessary to support a conspiracy claim in the context of the operation of a website (which, of course, Wisebits did not even do), it is instructive to consider the Supreme Court's recent decision in *Twitter, Inc. v. Taamneh, et al.,* 598 U.S. 471 (2023). And, although that case dealt more with the related cause of action of "aiding and abetting" (as discussed above) as opposed to conspiracy (although the Court also discussed conspiracy in its opinion), that makes the case, if anything, *more* compelling since it is *easier* to prove aiding and abetting then it is to prove conspiracy. *Twitter,* 598 U.S at 489-90 ("Moreover, unlike its close cousin conspiracy, aiding and abetting does not require any agreement with the primary wrongdoer to commit wrongful acts, thus eliminating a significant limiting principle.")

Plaintiffs in *Twitter* were family members of victims of the 2017 Reina nightclub bombing in Istanbul, Turkey orchestrated by the Islamic State of Iraq and Syria ("ISIS"). Plaintiffs brought suit against Twitter, Facebook, and Google (which owns and operates YouTube) for aiding and abetting ISIS in the commission of the bombing. Plaintiffs alleged that ISIS posted videos to Defendants' websites in order to radicalize and recruit new members to ISIS. Plaintiffs also alleged, *inter alia*, that the Defendants encouraged users to watch ISIS recruitment videos by recommending such videos to users once they had watched one terrorism-related video; that the defendant websites profited from displaying such videos by displaying advertising with and alongside such videos; and that:

> …defendants have known that ISIS has used their platforms for years. Yet, plaintiffs claim that defendants have failed to detect and remove a substantial number of ISIS-related accounts, posts, and videos. (For example, plaintiffs aver

that defendants "have failed to implement . . . a basic account detection methodology" to prevent ISIS supporters from generating multiple accounts on their platforms. …Accordingly, plaintiffs assert that defendants aided and abetted ISIS by knowingly allowing ISIS and its supporters to use their platforms and benefit from their "recommendation" algorithms, enabling ISIS to connect with the broader public, fundraise, and radicalize new recruits. And, in the process, defendants allegedly have profited from the advertisements placed on ISIS' tweets, posts, and videos.

Plaintiffs also provide a set of allegations specific to Google. According to plaintiffs, Google has established a system that shares revenue gained from certain advertisements on YouTube with users who posted the videos watched with the advertisement. As part of that system, Google allegedly reviews and approves certain videos before Google permits ads to accompany that video. Plaintiffs allege that Google has reviewed and approved at least some ISIS videos under that system, thereby sharing some amount of revenue with ISIS.

*Id.* at 481-82.

Accordingly, Plaintiffs sued Defendants under the Justice Against Sponsors of Terrorism Act (JASTA).  As the Supreme Court stated, "as the law now stands, those injured by an act of international terrorism can sue the relevant terrorists directly under §2333(a)—or they can sue anyone 'who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism' under §2333(d)(2)." *Id.* at 483.

Following an extensive discussion of the civil and criminal caselaw concerning secondary liability, the Supreme Court returned to Plaintiffs' arguments in support of their claim that Defendants had "aided and abetted" ISIS and rejected them in their entirety:

The mere creation of those platforms, however, is not culpable. To be sure, it might be that bad actors like ISIS are able to use platforms like defendants' for illegal—and sometimes terrible—ends. But the same could be said of cell phones, email, or the internet generally. Yet, we generally do not think that internet or cell service providers incur culpability merely for providing their services to the public writ large. Nor do we think that such providers would normally be described as aiding and abetting, for example, illegal drug deals brokered over cell phones—even if the provider's conference-call or video-call features made the sale easier.

…To be sure, plaintiffs assert that defendants' "recommendation" algorithms go beyond passive aid and constitute active, substantial assistance. We disagree.

*Id.* at 499.

Ultimately, the Supreme Court rejected as too broad the blanket imposition of aiding and abetting liability on companies that provide online platforms to third parties, even if those third parties utilize the platforms to unlawful ends:

The fact that some bad actors took advantage of these platforms is insufficient to state a claim that defendants knowingly gave substantial assistance and thereby aided and abetted those wrongdoers' acts. And that is particularly true because a contrary holding would effectively hold any sort of communication provider liable for any sort of wrongdoing merely for knowing that the wrongdoers were using its services and failing to stop them. That conclusion would run roughshod over the typical limits on tort liability and take aiding and abetting far beyond its essential culpability moorings.

*Id.* at 503.

The same reasoning applies equally here. Even had Plaintiffs shown any evidence that Wisebits joined with other Defendants to operate the xHamster.com website (which they have not), the fact that third parties took advantage of that platform to post surreptitiously recorded videos of the Plaintiffs cannot support a claim for conspiracy and any contrary conclusion "would run roughshod over the typical limits on tort liability" and take conspiracy "far beyond its essential culpability moorings."

Because Plaintiffs have failed to produce evidence from which a reasonable jury could find that Wisebits had engaged in a Civil Conspiracy, it is entitled to a judgment as a matter of law on Count XI of the FAC.

## CONCLUSION

For the reasons stated hereinabove, Wisebits' Motion for Summary Judgment should be allowed in its entirety.

Respectfully submitted,


/s/ Hannah Rogers Metcalfe
Hannah Rogers Metcalfe, Fed ID. 9943
Metcalfe & Atkinson, LLC
1395 South Church Street
Greenville, South Carolina 29605
(864) 214-2319

Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Valentin D. Gurvits (*pro hac vice*)
Frank Scardino (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com

*Attorneys for Defendant Wisebits IP Ltd.*

January 10, 2025
Greenville, South Carolina