**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| JANE DOES 1-9, <br><br>         Plaintiffs, <br> vs. <br><br> Collins Murphy, Limestone College, Hammy Media Ltd., MG Freesites Ltd., Sharon Hammonds, Brenda F. Watkins, Mindgeek S.A.R.L., TrafficStars LTD., Wisebits IP LTD, <br><br>         Defendants. | Case No.: 7:20-cv-00947-DCC |
| JANE DOE, <br><br>         Plaintiff, <br> vs. <br><br> Limestone University, Collins Murphy, MG Freesites Ltd., Hammy Media Ltd., Sharon Hammonds, Brenda F. Watkins, Mindgeek S.A.R.L., TrafficStars, LTD., Wisebits IP LTD., <br><br>         Defendants. | Case No.: 7:21-cv-03193-DCC |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO HAMMY MEDIA LTD'S, WISEBITS IP, LTD'S, AND TRAFFICSTARS, LTD'S MOTION FOR INJUNCTIVE RELIEF AND SANCTIONS**

Plaintiffs Jane Does 1-9 and Jane Doe (hereinafter collectively referred to as "Plaintiffs") hereby submit their opposition to Defendants, Hammy Media Ltd., Wisebits IP, Ltd., and Trafficstars, Ltd.'s (hereinafter collectively referred to as "Hammy Defendants" or "Defendants") Motion for Injunctive Relief and Sanctions.

1

**INTRODUCTION**

The pornography profiteers in this case are attempting to censor and punish Plaintiffs and their counsel for talking about publicly available facts and critiquing how anti-trafficking laws get enforced. This Court should reject the attempt. On April 27, 2026, Defendants Hammy Media Ltd., Wisebits IP, Ltd., and Trafficstars, Ltd. filed a motion for injunctive relief and sanctions against Plaintiffs' counsel and the National Center on Sexual Exploitation (NCOSE).

Defendants argue that a NCOSE podcast featuring Plaintiffs' attorney Dani Pinter,[1] and related communications about Plaintiffs' appeal, which discuss this case's public record as well as the state of the law, violate South Carolina's professional conduct rules on trial publicity and obstruction of justice. For the reasons that follow, Plaintiffs, through their counsel, ask this Court to deny Defendants' frivolous motion and award Plaintiffs' reasonable attorneys' fees and costs in connection with defending against it.

**ARGUMENT**

Defendants' motion should be denied for three reasons: I) this Court has no jurisdiction over communications about Plaintiffs' appeal; II) counsel's discussion about material in the public record did not violate the trial publicity rule; and III) in exercising her First Amendment right to criticize the state of the law, counsel did not violate Rule 8.4.

---

[1] Out of an abundance of caution and respect for the Court, Plaintiffs have made the video podcast unlisted until Defendants' motion is resolved, which cures any potential prejudice. Notably, Defendants never attempted to confer with Plaintiffs about their concerns as required by the local rules, L.R. 7.02, which further underscores the bad faith, frivolous nature of Defendants' claims. The podcast can still be accessed at this link: https://www.youtube.com/watch?v=AULJyXgHvzY, and Plaintiffs will cite to it throughout this response.

**I.      This Court has no jurisdiction over communications about Plaintiffs' appeal.**

Defendants all but acknowledge that this Court lacks jurisdiction. They admit that under binding Supreme Court precedent, this Court has no jurisdiction over matters relating to the appeal. *See* Defs. Mot at 7 (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal")).

The jurisdictional shift is immediate, occurring as soon as a notice of appeal is filed. *See* Defs. Mot. at 7 (citing *Mt. Valley Pipeline, LLC v. 8.37 Acres of Land*, 101 F.4th 350, 360 (4th Cir. 2024) ("But the filing of a timely and sufficient notice of appeal immediately transfers jurisdiction of 'all matters relating to the appeal from the district court to the court of appeals[.]'"). Defendants also correctly note that a trial court only retains jurisdiction over "collateral and ancillary matters that do not affect the questions presented on appeal." *Durham Sch. Servs., L.P. v. Gen. Drivers, Warehousemen & Helpers, Local Union No. 509*, 2016 U.S. Dist. LEXIS 35788, at *6-7 (D.S.C. Mar. 21, 2016) (cited at Defs. Mot. at 7).

Defendants then state that motions for attorneys' fees and sanctions are considered collateral under *Durham* even after a notice of appeal is filed, but in that case, the court specifically noted that the sanctions motion related to the plaintiff's claims against one defendant, while the appeal concerned a different defendant. *Durham Sch. Servs.* at *6. That is obviously not the case here, as Plaintiffs' appeal is against all of the Hammy Defendants. *See* ECF No. 652. So, the trial court here does not retain jurisdiction.

And the NCOSE podcast itself deals almost entirely with the appeal and Plaintiffs' basis for it. Defendants' own YouTube screenshot of the podcast reveals the episode is about Plaintiffs' appeal:

> Haley McNamara (CSO and Executive Director at NCOSE) and Dani Pinter (CLO and Director of the Law Center at NCOSE) sit down to discuss the summary judgment decision that essentially dismissed the case against Pornhub from 10 survivors who were exploited on their platform. Dani walks us through the history of the case, her analysis of the decision, and what is next for this case.

Defs. Mot. at 4. In fact, Defendants do not point to a single aspect of Plaintiffs' counsel's communications that does *not* relate to the appeal. *See* Defs. Mot at 7-8. (Counsel discusses the lawsuit's background and the wider anti-trafficking litigation context, which is necessary to explain the decision's import and the decision to appeal, especially for a lay audience).

This court issued a dispositive order in Defendants' favor on September 3, 2025, and final judgment for them on October 22, 2025, closing the case. ECF Nos. 635, 651. And as Defendants acknowledge, Plaintiffs filed their notice of appeal on November 17, 2025, and the podcast was released on December 4, 2025. *See* Defs. Mot at 3-4. Plaintiffs' appeal remains pending; there can be no good-faith argument that their counsel's communications about an appeal in an otherwise fully closed case are collateral to the appeal. Thus, this Court lacks jurisdiction over Defendants' motion, and Defendants' claims to the contrary are meritless. Defendants' motion should be denied on this basis alone.

## II.    Counsel's discussion about material in the public record did not violate the trial publicity rule.

Defendants' motion lacks substantive merit as well. Defendants assert that Plaintiffs' counsel has violated South Carolina Rule of Professional Conduct Rule 3.6, yet they ignore much of the rule and mischaracterize counsel's statements.

4

Under the South Carolina Rules of Professional Conduct, specifically Rule 3.6(a),

A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Yet Defendants fail to explain how the statements they identify "will have a substantial likelihood of materially prejudicing an adjudicative proceeding," relying almost entirely on bald assertions, while misleading the Court about the rule's scope. Notably, Defendants never even mention, let alone argue that counsel's statements fall outside Rule 3.6(b).

Subsection (b) of the rule provides a long list of exceptions to 3.6(a), including that an attorney may discuss "the claim, offense or defense involved," 3.6(b)(1), "information contained in a public record," 3.6(b)(2), "the scheduling or result of any step in litigation," 3.6(b)(4), and "a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest," 3.6(b)(6). As will be described further below, counsel's statements fell squarely within these exceptions to Rule 3.6(a).

While subsection (b) is not exhaustive, these listed exceptions are "specific matters about which a lawyer's statements . . . should not in any event be considered prohibited" by paragraph (a). Rule 3.6, Comment [4]. Rule 3.6's comment recognizes the importance of both "safeguarding the right of free expression," and "protecting the right to a fair trial," as certain "vital social interests" that are "served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security." Rule 3.6, Comment [1].

Defendants' account of the facts fares no better. The following paragraph represents the entirety of Defendants' substantive analysis on the supposed Rule 3.6 violations:

> On its [sic] face, Attorney Pinter's comments violate each of the above-listed ethical rules. Attorney Pinter's comments are clearly of the type that present a substantial likelihood of materially prejudicing any trial that might occur in this case. Attorney Pinter's comments, for example, referring to Defendants as 'notorious bad actors' and referencing other litigations are the type of comments that would be excluded under Federal Rules of Evidence R. 403. And her comments about having discovered hundreds of covert videos of people urinating in public restrooms – something that is neither in evidence in this case nor relevant to Plaintiffs' claims, would be similarly excluded. And, her claim that the Defendants were 'working hand in hand with the person posting the content' has been flat-out disproven during discovery and her comments to the contrary are clearly prejudicial and have a high likelihood of prejudicing any potential juror who may have seen the podcast.

Defs. Mot. at 9.

Defendants devote only about 150 words to this analysis, despite seeking sanctions as a remedy. And the statements they reference either do not apply to them at all, reference information in the public record, or both.

First, the "notorious bad actors" phrase actually referred to the MindGeek Defendants, not the Hammy Defendants; Ms. Pinter stated it was "just so disheartening to see that . . . even with a notorious bad actor like Pornhub with multiple cases where they have . . . lost on 230 grounds," and where there was no dispute that the non-consensual videos were on Pornhub, this Court granted a dispositive motion in the MindGeek Defendants' favor on Section 230 grounds.[2]

Counsel was referring to information in the public record about Pornhub, which is exempt from Rule 3.6(a), and in any case, it is unreasonable for the Hammy Defendants to claim they are prejudiced by a single phrase that does not even refer to them. Ms. Pinter was contrasting this Court's summary judgment decision with other decisions about Pornhub, and Defendants do not

---

[2] https://www.youtube.com/watch?v=AULJyXgHvzY, at 15:55-16:57

6

explain how the phrase she used would violate Fed. R. Evid. 403 (or how it would end up being proffered as evidence in a trial in the first place).[3]

Second, Ms. Pinter's remarks about covert restroom videos *are* in evidence in this case, and go to the heart of this case's claims about covert locker room videos. Defendants thus made an incorrect statement to the Court. Ms. Pinter was a referencing this screenshot of xHamster's website, which showed there were indeed "hundreds of covert videos of people urinating in public restrooms," some with 700,000 views.



Plaintiffs submitted that screenshot as an exhibit in one of their oppositions to the motion to dismiss filed by one of the Hammy Defendants, Trafficstars Ltd., ECF No. 275, Exh. N (declaration from D. Pinter describing investigation into Hammy Defendants, with screenshots attached). Not only are these statements in the public record, and therefore exempt from Rule

---

[3] Ms. Pinter, of course, would not be testifying at trial as a witness in a case where she is counsel.

3.6(a) under subsection (b)(2), they could also reasonably be construed as a warning of danger to the public under (b)(5), given that being subjected to the same abuses Plaintiffs experienced is a risk every woman takes when she enters a public space.

Finally, Ms. Pinter never claimed that the Hammy Defendants were working "hand in hand" with the perpetrator who took the videos in this case. That phrase was part of her summary of the Section 230 rule that a website is not immune from civil lawsuits if it is developing and materially contributing to creating illegal content. Ms. Pinter then explained that Plaintiffs alleged and demonstrated that Pornhub had materially contributed to illegal content by using thumbnails, yet this Court had still found Pornhub was immune to suit.[4] Additionally, discovery confirmed that the uploader-perpetrator was a Modelhub member, *see* ECF 488 at 4, and as such, *was* directly working with Pornhub. These facts relate to the Plaintiffs' claims[5] and thus fall under both the

---

[4] https://www.youtube.com/watch?v=AULJyXgHvzY, 13:59-14:48 ("And courts have routinely said, you know, if the if the website itself is adding to the content, altering it, changing it, enhancing it, you know, that's materially contributing it. In other words, if you're working hand in hand with the person posting the content, you can't say, 'Hey, this is just a third party.' Really, this is a joint…content creation effort. And that's exactly what we pled and exactly what the evidence showed. Not only did…Pornhub itself create entire web pages around hidden camera, create tags around hidden camera … but they created thumbnails of this content. So you have the uploader uploading it, but then Pornhub would create itself a thumbnail, which is that's what makes you click, right? We're all familiar with thumbnails. That's the little image you see. So you click on it. That's the main way content is advertised.").

[5] While Ms. Pinter was talking about Pornhub in the podcast, as seen in Plaintiffs' opposition to the Hammy Defendants' motion for summary judgment, the Hammy Defendants engaged in similar content development to maximize their profits: "Before any video went live on the website, it also needed a thumbnail. Users could upload thumbnails, but Hammy ultimately selected a thumbnail that it knew would optimize video performance and drive traffic. Hammy generated new illegal content by creating "thumbnails" which are visually enticing screen captures." ECF 492 at 6 (citing Pls. Exh. 5 at 22, 42, 43, 52, 59). Additionally, Hammy "[m]oderators manually review and modify the videos, tags, and categories before they go live on the site," ECF 492 at 22 (citing Pls. Exh. 23. at 156), and had "[p]repopulated tags like 'voyeur,' 'hidden camera,' and 'locker room,'" ECF 492 at 24 (citing Pls. Exh. 23. at 222).

exceptions in (b)(1) (discussing a claim or defense in litigation) and (b)(2) (discussing material contained in the public record).

The only other statements that Defendants could conceivably intend to include in their Rule 3.6 claim are the single adjective "predatory" they claim that Plaintiff's counsel used to describe their websites, and counsel's claim that the websites create a "dangerous" environment for women. *See* Defs. Mot. at 7. (Defendants list these statements in their background section, but do not analyze them).[6]  Here is Counsel's quote in context:

> The ability to non-consensually record something and upload it and people to not even know is so disturbing…this was a huge problem on these sites …but it wasn't like a bug that the websites were trying to fix …they didn't view it as a problem – this was a category they fostered a category they invited…this was a massive category…when I investigated the site at the time there was literally hundreds of videos of…people peeing in public restrooms. So, someone literally planting a camera in the toilet or in the bathroom anywhere like at a department store…anywhere like you used a public restroom, you could have ended up on these sites...And another layer that …shows the predatory nature of what happened to our clients and these websites is that…we see this in other contexts of… prostitution with sex buyers… it's so harmful to consume this content and creates a dangerous atmosphere for women and for really everyone[.]"[7]

Counsel's remarks fall squarely within the "public record" exception, as this excerpt is describing evidence that came to light both in the early investigation for this case and in discovery, as well as the wider implications of that evidence, especially for women and girls (which also falls under the public safety exception). *See* Rule 3.6 (b)(2), (6).

Not only do the statements at issue fall within exceptions to Rule 3.6, exceptions that Defendants neglect to even mention, but no trial is imminent. Unless the appeal is successful – the very topic of the podcast – there will be no jury trial. In fact, that is the core of the podcast's

---

[6] Defendants also mention some fundraising statements on NCOSE's website, Defs. Mot. at 2, but fail to identify any rule this breaks.  Unlike the pornographers' counsel, Plaintiffs' NCOSE counsel are nonprofit attorneys who do not charge for their services; fundraising is thus the only way for them to be able to afford to represent sex trafficking victims.
[7] https://www.youtube.com/watch?v=AULJyXgHvzY. 7:46-9:14

criticism: the Hammy Defendants' victims do not get to have their day in court because of the Hammy Defendants' websites being granted immunity.

And not all proceedings are equally susceptible to prejudice under the rules: "Another relevant factor in determining prejudice is the nature of the proceeding involved. Criminal jury trials will be most sensitive to extrajudicial speech. Civil trials may be less sensitive. Non-jury hearings and arbitration proceedings may be even less affected." Rule 3.6, Comment [6].

It is also strange for Defendants to suggest the podcast would materially prejudice a future trial when the video merely summarized publicly available information that is more damning in itself than any description of it could be. Far more people have viewed spycam videos on the Hammy Defendants' sites than have viewed NCOSE's podcast; there is a much greater chance a future juror has seen the relevant evidence directly than counsel's summary of it.

Relatedly, Plaintiffs' expert report referenced and linked to a Vice article. ECF 488, Exh. 3.[8] The Vice article mentioned spycam videos on xHamster, remarking that "[i]mages that appear to have been uploaded without the subject's consent are also waved through," and quoted volunteer content moderators on xHamster: "'Hidden cam, voyeur, upskirt, all OK unless there is some other violation.' Another agrees: 'I don't like it either and it's a crime here in the USA, but xHamster admin said it's voyeurism and OK.'"[9]

Ultimately, the podcast and associated communications, to extent they made claims about the Hammy Defendants (as opposed to the MindGeek Defendants), described the Hammy Defendants' actual conduct. Negative is not the same thing as prejudicial: the Hammy Defendants have pointed to nothing that would interfere with their ability to obtain a fair trial if Plaintiffs

---

[8] The Exhibit was filed under seal, therefore, Plaintiffs only discuss the publicly available Vice article.
[9] https://www.vice.com/en/article/inside-xhamsters-unpaid-content-moderation-team/.

succeed on appeal. Defendants' failure to identify any material prejudice is compounded by their apparent bad-faith refusal to even acknowledge Rule 3.6's exceptions, let alone explain how Plaintiffs' counsel's statements fall outside them. Accordingly, given that Plaintiff's counsel referred to claims in this case and facts in the public record, as well as the wider safety implications of Defendants' established conduct, counsel's statements fall within the exceptions listed in Rule 3.6, and do not violate South Carolina's trial publicity rule.

### III.     In exercising her First Amendment right to criticize the state of the law, counsel did not violate Rule 8.4.

The remaining statements that Defendants take issue with are criticisms of the judiciary with respect to holding websites accountable for facilitating sex trafficking and other forms of sexual abuse. Defendants assert that Ms. Pinter's communications about the judiciary violate Rule 8.4(e) ("It is professional misconduct for a lawyer to… engage in conduct that is prejudicial to the administration of justice."), as well as this District's similar rule, Rules of Disciplinary Enforcement Rule IV(H)(4) (forbidding "[c]onduct tending to pollute or obstruct the administration of justice or to bring the courts or the legal profession into disrepute.").

But Defendants provide no analyses of these rules or Plaintiffs' counsel's statements in relation to them, stating merely: "Similarly, it is hard to imagine comments more likely to 'bring the courts or the legal profession into disrepute' than the comments made by Attorney Pinter in reference to this Court and its summary judgment order." Defs. Mot. at 9.

Plaintiffs' counsel did not "disparage" this Court in offering a measured critique of its summary judgment decision and the broader context in which it arose. Counsel described a long history of difficulty in suing website-beneficiaries of sex trafficking, a key legal reform intended to solve the problem, and the continued trend of technology companies being granted immunity

11

even for knowing, wrongful acts. [10] Plaintiffs' counsel described a pattern that has played out in numerous sex trafficking lawsuits across the country, and speculated about why courts, including this one, keep granting categorical immunity to websites that enable and profit from sex trafficking. Counsel's criticism encompassed both the judiciary and Congress, and included cases besides this one.

Counsel has a right to "criticize the state of the law." *See In re Sawyer*, 360 U.S. 622, 631-32 (1959) (plurality opinion).[11] The Supreme Court has stated that lawyers may "criticize the state of the law" and such criticism does not amount to "an improper attack on the judges," including on the "motivation or the integrity or the competence of the judges." *Id*. The Sawyer Court distinguished calling a decision wrong with making accusations against a judge: "Petitioner did

---

[10] https://www.youtube.com/watch?v=AULJyXgHvzY, 20:46-22:44. In context, the statements at issue are as follows: "If we think back [to] the Backpage litigation, … pre 2018, so we're talking 2016, 2017, there was court after court saying this exact same thing…we moved mountains to get Congress to pass FOSTA and then Big Tech came in and heightened the standard. so high that no one can get past it. Including in this case, we alleged FOSTA-SESTA and this same judge said we hadn't met the burden. So again . . .when is it ever going to be enough? It just feels like both Congress and the courts are constantly passing the buck. And to me, it can only be explained by a fear of the tech industry and sort of a cowardice when it comes to … dealing with technology… there is a sort of unanimous fear...when it comes to dealing with tech. And maybe this is maybe this will improve as judges get younger. I mean, maybe it has to do with …judges obviously they're experienced lawyers. They've had an entire career. That's what gets you on the federal bench. So largely they're older and so maybe … they're intimidated by the technology. But I don't know. I mean, if we look to our Twitter case where . . . the Ninth Circuit said we hadn't met FOSTA even though we had actual knowledge, which is supposed to be that heightened standard, ruled in favor of Twitter again in a way that didn't make any sense. And actually, the judge who wrote that opinion was younger. She was … a newer federal judge. . . It's … one of those things we're going to look back and be like massive miscarriages of justice…[W]hy is tech being treated differently than everyone else? Every other company, every other person, both at the congressional level and the judicial level."

[11] Although Defendants talk about NCOSE a lot in the background section (mostly in the context of NCOSE fundraising), they do not seem to make any arguments about NCOSE acting improperly, and NCOSE is of course not subject to rules governing attorneys' speech, *see, e.g.*, South Carolina Rules of Professional Conduct, Preamble-Scope (indicating that professional conduct rules apply to persons practicing law).

not say Judge Wiig was corrupt or venal or stupid or incompetent. The public attribution of honest error to the judiciary is no cause for professional discipline in this country." *Id.* at 635.

Similarly, a district court in this Circuit has recognized that attorneys do not lose their free speech rights as citizens: "An attorney does not surrender, in assuming the important place accorded to him in the administration of justice, his right as a citizen to criticize the decisions of the courts in a fair and respectful manner, and the independence of the bar, as well as of the judiciary, has always been encouraged by the courts." *In re Ades*, 6 F. Supp. 467 (D. Md. 1934) (explaining that fair criticism is distinct from insulting the courts in a manner that would undermine the justice system).

Consistent with these precedents, counsel's statements were fair, constitutionally protected criticisms, not comments that intended to or reasonably could be interpreted to discredit the judiciary. The tone throughout the podcast – earnest, analytical, reflective, and direct – was consistent with civil disagreement. Counsel did not go on an anti-judiciary rant, say anything inflammatory, accuse the judiciary of lacking competence or ethics, employ profanity or obscenity, make any threats, insults, or offensive remarks, or do anything other than criticize the state of the law from the perspective of a human rights lawyer in the process of appealing a decision.

Defendants offer no reasoning or other analysis to support their claims that Plaintiffs' counsel violated Rule 8.4 or Rule IV, further underscoring the frivolous nature of this motion, and Plaintiffs' counsel has a First Amendment right to offer fair criticism of judicial rulings. Defendants' frivolous sanctions motion is itself sanctionable under the local rules: "Where the court finds that a motion is frivolous or filed for delay, sanctions may be imposed against the party or counsel filing such motion." D.S.C. L.R.7.09.

13

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny Defendants' motions for

injunctive relief and sanctions, and award Plaintiffs reasonable fees and costs.

Respectfully submitted,

**NATIONAL CENTER ON SEXUAL
EXPLOITATION**

*/s/ Danielle Bianculli Pinter*
Danielle Bianculli Pinter (admitted *Pro Hac Vice*)
Christen M. Price (admitted *Pro Hac Vice*)
Benjamin W. Bull (admitted *Pro Hac Vice*)
1201 F Street NW, Suite 200
Washington, DC 20004
Telephone: (202) 393-7245
dpinter@ncoselaw.org
cprice@ncoselaw.org
bbull@ncose.com

**BELL LEGAL GROUP, LLC**
*/s/J. Edward Bell, III*
J. Edward Bell, III (#1280)
Gabrielle Sulpizio (#12517)
219 North Ridge Street
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@edbelllaw.com

**DOLT, THOMPSON, SHEPHERD &
CONWAY, PSC**
Tyler S. Thompson (admitted *Pro Hac Vice*) Liz
J. Shepherd (admitted *Pro Hac Vice*)
Chad Propst (admitted *Pro Hac Vice*)
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com
lshepherd@kytrial.com
cpropst@kytrial.com

***Counsel for Plaintiffs***

May 11, 2026
Georgetown, South Carolina

14